# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

       Plaintiff,

v.                                         No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion for Extension of Deadlines, filed December 3, 2018 (Doc. 95)("Motion"). The Court held a hearing on January 9, 2019. See Clerk's Minutes, filed January 9, 2019 (Doc. 104). The primary issue is whether the Court should extend the case deadlines as Plaintiff State of New Mexico proposes:

| Event | Initial Deadline | Proposed Deadline |
|---|---|---|
| Termination of Discovery | January 4, 2019 | May 24, 2019 |
| Discovery Motions | January 18, 2019 | June 7, 2019 |
| Pretrial Motions Other than Discovery Motions (including Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993)("Daubert"), motions) | February 1, 2019 | June 21, 2019 |
| Pretrial Order from New Mexico to the Defendants | March 13, 2019 | July 5, 2019 |
| Pretrial Order from Defendants to the Court | April 3, 2019 | July 17, 2019 |

The Court grants the Motion in part and denies it in part. Pursuant to the parties' agreement at the hearing, the Court will deem discovery concluded, and it will extend the other deadlines as follows:

| Event | New Deadline |
|---|---|
| Discovery Motions | February 4, 2019 |
| Pretrial Motions Other than Discovery (including Daubert motions) | April 25, 2019 |
| Motion Hearing | May 28, 2019 at 8:30 a.m. |
| Pretrial Order from New Mexico to the Defendants | June 10, 2019 |
| Pretrial Order from the Defendants to the Court | June 17, 2019 |
| Pretrial Conference | June 18, 2019 at 8:30 a.m. |
| Trial | July 8, 2019 -- trailing docket |

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act (MFCFPA), Mortgage Assistance Relief Services (MARS) Rule, the New Mexico Unfair Practices Act (UPA) and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Defendants Real Estate Law Center, P.C.; Erikson M. Davis; Deepak S. Parwatikar; Chad T. Pratt; Balanced Legal Group; and Pinnacle Law Center, P.C. See Complaint ¶¶ 16-76, at 5-17. Davis, Pratt, and Parwatikar are residents of and attorneys licensed in California. See Complaint ¶ 10-12, at 4-5. Neither Davis nor Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11, at 4-5. Real Estate Law "is a Professional Corporation registered in California." Complaint ¶ 9, at 4. Pratt owned and managed Real Estate Law from September, 2011 to September, 2013. See Complaint ¶ 37, at 8. Davis "assumed ownership of" Real Estate Law in 2013. Complaint ¶ 20, at 6. Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Parwatikar owns, Complaint ¶ 38, at 8, and Real Estate Law provides Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6. Balanced Legal "is a California law firm owned and/or managed by Parwatikar." Complaint ¶ 14, at 5. Balanced Legal uses the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law. See Complaint ¶ 34, at 8.

The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees." Complaint ¶ 23, at 6. Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico." Complaint ¶ 16, at 5. "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications." Complaint ¶ 17, at 5. "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better

loan terms." Complaint ¶ 18, at 5. Balanced Legal provides legal services via a website "accessible to New Mexico consumers." Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that **"[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint). Real Estate Law has had "at least twenty-three . . . New Mexico consumers since 2013." Complaint ¶ 58, at 13.

## PROCEDURAL BACKGROUND

New Mexico alleges that: (i) Real Estate Law violated the Mortgage Assistance Relief Services Rule, 12 C.F.R. 1015.1 "Regulation O," by soliciting and accepting advance fees from New Mexico residents before "a mortgage modification agreement [was] finalized," Complaint ¶ 84, at 19; (ii) the Defendants violated the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, N.M. Stat. Ann. §§ 47-15-1 to -8, by offering services to save "consumers' homes from foreclosure," requiring payment for services before completing the services, and not providing required "warnings, notices, and disclosures," Complaint ¶ 87, at 20; and (iii) the Defendants violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26, by requiring "a large up-front fee . . . plus monthly maintenance fees," providing "no value to the consumers," and leading consumers to believe that the Defendants will help defend "a foreclosure lawsuit," Complaint ¶ 105, at 22. The Court entered default judgment against Davis. See Memorandum Opinion and Order at 10, filed January 18, 2019 (Doc. 106). The parties scheduled a settlement meeting for March 25, 2019. See Motion at 1. New Mexico seeks to extend the case's deadlines because of the possibility that the parties will settle. See Motion at 1.

1.    **The Motion.**

New Mexico asks that the Court extend the deadlines that the Order Setting Case Management Deadlines and Discovery Parameters, filed June 28, 2018 (Doc. 78)("Scheduling Order"), establishes.  See Motion at 1.  New Mexico notes that the parties have scheduled a settlement meeting for March 25, 2019.  See Motion at 1.  New Mexico requests the extensions "to avoid discovery costs in the event the parties reach a settlement."  Motion at 1.  New Mexico proposes changing the case deadlines as follows:

| Event | Initial Deadline | Proposed Deadline |
|---|---|---|
| Discovery Motions | January 4, 2019 | May 24, 2019 |
| Pretrial Motions Other than Discovery (including Daubert) | January 18, 2019 | June 7, 2019 |
| Motion Hearing | February 1, 2019 | June 21, 2019 |
| Pretrial Order from New Mexico to the Defendants | March 13, 2019 | July 5, 2019 |
| Pretrial Order from the Defendants to the Court | April 3, 2019 | July 17, 2019 |

See Motion at 1-2.

2.    **The Parwatikar Defendants' Response.**

Parwatikar, Balanced Legal, and Pinnacle Law (collectively, the "Parwatikar Defendants") respond.  See Defendant Parwatikar's Response in Opposition to Plaintiff's Motion for Extension of Deadlines, filed December 10, 2018 (Doc. 96)("Parwatikar Defendants Response").  The Parwatikar Defendants contend that the New Mexico "does not address the 'good cause' standard, nor does it describe what 'diligent efforts' Plaintiff has undertaken to meet the current deadlines." Parwatikar Defendants Response at 3 (citing Torres v. Coon, No. CIV 12-0474 JP/SMV, 2013 WL 12330072, at *3 (D.N.M. June 26, 2013)(Parker, J.); Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 603 (D.N.M. 2009)(Browning, J.)).  The Parwatikar Defendants argue that New

Mexico does not describe "how adding 20 weeks to discovery will 'avoid costs,' or what cost-minimization measures Plaintiff may be taking that make the current deadlines unfeasible." Parwatikar Defendants Response at 3. The Parwatikar Defendants view "diligence through the 'lens of the excusable-neglect factors, as this Court has done before.'" Parwatikar Defendants Response at 3 (quoting Trujillo v. Rio Arriba Cty., No. CIV 15-0901 JB/WPL, 2016 WL 4035340, at *4 (D.N.M. June 15, 2016)(Browning, J.)). The Parwatikar Defendants argue that New Mexico could not have anticipated much discovery to occur between December 3, 2018 -- when it filed the Motion -- and January 4, 2019 -- when discovery would have ended under the original deadlines, and complain that New Mexico is not exercising "diligence in discovery" if it avoids discovery because of the chance that the parties will settle the matter. Parwatikar Defendants Response at 4. See id. at 3-4. The Parwatikar Defendants contend that extending the deadlines unfairly benefits New Mexico, "which appears to be the only party that wants the deadlines extended." Parwatikar Defendants Response at 4. Further, the Parwatikar Defendants assert that they have understood that the parties would conclude discovery before mediation, and that they must now factor additional travel and expenses into their settlement costs. See Parwatikar Defendants Response at 4. The Parwatikar Defendants agree to move the dispositive-motion deadline until after the settlement meeting, but do not want to extend the dispositive-motion deadline "by almost five months," as New Mexico proposes. Parwatikar Defendants Response at 4. See id. at 4. The Parwatikar Defendants summarize that the "Plaintiff's motion neither describes good cause for modifying the current scheduling order nor shows 'a conscientious attempt to comply' with it." Parwatikar Defendants Response at 5 (quoting Trujillo v. Rio Arriba Cty., 2016 WL 4035340, at *5).

3.    **The Pratt Response.**

Pratt responds with the Motion to Amend/Correct Complaint, Extend Deadlines, filed January 4, 2019 (Doc. 100)("Pratt Response").  Pratt complains that New Mexico has produced no witnesses or evidence against him, although, according to Pratt, New Mexico filed this suit in February, 2017.  See Pratt Response at 1-3.  Pratt does not otherwise respond to New Mexico's requests for extensions.  See Pratt Response at 1-4.

4.    **The Reply.**

In reply to the Parwatikar Defendants, New Mexico explains that it has made no other requests for extension, that it seeks to reduce discovery costs, and that it "has proceeded in this manner with due diligence, filed its motion timely, and is not requesting the extension due to missed deadlines or other negligence."  Plaintiff's Reply to Responses to Motion for Extension of Deadlines at 1-2, filed December 27, 2018 (Doc. 99)("Reply")(citing Trujillo v. Rio Arriba Ct., 2016 WL 4035340).  New Mexico indicates that it has acted with due diligence.  See Reply at 2.  New Mexico describes that it has sought to continue the case, that it "moved for" a rule 16 scheduling conference on November 29, 2017, and that it has participated in discovery since the rule 26(f) of the Federal Rules of Civil Procedure meet-and-confer on February 12, 2018.  Reply at 2.  New Mexico continues that it prepared for a June 5, 2018, settlement meeting, and that it has sought discovery in good faith.  See Reply at 2.  New Mexico further reiterates that it asked in good faith to extend the dispositive-motions deadline, because, according to New Mexico, the extension is necessary if the Court extends the discovery deadline.  See Reply at 2.

New Mexico then addresses Pratt's arguments.  See Reply at 3.  New Mexico indicates that Pratt emailed the Pratt Response rather than filed it on CM/ECF, that the Pratt Response is untimely, and that, contrary to Pratt's arguments, New Mexico has fulfilled its requests for

production and disclosed "3,751 pages or documents" in response to his initial disclosures. Reply at 3. According to New Mexico, it has produced additional documents in response to the Defendants' requests for production and has given the Defendants thousands of additional documents through subpoenas. See Reply at 3.

**5.** **The Hearing.**

New Mexico indicated at the hearing that the parties had "scheduled a settlement facilitation towards the end of March." Draft Transcript of Hearing at 6:19-20 (Anaya-Allen)(taken January 9, 2019)("Tr.").[1] New Mexico asked to extend the discovery deadline "[simply] . . . to minimize the amount of work that would need to be done prior to the settlement facilitation." Tr. at 6:25-7:2 (Anaya-Allen). New Mexico explained that it will conserve documentation and resources if it can avoid further discovery before the settlement meeting. See Tr. at 8:15-9:3 (Anaya-Allen). New Mexico also indicated that it hopes that, by the settlement meeting, the Court will have entered the motion for sanctions against Davis. See Tr. at 7:5-8 (Anaya-Allen).

The Court then asked whether the parties would agree to declare discovery closed and to extend the other case deadlines. See Tr. at 10:15-25 (Court). New Mexico agreed to the Court's proposal. See Tr. at 11:1-10 (Anaya-Allen). The Court turned to the Parwatikar Defendants to ask their "biggest concern," Tr. at 12:6 (Court), about extending the deadlines and if they would agree to the Court's suggestion, see Tr. at 12:5-10 (Court). The Parwatikar Defendants indicated that they "would be amenable to" extending the dispositive-motion and other deadlines, but that

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

they objected to some of New Mexico's proposed deadlines, which extend some deadlines by "20 weeks." Tr. at 12:17 (Harrison). <u>See</u> <u>id.</u> at 12:11-23 (Harrison). The Court then asked Pratt if the arrangement satisfied him. <u>See</u> Tr. at 13:1-8 (Court). Pratt responded that the suggestion "mostly works." Tr. at 13:10 (Pratt). Pratt proceeded to opine that he is not personally liable, and was "not clear as to why I should go to trial or participate in a settlement meeting when there is not one smoking gun that I've done anything wrong." Tr. at 13:13-16 (Pratt). <u>See</u> <u>id.</u> at 13:9-16 (Pratt). The Court indicated that resolving such concerns "would be the purpose . . . of trying to set some deadlines or new deadlines for the dispositive motion[s]." Tr. at 13:17-19 (Court).

The Court turned to the case schedule and asked for dates for the discovery-motions deadline. <u>See</u> Tr. at 15:10-13 (Court). The Parwatikar Defendants suggested that the Court and parties move the deadline fifteen days after January 18, 2019, and the Parwatikar Defendants opined that they are willing to submit the discovery motions before the settlement meeting. <u>See</u> Tr. at 15:14-20 (Harrison). New Mexico agreed to set the discovery-motions deadline before the settlement meeting. <u>See</u> Tr. at 16:3-6 (Anaya-Allen). The Court and the parties agreed to February 4, 2019, as the deadline for the discovery motions. <u>See</u> Tr. at 16:11-20 (Court, Pratt, Anaya-Allen). The Court directed the parties to the deadline for the pretrial motions other than the discovery motions. <u>See</u> Tr. at 16:21-25 (Court). The Parwatikar Defendants proposed moving that deadline "thirty days after the settlement conference." Tr. at 17:11-12 (Anaya-Allen). New Mexico and Pratt agreed to move the deadline to April 25, 2019. <u>See</u> Tr. at 17:14-19 (Court, Anaya-Allen, Pratt). The parties agreed to schedule the motions hearing at 8:30 a.m. on May 28, 2019. <u>See</u> Tr. at 17:20-18:6 (Court, Anaya-Allen, Harrison, Pratt). The Court proposed June 17, 2019 at 8:30 a.m. for the pretrial conference. <u>See</u> Tr. at 18:24-19:2 (Court). New Mexico and the Parwatikar Defendants agreed to that date and time. <u>See</u> Tr. at 19:3-9

(Anaya-Allen, Court, Harrison). Pratt asked to move, however, the pretrial conference one or two days, and the Court and the parties resolved to have the pretrial conference on June 18, 2019, at 8:30 a.m. See Tr. at 19:19-20:1 (Clerk, Court, Pratt, Anaya-Allen, Harrison). The Court recommended that New Mexico send the Defendants the pretrial order on June 7, 2019, and that the Defendants transmit the pretrial order to the Court on June 14, 2019, and the parties agreed to the suggestion. See Tr. at 20:2-24 (Court, Anaya-Allen, Harrison, Pratt). The Court then proposed that the Court and the parties schedule the trial date for a trailing docket on July 8, 2019, and the parties agreed to the idea. See Tr. at 22:25-23:17 (Court, Pratt, Anaya-Allen, Harrison).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

Rule 16 of the Federal Rules of Civil Procedure provides that courts will, with some exceptions, issue scheduling orders in each case:

**(b) Scheduling.**

> **(1)** *Scheduling Order.* Except in categories of actions exempted by local rule, the district judge -- or a magistrate judge when authorized by local rule -- must issue a scheduling order:
>
> > **(A)** after receiving the parties' report under Rule 26(f);[2] or
> >
> > **(B)** after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.
>
> **(2)** *Time to Issue.* The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.
>
> **(3)** *Contents of the Order.*

---

[2]Rule 26(f) requires parties to provide the court with a discovery plan. See Fed. R. Civ. P. 26(f).

**(A)** *Required Contents.*  The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

**(B)** *Permitted Contents.*  The scheduling order may:

> **(i)** modify the timing of disclosures under Rules 26(a)[3] and 26(e)(1);[4]
>
> **(ii)** modify the extent of discovery;
>
> **(iii)** provide for disclosure, discovery, or preservation of electronically stored information;
>
> **(iv)** include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502;[5]
>
> **(v)** direct that before moving for an order relating to discovery, the movant must request a conference with the court;
>
> **(vi)** set dates for pretrial conferences and for trial; and
>
> **(vii)** include other appropriate matters.

Fed. R. Civ. P. 16(b).

"The District Court has wide discretion in its regulation of pretrial matters."  <u>Si-Flo, Inc. v. SFHC, Inc.</u>, 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  <u>Accord</u>

---

[3]Rule 26(a) enumerates disclosures required under the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 26(a).

[4]Rule 26(e)(1) requires parties to supplement or correct information provided in their required disclosures.  <u>See</u> Fed. R. Civ. P. 26(e)(1).

[5]Rule 502 of the Federal Rules of Evidence allows parties to reach agreements about the effects of accidentally disclosing attorney-client-privileged or work-product information.  <u>See</u> Fed. R. Evid. 502.

<u>Street v. Curry Bd. of Cty. Comm'rs</u>, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6

(D.N.M. Jan. 30, 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot
> reasonably be met despite the diligence of the party seeking the extension. Since
> the scheduling order is entered early in the litigation, this standard seems more
> appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a
> fear that extensions will not be granted may encourage counsel to request the
> longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note to 1983 amendment.

The United States Court of Appeals for the Tenth Circuit has held that the concepts of good

cause, excusable neglect, and diligence are related. "The Tenth Circuit . . . has recognized the

interrelation between 'excusable neglect' and 'good cause.'" <u>Pulsecard, Inc. v. Discover Card</u>

<u>Servs. Inc.</u>, 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing <u>Broitman v. Kirkland (In re</u>

<u>Kirkland)</u>, 86 F.3d 172, 175 (10th Cir. 1996)("<u>In re Kirkland</u>")). "Properly construed, 'good

cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." <u>Street v.</u>

<u>Curry Bd. of Cty. Comm'rs</u>, 2008 WL 2397671, at *6 (quoting Fed. R. Civ. P. 16(b)). <u>See</u>

<u>Advanced Optics Elecs., Inc. v. Robins</u>, 769 F. Supp. 2d 1285, 1313 (D.N.M.

2010)(Browning, J.)(noting that the "rule 16(b) good-cause inquiry focuses on the diligence of the

party seeking [to] amend the scheduling order."). In <u>In re Kirkland</u>, the Tenth Circuit dealt with

the definition of "good cause" in the context of a predecessor to modern rule 4(m) of the Federal

Rules of Civil Procedure,[6] and noted:

---

[6]Rule 4(m) provides:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require <u>at least as much</u> as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (emphasis in original)(internal quotation marks omitted)(quoting <u>Putnam v. Morris</u>, 833 F.2d 903, 905 (10th Cir. 1987)).  The Tenth Circuit explained that <u>Putnam v. Morris</u> "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  <u>In re Kirkland</u>, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request.  In <u>Advanced Optics Electronics, Inc. v. Robins</u>, the Court concluded that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not, therefore, show good cause to modify the scheduling order.  769 F. Supp. 2d 1285, 1313 n.8 (D.N.M. 2010)(Browning, J.).  In <u>Street v. Curry Board of County Commissioners</u>, however, the Court concluded that the plaintiff had "shown good cause for a delay

---

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.  This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).  The Tenth Circuit in <u>In re Kirkland</u> interpreted rule 4(j), which was substantially identical.  <u>See</u> 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if service has not been made upon the defendant within 120 days after filing and the party responsible for service cannot show good cause why it was not made.").

in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11. In Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5353493 (D.N.M. Oct. 7, 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery, and refused to grant the plaintiffs' request to do so, where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony. See 2012 WL 5353493, at *14. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

In Scull v. Management & Training Corp., No. CIV 11-0207 JB/RHS, 2012 WL 1596962 (D.N.M. May 2, 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant. 2012 WL 1596962, at *9. The plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case. 2012 WL 1596962, at *4, *8-9. The Court concluded that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case. See 2012 WL 1596962, at *8. The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline. 2012 WL 1596962, at *8. "Despite his knowledge that PNA [(a defendant)] had yet to enter the

case, Scull [(the plaintiff)] chose to allow the deadline to pass without naming expert witnesses against MTC [(a defendant)]." 2012 WL 1596962, at *8. Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC." 2012 WL 1596962, at *9. The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case. 2012 WL 1596962, at *9.

In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court concluded that a lawyer had shown excusable neglect when he missed a scheduling deadline because, soon after his son's wedding, his father-in-law developed a tumor in his chest, and the lawyer arranged his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed. See 275 F.R.D. 549-50. The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but concluded that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his inadvertence. 275 F.R.D. 549-50. In West v. New Mexico Taxation and Revenue Department, No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty that the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and in part because the briefing would help the Court. 2010 WL 3834341, at *4-5. On the other hand, in Liles v. Washington Tru Solutions, LLC, No. CIV 06-

0854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale that the plaintiff provided was that its counsel's "family and medical emergencies" precluded the plaintiff from timely responding. 2007 WL 2298440, at *2. Cf. Gallegos v. Wood, No. CIV 13-1055 JB/KBM, 2017 WL 3701866, at *38 (D.N.M. Aug. 25, 2017)(Browning, J.)(determining that the plaintiffs established "good cause" when the plaintiffs relied on the United States' initial assurances that it would not object to an extension for designating expert witnesses); Trujillo v. Rio Arriba Cty., 2016 WL 4035340, at *10 (concluding that "good cause" existed for extending discovery when a plaintiff missed a discovery deadline, because the plaintiff relied on the defendants' assertions while working with the defendants' schedule to organize depositions); Upky v. Lindsey, No. CIV 13-0553 JB/GBW, 2015 WL 3543058, at *6-7 (D.N.M. May 14, 2015)(Browning, J.)(granting a scheduling modification to obtain a firm trial date, and stating that the Court would not modify a pretrial schedule because a witness' deposition could only be done by videotape); Peshlakai v. Ruiz, No. CIV 13-0752 JB/ACT, 2013 WL 6503604, at *14-15 (D.N.M. Nov. 20, 2013)(Browning, J.)(allowing a scheduling modification where the plaintiffs shaped "their initial expert strategy around apparent misinformation" and later discovered that they required an expert, and rejecting the argument that postponing trial and requiring the defendants to revise their summary judgment briefing would incurably prejudice the defendants); United States v. Hopkins, No. CIV 11-0416 JB/CG, 2012 WL 6846400, at *6 (D.N.M. Dec. 22, 2012)(Browning, J.)(concluding that, where a plaintiff proceeded "pro se, from federal prison," and sought information from the United States, which possessed the information sought, the plaintiff showed good cause).

## LAW REGARDING STAYS

A court has broad discretion in managing its docket, which includes decisions regarding issuing stays for all or part of a proceeding. See Clinton v. Jones, 520 U.S. 681, 706 (1997)("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936))).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

Landis v. N. Am. Co., 299 U.S. at 254-55. Recognizing that district courts must exercise moderation in issuing stays, the Supreme Court of the United States has noted that there are no strict rules for the district court to apply, because "[s]uch a formula . . . is too mechanical and narrow." Landis v. N. Am. Co., 299 U.S. at 255.

The party seeking a stay generally faces a difficult burden. See Clinton v. Jones, 520 U.S. at 708 ("The proponent of a stay bears the burden of establishing its need."); S2 Automation LLC v. Micron Tech., Inc., No. CIV 11-0884 JB/WDS, 2012 WL 3150412, at *2 (D.N.M. July 23, 2012)(Browning, J.)(citing Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d 1477, 1484 (10th Cir. 1983)). "In particular, where a movant seeks relief that would delay court proceedings by other litigants he must make a strong showing of necessity because the relief would severely affect the rights of others." Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484. "The underlying principle clearly is that 'the right to proceed in court should not be denied except under the most extreme circumstances.'" Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc., 713 F.2d at 1484 (alterations omitted)(quoting Klein v. Adams & Peck, 436 F.2d 337, 339 (2d Cir. 1971)).

The Tenth Circuit has acknowledged a district court's discretion in issuing discovery stays.

In Cole v. Ruidoso Municipal Schools, 43 F.3d 1373 (10th Cir. 1994), the defendants argued "that

they had an absolute right to a stay of discovery" after they filed a motion for qualified immunity

and appealed to the Tenth Circuit because the district court imposed conditions on the stay. 43

F.3d at 1386. The Tenth Circuit rebuffed the strict rules that the defendants suggested:

> As a general rule, discovery rulings are within the broad discretion of the
> trial court. The trial court's decision on discovery matters will not be disturbed
> unless the appellate court has a definite and firm conviction that the lower court
> made a clear error of judgment or exceeded the bounds of permissible choice in the
> circumstances.

Cole v. Ruidoso Mun. Sch., 43 F.3d at 1386 (citations and internal quotation marks omitted).

Whether to issue a discovery stay depends greatly on each case's facts and progress. The

Court has noted that the "[d]efendants in civil cases face an uphill battle in putting the brakes on

discovery." Fabara v. GoFit, LLC, No. CIV 14-1146 JB/KK, 2015 WL 3544296, at *11 (D.N.M.

May 13, 2015)(Browning, J.). Defendants particularly struggle "where there are a relatively small

number of factual issues, the plaintiff's discovery requests are not particularly burdensome, and

the defendant has not shown how it will suffer prejudice from them." Fabara v. GoFit, LLC, 2015

WL 3544296, at *11. In S2 Automation LLC v. Micron Technology, the Court granted in part and

denied in part a motion to stay discovery, to extend pretrial deadlines, to vacate the trial setting,

and to issue a protective order. See 2012 WL 3150412, at *1. The Court denied the motion to the

extent that it requested a discovery stay, because, "[u]ltimately, a stay is unnecessary." 2012 WL

3150412, at *3. The parties had made "significant progress on the disputed matters," and the Court

had "issued rulings on many of the motions that Micron Technology contended needed to be

resolved before the case proceeded." 2012 WL 3150412, at *3. Instead of granting the discovery

stay, the Court extended deadlines that it had previously set in the case based on the case's

increasing complexity.  See 2012 WL 3150412, at *3.  In <u>Walker v. THI of New Mexico at Hobbs</u>

<u>Center</u>, No. CIV 09-0060 JB/KBM, 2011 WL 2728326 (D.N.M. June 28, 2011)(Browning, J.), the

Court evaluated whether to stay deposition discovery until thirty days after it ruled on the motions

to dismiss two of the defendants, which would determine whether those defendants would remain

in the suit and participate in discovery.  See 2011 WL 2728326, at *1.  The plaintiffs argued that

the Court had already extended discovery deadlines and that issuing a stay would require

rescheduling deadlines.  See 2011 WL 2728326, at *1.  The Court denied the motion to stay,

because it did "not see a benefit to staying discovery."  2011 WL 2728326, at *2.  The Court noted

that counsel for the two defendants who were subject to the motions to dismiss had already

indicated that they would not participate in deposition discovery.  See 2011 WL 2728326, at *2.

The Court stated: "There is thus no benefit to staying deposition discovery, and staying deposition

discovery would further delay the case."  2011 WL 2728326, at *2.  See <u>Benavidez v. Sandia Nat'l</u>

<u>Labs</u>, No. CIV 15-0922 JB/LF, 2016 WL 6404798 (D.N.M. Sept. 27, 2016)(Browning, J.)(denying

stay where "[t]here is no reason to put the Defendants to the trouble and expense of having to wait

and file another motion -- largely regarding the same issues that are already before the Court in

the pending Motion to Dismiss -- while the Plaintiffs get all of their ducks in a row").

## <u>ANALYSIS</u>

The Court deems rule 16's requirements satisfied and will modify the Scheduling Order.

Accordingly, the Court determines that discovery was closed as of January 9, 2019, and that the

case schedule is amended pursuant to the parties' agreement.  See Tr. at 15:10-23:17 (Court,

Pratt, Anaya-Allen, Harrison).  The Court will modify the Scheduling Order as follows:

| Event | New Deadline |
|---|---|
| Discovery Motions | February 4, 2019 |
| Pretrial Motions Other than Discovery (including Daubert) | April 25, 2019 |
| Motion Hearing | May 28, 2019 at 8:30 a.m. |
| Pretrial Order from New Mexico to the Defendants | June 10, 2019 |
| Pretrial Order from the Defendants to the Court | June 17, 2019 |
| Pretrial Conference | June 18, 2019 at 8:30 a.m. |
| Trial | July 8, 2019 -- trailing docket |

The Court concludes that, where, as here, a party seeks in good faith to modify a scheduling order, because the parties anticipate settlement at a scheduled settlement conference and all parties agree to the modification, good cause exists. New Mexico timely sought to modify the Scheduling Order -- filing the Motion in December, 2018 -- more than three months before the March, 2019, settlement conference, see Motion at 3, and has diligently prosecuted the case, including discovery, see Reply at 1-2. See also Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *11 (permitting modification where a party diligently pursued discovery and timely sought modification). Contra Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d at 1313 n.8 (denying a request for modification where a party did not pursue discovery). New Mexico asks that the Court modify the Scheduling Order to save costs for and labor on pretrial motions pending determination whether the parties will settle. See Motion at 1-2; Reply at 2; Tr. at 6:25-7:2 (Anaya-Allen); id. at 8:15-9:3 (Anaya-Allen). No evidence suggests this reason as pretextual and serves New Mexico's own purposes. The Parwatikar Defendants and Pratt conceded their arguments against New Mexico's Motion, and agreed that they would declare discovery closed and that they would extend the remaining case deadlines.[7] See Tr. at 10:15-25 (Court); id. at

---

[7]As the Court has entered default judgment against Davis, see Memorandum Opinion and Order at 10, the Court does not consider Davis' position on the extensions.

11:1-10 (Anaya-Allen); id. at 12:11-23 (Harrison); id. at 13:10 (Pratt). Accordingly, the Court modifies the scheduling order pursuant to the parties' agreement. See Tr. at 15:10-23:17 (Court, Pratt, Anaya-Allen, Harrison).

Pratt may resolve his concerns about the case's merits through dispositive motions. If Pratt does not believe that New Mexico has evidence against him, see Tr. at 13:9-16 (Pratt), he should move for summary judgment, cf. Plustwik v. Voss of Nor. ASA, No. CIV 11-0757, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam, J.)(stating that a moving party can succeed on a motion for summary judgment "by putting evidence into the record that affirmatively disproves an element of the nonmoving party's case, or by directing the court's attention to the fact that the non-moving party lacks evidence on an element of its claim").

**IT IS ORDERED** that the Plaintiff's Motion for Extension of Deadlines, filed December 3, 2018 (Doc. 95), is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hector H. Balderas
  Attorney General of the State of New Mexico
Angelica Anaya-Allen
  Assistant Attorney General of the State of New Mexico
Santa Fe, New Mexico

    *Attorneys for the Plaintiff*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Pinnacle Law Center, PC , Balanced Legal Group, and Deepak S. Parwatikar*

Erikson M. Davis
Newbury Park, California

*Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

*Defendant pro se*