# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

        Plaintiff,

vs.                                                  No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Plaintiff's Motion to Determine

Sufficiency of Defendant Pratt's Responses to Plaintiff's Requests for Admission, filed January

23, 2019 (Doc. 107)("Motion"); and (ii) Defendant Chad T. Pratt's Opposition to motion to

determine sufficiency of requests for admission by state of new mexico, filed March 25, 2019

(Doc. 124)("Second Response").[1]  The Court held a hearing on April 19, 2019.  See Clerk's Minutes at 1, filed April 19, 2019 (Doc. 114).  The primary issues are: (i) whether Mr. Pratt responds properly to Plaintiff State of New Mexico's Requests for Admission Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15 when he does not admit, specifically deny, or make a reasonable inquiry into the Requests for Admission[2] as rule 36 of the Federal Rules of Civil Procedure requires; (ii) whether the Court should order Mr. Pratt to pay the reasonable attorney's fees and costs New Mexico incurred in pursuing the Motion; and (iii) whether the Court should sanction New Mexico for not serving Mr. Pratt a March 21, 2019, motion to compel.[3]  The Court deems Mr. Pratt's responses improper and will grant the Motion.  The Court orders that: (i) Mr. Pratt will re-respond to the Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15; (ii) Mr. Pratt will review the Court's discussions of requests for admission in S.E.C. v. Goldstone, 300 F.R.D. 505 (D.N.M. 2014)(Browning, J.), Brown v. Montoya, No. CIV 10-0081 JB/ACT, 2013 WL 1010390 (D.N.M. March 8, 2013)(Browning, J.); Stark-Romero v. National Railroad Passenger (AMTRAK), 275 F.R.D. 551 (D.N.M. 2011)(Browning, J.); and Radian Asset Assurance, Inc. v. Colleges of Christian Brothers of New Mexico, No. CIV 09-0885 JB/DJS, 2010 WL 5173571 (D.N.M. Nov. 11, 2010)(Browning, J.), and respond in accordance with the Court's previous rulings; and (iii) Mr. Pratt will pay New Mexico the reasonable attorney's fees and costs it incurred in pursuing

---

[1]The Court keeps the title's original capitalization.  See Second Response at 1.

[2]Neither Plaintiff State of New Mexico nor Defendant Chad T. Pratt have filed either the Requests for Admission or Mr. Pratt's responses to the Requests for Admission with the Court.  The Court draws its information about the language of the Requests for Admission and of Mr. Pratt's responses to the Requests for Admission from the Motion.  See Motion ¶¶ 5-45, at 3-11.

[3]As neither New Mexico, nor any other party, filed a motion to compel on or around March 21, 2019, no document number or citation exists for this alleged motion.

the Motion. The Court will not grant Mr. Pratt's request for sanctions against New Mexico, because New Mexico did not file a March 21, 2019, motion to compel.

## **FACTUAL BACKGROUND**

The Court recounted the facts in its Memorandum Opinion and Order, 2019 WL 1283002, filed March 19, 2019 (Doc. 116)("MOO"). The Court incorporates those facts here:

> The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act (MFCFPA), Mortgage Assistance Relief Services (MARS) Rule, the New Mexico Unfair Practices Act (UPA) and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

> This action arises from the activities of [Mr. Pratt], and Defendants Real Estate Law Center, P.C.; Erikson M. Davis; Deepak S. Parwatikar; . . . Balanced Legal Group; and Pinnacle Law Center, P.C. See Complaint ¶¶ 16-76, at 5-17. Davis, Pratt, and Parwatikar are residents of and attorneys licensed in [the State of] California. See Complaint ¶¶ 10-12, at 4-5. Neither Davis nor Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11, at 4-5. Real Estate Law "is a Professional Corporation registered in California." Complaint ¶ 9, at 4. Pratt owned and managed Real Estate Law from September, 2011 to September, 2013. See Complaint ¶ 37, at 8. Davis "assumed ownership of" Real Estate Law in 2013. Complaint ¶ 20, at 6. Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Parwatikar owns, Complaint ¶ 38, at 8, and Real Estate Law provides Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6. Balanced Legal "is a California law firm owned and/or managed by Parwatikar." Complaint ¶ 14, at 5. Balanced Legal uses the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law. See Complaint ¶ 34, at 8.

> The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees." Complaint ¶ 23, at 6. Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico." Complaint ¶ 16, at 5. "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications." Complaint ¶ 17, at 5. "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms." Complaint ¶ 18, at 5. Balanced

Legal provides legal services via a website "accessible to New Mexico consumers." Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that "**[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint). Real Estate Law has had "at least twenty-three . . . New Mexico consumers since 2013." Complaint ¶ 58, at 13.

MOO at 2-4, 2019 WL 1283002, at *1-2.

## PROCEDURAL BACKGROUND

The Court also recited the early procedural history in the MOO. The Court incorporates

that recitation below:

> New Mexico alleges that: (i) Real Estate Law violated the Mortgage Assistance Relief Services Rule ("MARS"), 12 C.F.R. 1015.1 "Regulation O," by soliciting and accepting advance fees from New Mexico residents before "a mortgage modification agreement [was] finalized," Complaint ¶ 84, at 19; (ii) the Defendants violated the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, N.M. Stat. Ann. §§ 47-15-1 to -8, by offering services to save "consumers' homes from foreclosure," requiring payment for services before completing the services, and not providing required "warnings, notices, and disclosures," Complaint ¶ 87, at 20; and (iii) the Defendants violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 [("NMUPA")], by requiring "a large up-front fee . . . plus monthly maintenance fees," providing "no value to the consumers," and leading consumers to believe that the Defendants will help defend "a foreclosure lawsuit," Complaint ¶ 105, at 22.

MOO at 4, 2019 WL 1283002, at *2. On June 11, 2018, the Court entered a default judgment

against Real Estate Law. See Default Judgment Against Real Estate Law Center(Doc. 75). On

November 5, 2018, the Honorable Laura Fashing, United States Magistrate Judge for the United

States District Court for the District of New Mexico, recommended entering a default judgment

against Mr. Davis on issues of liability, reserving for litigation the issues of relief, <u>see</u> Proposed Findings and Recommended Disposition at 4 (Doc. 91), and, on January 18, 2019, the Court adopted Magistrate Judge Fashing's recommendation, <u>see</u> Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition at 2, 9 (Doc. 106).

In the Motion, New Mexico argues that Mr. Pratt responds improperly to its Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15. <u>See</u> Motion ¶ 2, at 2. New Mexico represents that it made, through a letter sent on January 7, 2019, a good faith effort to resolve the dispute with Mr. Pratt. <u>See</u> Motion ¶ 3, at 2. Mr. Pratt responded to New Mexico's efforts with additional objections that he outlines in the Letter from Chad Pratt to Hector Balderas and Angelica Allen (dated January 18, 2019), filed January 23, 2019 (Doc. 107)("Good Faith Response"). <u>See</u> Motion ¶ 4, at 2. <u>See</u> Good Faith Response at 1-3. New Mexico received the Good Faith Response on January 23, 2019. <u>See</u> Motion ¶ 4, at 2.

1. **The Requests for Admission, Mr. Pratt's Responses, and Mr. Pratt's Objections.**

In Request No. 1, New Mexico writes: "Admit that You were the subject of disciplinary action by the State Bar of California, Case Nos. 12-O-16642-RAH, 13-O-12312-RAH, 13-O-12367, and 13-O-12757." Motion ¶ 5, at 3. Mr. Pratt responds: "OBJECTION irrelevant, harassing, vexing and annoying all such alleged State bar action concerned California cases, with California properties, and California plaintiffs and shall NOT be admissible for any purpose(s) at trial for alleged/purported new mexico [sic] violations." Motion ¶ 6, at 3 (sic added in Motion).[4]

---

[4]The Court does not have access to Mr. Pratt's responses to the Requests for Admission and relies on the Motion for the responses' language.

In the Good Faith Response, Mr. Pratt writes: "[S]tate bar action is irrelevant, objection presented, no scheme by state bar, ONLY three liars who state bar believed on individual basis period. If was [sic] a scheme RELC would have been SHUT DOWN. . . ." Motion ¶ 7, at 3 (ellipses in Good Faith Response)(quoting Good Faith Response ¶ 1, at 1;); Good Faith Response ¶ 1, at 1 (ellipses in Good Faith Response).

In Request No. 4, New Mexico asks: "Admit that the Attorney-Client Fee Agreement used by Real Estate Law Center, copies attached as Exhibits A-001 to A-024, provides that [Real Estate Law Center] will receive two tenths of the retainer fee and the remaining percentage is paid to Defendant Pinnacle Law Center." Motion ¶ 9, at 4. Mr. Pratt responds: "OBJECTION calls for legal conclusion and for expert testimony on 'payment' of fees, if any such fees were paid." Motion ¶ 10, at 4. Mr. Pratt writes in the Good Faith Response: "I do NOT have to do the MATH for you. I presented objection(s) period. This is irrelevant to the issues presented. No new mexico [sic] code violations shown. State bar did NOT convict or care of such issue(s)." Motion ¶ 11, at 4 (quoting Good Faith Response ¶ 4, at 1;); Good Faith Response ¶ 4, at 1.

In Request No. 5, New Mexico asks: "Admit that the Attorney Client Fee Agreements attached as Exhibits A-1 to A-024 contain a signature line for Real Estate Law Center, P.C. for You." Motion ¶ 14, at 5. Mr. Pratt responds: "Objection unintelligible as to 'signature line for YOU' [sic]. Unknown. OBJECTION unclear and un-intelligible." Motion ¶ 15, at 5 (sic added in Motion). Mr. Pratt writes in the Good Faith Response: "Signature line, so what, I objected period. So what. This is irrelevant to the issues presented. No new mexico [sic] code violations shown. State bar did NOT convict or care of such issue(s)." Motion ¶ 16, at 5 (quoting Good Faith Response ¶ 5, at 2;); Good Faith Response ¶ 5, at 2.

In Request No. 7, New Mexico writes: "Admit that the Attorney Client Fee Agreement (Exhibits A and B) provide that the retainer fee is a one time nonrefundable fee 'fully earned upon receipt.'" Motion ¶ 18, at 6. Mr. Pratt responses: "OBJECTION calls for legal conclusion, and for expert testimony on 'payment' of fees, if any such fees were paid." Motion ¶ 19, at 6. In the Good Faith Response, Mr. Pratt argues: "Not relevant to the issues, objection presented. This is irrelevant to the issues presented. No new mexico [sic] code violations shown. State bar did NOT convict or care of such issue(s)." Motion ¶ 20, at 7 (quoting Good Faith Response ¶ 7, at 2); Good Faith Response ¶ 7, at 2.

In Request No. 8, New Mexico asks Mr. Pratt: "Admit that consumers were required to pay fees to RELC by direct bank account withdrawal, credit card or check as set forth in Exhibit C." Motion ¶ 22, at 7. Mr. Pratt responds: "OBJECTION irrelevant as to 'consumers' who were NOT new mexico [sic] residents or clients. DENY." Motion ¶ 23, at 7 (sic added in Motion). In the Good Faith Response, Mr. Pratt argues: "Not relevant to the issues, objection presented. This is irrelevant to the issues presented. No new mexico [sic] code violations shown. State bar did NOT convict or care of such issue(s)." Motion ¶ 24, at 7 (quoting Good Faith Response¶ 8, at 2); Good Faith Response ¶ 8, at 2.

In Request No. 11, New Mexico states:

> Admit that You [sic] filed the following lawsuits in which one or more New Mexico residents is included as a plaintiff: *Acevedo et al v. JPMorgan Chase Bank NA et al*, BC512588 (Sup. Ct of CA for Los Angeles County) and 2:13-cv-03955-R-JC (Ctl. D. Calif.) (New Mexico consumer Larry Madrid); *Aguayo et al v. Bank of America NA et al*, BC522158 (Sup. Ct of CA for Los Angeles County)(New Mexico consumer Robert Alexander); *Attygala et al v. Wells Fargo Bank NA et al*, BC490700 (Sup. Ct. of CA for Los Angeles County) and 2:12-cv-10075-MMM-PLA (Ctl. D. Calif.)(New Mexico consumer Mike Maness); *Holmes et al v. Bank of America NA et al*, BC531535 (New Mexico consumers Creighton Maness and Roberta Marcelli); *Simons et al v. Bank of America NA*, BC531836 (Sup. Ct. of CA

for Los Angeles County)(New Mexico consumer Lloyd Trujillo); *Penn et al v. Bank of America NA et al*, BC531639 (New Mexico consumer Rachel Silva).

Motion ¶ 26, at 8. Mr. Pratt responds: "DENY. DENY as I do NOT recall filing such lawsuits over 6 years ago. . . . mere filing of a lawsuit is NOT improper." Motion ¶ 27, at 8. Mr. Pratt writes in the Good Faith Response: "DENY, I do NOT recall. . . . Alleged lawsuits were EIGHT years ago, and I have NO files books records, so I do NOT recall, thus object NO. That is proper." Motion ¶ 28, at 8 (ellipses in Good Faith Response)(quoting Good Faith Response ¶ 11, at 2); Good Faith Response ¶ 11, at 2 (ellipses in Good Faith Response).

In Request No. 12, New Mexico asks: "Admit that you voluntarily dismissed the following lawsuit(s) in which one or more New Mexico residents is a Plaintiff: *Acevedo et al v. JPMorgan Chase Bank NA et al*, BC512588 (Sup. Ct of CA for Los Angeles County) and 2:13-cv-03955-R-JC (Ctl. D. Calif.)." Motion ¶ 30, at 9. Mr. Pratt responds: "DENY. DENY as I do NOT recall dismissing such lawsuits over 6 years ago. Mere dismissing of a lawsuit is NOT improper." Motion ¶ 31, at 9. Mr. Pratt writes in the Good Faith Response: "DENY, I do NOT recall. . . . Alleged lawsuits were EIGHT years ago, and I have NO files books records, so I do NOT recall, thus object NO. That is proper." Motion ¶ 32, at 9 (ellipses in Good Faith Response)(quoting Good Faith Response ¶ 12, at 2); Good Faith Response ¶ 12, at 2 (ellipses in Good Faith Response).

In Request No. 13, New Mexico requests: "Admit that the court dismissed the following lawsuit(s) in which one or more New Mexico residents is a Plaintiff: *Attygala et al v. Wells Fargo Bank NA et al*, 2:12-cv-10075-MMM-PLA (Ctl. D. Calif.)." Motion ¶ 34, at 9. Mr. Pratt responds: "DENY. DENY as I do NOT recall court dismissing lawsuits over 6 years ago." Motion ¶ 35, at 9. Mr. Pratt writes in the Good Faith Response: "DENY, I do NOT recall. . . . Alleged lawsuits

were EIGHT years ago, and I have NO files books records, so I do NOT recall, thus object NO. That is proper." Motion ¶ 36, at 10 (ellipses in Good Faith Response)(quoting Good Faith Response ¶ 13, at 2); Good Faith Response ¶ 13, at 2 (ellipses in Good Faith Response).

In Request No. 14, New Mexico writes: "Admit that every case filed by You (Chad Pratt and Real Estate Law Center) through Real Estate Law Center was voluntarily dismissed or dismissed by the court." Motion ¶ 38, at 10. Mr. Pratt Responded: "OBJECTION irrelevant and immaterial as to any non-new mexico [sic] cases. DENY. DENY as totally false." Motion ¶ 39, at 10 (sic added in Motion). In the Good Faith Response, Mr. Pratt writes: "I denied this as false (which it is), and presented objections. If it were true, which it clearly is NOT the state bar and all clients would ALL be suing and closing it all down. . . ." Motion ¶ 40, at 10 (ellipses in Good Faith Response)(quoting Good Faith Response¶ 14, at 2;); Good Faith Response ¶ 14, at 2 (ellipses in Good Faith Response).

In Request No. 15, New Mexico asks: "Admit that RELC did not maintain a client trust account for the deposit of the retainer agreements paid by the New Mexico consumers." Motion ¶ 42, at 11. Mr. Pratt responses: "OBJECTION totally irrelevant as no 'attorney client' trust account was required for hourly cases. DENY and not required for fee cases." Motion ¶ 43, at 11. Mr. Pratt writes in the Good Faith Response: "OBJECTION presented, and this is NOT the law in California which does NOT require retainers be placed in attorney client trust accounts. . . ." Motion ¶ 44, at 11 (ellipses in Good Faith Response)(quoting Good Faith Response ¶ 15, at 2); Good Faith Response ¶ 15, at 2.

### 2. **The Motion.**

In the Motion, New Mexico argues that Mr. Pratt's responds improperly to its Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15, and asks that the Court order Mr. Pratt to respond properly.

See Motion ¶ 2, at 2.  Regarding Request No. 1, New Mexico contends that, under rule 26 of the Federal Rules of Civil Procedure and rule 36, the request is relevant and proportional.  See Motion ¶ 8, at 3.  According to New Mexico, the evidence is relevant, because it shows that Mr. Pratt acted "in an unprofessional and unlawful manner in the handling of legal cases for his clients."  Motion ¶ 8, at 3.  Moreover, New Mexico indicates that, contrary to Mr. Pratt's objections, whether the information is admissible at trial is irrelevant to the relevancy question.  See Motion ¶ 8, at 3-4.

Regarding Request No. 4, New Mexico argues that its request does not ask for a legal conclusion or expert testimony.  See Motion ¶ 12, at 4.  New Mexico indicates that the request references the retainer agreements that Mr. Pratt signed for Real Estate Law and that New Mexico attached the agreements as exhibits to its Requests for Admission.  See Motion ¶ 12, at 4.  According to New Mexico, Mr. Pratt signed these agreements during the time that he worked as Real Estate Law's lead attorney.  See Motion ¶ 12, at 4.  According to New Mexico, each retainer agreement's § 10 describes Real Estate Law and Pinnacle Law's division of attorney's fees, and Mr. Pratt should be capable of reading the section.  See Motion ¶ 12, at 4.  New Mexico adds that rule 36(a) permits New Mexico to request Mr. Pratt to admit the truth of any matter within Rule 26(b)(1)'s scope, and relevant to the case's facts, to the application of law to the facts, or to opinions on the facts or on application of the law to the facts.  See Motion ¶ 13, at 4.  New Mexico describes that, Request No. 4, it asks Mr. Pratt to admit a fact that establishes a relationship between Real Estate Law and Pinnacle Law.  See Motion ¶ 13, at 4-5.  New Mexico adds that information on Mr. Pratt, Real Estate Law, Parwatikar, and Pinnacle Law's fee-splitting arrangements helps establish whether the Defendants' engaged in a common enterprise.  See Motion at 13.  New Mexico characterizes Mr. Pratt's objection as "evasive and an effort to avoid answering a straightforward question."  Motion at 14.

Regarding Request No. 5, New Mexico avers that the request is not unintelligible, because Mr. Pratt must know what a signature line is, and because the Requests for Admission defined "You" to refer to "Pratt" and "Real Estate Law Center." Motion ¶ 17, at 5-6. New Mexico argues that Mr. Pratt must be capable of looking at the signature line. See Motion ¶ 17, at 6. Moreover, in New Mexico's view, Mr. Pratt's response does not follow rule 36(a)(4)'s requirements. See Motion ¶ 17, at 6. New Mexico argues that Mr. Pratt should be able to obtain the information to respond the question, because the response is in the Request for Admission's exhibits. See Motion ¶ 17, at 6. New Mexico describes Request No. 5 as relevant to the fee arrangements among Real Estate Law, Mr. Pratt, and New Mexico consumers. See Motion at 14. New Mexico complains that Mr. Pratt's objections whether the documents have a signature line for him and whether he signed the documents are baseless. See Motion at 14.

Regarding Request No. 7, New Mexico contends that the request does not ask for a legal conclusion or for an expert testimony. See Motion ¶ 21, at 7. New Mexico notes that it provides Mr. Pratt with the exhibits that the request references, and that Mr. Pratt can presumably read the exhibits. See Motion ¶ 21, at 7. According to New Mexico, the exhibits state that clients will pay a non-refundable retainer and that Real Estate Law deems the retainer earned on receipt. See Motion ¶ 21, at 7. According to New Mexico, the same law that requires Mr. Pratt to respond to Request No. 5 requires him to response to Request No. 7. See Motion ¶ 21, at 7. New Mexico makes the same arguments about Request No. 7's relevance as it does about Request No. 5's relevance. See Motion at 14.

Regarding Request No. 8, New Mexico avers that the request is not irrelevant, because the fees that New Mexico consumers paid are central to the dispute. See Motion ¶ 25, at 7. New Mexico characterizes Mr. Pratt's response as "obfuscatory," because the consumers to which the

request refers could include New Mexico consumers.  Motion ¶ 25, at 7.  New Mexico argues that Mr. Pratt should have made a reasonable inquiry into the request and that a reasonable inquiry mandates at least reading the exhibit that Request No. 8 references.  See Motion ¶ 25, at 7-8.  New Mexico makes the same arguments about Request No. 8's relevance as it does about Request No. 5's relevance.  See Motion at 14.

Regarding Request No. 11, New Mexico contends that, pursuant to rule 36(a)(4), a party must make a reasonable inquiry into a request for admission.  See Motion ¶ 29, at 8.  According to New Mexico, if a party cannot find information relevant to the request for admission, the party must state that it made a reasonable inquiry and that it could not discover the information.  See Motion ¶ 29, at 8.  New Mexico argues that Mr. Pratt did not engage in a reasonable inquiry.  See Motion ¶ 29, at 8-9.  New Mexico avers that Mr. Pratt's contentions that he does not possess records of the court proceedings do not show that he engaged in a reasonable inquiry, because he could view the records on the courts' websites.  See Motion ¶ 29, at 8-9; Motion at 14.  New Mexico avers that Mr. Pratt's refusal to research the records is a refusal to engage in a reasonable inquiry.  See Motion at 14.

Regarding Request No. 12, New Mexico again argues that rule 36(a)(4) requires Mr. Pratt to reasonably inquire into the request for admission.  See Motion ¶ 33, at 9.  New Mexico argues that Mr. Pratt can verify online whether he dismissed a lawsuit.  See Motion ¶ 33, at 9.  In New Mexico's view, Mr. Pratt should have made such an inquiry.  See Motion ¶ 33, at 9.  New Mexico raises the same arguments about Mr. Pratt's alleged lack of records that it does in response to Mr. Pratt's Request No. 11 objections.  See Motion at 14.

Regarding Request No. 13, New Mexico makes arguments similar to its contentions regarding Requests Nos. 11 and 12.  See Motion ¶ 36, at 10.  According to New Mexico, Mr. Pratt

should have made a reasonable inquiry into the request.  See Motion ¶ 37, at 10.  New Mexico avers that discovering whether a court dismissed a lawsuit requires only a reasonable inquiry.  See Motion ¶ 37, at 10.  New Mexico contends that Mr. Pratt should have undertaken this inquiry.  See Motion ¶ 37, at 10.  New Mexico raises the same arguments about Mr. Pratt's alleged lack of records that it raises in response to Mr. Pratt's Request No. 11 objections.  See Motion at 14.

Regarding Request No. 14, New Mexico argues that the request is "not irrelevant and immaterial[,] because [the request] relates to New Mexico's theory of the case that Mr. Pratt and [Real Estate Law] knowingly filed bogus lawsuits on behalf of New Mexico residents and fraudulently collected fees from those victims."  Motion ¶ 41, at 10.  New Mexico notes that the rest of Mr. Pratt's response "is nonsensical."  Motion ¶ 41, at 10.  New Mexico argues that Mr. Pratt must admit or deny its request for admission.  See Motion ¶ 41, at 10.  New Mexico raises the same arguments about Mr. Pratt's alleged lack of records that it raises in response to Mr. Pratt's Request No. 11 objections.  See Motion at 14.

Regarding Request No. 15, New Mexico contends that the request is relevant, because New Mexico requires that attorneys deposit retainers from New Mexico consumers in client trust accounts that the attorneys maintain.  See Motion ¶ 45, at 11 (citing N.M. Stat. Ann. § 16-115(c)).  New Mexico argues that Mr. Pratt must admit or deny the relevant request, and that Mr. Pratt has access to the information.  See Motion ¶ 45, at 11.  New Mexico also indicates that Mr. Pratt's response and statement in the Good Faith Response "are unclear when read together and imply that the New Mexico cases were simultaneously 'hourly' cases and 'fee' cases."  Motion ¶ 45, at 11.  New Mexico argues that, contrary to Mr. Pratt's contentions in the Good Faith Response, California's rules for client trust accounts are irrelevant.  See Motion at 14.

New Mexico also makes several arguments that are not aimed at specific Requests for Admission. See Motion at 14-15. New Mexico responds to Mr. Pratt's general objection that "the records attached to the Plaintiff's Requests for Admission contained 'new retainers, new clients and new lawsuits,'" Motion at 14 (quoting Good Faith Response at 3), by noting that its Initial Disclosures[5] include several clients and lawsuits that the Requests for Admission address, see Motion at 14-15. New Mexico also contends that the Court should allow New Mexico to examine broadly Mr. Pratt's business dealings for the purposes of New Mexico's Regulation O violation claim. See Motion at 15. According to New Mexico, civil penalties under Regulation O are tied to the defendant's mental state and, in determining penalties, a court should consider "the financial resources and good faith of the defendant, the gravity of the violations, the severity of the risks to the consumers, any history of prior violations, and 'such other matters as justice may require.'" Motion at 15-16 (quoting 12 U.S.C. § 5565(c)(3)). New Mexico argues that it asks for the highest penalties under Regulation O, because of the Defendants' "history of violations, bad faith and efforts to evade the law." Motion at 16. New Mexico avers that the existence of prior bad acts is relevant to the Court's determination of which penalties are applicable. See Motion at 16. New Mexico adds that the UPA and the Mortgage Foreclosures Consultant Fraud Prevention Act similarly require a plaintiff to show that a defendant acted knowingly or willfully before the plaintiff can obtain the highest penalties against the defendant. See Motion at 16-17. In New Mexico's view, this requirement means that the Court should allow New Mexico to request information revealing whether Mr. Pratt engaged in a scheme of frivolous suits. See Motion at 17.

_____

[5]Neither party has filed the Initial Disclosures, so the Court has no document number to cite. Moreover, the Court cannot verify the validity of this argument, because it cannot determine what clients and lawsuits the Initial Disclosures address.

New Mexico avers that whether Mr. Pratt engaged in a pattern and practice of willful conduct with non-New Mexican consumers is relevant to determining whether Mr. Pratt acted willfully.  See Motion at 17.

  **3.**  **The First Response.**

  Mr. Pratt responds.  See Opposition to motion to determine sufficiency of requests for admission by state of new mexico, filed February 28, 2019 (Doc. 111)("First Response").[6] Mr. Pratt argues that the Motion is "un-necessary [sic]," because his responses "were complete, proper, and sufficient."  First Response at 1.  Mr. Pratt contends that he committed no Regulation O violation and no wrongdoing.  See First Response at 2.  He indicates that he has no records or other documents related to Real Estate Law.  See First Response ¶ 2, at 2; id. ¶ 6, at 3.  Mr. Pratt also notes that the State Bar of California disciplined him "when three (3) former clients came to state bar court and lied."  First Response at ¶ 3, at 3.  According to Mr. Pratt, "such discipline had Nothing [sic] to do with new mexico [sic] or loan modifications, but such discipline precludes this lawsuit."  First Response ¶ 3, at 3.  Mr. Pratt avers that he never performed loan modification work in New Mexico, and never communicated with any New Mexican resident about loan modification or any legal matter.  See First Response ¶ 4-5, at 3.  According to Mr. Pratt, he violated no New Mexico law, and New Mexico has produced no evidence to show any violation.  See First Response ¶ 4, at 3.  According to Mr. Pratt, "[a]ll such information has been made to state of new mexico [sic] and this 'vendetta' is improper and harassing, vexing, annoying."  First Response ¶ 7, at 3.

  Regarding Request No. 1, Mr. Pratt avers that the State Bar of California disciplined him for issues related to California resident cases and not related to conspiracy.  See First Response at

---

  [6]The Court keeps the title's original capitalization.  See First Response at 1.

4.  Mr. Pratt contends that the plaintiffs in the disciplinary case did not show that he engaged in loan modification or violated Regulation O.  See First Response at 4.  Mr. Pratt notes that the disciplinary cases involved his unauthorized practice of law, his fee splitting, and the quality of his legal work, and that the information about the disciplinary cases is more prejudicial than probative.  See First Response at 4.

Regarding Request No. 4, Mr. Pratt contends that he does not need to do math and accounting in his responses.  See First Response at 5.  Mr. Pratt indicates, moreover, that he properly denied Request No. 4.  See First Response at 5.  Mr. Pratt argues that, according to New Mexico's math for the fee splitting agreement, Real Estate Law would receive twenty percent of the proceeds from clients, the Pinnacle Law would receive the remaining proceeds, and Mr. Pratt would receive nothing.  See First Response at 5.

Mr. Pratt briefly addresses Requests Nos. 5, 7, and 8.  See First Response at 5-6.  Regarding Request No. 5, Mr. Pratt states: "I do NOT recall or know of any such signature line(s).  The document speaks for itself, and I am NOT required to explain or justify such document(s)."  First Response at 5.  Regarding Request No. 7, Mr. Pratt avers that the request asks for a legal conclusion of what the retainer consists and of the retainer's validity.  See First Response at 5.  Mr. Pratt further indicates that the State Bar of California does not object to his retainer.  See First Response at 5-6.  Regarding Request No. 8, Mr. Pratt contends that the request is irrelevant to the extent that it relates to non-New Mexican residents.  See First Response at 6.  Mr. Pratt also indicates that the exhibit which Request No. 8 references speaks for itself.  See First Response at 6.

Mr. Pratt then addresses Requests Nos. 11 through 15.  See First Response at 6-8.  Regarding Request No. 11, Mr. Pratt contends that he cannot recall every filing in every lawsuit

that he has filed during his twenty-nine years in practice.  See First Response at 6-7.  Mr. Pratt explains that the lawsuits at issue in this case occurred six years ago and that Real Estate Law had multiple lawyers.  See First Response at 6-7.  Mr. Pratt avers that he cannot remember these suits and must, accordingly, deny the request for admission.  See First Response at 6-7.  Regarding Requests Nos. 12 and 13, Mr. Pratt reiterates his objections to Request No. 11.  See First Response at 7.  Regarding Request No. 14, Mr. Pratt avers that the statement in the request for admission is false on its face and that, if the statement in Request No. 14 were true, Real Estate Law would have closed years earlier.  See First Response at 7.  Regarding Request No. 15, Mr. Pratt avers that the State Bar of California does not require client trust accounts for deposits of retainers.  See First Response at 8 (citing Cal. R. Prof'l Conduct 4-100).  In conclusion, Mr. Pratt adds that he incorporates his Good Faith Response and denies liability in this case.  See First Response at 8.

      **5.**      **The Motion for Change of Venue.**

On March 14, 2019, Mr. Pratt filed the Notice of Motion, Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles; Dec. of Mr. Pratt (Doc. 113)("Motion for Change of Venue").  Mr. Pratt includes with the Motion for Change of Venue a declaration.  See Motion for Change of Venue at 11-14.  In the declaration, Mr. Pratt swears that he drafted all the contracts that Real Estate Law entered with its clients.  See Motion for Change of Venue at 14.

      **6.**      **The Hearing.**

The Court began the hearing by indicating that Mr. Pratt had not joined the hearing.  See Draft Transcript of Hearing at 3:15-23 (taken March 19, 2019)(Court)("Tr.").[7]   The Court

---

[7]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

explained that Mr. Pratt was neither in the courtroom nor on the telephone conference line on which the parties were holding the hearing. See Tr. at 3:16-21 (Court). The Court noted that it had called Mr. Pratt at a separate telephone number and left him the telephone number for the telephone conference line. See Tr. at 3:17-20 (Court). The Court commented that the time was seven minutes after the hearing had been set to begin and that the Court would proceed with the hearing without Mr. Pratt. See Tr. at 3:21-23 (Court). The Court then stated that rule 36 has specific requirements and that the Court does not see that Mr. Pratt complied with those requirements. See Tr. at 4:1-10 (Court). The Court indicated its inclination to overrule Mr. Pratt's objections, to have him review its prior opinions, and to allow him to re-respond to the disputed requests for admission. See Tr. at 4:10-16 (Court).

New Mexico then began its arguments and first asked the Court to disregard Mr. Pratt's First Response, because Mr. Pratt filed the First Response on February 19, 2018. See Tr. at 4:20-5:5 (Anaya-Allen). According to New Mexico, New Mexico filed the Motion on January 23, 2019. See Tr. at 5:1 (Anaya-Allen). Following New Mexico's calculations, Mr. Pratt should have filed the First Response by February 10, 2019. See Tr. at 5:3-7 (Anaya-Allen). New Mexico then objected that Mr. Pratt had not engaged in a reasonable inquiry before he responded the requests for admission. See Tr. at 5:8-24 (Anaya-Allen). New Mexico opined that looking at online court dockets is not an unreasonable inquiry. See Tr. at 5:14-17 (Anaya-Allen).

New Mexico also asked that the Court award New Mexico its reasonable attorney's fees and costs for pursuing the Motion. See Tr. at 6:20-23 (Anaya-Allen). New Mexico directed the Court to Mr. Pratt's declaration in the Motion for Change of Venue and argued that the declaration evidences Mr. Pratt's bad faith. See Tr. at 65:25-6:5 (Anaya-Allen). New Mexico notes that Mr. Pratt swears that he drafted all the contracts which New Mexico references in the Requests for

Admission. See Tr. at 6:3-8 (Anaya-Allen). New Mexico complains that Mr. Pratt nevertheless refused to admit that those contracts contained, for instance, a line for his signature. See Tr. at 6:8-20 (Anaya-Allen).

The Court indicated that it would grant the Motion and order Mr. Pratt to review several of the Court's opinions that discuss requests for admission. See Tr. at 7:4-9 (Court). The Court directed Mr. Pratt to S.E.C. v. Goldstone, Stark-Romero v. National Railroad Passenger (AMTRAK), Brown v. Montoya, and Radian Asset Assurance, Inc. v. Colleges of Christian Brothers of New Mexico. See Tr. at 7:4-8:6 (Court). The Court explained that Mr. Pratt needed to admit or to specifically deny New Mexico's Requests for Admission, and explain why he denies the Requests for Admission. See Tr. at 7:15-17 (Court). The Court also described that, if Mr. Pratt wants to state that he lacks the knowledge to respond to a request for admission, he needs to make a reasonable inquiry into the request for admission's subject, and that this inquiry requires that he do more than state that he does not have the cases' books and records. See Tr. at 7:17-22 (Court). The Court stated that it would grant New Mexico attorney's fees, because Mr. Pratt's responses do not follow federal courts' expectations for such responses to Requests for Admission. See Tr. at 8:23-9:1 (Court). The Court promised to provide the parties an opinion and order on the Motion. See Tr. at 9:2-5 (Court). This memorandum opinion and order is the promised opinion and order.

### 7. **The Second Response.**

After the hearing, Mr. Pratt filed another response to the Motion. See Second Response. Mr. Pratt denies liability in the case. See Second Response ¶ 1, at 2. Mr. Pratt argues that he received no papers for a March 21, 2019, motion to compel and asks that the Court deny the March 21, 2019, motion to compel and sanction New Mexico for not serving him. See Second Response

¶¶ 2-3, at 1-2.  Mr. Pratt indicates that he called the Court's clerk[8] to complain about not receiving service.  See Second Response ¶ 4, at 2.

> **8.** **The Reply.**

New Mexico replies to the Second Response.  See Plaintiff's Reply to Mr. Pratt's [*Second*] Objection to Motion to Determine Sufficiency of RFAs [Doc 124], filed April 4, 2019 (Doc. 130)("Reply")(brackets and italics in Reply).  New Mexico indicates that Mr. Pratt filed the First Response on February 28, 2019.  See Reply at 1.  According to New Mexico, in the First Response, Mr. Pratt indicates that he received the Motion, because he argues in the First Response that his admissions were complete.  See Reply at 1-2.  New Mexico expresses its confusion regarding to which document Mr. Pratt refers when he states the "21st of MARCH motion to compel," because no document resembling a motion to compel was filed on March 21, 2019.  See Reply at 2.  New Mexico notes that Mr. Pratt requests sanctions for the non-service and avers that Mr. Pratt's request for sanctions violates rule 11(b) of the Federal Rules of Civil Procedure.  See Second Response at 2.

## LAW REGARDING REQUESTS FOR ADMISSION

Rule 36(a)(1) allows for a party to serve on any other party a request that the party admit "the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  The proper scope of discovery under rule 26 is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  The scope of discovery under rule

---

[8]Mr. Pratt called the Court's chambers and spoke to the Court's Administrative Assistant and Courtroom Deputy.  The Court's chambers' staff directed Mr. Pratt to the United States District Court for the District of New Mexico's Local Rules of Civil Procedure and informed him that they could not provide legal advice.

26 is broad.  See Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1520 (10th Cir. 1995); Sanchez v. Matta, 229 F.R.D. 649, 654 (D.N.M. 2004)(Browning, J.)("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve the full disclosure of all potentially relevant information.").  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  The federal discovery rules reflect the courts' and Congress' recognition that "mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."  Hickman v. Taylor, 329 U.S. 495, 507 (1947).  As a result, rule 26 "'contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case.'"  Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 649-50 (D.N.M. 2007)(Browning, J.)quoting Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 621 (N.D. Cal. 2006)(Patel, J.)).

While relevance in discovery is broader than that required for admissibility at trial, "'the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue.'"  Zenith Elecs. Corp. v. Exzec, Inc., No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998)(Manning, J.)quoting Piacenti v. Gen. Motors Corp., 173 F.R.D. 221, 223 (N.D. Ill. 1997)(Guzman, J.)).  "'[T]he trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant.'"  Gomez v. Martin Marietta Corp., 50 F.3d at 1520 (quoting Scales v. J.C. Bradford & Co., 925 F.2d 901, 906 (6th Cir. 1991)).  A district court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim."  McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir.

2002)(unpublished)[9](citing <u>Munoz v. St. Mary-Corwin Hosp.</u>, 221 F.3d 1160, 1169 (10th Cir. 2000)). <u>See</u> <u>Tottenham v. Trans World Gaming Corp.</u>, No. 00 Civ. 7697, 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002)(Knapp, J.)("'Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.'" quoting <u>Cleveland-Goins v. N.Y.C.</u>, No. 99 CIV. 1109(AGS), 1999 WL 673343, at *2 (S.D.N.Y. Aug. 30, 1999)(Schwartz, J.))); <u>Hardrick v. Legal Servs. Corp.</u>, 96 F.R.D. 617, 618 (D.D.C. 1983)(Burnett, M.J.)(noting that courts worry about and should remain concerned about "'fishing expeditions,' discovery abuse and inordinate expense involved in overbroad and far-ranging discovery requests").

Rule 36(a)(1) allows for a party to serve on any other party a request that the party admit the truth of not simply facts within rule 26's scope but also "the application of law to fact, or opinions about either." Fed. R. Civ. P. 36(a)(1)(A). Requests for admission "expedite trials by establishing as true certain material facts of a case without the necessity of formal proof at trial." <u>Keen v. Detroit Diesel Allison</u>, 569 F.2d 547, 554 (10th Cir. 1978)(citing <u>Champlin v. Okla. Furniture Mfg. Co.</u>, 324 F.2d 74 (10th Cir. 1963); <u>Peter v. Arrien</u>, 319 F. Supp. 1348 (D. Pa. 1970)(Wood, J.)). The 1970 amendment to rule 36(a) deleted "relevant matters of fact," thus

---

[9]<u>McGee v. Hayes</u> is an unpublished opinion, but the Court can rely on an unpublished opinion from the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. <u>See</u> 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." <u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that <u>McGee v. Hayes</u> and <u>Layng v. Rael (In re Rael)</u>, 753 F. App'x 649 (10th Cir. 2018)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

allowing requests applying law to fact. Fed. R. Civ. P. 36 advisory committee's notes ("As revised, the subdivision provides that a request may be made to admit any matters within the scope of Rule 26(b) that relate to statements or opinions of fact or of the application of law to fact. It thereby eliminates the requirement that the matters be 'of fact.'"). However, "'[t]he amended provision does not authorize Requests for Admission of law unrelated to the facts of the case.'" Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 554 quoting Fed. R. Civ. P. 36 advisory committee's notes). The advisory committee note to the 1970 amendments further states:

> An admission of a matter involving the application of law to fact may, in a given case, even more clearly narrow the issues [than an admission on a matter of opinion]. For example, an admission that an employee acted in the scope of his employment may remove a major issue from the trial. In *McSparran v. Hanigan*, [225 F. Supp. 628 (E.D. Pa. 1963)(Freedman, J.),] plaintiff admitted that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants, 225 F. Supp. at 636. This admission, involving law as well as fact, removed one of the issues from the lawsuit and thereby reduced the proof required at trial. The amended provision does not authorize requests for admission of law unrelated to the facts of the case.

Fed. R. Civ. P. 36, advisory committee's notes. In Stark-Romero v. National Railroad Passenger (AMTRAK), the request asked for an admission that the New Mexico Department of Transportation was responsible for administering the federal grade-crossing improvement program in New Mexico. See 275 F.R.D. at 557. The Court held that this requirement sought an application of law to fact rather than the answer to a pure matter of law; thus, the Court concluded that the plaintiffs were required to admit or to deny specifically the request for admission, or to state in detail why they could not truthfully admit or deny it. See 275 F.R.D. at 558. The Court reasoned that the request "is closer to a request seeking application of law to the facts of the case. It is trying to narrow the range of entities that -- factually -- administer a particular program in New Mexico; it does not seek the admission of an abstract question of law." 275 F.R.D. at 558.

In Brown v. Montoya, the plaintiffs asked the Court to compel the defendants to respond to requests for admission identifying the defendants' job duties. See 2013 WL 1010390, at *7. One request for admission, for example, asked one of the Defendants to "[a]dmit that in your official capacity as Secretary of the New Mexico Department of Corrections, your duty or authority includes ensuring that the Department's policies are in compliance with relevant state and federal laws, including the Fourteenth Amendment to the United States Constitution." 2013 WL 1010390, at *8. The defendants objected to the plaintiff's requests for admission, arguing that the requests for admission called for a legal conclusion. See 2013 WL 1010390, at *8. The plaintiffs asserted that the purpose of the requests for admission was not to seek a legal conclusion, but to establish factually what each individual defendant did in his or her job. See 2013 WL 1010390, at *15. The Court, citing Stark-Romero v. National Railroad Passenger (AMTRAK), overruled the defendants' objections, concluding that the requests for admission permissibly sought to apply law to the facts of the case; the Court stated:

> Whereas the RFA [(request for admission)] in Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK) was trying to determine, factually, whether the Department of Transportation was responsible for administering a particular program, the RFAs here are also trying to determine, factually, if individual Defendants are individually involved in, or responsible for, ensuring their office's compliance with laws and the Constitution. These RFAs are not asking whether the Constitution's Fourteenth Amendment protects an individual's privacy rights from state infringement. Nor are they asking if the New Mexico Constitution's Due Process Clause protects an individual's privacy rights to the same extent as the United States Constitution's Due Process Clause. They are not a question taken from the Multistate Bar Examination in true/false form, asking the Defendants to admit the truth of the bar exam question.

2013 WL 1010390, at *24. The Court concluded that, because the issue was whether the defendants' offices violated the plaintiffs' constitutional rights, the requests for admission were not unrelated to the case. See 2013 WL 1010390, at *24. See also S.E.C. v. Goldstone, 300 F.R.D.

at 528 (permitting the plaintiff -- the S.E.C. -- to ask the defendants whether certain financing transactions at issue constituted "a sale for legal purposes in that they were a transaction that transferred title and ownership of a security or securities to a third party").

Rule 36(a)(4) prescribes detailed rules for responding to requests for admission.  See Fed. R. Civ. P. 36(a)(4).  "[A] respondent must, if he or she cannot admit or deny, state in detail why not."  Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 555.  Rule 36(a)(4) provides:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).  There is arguably a tension between the first sentence of rule 36(a)(4) and the third sentence.  The first sentence suggests that the response must describe in detail what efforts have been made to respond the particular request for admission; the third sentence suggests that such detail is not necessary and that the response need only track the third sentence of 36(a)(4). There thus may be some conflict between rule 36(a)(4)'s requirement that a responding party "state in detail why the answering party cannot truthfully admit or deny" a request for admission, and not requiring a responding party to detail the "reasonable inquiry" the party made.  Fed. R. Civ. P. 36(a)(4).The Court has adopted the view that a simple statement that a party has made a reasonable inquiry, and does not have adequate information to admit or to deny a request for admission suffices, and a party may rest on that statement.  See Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 554-55.  See also Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242,

1247 (9th Cir. 1981)("[A] response which fails to admit or deny a proper request for admission does not comply with the requirements of Rule 36(a) if the answering party has not, in fact, made 'reasonable inquiry,' or if information 'readily obtainable' is sufficient to enable him to admit or deny the matter." (quoting Fed. R. Civ. P. 36(a)); Adley Express Co. v. Highway Truck Drivers & Helpers, Local No. 107, 349 F. Supp. 436, 451-52 (E.D. Pa. 1972)(Becker, J.)("Under the amended Rule 36, it would appear that a mere statement in the answer that the answering party has made reasonable inquiry and that the information solicited was insufficient to enable him to admit or deny the requested matter will suffice.").

In all cases, respondents must either admit or specifically deny a request for admission, or state in detail why they cannot truthfully admit or deny it. See Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558. If respondents are going to say that they cannot respond to a request for admission, they have to track rule 36(a)(4)'s requirements. See Fed. R. Civ. P. 36(a)(4); Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558. This requirement means that, if they are going to respond that they cannot truthfully admit or deny the request for admission, because they do not have sufficient information, they must state, consistent with rule 11, "that [they] ha[ve] made reasonable inquiry and that the information [they] know[] or can readily obtain is insufficient to enable [them] to admit or deny." Fed. R. Civ. P. 36(a)(4). A reasonable inquiry means that a party has to ask its counsel, and if its counsel knows the response, the party needs to use that information to admit or deny. See Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558; T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. 38, 43 (S.D.N.Y. 1997)(Katz, M.J.)("'Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have

information which may lead to or furnish the necessary and appropriate response.'" (quoting Herrera v. Scully, 143 F.R.D. 545, 548 (S.D.N.Y. 1992)(Sweet, J.))).

Where any party believes that another party has improperly responded to a request for admission, the requesting party may ask the court to determine the response's sufficiency. See Fed. R. Civ. P. 36(a)(6). "Unless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6). The court may either deem the matter admitted or order that the responding party submit an amended response. See Fed. R. Civ. P. 36(a)(6). Rule 37(a)(5) of the Federal Rules of Civil Procedure governs the award of attorney's fees for improper responses. See Fed. R. Civ. P. 36(a)(6).

## LAW REGARDING MOTIONS TO COMPEL UNDER RULE 37

Rule 37 provides enforcement mechanisms for rule 36. See Fed. R. Civ. P. 36(a)(6). According to rule 37, if a party does not respond to an interrogatory or to a request for production, the party requesting the discovery may move the Court to compel the opposing party to respond. See Fed. R. Civ. P. 37(a)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). See Lewis v. Goldsberry, No. 11-0283, 2012 WL 681800, at *4 (D.N.M. Feb. 27, 2012)(Browning, J.). Rule 37(a)(1) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1).

If a party refuses to produce documents through proper discovery, the requesting party can move to compel production. See Lane v. Page, 727 F. Supp. 2d 1214, 1236 n.15 (D.N.M.

2010)(Browning, J.). If the court grants the motion, the court must order the party "whose conduct necessitated the motion" to pay the movant's attorney's fees. Fed. R. Civ. P. 37(a)(5)(A). The court must permit both parties an opportunity to be heard and may choose not to order the attorney's fees if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii). If the court denies the motion:

> the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B). If the court grants in part and denies in part the motion, the court has the authority to issue a protective order and "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Where the parties have taken legitimate positions, and the court grants in part and denies in part the motion, courts generally conclude that justice requires that each party be responsible for its own fees and costs. See Pulsecard, Inc. v. Discover Card Servs., 168 F.R.D. 295, 310-11 (D. Kan. 1996)(Rushfelt, M.J.); Greater Rockford Energy & Tech. Corp. v. Shell Oil Co., 138 F.R.D. 530, 539 (C.D. Ill. 1991)(Mills, J.).

**LAW REGARDING ATTORNEY'S FEES**

The obligation to pay attorneys' fees can arise by statute or by contractual agreement. See U.S. ex rel. Trs. of the Colo. Laborers Health & Welfare Tr. Fund & Expert Env'l Control, Inc., 790 F. Supp. 250, 251 (D. Colo. 1992)(Kane, J.)(citing F.D. Rich, Inc. v. U.S. ex rel. Indus. Lumber Co., 417 U.S. 116, 126 (1974)). Cf. Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.,

188 F. Supp. 3d 1097, 1156–57 (D.N.M. 2016)(Browning, J.)(recognizing that a statute that authorizes the award of attorney's fees must explicitly authorize the award of such fees (citing Runyon v. McCrary, 427 U.S. 160, 185-86 (1976); Key Tronic Corp. v. United States, 511 U.S. 809, 815 (1994)). Whether the obligation to pay reasonable attorney's fees arises from statute or contract, a court's analysis of the fees' reasonableness is similar. See U.S. ex rel. Trs. of the Colo. Laborers Health & Welfare Tr. Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing U.S. ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d 1533, 1548-50 (10th Cir. 1987)). The United States Court of Appeals for the Tenth Circuit has explained that, in evaluating fees that a contract awards, a court may consider "the familiar factors from the federal court cases awarding fees in the statutory context," as Ramos v. Lamm, 713 F.2d 546 (10th Cir. 1983), defines them. U.S. ex rel. Trs. of the Colo. Laborers Health & Welfare Tr. Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 (citing U.S. ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1550). These factors include the time spent on a case and the hourly rate. See Ramos v. Lamm, 713 F.2d at 552-56.

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). See Fallen v. GREP Sw., LLC, 247 F. Supp. 3d 1165, 1199-1203 (D.N.M. 2017)(Browning, J.). The lodestar is "'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Assocs., LLC, 616 F.3d 1098, 1102 (10th Cir. 2010)(quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); and citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542,

543-44 (2010)). "The party requesting attorney fees bears the burden of proving" the two components used to calculate the fee award: (i) "the amount of hours spent on the case"; and (ii) "the appropriate hourly rates." United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d 1219, 1233 (10th Cir. 2000)(citing Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998)). See New Mexico v. Valley Meat Co., LLC, No. CIV 14-1100 JB/KBM, 2015 WL 9703255, at *22 (D.N.M. Dec. 14, 2015)(Browning, J.)(citing United Phosphorus, Ltd. v. Midland Fumigant, Inc., 205 F.3d at 1233). Once the Court makes these two determinations, the fee "claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." Robinson v. City of Edmond, 160 F.3d at 1281.

"To determine what constitutes a reasonable rate, the district court considers the 'prevailing market rate in the relevant community.'" Lippoldt v. Cole, 468 F.3d 1204, 1224-25 (10th Cir. 2006)(quoting Malloy v. Monahan, 73 F.3d 1012, 1018 (10th Cir. 1996)). See Fallen v. GREP Sw., LLC, 247 F. Supp. 3d at 1197-98; New Mexico v. Valley Meat Co., LLC, 2015 WL 9703255, at *23. The party entitled to fees must provide the district court with sufficient information to evaluate prevailing market rates. See Lippoldt v. Cole, 468 F.3d at 1224-25. Moreover, the party must also demonstrate that the rates are similar to rates for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). See Case v. Unified Sch. Dist. No. 233, 157 F.3d at 1255-56; Ramos v. Lamm, 713 F.2d at 555 ("The hourly rate should be based on the lawyers' skill and experience in civil rights or analogous litigation."), overruled in part on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 725 (1987). Courts may also consider their own knowledge of market rates. See Lippoldt v. Cole, 468 F.3d at 1225. The party seeking fees "should submit evidence supporting the hours worked and rates claimed."

Hensley v. Eckerhart, 461 U.S. at 434. Although "[t]here is no precise rule or formula," district courts have discretion to make an "equitable judgment" as to "eliminate" or "reduce" requested fees "to reflect a plaintiff's overall success level." Hensley v. Eckerhart, 461 U.S. at 436-37. See Gen. Protecht Grp., Inc. v. Leviton Mfg. Co., 122 F. Supp. 3d 1114, 1135 (D.N.M. 2015)(Browning, J.)("A district court may also make adjustments to the lodestar figure to reflect a plaintiff's overall success level." (citing Bywaters v. United States, 670 F.3d 1221, 1229 (Fed. Cir. 2012)); Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2015 WL 403930, at *10 (D.N.M. Jan. 7, 2015)(Browning, J.). The court may adjust the lodestar figure to reflect various factors, including the degree of success obtained, the significance of the legal issues involved, and the public interest that the litigation advances. See Farrar v. Hobby, 506 U.S. 503, 120-22 (1992). A court has discretion "'to adjust or even deny a contractual award of fees if such an award would be inequitable or unreasonable.'" U.S. ex rel. Trustees of the Colo. Laborers Health & Welfare Trust Fund & Expert Env'l Control, Inc., 790 F. Supp. at 251-52 quoting U.S. ex rel. C.J.C., Inc. v. W. States Mech. Contractors, Inc., 834 F.2d at 1548). In awarding fees, the district court should "provide a concise but clear explanation of its reasons for [a] fee award." Hensley v. Eckerhart, 461 U.S. at 438.

## LAW REGARDING REGULATION O

Regulation O authorizes state attorneys general and other state officers to sue those people who violate the regulation. See 12 C.F.R. § 1015.10. Regulation O proscribes certain conduct by mortgage assistance relief service providers. See 12 C.F.R. § 1015.3 to 15.6. Proscribed conduct includes not providing specific, detailed disclosures describing the loan servicer, see 12 C.F.R. § 1015.4, requesting fees from a consumer before the consumer executes with the loan holder or servicer a written agreement "incorporating the offer of mortgage assistance relief,"

12 C.F.R. § 1015.5(a), and failing to disclose the offer's limits and material terms, <u>see</u>
12 C.F.R. § 1015.5(c)-(d). A violation of Regulation O "shall be treated as a violation of a rule
prohibiting unfair, deceptive, or abusive acts or practices under the Consumer Financial Protection
Act of 2010 and a violation of a rule under section 18 of the Federal Trade Commission Act
(15 U.S.C. 57a) regarding unfair or deceptive acts or practices." 12 U.S.C. § 5538.

Regulation O exempts attorneys from all sections other than § 1015.5 where the attorney:

(1) Provides mortgage assistance relief services as part of the practice of law;

(2) Is licensed to practice law in the state in which the consumer for whom the
attorney is providing mortgage assistance relief services resides or in which the
consumer's dwelling is located; and

(3) Complies with state laws and regulations that cover the same type of conduct
the rule requires.

12 C.F.R. § 1015.7. An attorney who meets the above requirements "is also exempt from § 1015.5
if the attorney: (1) Deposits any funds received from the consumer prior to performing legal
services in a client trust account; and (2) Complies with all state laws and regulations, including
licensing regulations, applicable to client trust accounts." 12 C.F.R. § 1015.7.

Section 5565 of Title 12 of the United States Code provides penalties for engaging in the
conduct that Regulation O proscribes. <u>See</u> 12 U.S.C. § 5565. Section 5565 describes three tiers
of penalties:

(A) First tier

For any violation of a law, rule, or final order or condition imposed in writing by
the Bureau, a civil penalty may not exceed $5,000 for each day during which such
violation or failure to pay continues.

(B) Second tier

Notwithstanding paragraph (A), for any person that recklessly engages in a violation of a Federal consumer financial law, a civil penalty may not exceed $25,000 for each day during which such violation continues.

(C) Third tier

Notwithstanding subparagraphs (A) and (B), for any person that knowingly violates a Federal consumer financial law, a civil penalty may not exceed $1,000,000 for each day during which such violation continues.

12 U.S.C. § 5565(c)(2). When considering the penalty to assess, a court should consider:

(A) the size of financial resources and good faith of the person charged;

(B) the gravity of the violation or failure to pay;

(C) the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided;

(D) the history of previous violations; and

(E) such other matters as justice may require.

12 U.S.C. § 5565(c)(3). The Honorable James Selna, United States District Judge for the United

States District Court for the Central District of California, has described evidence that counsels

toward penalizing a defendant for a reckless or knowing violation of the law:

Uncontroverted evidence could establish that Defendants should be penalized in one of these two tiers. (See Henderson Decl. ¶ 4 ("Alfred Clausen and [Cobb] actually ran Siringoringo's loan modification operations through their company, [CCMC]."); Salto Decl. Supp. Appl. Default J. ¶ 10 (describing a meeting that took place in February 2012 in which Siringoringo thought he'd get a slap on the wrist for his illegal conduct), Dkt. No. 71; Burge Decl. Supp. Appl. Default J. ¶ 5, Ex. 1 (describing an email from Siringoringo cc'ing Cobb on May 6, 2011 acknowledging the existence of the FTC rules that eventually became Regulation O), Dkt. No. 70.)

Consumer Fin. Prot. Bureau v. Siringoringo, Case No. SACV 14-01155 JVS (AJWx), 2016 WL

102435, at *7 n.4 (C.D. Cal. Jan. 7, 2016)(Selna, J.). See also Dazzio v. F.D.I.C., 970 F.2d 71, 75

(5th Cir. 1992)(considering, in determining a penalty under 12 U.S.C. § 5565, the lack of

dishonesty, the lack of prior violations, and the good faith of the offenders in trying to correct the violations); Consumer Fin. Prot. Bureau v. Nationwide Biweekly Admin., Inc., No. 15-CV-02106-RS, 2017 WL 3948396, at *13 (N.D. Cal. Sept. 8, 2017)(Staton, J.)(imposing a penalty at the lowest tier where the defendants used aggressive sales tactics, but also pursued "training, quality control, and . . . legal counsel, in an effort to stay on the right side of the line" of the law); Consumer Fin. Prot. Bureau v. Morgan Drexen, Inc., Case No. SACV 13-1267-JLS (JEMx), 2016 WL 6601650, at *2 (C.D. Cal. March 16, 2016)(Staton, J.)(deeming a violation willful exists where the defendant made false and misleading representations, falsified evidence, and undermined the judicial system's integrity).

## LAW REGARDING THE NMUPA AND THE NEW MEXICO MORTGAGE FORECLOSURE CONSULTANT FRAUD PREVENTION ACT

The NMUPA permits the Attorney General of New Mexico to sue persons where "the attorney general has reasonable belief that any person is using, has used or is about to use any method, act or practice which is declared by the Unfair Practices Act to be unlawful, and that proceedings would be in the public interest." N.M. Stat. Ann. § 57-12-8. Pursuant to the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act are deemed to be violations of the NMUPA. See N.M. Stat. Ann. § 47-15-7(a). The New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act prohibits a foreclosure consultant from, among other things, charging fees before the consultant performs all services for the customer, see N.M. Stat. Ann. § 47-15-5(A), taking consideration for its services from a third party, see N.M. Stat. Ann. § 47-15-5(D), including a provision in a foreclosure consulting contract that provides a venue in a "county other than the county in which the residence in foreclosure is located," N.M. Stat. Ann. § 47-15-5(G)(3), and including in a foreclosure consulting contract a provision that "requires an owner to consent to jurisdiction for litigation or choice of law in a state other than New Mexico," N.M. Stat. Ann. § 47-15-5(G)(2). The New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act permits a court to award "exemplary damages up to three times the compensation charged by the foreclosure consultant if the court finds that the foreclosure consultant violated a provision of Section 5 of the Mortgage Foreclosure Consultant Fraud Prevention Act and that the foreclosure consultant's conduct was willful or in bad faith." N.M. Stat. Ann. § 47-15-7(D). The NMUPA also provides special penalties for persons acting willfully:

> In any action brought under Section 57-12-8 NMSA 1978, if the court finds that a person is willfully using or has willfully used a method, act or practice

declared unlawful by the Unfair Practices Act, the attorney general, upon petition to the court, may recover, on behalf of the state of New Mexico, a civil penalty of not exceeding five thousand dollars ($5,000) per violation.

N.M. Stat. Ann. § 57-12-11.

## <u>ANALYSIS</u>

The Court will grant the Motion and will deny Mr. Pratt's request in the Second Response. The Court deems Mr. Pratt's responses to Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15 improper. The Court will order Mr. Pratt to re-respond to Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15. Mr. Pratt must either admit or specifically deny a request for admission. <u>See</u> Fed. R. Civ. P. 36(a)(4); <u>Stark-Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558. If, after a reasonable inquiry into a request for admission, Mr. Pratt does not have sufficient information to answer the request for admission, he may respond that he cannot respond to the request for admission. <u>See</u> Fed. R. Civ. P. 36(a)(4); <u>Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558. <u>Cf.</u> <u>Duran v. Curry Cty. Adult Det. Ctr.</u>, No. CIV 09-0758 MCA/SMV, 2012 WL 12919373, at *5 (D.N.M. Dec. 31, 2012)(Armijo, J.)("A mere statement that the party has made a reasonable inquiry is insufficient; the party must in fact undertake the inquiry." (citing <u>Asea, Inc. v. S. Pac. Transp. Co.</u>, 669 F.3d at 1247)). Mr. Pratt's answer must, however, track rule 36(a)(4)'s requirements, and state "that [he] has made reasonable inquiry and that the information [he] knows or can readily obtain is insufficient to enable [him] to admit or deny." Fed. R. Civ. P. 36(a)(4). <u>See</u> <u>Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558. The Court will order Mr. Pratt to review the Court's discussions of requests for admission in <u>S.E.C. v. Goldstone</u>, <u>Brown v. Montoya</u>, <u>Stark-Romero v. National Railroad Passenger (AMTRAK)</u>, and <u>Radian Asset Assurance, Inc. v. Colleges of Christian Brothers of New Mexico</u>, and respond in accordance with the Court's previous rulings. The Court will also order Mr. Pratt to pay New Mexico the

reasonable attorney's fees and costs that New Mexico incurred in pursuing the Motion. The Court denies Mr. Pratt's request that the Court sanction New Mexico. See Second Response at 2. The Court cannot determine what motion to compel Mr. Pratt means to reference with the language "21st of MARCH motion to compel," Second Response ¶ 2, at 1, and Mr. Pratt's First Response reveals that Mr. Pratt received the Motion, see First Response at 1-9; contra Second Response ¶ 2, at 1.

Preliminarily, the Court agrees with New Mexico that Mr. Pratt untimely filed his First Response. See Tr. at 4:20-5:7 (Anaya-Allen). New Mexico filed the Motion on January 23, 2019, and, on the same day, New Mexico sent Mr. Pratt via regular mail a copy of the Motion. See Motion at 17; Notice of Completion of Briefing of Plaintiff's Motion to Determine Sufficiency of Defendant Mr. Pratt's Responses to Plaintiff's Requests for Admission at 1, filed February 21, 2019 (Doc. 110). The United States District Court for the District of New Mexico's Local Rules of Civil Procedure require that a party file a response to a motion within fourteen calendar days after receiving service of the motion. See D.N.M. LR-Civ. 7.4(a). Rule 6(d) of the Federal Rules of Civil Procedure directs that the Court add three days to the time period in which a party must file a response when the party was served by mail. See Fed. R. Civ. P. 6(d). Mr. Pratt should, therefore, have filed his First Response within seventeen days of January 23, 2019. The last day of this seventeen-day period was February 10, 2019. Cf. Fed. R. Civ. P. 6(a)(1)(B) (directing courts to count every day when calculating periods stated in days); Fed. R. Civ. P. 6(a)(2)(C) (instructing that, where a "period would end on a Saturday, Sunday, or legal holiday, the period continues to run until the same time on the next day that is not a Saturday, Sunday, or legal holiday"). Mr. Pratt dated his First Response February 22, 2019, and the First Response was filed on February 28, 2019. See First Response at 8. Mr. Pratt dated, thus, the First Response twelve

days after he should have filed the First Response, and he filed the First Response eighteen days late.

The D.N.M. LR-Civ. provide that, when a party fails "to file and serve a response in opposition to a motion within the time prescribed for doing so," the failure "constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). The Court must, however, consider Mr. Pratt's objections to the Requests for Admission when considering his answers' sufficiency. Cf. Fed. R. Civ. P. 36(a)(6) ("Unless the court finds an objection justified, it must order that an answer be served."). Mr. Pratt's First Response largely reiterates the objections that he articulates in his responses to the Requests for Admission and in his Good Faith Response. See Motion ¶¶ 6-7, 10-11, 15-16, 19-20, 23-24, 27-28, 31-32, 35-36, 39-40, 43-44, at 3-11. Compare Good Faith Response ¶¶ 1-15, at 1-2, with First Response at 4-8. To the extent that the First Response clarifies Mr. Pratt's objections, therefore, the Court will consider the First Response.

I.     **THE COURT ORDERS MR. PRATT TO RE-RESPOND TO REQUESTS NOS. 1, 4, 5, 7, 8, 11, 12, 13, 14, AND 15, BECAUSE HE IMPROPERLY RESPONDS TO ALL THE LISTED REQUESTS.**

The Court will order that Mr. Pratt re-respond to all the Requests for Admission for the responses of which New Mexico complains. See Motion at 2-17. The Court takes in turn each of the requests for admission. The Court addresses Mr. Pratt's answer and his objections.

Mr. Pratt does not properly respond to Request No. 1. See Motion ¶ 6, at 3. He does not admit or deny the request for admission, nor does he state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to answer the request for admission. See Motion ¶ 6, at 3; Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558. Mr. Pratt's objections to the request for admission do not persuade the Court. Rule 36 does not limit New Mexico to inquiring about evidence that it could admit at trial. See

Fed. R. Civ. P. 36(a) (describing that parties may request information within the scope of discovery); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").   All the theories under which New Mexico sues Mr. Pratt allow for higher penalties where the defendant acts with a culpable mental state.   <u>See</u> 12 U.S.C. § 5565(c)(2);  N.M. Stat. Ann. § 47-15-7(D);  N.M. Stat. Ann. § 57-12-11.   New Mexico's request regarding the State Bar of California's disciplinary actions may lead New Mexico to useful information about Mr. Pratt's mental state when he performs legal services.   <u>See</u> Motion ¶ 5, at 3.   Mr. Pratt may dispute whether the evidence is more prejudicial than probative, <u>see</u> First Response at 4, in a motion in limine before trial, <u>see</u> Fed. R. Evid. 403.   Mr. Pratt may also dispute whether the disciplinary actions had merit in a dispositive motion or at trial, <u>see</u> Good Faith Response ¶ 1, at 1, if the evidence is relevant to New Mexico's trial theory, or otherwise object to the evidence's admission.

Mr. Pratt also does not properly respond to Request No. 4.   <u>See</u> Motion ¶ 10, at 4.   He does not admit or deny the request for admission, nor does he state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to respond to the request for admission.   <u>See</u> Motion ¶ 10, at 4; Fed. R. Civ. P. 36(a)(4); <u>Stark-Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558.   Mr. Pratt's objections to Request No. 4 do not convince the Court.   New Mexico asks Mr. Pratt about the fee-splitting arrangement recorded in the contracts that New Mexico attaches as exhibits.   <u>See</u> Motion ¶ 9, at 4.   New Mexico does not request that Mr. Pratt admit the black letter law or even to apply the law, and it likewise does not ask Mr. Pratt to perform math or accounting.   <u>See</u> Motion ¶ 9, at 4.   <u>Cf.</u> <u>S.E.C. v. Goldstone</u>, 300 F.R.D. at 528; <u>Brown v. Montoya</u>, 2013 WL 1010390, at *24; <u>Stark-Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558; <u>Starks-Harris v. Taylor</u>, No. 1:08-CV-176, 2009 WL 535778, at

*3 (N.D. Ind. March 3, 2009)(Cosbey, M.J.)("'[I]f the request for admission quotes a document[] and asks the other party to admit that the document contains the material quoted, it should be admitted if the quotation is accurate and denied if it is not.'" (alteration in Starks-Harris v. Taylor)(quoting Miller v. Holzmann, 240 F.R.D. 1, 4 (D.D.C. 2006)(Facciola, M.J.))); Booth Oil Site Admin. Grp. v. Safety-Kleen Corp., 194 F.R.D. 76, 80 (W.D.N.Y. 2000)(Foschio, M.J.)("It is . . . permissible to request that a party admit or deny a Rule 36 request as to the accuracy of quoted textual material from a particular document relevant to the case."). Mr. Pratt's objections whether New Mexico has shown that he violated New Mexico law, about the State Bar of California disciplinary actions, and about the logic behind the fee-splitting arrangement are irrelevant, because they go to the case's merits and not the request for admission's propriety. See Motion ¶ 11, at 4; Good Faith Response ¶ 4, at 1; First Response at 5. Moreover, the fee splitting arrangement is relevant to this case, because evidence of such an arrangement may support New Mexico's theory that a common enterprise exists among Mr. Pratt and his Co-Defendants. See 12 U.S.C. § 5538 (providing that a violation of Regulation O is deemed a violation of the Federal Trade Commission Act); F.T.C. v. Lanier Law, LLC, 715 F. App'x 970, 979 (11th Cir. 2017)("Under the FTCA, a corporate entity can be held liable for the conduct of other entities where 'the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities.'" (quoting F.T.C. v. Wash. Data Res., 856 F. Supp. 2d 1247, 1271 (M.D. Fla. 2012)(Merryday, J.))). Cf. F.T.C. v. Skybiz.com, Inc., No. 01-CV-396-K(E), 2001 WL 1673649, at *5 (N.D. Okla. Aug. 2, 2001)(Kern, J.)(describing that, in determining whether a common enterprise exists, courts consider: "(1) common control, (2) sharing of office space and officers, (3) business being conducted through 'a maze of interrelated companies,' (4) unified advertising or (5) no real distinction existing between the corporate

defendants" (quoting F.T.C. v. Wolf, No. 94-8119-CIV-FERGUSON, 1996 WL 812940, at *1 (S.D. Fla. Jan. 31, 1996)(Ferguson, J.))). Reasonably inquiring into the response to New Mexico's request for admission includes reviewing the document that New Mexico attaches as an exhibit. Mr. Pratt swears that he drafted the contracts between Real Estate Law and its clients, so he presumably drafted the provisions. See Motion for Change of Venue at 14. Mr. Pratt can reasonably be expected to inquire what he wrote in the document.

Mr. Pratt likewise does not properly respond to Request No. 5. See Motion ¶ 14, at 5. He does not admit or deny the request for admission, nor does he state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to answer the request for admission. See Motion ¶ 14, at 5; Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558. The Court does not deem persuasive Mr. Pratt's objections. New Mexico explains that, in its Requests for Admission, it defines "you" to mean Mr. Pratt. Motion ¶ 17, at 5-6. Request No. 5, accordingly, intelligibly asks Mr. Pratt to admit whether the Attorney Client Fee Agreements contain a signature line for his signature. See Motion ¶ 14, at 5. The request for admission is relevant to showing Mr. Pratt's connections to Real Estate Law and to evidencing whether a common enterprise exists. Mr. Pratt's objections whether New Mexico has shown that he violated New Mexico law and about the State Bar of California disciplinary actions are again inapposite, because they attack the merits of New Mexico's case. See Motion ¶ 11, at 4; Good Faith Response ¶ 5, at 1; First Response at 5. Mr. Pratt's statement that the document speaks for itself impermissibly avoids the request for admission. See First Response at 6; F.D.I.C. v. Halpern, 271 F.R.D. 191, 195 (D. Nev. 2010)(Foley, M.J.)(describing a party's statement that a document speaks for itself as "simply evasive"). Mr. Pratt swears that he drafted the contracts between Real

Estate Law and its customers, see Motion for Change of Venue at 14, and looking at the exhibit should provide Mr. Pratt the information to respond fully to Request No. 5.

Mr. Pratt also improperly responds to Request No. 7. See Motion ¶ 18, at 6. He does not admit or deny the request for admission, nor does he state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to respond to the request for admission. See Motion ¶ 18, at 6; Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558. Mr. Pratt's objections to Request No. 7 do not convince the Court. New Mexico asks Mr. Pratt about the provision for a retainer. See Motion ¶ 9, at 4. As in Request No. 4, New Mexico does not request that Mr. Pratt admit the black letter law, or perform math or accounting that requires expert testimony. See Motion ¶ 9, at 4. Cf. S.E.C. v. Goldstone, 300 F.R.D. at 528; Brown v. Montoya, 2013 WL 1010390, at *24; Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 275 F.R.D. at 558; Starks-Harris v. Taylor, 2009 WL 535778, at *3 (citing Miller v. Holzmann, 240 F.R.D. at 4); Booth Oil Site Admin. Grp. v. Safety-Kleen Corp., 194 F.R.D. at 80). New Mexico may ask Mr. Pratt to admit what he required from his client as a retainer without improperly asking for a legal conclusion. Cf. S.E.C. v. Goldstone, 300 F.R.D. at 528 (permitting the plaintiff to ask the defendants whether certain financing transactions at issue constituted "a sale for legal purposes in that they were a transaction that transferred title and ownership of a security or securities to a third party"). This request for admission is relevant, because it seeks evidence about Mr. Pratt's relationship with Real Estate Law and evidence whether a common enterprise existed. Mr. Pratt's objections about whether New Mexico has shown that he violated New Mexico law and about the State Bar of California disciplinary actions are still irrelevant. See Motion ¶ 11, at 4; Good Faith Response ¶ 7, at 2; First Response at 5. Mr. Pratt swears that he drafted the contracts between Real Estate Law and its clients, see Motion

for Change of Venue at 14, and a reasonable inquiry requires that Mr. Pratt look at the copy of the contract that New Mexico attached to its Requests for Admission.

Mr. Pratt's answer to Request No. 8 is also insufficient. See Motion ¶ 22, at 7. Although Mr. Pratt uses the word deny in the request for admission, see Motion ¶ 22, at 7; Fed. R. Civ. P. 36(a)(4); Stark-Romero v. National Railroad Passenger (AMTRAK), 275 F.R.D. at 558, the Court cannot determine whether Mr. Pratt denies the request or if he adds the word "DENY" to emphasize his objection. See Motion ¶ 23, at 7 ("OBJECTION irrelevant as to 'consumers' who were NOT new mexico [sic] residents or clients. DENY." (sic added in Motion)). Mr. Pratt's objections do not persuade the Court. The request for admission is not irrelevant, because, if Real Estate Law required all clients to pay its fees through one of the several means that the request for admission specifies, the requirement would apply to New Mexico consumers and non-New Mexico clients alike. See Motion ¶ 25, at 7. Contra First Response at 6. Moreover, the request for admission is relevant, because the suit centers around the advance payments that the Defendants required their clients make. See, e.g., Complaint ¶ 23, at 6. New Mexico's reference to Exhibit C and Mr. Pratt's statement that "the Document speaks for itself" imply that a document attached to the Requests for Admission contains information relevant to Request No. 8. See First Response at 6. The Court overrules Mr. Pratt's objection to Response No. 8 and requires him to re-respond. Mr. Pratt should have the information after a reasonable inquiry to respond to this request, because he can look at the document attached as Exhibit C.

Mr. Pratt's answer to Request No. 11 is insufficient. See Motion ¶ 27, at 8. Although Mr. Pratt denies the request for admission, he denies the request allegedly because he has insufficient information to answer the request. See Motion ¶ 27, at 8. Mr. Pratt cannot deny a request for admission based on insufficient information; he must state that, after a reasonable

inquiry, the information he has and can reasonably obtain is insufficient to answer the request for admission.  See Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558.  Mr. Pratt also must make a reasonable inquiry before making this statement.  See Fed. R. Civ. P. 36(a)(4); Duran v. Curry Cty. Adult Det. Ctr., 2012 WL 12919373, at *5.  Mr. Pratt appears to have responded to Request No. 11 based only on his memory, because he insists in his response and in his First Response that he does not recall the cases to which New Mexico refers.  See Motion ¶ 27, at 8; First Response at 6-7.  In the Good Faith Response, Mr. Pratt adds that he does not have the case's files, books, or records.  See Good Faith Response ¶ 8, at 2.

The reasonable inquiry requirement demands that a party do more than rely on the party's memory or on the files immediately accessible to the party; a party may need to review documents and question persons within its control, including counsel, parties with a shared interest in the lawsuit, third parties who discussed information in a deposition, or third parties who reasonably would have the information.  See S.E.C. v. Goldstone, 300 F.R.D. at 526 ("A reasonable inquiry means that a party has to ask their counsel, and if their counsel knows the answer, they need to use that information to admit or deny the RFA." (citing Stark–Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558; T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. at 43)); Price v. Takata Corp., No. CIV 07-0760 JCH/WPL, 2008 WL 11319692, at *6 (D.N.M. May 29, 2008)(Lynch, M.J.)(requiring a party to answer a request for admission where the party had a prior relationship with the entity that possessed the information and both the party and the entity with the information were parties to the lawsuit); Harris v. Oil Reclaiming Co., 190 F.R.D. 674, 679 (D. Kan. 1999)(Murguia, M.J.)(requiring a party to verify a document's genuineness for a request for admission by contacting the certified public accountant whose

name, address, and telephone number were listed in a document's heading); T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. at 43.

Mr. Pratt must engage in a reasonable inquiry before he responds to Request No. 11. By responding that he does not recall the information in question, Mr. Pratt implies that he at one time possessed the information. See A. Farber & Partners, Inc. v. Garber, 237 F.R.D. 250, 256 (C.D. Cal. 2006)(Chapman, J.)(describing the defendants' failure to make a reasonable inquiry as "especially galling when they claim they do 'not recall' -- since that response clearly implies that, at one time, they possessed the necessary information to respond to the Requests for Admission and have now chosen not to refresh their recollections"). Mr. Pratt should review Real Estate Law's files, books, and records before responding the request for admission. Mr. Pratt should attempt to obtain the files, books, and records or to determine their locations. Mr. Pratt could contact his CCo-Defendants or his former co-workers or, if he filed the documents with an electronic docket system to which he has access, he could obtain the records through this electronic system. Cf. Drutis v. Rand McNally & Co., 236 F.R.D. 325, 331 (E.D. Ky. 2006)(Todd, M.J.)("[A]n answering party must conduct a reasonable inquiry and answer a RFA if the information is readily obtainable, even though the answering party has no personal knowledge of the facts."); Concerned Citizens of Belle Haven v. Belle Haven Club, 223 F.R.D. 39, 44 (D. Conn. 2004)(Fitzsimmons, M.J.)("'The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but not strangers. The operative words are reasonable and due diligence.'" quoting Henry v. Champlain Enters., 212 F.R.D. 73, 78 (N.D.N.Y. 2003)(Treece, M.J.))); T. Rowe Price Small-Cap Fund, Inc. v. Oppenheimer & Co., Inc., 174 F.R.D. at 43 ("'Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or

other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response.'" (quoting Herrera v. Scully, 143 F.R.D. at 548)).  Neither inquiry seems unreasonable.  In many respects, accessing an electronic docket system to download files may prove less burdensome than contacting co-workers and obtaining physical documents.  If, after a reasonable inquiry, Mr. Pratt cannot respond to Request No. 11, he may state that he has insufficient information to respond to the request for admission.

Mr. Pratt's response to Request No. 12 is also insufficient.  See Motion ¶ 31, at 9.  Like Mr. Pratt's response to Request No. 11, Mr. Pratt's response to Request No. 12 denies the request for admission, but Mr. Pratt bases the denial on Mr. Pratt's alleged insufficient information to answer the request.  See Motion ¶ 31, at 9.  As the Court discusses in relation to Mr. Pratt's response to Request No. 11, Mr. Pratt cannot deny a request for admission based on insufficient information.  He must state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to answer the request for admission.  See Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558.  Before responding to Request No. 12 with this statement, however, Mr. Pratt must make a reasonable inquiry like that which the Court asks him to perform before he re-responds to Request No. 11.  See Fed. R. Civ. P. 36(a)(4); Duran v. Curry Cty. Adult Det. Ctr., 2012 WL 12919373, at *5.  Mr. Pratt's objection does not persuade the Court, because he can and should debate the issue whether dismissing a lawsuit is improper, which he raises in his response to Request No. 12, see Motion ¶ 31, at 9, in a dispositive motion or at trial rather than when responding to the Requests for Admission.

Mr. Pratt's response to Request No. 13 has the same problems as his responses to Requests Nos. 11 and 12.  See Motion ¶ 35, at 9.  Mr. Pratt again denies the request for admission, but bases the denial on his alleged insufficient information to response to the request.  See Motion ¶ 35, at

9.  Mr. Pratt must engage in a reasonable inquiry before responding to New Mexico's request for admission.  See Fed. R. Civ. P. 36(a)(4); Duran v. Curry Cty. Adult Det. Ctr., 2012 WL 12919373, at *5.  Then, he may either admit or deny the request for admission, or, if he still lacks sufficient information to answer the request for admission, state that, after a reasonable inquiry, the information he has and can reasonably obtain is insufficient to respond to the request for admission.  See Fed. R. Civ. P. 36(a)(4); Stark-Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558.  Mr. Pratt must re-respond to Request No. 13.

Mr. Pratt also responds improperly to Request No. 14.  See Motion ¶ 39, at 10.  Although Mr. Pratt purportedly denies the request for admission, see Motion ¶ 39, at 10; Fed. R. Civ. P. 36(a)(4); Stark-Romero v. National Railroad Passenger (AMTRAK), 275 F.R.D. at 558, the Court cannot determine comfortably whether Mr. Pratt actually denies the request for admission, or if he adds the word "DENY" to emphasize his objection that the request for admission is "irrelevant and immaterial."  Motion ¶ 39, at 10 ("OBJECTION irrelevant and immaterial as to any non-new mexico [sic] cases.  DENY.  DENY as totally false." (sic added in Motion)).  Mr. Pratt's objections do not convince the Court.  Like Request No. 8, the request is relevant, because whether all the cases that Mr. Pratt filed with Real Estate Law were dismissed relates to this case to the extent that the cases involved New Mexico consumers.  See Motion ¶ 38, at 10.  Moreover, whether all the cases were dismissed is relevant to Mr. Pratt's culpability as he continued to file such suits.  See 12 U.S.C. § 5565(c)(2); N.M. Stat. Ann. § 47-15-7(D); N.M. Stat. Ann. § 57-12-11.  Mr. Pratt can argue the statement's veracity in the request for admission, see Good Faith Response ¶ 14, at 2; First Response at 7, in a dispositive motion, or at trial.

Mr. Pratt also responds improperly to Request No. 15.  See Motion ¶ 39, at 10.  Again, although Mr. Pratt denies the request for admission, see Motion ¶ 39, at 10; Fed. R. Civ. P.

36(a)(4); <u>Stark-Romero v. National Railroad Passenger (AMTRAK)</u>, 275 F.R.D. at 558, the Court believes that Mr. Pratt's statement is ambiguous, because, as Mr. Pratt denies the request for admission, he simultaneously objects to the request for admission, <u>see</u> Motion ¶ 39, at 10 ("OBJECTION totally irrelevant as no 'attorney client' trust account was required for hourly cases. DENY and not required for fee cases."). Mr. Pratt may deny the fact that New Mexico asks him to admit or he may state that he denies the request for admission, because he objects to the request for admission. Mr. Pratt's objections do not persuade the Court. The request for admission is relevant, because 12 C.F.R. § 1015.7 exempts an attorney from certain Regulation O provisions if the attorney "[c]omplies with state laws and regulations that cover the same type of conduct the rule requires." 12 C.F.R. § 1015.7. New Mexico requires: "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." N.M. R. Ann. 16-115(C). Moreover, 12 C.F.R. § 1015.7 exempts an attorney from § 1015.5 if the attorney "[d]eposits any funds received from the consumer prior to performing legal services in a client trust account." 12 C.F.R. § 1015.7. California's law is irrelevant to Request No. 15's relevance to this lawsuit based on activities performed for New Mexico clients. <u>Contra</u> Good Faith Response ¶ 15, at 2.

Accordingly, the Court will order Mr. Pratt to re-answer Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15. Mr. Pratt must format his answers as the Federal Rules of Civil Procedure require. <u>See</u> Fed. R. Civ. P. 36(a)(4); <u>Stark-Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558. Mr. Pratt may admit or specifically deny the Requests for Admission. <u>See</u> Fed. R. Civ. P. 36(a)(4); <u>Stark-Romero v. Nat'l R.R. Passenger (AMTRAK)</u>, 275 F.R.D. at 558. He must reasonably inquire into the responses for the Requests for Admission. <u>Cf.</u> <u>Duran v. Curry Cty. Adult Det. Ctr.</u>, 2012 WL 12919373, at *5 (citing <u>Asea, Inc. v. S. Pac. Transp. Co.</u>, 669 F.3d at

1247)).  If, after a reasonable inquiry, he lacks sufficient information to respond to the requests for admission, he may state "that [he] has made reasonable inquiry and that the information [he] knows or can readily obtain is insufficient to enable [him] to admit or deny."  Fed. R. Civ. P. 36(a)(4).  See Romero v. Nat'l R.R. Passenger (AMTRAK), 275 F.R.D. at 558.  Mr. Pratt signs these responses under rule 11 of the Federal Rules of Civil Procedure and is subject to sanction if he violates rule 11.  See Fed. R. Civ. P. 11(b), (c).

## II.    BECAUSE THE COURT GRANTS NEW MEXICO'S MOTION, THE COURT AWARDS NEW MEXICO THE REASONABLE ATTORNEY'S FEES AND COSTS IT INCURRED BY BRINGING THE MOTION.

The Court grants New Mexico's request for reasonable attorney's fees and costs for bringing this Motion.  See Tr. at 6:20-23 (Anaya-Allen).  The Court may choose not to grant reasonable attorney's fees and costs if: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(5)(A)(i)-(iii).  "The Supreme Court [of the United States] has defined 'substantially justified' as 'not justified to a high degree' but 'justified to a degree that could satisfy a reasonable person.'"  Layng v. Rael (In re Rael), 753 F. App'x 649, 657 (10th Cir. 2018)(unpublished)(quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)).  New Mexico sent a good faith letter in an attempt to resolve the discovery disputes outside court.  See Motion ¶ 3, at 2. Mr. Pratt sent the Good Faith Response in response to this letter, see Good Faith Response at 1 ("In an attempt to 'meet & confer' on discovery in response to your letter of JANUARY 7, 2019, I attempt to answer you here."), so the Court will not deny New Mexico reasonable attorney's fees and costs on the grounds that the movant did not attempt to resolve the dispute outside court, see Fed. R. Civ. P. 37(d)(5)(A)(i).

Mr. Pratt does not substantially justify his failure to follow the Federal Rules of Civil Procedure, so the Court will also not deny New Mexico reasonable attorney's fees and costs because of Mr. Pratt's substantial justification. See Fed. R. Civ. P. 37(d)(5)(A)(ii). Mr. Pratt gives no justification that would satisfy a reasonable person. See Layng v. Rael (In re Rael), 753 F. App'x at 657 (quoting Pierce v. Underwood, 487 U.S. at 565). He provides no excuse for his to the Requests for Admission and did not even appear at the hearing. Cf. Armijo v. Intel Corp., No. CIV 06-0635 JB/RHS, 2007 WL 5232455, at *3 (D.N.M. Aug. 4, 2007)(Browning, J.)("Aramark has not responded to any of Armijo's discovery requests or to this motion. Consequently, Armijo is also entitled to reasonable attorney's fees and costs associated with preparing his motion.")

No other circumstances make awarding New Mexico reasonable attorney's fees and costs unjust, see Fed. R. Civ. P. 37(d)(5)(A)(iii), but multiple factors counsel toward granting New Mexico reasonable attorney's fees and costs. Mr. Pratt seems to have made no attempts to engage in reasonable inquiries; he refuses to respond to requests for admission for which a reasonable inquiry involves only observing the exhibits that New Mexico attaches to its Requests for Admission. See Motion ¶ 15, at 5; id. ¶ 23, at 7; id.¶ 27, at 8; id.¶ 30, at 9; id.¶ 34, at 9. He raises obfuscatory objections to intelligible and relevant requests for admission. See Motion ¶ 23, at 7; id.¶ 39, at 10; id.¶ 43, at 11. He alleges that he needs expert testimony to answer Requests for Admission about documents that he swears to have drafted. See Motion ¶ 10, at 4; id.¶ 19, at 6. "Requests for admission are designed to narrow the issues and thus reduce the need for discovery on matters that are not really in dispute." Hatchett v. United Parcel Serv., Inc., No. CIV 13-1183 MCA/SMV, 2014 WL 12786897, at *3 (D.N.M. Oct. 1, 2014)(Vidmar, M.J.). Mr. Pratt wastes the parties and the Court's time and expenses by submitting obstinate answers without attempting

to satisfy rule 36's standards.  Moreover, Mr. Pratt has delayed New Mexico's attempts to resolve these discovery disputes.  He filed the First Response eighteen days late.  The Court, accordingly, will order Mr. Pratt to pay the reasonable attorney's fees and costs that New Mexico incurred in pursuing the Motion.

III.    **THE COURT WILL NOT GRANT MR. PRATT'S REQUEST IN THE SECOND RESPONSE, BECAUSE NEW MEXICO DID NOT FILE A MARCH 21, 2019, <u>MOTION TO COMPEL</u>.**

The Court sees no reason to sanction New Mexico.  New Mexico filed no motion to compel on March 21, 2019.  <u>Contra</u> Second Response ¶ 2, at 1.  New Mexico filed the Motion on January 23, 2019.  <u>See</u> Motion at 17.  Mr. Pratt filed the First Response in response to the Motion, <u>see</u> First Response at 1 (arguing that Mr. Pratt's "responses to Requests for Admission . . . were complete, proper, and sufficient making this motion totally un-necessary"), so he received the Motion.  The Court cannot determine what document Mr. Pratt believes that he did not receive.  The Court held the hearing on the Motion on March 19, 2019 -- two days before March 21, 2019.  <u>See</u> Clerk's Minutes at 1.  On March 21, 2019, three items were filed, but none of the items resembles a motion to compel.  Mr. Pratt filed the Confidential Statement of Mr. Pratt (Doc. 119), in which he contends that he does not need to appear for the March 25, 2019, settlement conference.  <u>See</u> Confidential Statement of Mr. Pratt at 1.  The Court' Courtroom Deputy filed the Clerk's Minutes (Doc. 120), and Magistrate Judge Fashing's Order "denying defendant Deepak S. Parwatikar's request to appear telephonically for the Mach 25, 2019 settlement conference" (Doc. 121).[10]  The Court will not sanction New Mexico for not serving Mr. Pratt with a motion to compel that neither

_____

[10]Magistrate Judge Fashing's Order is a text-only entry on CM/ECF.  It has no document associated with it.

the Court nor New Mexico believes exists. <u>See</u> Reply at 2. Accordingly, the Court grants the Motion and denies Mr. Pratt's request in the Second Response.

**IT IS ORDERED** that: (i) the Plaintiff's Motion to Determine Sufficiency of Defendant Pratt's Responses to Plaintiff's Requests for Admission, filed January 23, 2019 (Doc. 107)("Motion"), is granted; (ii) Defendant Chad T. Pratt's request in the Opposition to motion to determine sufficiency of requests for admission by state of new mexico, filed March 25, 2019 (Doc. 124), is denied; (iii) Mr. Pratt will re-respond to Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15, in Plaintiff State of New Mexico's Requests for Admission; (iv) Mr. Pratt will review the Court's discussions of requests for admission in <u>S.E.C. v. Goldstone</u>, 300 F.R.D. 505 (D.N.M. 2014)(Browning, J.), <u>Brown v. Montoya</u>, No. CIV 10-0081 JB/ACT, 2013 WL 1010390 (D.N.M. March 8, 2013)(Browning, J.); <u>Stark-Romero v. National Railroad Passenger (AMTRAK)</u>, 275 F.R.D. 551 (D.N.M. 2011)(Browning, J.), and <u>Radian Asset Assurance, Inc. v. Colleges of Christian Brothers of New Mexico</u>, No. CIV 09-0885 JB/DJS, 2010 WL 5173571 (D.N.M. Nov. 11, 2010)(Browning, J.), and respond to Requests Nos. 1, 4, 5, 7, 8, 11, 12, 13, 14, and 15 in accordance with the Court's previous rulings on requests for admission; and (v) Mr. Pratt will pay New Mexico the reasonable attorney's fees and costs it incurred in filing the Motion.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Hector H. Balderas
  Attorney General of the State of New Mexico
Angelica Anaya-Allen
  Assistant Attorney General of the State of New Mexico
Santa Fe, New Mexico

*Attorneys for the Plaintiff*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Pinnacle Law Center, PC , Balanced Legal Group, and Deepak S. Parwatikar*

Erikson M. Davis
Newbury Park, California

*Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

*Defendant pro se*