# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

        Plaintiff,

vs.                                                  No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) Plaintiff's Motion to Provide Notice Under Rule 807 and to Establish Unavailability of Witness, filed April 26, 2019 (Doc. 133)("Unavailability Motion"); (ii) Plaintiff's Pretrial Motion under Rule 902 to Provide Notice of Plaintiff's Intent to Offer Bank Records, filed April 26, 2019 (Doc. 134)("Bank Records Motion"); and (iii) the objection of Defendants Deepak S. Parwatikar, Balanced Legal Group, Pinnacle Law Center, P.C. (collectively, the "Parwatikar Defendants"), to the Second Declaration

and Affidavit of Caroline A. Dewey (executed June 6, 2016), filed May 24, 2019 (Doc. 143-1)("Second Dewey Aff."), in the Defendant Parwatikar's Objections to Plaintiff's Untimely Filings and Disclosures, filed May 25, 2019 (Doc. 147)(hereinafter, the "Objection"). The Court held a hearing on May 28, 2019. See Clerk's Minutes at 1, filed May 28, 2019 (Doc. 151). The primary issues are: (i) whether the Court should deem Caroline A. Dewey unavailable for purposes of rule 804 of the Federal Rules of Evidence, which provides hearsay exceptions for unavailable declarants, because she is deceased, and deem the First Dewey Affidavit[1] and the Second Dewey Aff. (collectively, the "Dewey Affidavits"), admissible pursuant to rule 807 of the Federal Rules of Evidence, the residual hearsay exception; (ii) whether the Court should disregard the Second Dewey Aff., pursuant to rule 37(c) of the Federal Rules of Civil Procedure, providing sanctions for failures to disclose pursuant to rule 26 of the Federal Rules of Civil Procedure's requirements, because Plaintiff State of New Mexico untimely disclosed the Second Dewey Aff.; and (iii) whether the Court should deem authenticated pursuant to rule 902(11) of the Federal Rules of Evidence, providing for authentication of domestic business records through certification of the record's custodian, and admissible, pursuant to rule 803(g) of the Federal Rules of Evidence, the business records hearsay exception, Bank Records of "accounts belonging to" Defendants Balanced Legal Group and Pinnacle Law Center, P.C. Bank Records Motion ¶ 2, at 1. The Court concludes that: (i) Dewey is unavailable, and that the Dewey Affidavits do not meet rule 807's requirements and are inadmissible; (ii) the Second Dewey Aff.'s late disclosure is harmless, so the Court would allow its admission were it admissible; and (iii) the Court will deem the Bank Records

---

[1]Neither party has provided the Court this document so the Court cannot provide a citation for it, but the Court takes Plaintiff State of New Mexico's word that it exists.

authenticated, because Parwatikar Defendants, and Defendant Chad T. Pratt concede their authenticity, but the Court will not make other admissibility rulings. The Court accordingly grants in part and denies in part the Unavailability Motion, grants in part and denies in part the Bank Records Motion, and overrules the Objection.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act[, N.M. Stat. Ann. §§ 47-15-1 to -8 ("MFCFPA")], Mortgage Assistance Relief Services (MARS) Rule[, 12 C.F.R. § 1015 ("MARS Rule")], the New Mexico Unfair Practices Act[, §§ 57-12-1 to -26 ("NMUPA"),] and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Defendants Real Estate Law Center, P.C. and Erikson M. Davis,[2] of the Parwatikar Defendants, and of Mr. Pratt. See Complaint ¶¶ 9-15, at 4-5. Davis, Mr. Pratt, and Mr. Parwatikar are residents of the State of California, and Mr. Pratt and Mr. Parwatikar are attorneys licensed in the State of California. See Complaint ¶¶ 10-12, at 4-5. Davis has been disbarred in California. See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited June 22, 2019). Neither Davis nor Mr. Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11,

---

[2]Davis is currently disbarred in California. See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited June 22, 2019).

at 4-5. Real Estate Law and Pinnacle Law are "Professional Corporation[s] registered in California." Complaint ¶¶ 9, 13, at 4-5. Balanced Legal "is a California law firm owned and/or managed by Parwatikar." Complaint ¶ 14, at 5.

Mr. Pratt owned and managed Real Estate Law from September, 2011, to September, 2013. See Complaint ¶ 37, at 8. Davis "assumed ownership of" Real Estate Law in 2013. Complaint ¶ 20, at 6. Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Mr. Parwatikar owns, Complaint ¶ 38, at 8; see id. ¶ 21, at 6, and Real Estate Law pays Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6. Balanced Legal "uses" the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law. Complaint ¶ 34, at 8.

Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico although RELC [(Real Estate Law)] and its attorneys are not licensed to practice law in New Mexico." Complaint ¶ 16, at 5. Real Estate Law "has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications." Complaint ¶ 17, at 5. Real Estate Law "has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms." Complaint ¶ 18, at 5. The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees." Complaint ¶ 23, at 6. Balanced Legal "offers legal services including loan modification and bankruptcy services" via a website "accessible to New Mexico consumers." Complaint ¶ 33, at 7-8.

On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that **"[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint).

## PROCEDURAL BACKGROUND

New Mexico alleges that: (i) the Defendants violated the MARS Rule by accepting advance payment for mortgage relief services, and/or Mr. Parwatikar and Pinnacle Law substantially assisted other Defendants' violations, see Complaint ¶¶ 77-85, at 18-19; (ii) the Defendants, willfully and in bad faith, violated the MFCFPA, by failing to provide required warnings, notices, and disclosures, by failing to give New Mexico homeowners twenty-four hours before signing attorney-client agreements, and by requiring advance payment for their services, see Complaint ¶¶ 86-101, at 19-22; and (iii) the Defendants knowingly engaged in unlawful conduct violating the NMUPA by requiring advance fees and monthly maintenance fees while filing sham lawsuits, by leading New Mexico consumers to believe that the Defendants performed valuable legal services when the Defendants filed sham lawsuits with no value for New Mexico consumers, and by allowing New Mexico consumers to believe that the Defendants will defend foreclosure lawsuits, see Complaint ¶¶ 102-08, at 22-23. New Mexico asks that the Court enjoin the Defendants from continuing such violations, see Complaint ¶¶ 109-11, G, at 23-24, and requests restitution, disgorgement, civil penalties, and costs as the MARS Rule, the MFCFPA, and the NMUPA permit, see Complaint ¶¶ (A)-(F), at 24.

The Parwatikar Defendants and Mr. Pratt are the only Defendants with liability issues remaining in this case. On June 11, 2018, the Court entered a default judgment against Real

Estate Law on all liability issues, "reserving the issues of relief, including disgorgement, restitution and civil penalties." Default Judgment Against Real Estate Law Center at 1, filed June 11, 2018 (Doc. 75). See id. at 1-2. On November 5, 2018, the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, recommended entering a default judgment against Davis on issues of liability, reserving for litigation the issues of relief, see Proposed Findings and Recommended Disposition at 4, filed November 5, 2018 (Doc. 91), and, on January 18, 2019, the Court adopted Magistrate Judge Fashing's recommendation, see Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition at 2, 9, 2019 WL 259121, at *1, *4, filed January 18, 2019 (Doc. 106). In the Memorandum Opinion and Order, filed July 2, 2019 (Doc. 183)("MOO"), the Court granted summary judgment in the Parwatikar Defendants' and Mr. Pratt's favor on New Mexico's NMUPA claims, injunctive relief claims, and specific theories based on: (i) Davis' alleged MARS Rule violations; (ii) Balanced Legal and Pinnacle Law's violation of the MARS Rule independent of Real Estate Law; (iii) Mr. Parwatikar's and Mr. Pratt's participation in a common enterprise with Real Estate Law, Balanced Legal, and Pinnacle Law; and (iv) Mr. Pratt's reckless or knowing violation of the MARS Rule, or willful violation of the MFCFPA. See MOO at 183-84, 2019 WL 2804575, at *68.

1.     **The Unavailability Motion.**

New Mexico provides notice that one of the New Mexico consumers -- Dewey -- is deceased, and New Mexico seeks to qualify her "two sworn statements" -- the Dewey Affidavits -- executed before Dewey's death, as admissible evidence under rule 807. See Unavailability Motion at 1-2. New Mexico provides a Notice of Suggestion of Death, County of

Santa Fe, State of New Mexico, First Judicial District Court (filed December 20, 2016), filed in federal court April 26, 2019 (Doc. 133), with its Unavailability Motion. See Unavailability Motion at 3.

New Mexico explains that Dewey passed away on or about October 24, 2016, and that Dewey swore and affirmed the First Dewey Affidavit and the Second Dewey Aff. before notaries public on May 23, 2016, and June 6, 2016, respectively. See Unavailability Motion at 3. New Mexico argues that, according to rule 804(a), the Dewey Affidavits should be admitted because of Dewey's "unavailability and reliability under rule 807." Unavailability Motion at 3. New Mexico asserts that Dewey based her Dewey Affidavits on Dewey's personal knowledge and her experiences interacting with the Defendants. See Unavailability Motion at 3. According to New Mexico, "[a]s the facts presented in the affidavits are based on Ms. Dewey's personal knowledge and her specific experience with Defendants, no other source can provide the same facts contained in the Dewey affidavits." Unavailability Motion at 3. Further, New Mexico argues that the Dewey Affidavits' contents would not have been hearsay at trial if Dewey had been available and had testified to them. See Unavailability Motion at 3.

New Mexico asserts that there are five requirements that determine whether evidence is admissible under rule 807: trustworthiness, materiality, probative importance, the interests of justice, and notice. See Unavailability Motion at 3 (citing Lopez v. Miller, 915 F. Supp. 2d 373, 423 (E.D.N.Y. 2013)(Garaufis, J.)). New Mexico acknowledges that the United States Court of Appeals for the Tenth Circuit has held that rule 807 should be used only in "extraordinary circumstances." Unavailability Motion at 3 (citing United States v. Harrison, 296 F.3d 994, 1004 (10th Cir. 2002)). New Mexico argues that "circumstantial guarantees of trustworthiness,"

similar to hearsay exceptions under rules 803 and 804, adhere to the Dewey Affidavits, namely that the Dewey Affidavits resemble a recorded recollection and/or former testimony. See Unavailability Motion at 4. According to New Mexico, "[t]he affidavits serve as records of matters that Ms. Dewey knew about and she made these records when the facts of this matter were fresh in her memory. *See* Fed. R. Evid. 803(5)(A), (B). Moreover, the sworn statements 'accurately reflect the witness's knowledge.' Fed. R. Evid. 803(5)(C)." Unavailability Motion at 4. New Mexico argues that the Dewey Affidavits are similar to former testimony, admissible under rule 804, because, despite Dewey's expectation of and willingness to testify at trial, she cannot do so because of her death. See Unavailability Motion at 4 (citing Fed. R. Evid 804(a)(4)). New Mexico argues that Dewey's willingness to provide testimony at trial increases the probability that the Dewey Affidavits are truthful. See Unavailability Motion at 4. New Mexico asserts that Dewey swore the Dewey Affidavits' statements are true, and swore to the Dewey Affidavits before New Mexico notaries public, thereby satisfying rule 807(a)(1)'s trustworthiness requirement. See Unavailability Motion at 4.

New Mexico asserts that it intends to use the Dewey Affidavits as evidence of multiple material facts, thereby satisfying rule 807(a)(2)'s requirement that the evidence be material. See Unavailability Motion at 4. New Mexico asserts that the Dewey Affidavits evidence that Dewey was a victim of the Defendants' scheme within New Mexico and contain a story similar to the twenty-three other New Mexico consumers' accounts regarding the procedures that the Defendants use. See Unavailability Motion at 4.

New Mexico asserts that it has used extensive efforts to obtain evidence that would be more probative than the Dewey Affidavits on the points for which it offers the Dewey Affidavits, but

that it cannot obtain that evidence. <u>See</u> Unavailability Motion at 5. New Mexico asserts that the Defendants did not provide New Mexico with consumer records, so the records of "each transaction, each contract, and the correspondence between Defendants and the consumers had to be obtained from other sources." Unavailability Motion at 5. New Mexico argues that the quit-or-pay letter[3] that the Defendants sent to Dewey, which New Mexico states it includes as an exhibit to the Dewey Affidavits, demonstrates that: (i) the Defendants charged up-front retainer fees in violation of federal and state laws; and (ii) the Defendants would not perform services without first having their retainer fee paid in full. <u>See</u> Unavailability Motion at 5.

New Mexico argues that admitting the Dewey Affidavits will serve the rule 807's purposes and, pursuant to rule 807(a)(4), further the interests of justice. <u>See</u> Unavailability Motion at 5. New Mexico asserts that admitting the Dewey Affidavits furthers the interests of justice, because of the Dewey Affidavits' statements' trustworthiness and reliability, and because the stories and email communications that the New Mexico consumers independently provided corroborate the statements. <u>See</u> Unavailability Motion at 5. New Mexico also argues that it would be unjust to prevent Dewey's victimization from being presented solely on the basis that she is no longer alive to tell it. <u>See</u> Unavailability Motion at 5. New Mexico "requests an order of this Court establishing the unavailability of Dewey and the admissibility of her sworn statements." Unavailability Motion at 5.

### 2. The Unavailability Response.

The Parwatikar Defendants respond. <u>See</u> Defendant Parwatikar's Response to Plaintiff's Motion to Provide Notice Under Rule 807 and to Establish Unavailability of Witness at 1-4, filed

---

[3]Neither party has entered a copy of this document into the record.

May 10, 2019 (Doc. 139)("Unavailability Response").  The Parwatikar Defendants oppose the Unavailability Motion. See Unavailability Response at 1.  They summarize the Unavailability Motion, stating that New Mexico is seeking an order to establish Dewey as unavailable, and to admit the Dewey Affidavit and the attached exhibits.  See Unavailability Response at 2 (citing Unavailability Motion at 1, 6).  The Parwatikar Defendants note that New Mexico does not attach to the Unavailability Motion the First Dewey Affidavit, the Second Dewey Aff., or any of the exhibits that New Mexico wants to admit.  See Unavailability Response at 2.  Further, the Parwatikar Defendants assert that New Mexico does not provide Bates numbers for the Dewey Affidavits and, consequently, the Parwatikar Defendants have been unable to locate the Second Dewey Aff., despite conducting a "reasonable search."  Unavailability Response at 2.  The Parwatikar Defendants assert that the documents which New Mexico identifies with a Bates number do not appear to be attached to any affidavit and seem to refer to documents concerning: (i) a loan associated with a Jose Cedeno; and (ii) documents related to an Arlena Dickerson.  See Unavailability Response at 2.  The Parwatikar Defendants also note that the Dewey Affidavit to which they have access has a Bates number more than two thousand pages after the exhibits that New Mexico's initial disclosures reference.  See Unavailability Response at 2.  According to the Parwatikar Defendants, the "Plaintiff does not quote the Dewey affidavits in its Motion or even provide a summary of their contents."  Unavailability Response at 2.

The Parwatikar Defendants assert that New Mexico concedes that none of the exceptions under rules 803 and 804 apply, and invokes rule 807 instead.  See Unavailability Response at 2.  The Parwatikar Defendants contend that rule 807 requires "'reasonable notice'" of the "'intent to offer' hearsay evidence" and the "'particulars'" of the evidence so that the opposing party "'has

a fair opportunity'" to respond to it. Unavailability Response at 2 (emphasis omitted)(quoting Fed. R. Evid. 807(b)). The Parwatikar Defendants argue that New Mexico did not meet this requirement, because the Parwatikar Defendants cannot possibly respond to the admissibility of documents that they cannot identify with reasonable effort. See Unavailability Response at 2 (citing Fed. R. Evid. 807(b)). Further, the Parwatikar Defendants assert that, to make an "'informed ruling,'" the Court needs more context about the evidence that New Mexico is trying to admit. Unavailability Response at 2 (quoting United States v. Goxcon-Chagal, No. CR 11-2002 JB, 2012 WL 3249473, at *7 (D.N.M. Aug. 4, 2012)(Browning, J.), and citing Horne v. United Parcel Serv., No. CIV 10-312 JH/GBW, 2012 WL 13013065, at *3 (D.N.M. March 13, 2012)(Herrera, J.)).

The Parwatikar Defendants argue that, even if New Mexico has provided sufficient notice, rule 807 is reserved for the "'rarest of cases.'" Unavailability Response at 3 (quoting United States v. DeVillio, 983 F.2d 1185, 1190 (2d Cir. 1993)). The Parwatikar Defendants argue that New Mexico must show: (i) that the documents have "'equivalent circumstantial guarantees of trustworthiness' as evidence that satisfies Rules 803 or 804"; (ii) that the documents are material; (iii) that the documents are more probative than any other evidence obtainable with reasonable efforts; and (iv) that admitting the documents will serve the "'interests of justice.'" Unavailability Response at 3 (quoting Fed. R. Evid. 807). The Parwatikar Defendants argue that New Mexico has not shown "'exceptional circumstances'" which allow admission even though the documents do not fall under any of the rules 803 and 804 exceptions. Unavailability Response at 3 (quoting United States v. Trujillo, 136 F.3d 1388, 1395-96 (10th Cir. 1998)). The Parwatikar Defendants argue that, even though the Dewey Affidavits are allegedly sworn, the criteria for

admissibility are not met, because New Mexico has not provided any explanation: (i) why it would have been unable to depose Dewey; (ii) why it could not obtain other probative evidence while procuring the Dewey Affidavits; or (iii) how similarly situated Dewey is to the other consumers such that her statements might be material even though she has died. See Unavailability Response at 3.

The Parwatikar Defendants also argue that New Mexico filed the Unavailability Motion prematurely, because dispositive motions are pending with the Court. See Unavailability Response at 3 (citing Couture v. Bd. of Educ. of Albuquerque Pub. Sch., No. CIV 05-0972 JH/DJS, 2009 WL 10708112, at *9 (D.N.M. March 30, 2009)(Herrera, J.); Defendant Parwatikar's Response to Plaintiff's Pretrial Motion to Provide Notice of Plaintiff's Intent to Offer Bank Records, filed May 10, 2019 (Doc. 138)("Bank Records Response")). The Parwatikar Defendants argue that rule 807 requires a document to be "'offered as evidence of a material fact,'" and that the Parwatikar Defendants cannot discern which facts are material without knowing which parties and counts may proceed to trial. Unavailability Response at 4 (quoting Fed. R. Evid. 807(a)(2)). The Parwatikar Defendants reserve the right to object later to New Mexico's attempts to offer the Dewey Affidavits into evidence. See Unavailability Response at 4 (citing United States v. Crespin, 16 F.3d 417 (10th Cir. 1993)). The Parwatikar Defendants ask that, if the Court does not deny the Unavailability Motion on other grounds, it wait to consider the merits until it has resolved the pending dispositive motions.[4] See

---

[4]The dispositive motions pending at the time were the Notice of Motion, Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles; Dec. of Pratt, filed March 14, 2019 (Doc. 133), and the Defendant Deepak S. Parwatikar's Motion for Summary Judgment, filed April 25, 2019 (Doc. 132), which Mr. Pratt joins, see Pratt's Notice of Joinder of CHAD T-W PRATT, SR. in Motion for Summary Judgment, filed May 3, 2019 (Doc. 135).

Unavailability Response at 4 (citing <u>Couture v. Bd. of Educ. of Albuquerque Pub. Sch.</u>, 2009 WL 10708112, at *9).

**3.       Notice.**

New Mexico provides a Plaintiff's Notice of Correction to Motion to Provide Notice Under Rule 807 and to Establish Unavailability of Witness, filed May 24, 2019 (Doc. 143)("Notice"). New Mexico explains: "In the Motion, Plaintiff inadvertently referenced incorrect Bates numbering for the May 23, 2016, Caroline A. Dewey Affidavit and exhibits." Notice ¶ 2, at 1. New Mexico identifies the correct Bates numbers and asserts that it provided the First Dewey Affidavit in its initial disclosures. <u>See</u> Notice ¶¶ 3-4, at 1. New Mexico explains: "Plaintiff also inadvertently did not provide Defendants with an additional affidavit from Caroline A. Dewey, dated June 6, 2016, which identifies an email Ms. Dewey received after the first affidavit was completed." Notice ¶ 6, at 2. New Mexico attaches the Second Dewey Aff. to the Notice. <u>See</u> Notice ¶ 6, at 2. <u>See</u> <u>generally</u> Second Dewey Aff.

**4.       The Unavailability Reply.**

New Mexico replies. <u>See</u> Plaintiff's Reply in Support of Plaintiff's Pretrial Motion to Provide Notice Under Rule 807 and to Establish Unavailability of Witness at 1-3, filed May 24, 2019 (Doc. 144)("Unavailability Reply"). Preliminarily, New Mexico notes that Mr. Pratt does not respond. <u>See</u> Unavailability Reply at 1. New Mexico notes that the Parwatikar Defendants do not object to New Mexico's request that the Court issue an order establishing Dewey's unavailability. <u>See</u> Unavailability Reply ¶ 2, at 1. New Mexico acknowledges that it used the incorrect Bates numbers to reference the Dewey Affidavit and that it mistakenly failed to provide the Defendants with a copy of the Second Dewey Aff. as part of New Mexico's initial disclosures.

See Unavailability Reply ¶¶ 4-6, at 2.  New Mexico notes that it provided the Notice.  See Unavailability Reply ¶ 5, at 2.  New Mexico explains that, in the Notice, it provides the correct Bates numbers for the Dewey Affidavits and attaches the Second Dewey Aff. to the Notice.  See Unavailability Reply ¶¶ 5, 7, at 2.

New Mexico argues that it has complied with rule 807 by giving the Parwatikar Defendants and Mr. Pratt reasonable notice of its intent to offer the Dewey Affidavits as evidence, and by providing "the particulars of the evidence it intends to offer."  Unavailability Reply ¶ 10, at 2. New Mexico agrees to the Parwatikar Defendants' request that the Court postpone ruling on the Dewey Affidavits' admissibility until after the Court resolves the pending dispositive motions. See Unavailability Reply ¶ 12, at 2.  New Mexico asks that the Court acknowledge that New Mexico has provided notice in accordance with rule 807(b) and that Dewey is unavailable.  See Unavailability Reply at 3.

### 5. **The Objection.**

The Parwatikar Defendants object to New Mexico's Notice.  See Objection at 1-2.  The Parwatikar Defendants assert that they filed their Unavailability Response to the Unavailability Motion on May 10, 2019, and that, two weeks later, on the last business day before the scheduled May 28, 2019, hearing, New Mexico filed its Notice and its Unavailability Reply.  See Objection at 2.  The Parwatikar Defendants state that New Mexico changed all the Bates numbers that the Parwatikar Defendants had taken from the Unavailability Motion to formulate their Unavailability Response.  See Objection at 2.  Further, the Parwatikar Defendants assert that New Mexico had the Second Dewey Aff. for almost three years, but that New Mexico first disclosed it with the Notice.  See Objection at 2.  The Parwatikar Defendants argue that the Notice

substantially alters the Unavailability Motion and does not provide the Parwatikar Defendants with an adequate opportunity to respond.  See Objection at 2.

The Parwatikar Defendants argue that the Second Dewey Aff. is "so untimely disclosed that it must be excluded."  Objection at 2 (citing Fed. R. Civ. P. 37(c)(1)).  The Parwatikar Defendants assert that discovery closed on January 4, 2019.  See Objection at 2.  The Parwatikar Defendants contend that, when New Mexico requested an extended deadline for discovery, asking the Court for an extension until May 24, 2019, the Parwatikar Defendants opposed the requested extension and the Court subsequently deemed discovery closed as of January 9, 2019.  See Objection at 2.  The Parwatikar Defendant assert that New Mexico has continued to submit untimely disclosures, including supplemented discovery responses that were submitted on January 25, 2019, "without any explanation as to why the information could not have been provided earlier."  Objection at 3.  The Parwatikar Defendants assert that New Mexico supplemented its responses again, without explanation, following the parties' settlement conference.  See Objection at 3.  Further, the Parwatikar Defendants argue that, with the Notice, New Mexico has again produced untimely materials.  See Objection at 3.

The Parwatikar Defendants argue that New Mexico's pattern of untimely filings and disclosures has impacted the Parwatikar Defendants' ability to: (i) prepare for the settlement conference on March 25, 2019; (ii) present and anticipate defenses to the Defendant Deepak S. Parwatikar's Motion for Summary Judgment, filed April 25, 2019 (Doc. 132)("MSJ"); (iii) prepare for the May 28, 2019, hearing on the MSJ; and (iv) prepare for the trial set for July 8, 2019. Objection at 3.  The Parwatikar Defendants argue that the Court has authority to disregard the untimely disclosures and filings, or otherwise prohibit their use, and asks that the Court

exercise this authority.  See Objection at 3 (citing Fed. R. Civ. P. 37(c)(1); Lane v. Page, 250 F.R.D. 634, 642 (D.N.M. 2007)(Browning, J.)).

**6.      The Bank Records Motion.**

New Mexico files the Bank Records Motion to notify the Parwatikar Defendants and Mr. Pratt "of its intent to offer the bank records described below as evidence at trial."  Bank Records Motion at 1.  New Mexico describes that it provided the Parwatikar Defendants and Mr. Pratt the Bank Records, "bates-numbered NMOAG 003759 to 010399," on June 18, 2018.  Bank Records Motion ¶ 1, at 1.  According to New Mexico, the Bank Records consist of records regarding "accounts belonging to" Balanced Legal and Pinnacle Law.  Bank Records Motion ¶ 2, at 1.  New Mexico explains that it "intends to offer the evidence described above at trial under Rule 803(6) as records of a regularly conducted activity and to authenticate the records by certification that complies with Rule 902(11) in lieu of live testimony."[5]  Bank Records Motion ¶ 3, at 2 (citing Fed. R. Evid. 803(6)(D), 902(11)).  New Mexico explains that rule 803(6)(D) requires a showing, by custodian testimony or by certification complying with rule 902(11), that rule 803(6)(D)'s requirements are satisfied.  See Bank Records Motion ¶ 4, at 2.  New Mexico attaches to the Bank Records Motion the custodian's Affidavit of Bank of America Bank Office and/or Custodian of Records (executed April 27, 2018), filed April 26, 2019 (Doc. 134)("Certification"), see Bank Records Motion ¶ 5, at 2, and, because rule 902(11), "requires reasonable notice of the intent to offer certified domestic records of a regularly conducted activity to the adverse party," Bank Records Motion ¶ 6, at 2 (citing Fed. R. Evid. 902(11)), New

---

[5]The parties do not provide the Court the Bank Records.

Mexico provides the Parwatikar Defendants and Mr. Pratt the Bank Records Motion as notice, <u>see</u> Bank Records Motion ¶ 6, at 2.

New Mexico argues that the Bank Records are records of a regularly conducted business activity, as the Certification demonstrates and certifies. <u>See</u> Bank Records Motion at 3. New Mexico summarizes:

> The custodian's affidavit states that the records were made at the time by someone with knowledge; that the records were kept in the course of the regularly conducted activity of the bank; and that the making of the record was a regular practice of the bank. Because the custodian shows that the records meet the requirements of Rule 803(6)(A)-(C) in the attached certification, because reasonable notice is hereby given to Defendants, and because the records and certification have been made available for inspection by Defendants, the Bank of America Records satisfy the requirements and are admissible as an exception to the hearsay rule.

Bank Records Motion at 3. New Mexico contends that the Bank Records are not duplicative and are relevant, because they offer evidence of the Defendants' common enterprise. <u>See</u> Bank Records Motion at 3. New Mexico requests "that this Court enter an order granting its motion to admit the Bank of America Records as provided herein under Rule 902(11) and for such other relief as the Court deems proper." Bank Records Motion at 3.

In the Certification, Tia Cooper, "a duly authorized bank officer and/or custodian of the records of Bank of America N.A.," swears:

> The records produced herewith by Bank of America, N.A. are original documents or are true copies of records of a regularly conducted banking activity that:
>
> a.)    Were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
>
> b.)    Were made and kept in the course of regularly conducted banking activity by Bank of America, N.A. personnel or by persons acting under their control; and

c.) Were made and kept by the regularly conducted activity of Bank of America N.A. as a regular practice, on or about the time of the act, condition, or event recorded.

Certification ¶ 2, at 1.

### 7. **The Bank Records Response.**

The Parwatikar Defendants respond. See Bank Records Response at 1-3. The Parwatikar Defendants explain that they do not oppose the Bank Records Motion as notice of New Mexico's intent to offer the Bank Records into evidence, or to the Bank Records on rule 803(6) or rule 902(11) grounds. See Bank Records Response at 2. The Parwatikar Defendants oppose New Mexico's request that the Court admit, at the "juncture" when New Mexico filed the Bank Records Motion, "irrespective of other possible objections." Bank Records Response at 2. The Parwatikar Defendants aver that "[a] motion in limine can be 'premature' when dispositive motions are pending before the Court." Bank Records Response at 2 (quoting Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 2009 WL 10708112, at *9). According to the Parwatikar Defendants, at the time of the Bank Records Response, the parties had until mid-June, 2019, to file pretrial filings, and Mr. Pratt had pending the Notice of Motion, Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles; Dec. of Pratt, filed March 14, 2019 (Doc. 133), and the Parwatikar Defendants had pending the MSJ, which Mr. Pratt had joined, see Pratt's Notice of Joinder of CHAD T-W PRATT, SR. in Motion for Summary Judgment, filed May 3, 2019 (Doc. 135). See Bank Records Response at 2. The Parwatikar Defendants contend: "Because multiple dispositive motions are currently pending before the Court, Mr. Parwatikar cannot know whether he will be a party to the trial at all, let alone what grounds he may have to object to admitting these records as to any counts that remain against him." Bank Records Response at 2.

The Parwatikar Defendants reserve their right to make further objections should New Mexico offer the Bank Records into evidence, and ask that the Court deny New Mexico's request in the Bank Records Motion as premature "until dispositive motions have been resolved and the issues consequently narrowed, clarified, or mooted." Bank Records Response at 3. See Bank Records Response at 2-3.

8. **The Bank Records Reply.**

New Mexico makes three assertions in reply. See Reply in Support of Plaintiff's Pretrial Motion Under Rule 902 to Provide Notice of Plaintiff's Intent to Offer Bank Records ¶¶ 1-3, at 1-2, filed May 24, 2019 (Doc. 142)("Bank Records Reply"). Preliminarily, New Mexico indicates that Mr. Pratt does not respond to the Bank Records Motion. See Bank Records Reply at 1. Then, first, New Mexico notes that the Parwatikar Defendants do not oppose the Bank Records Motion as notice of New Mexico's intent to offer the Bank Records into evidence. See Bank Records Reply ¶ 1, at 1. Second, New Mexico indicates that it provided the Bank Records and the Certification to the Parwatikar Defendants for inspection. See Bank Records Reply ¶ 2, at 1. Third, New Mexico states that it complied with rule 902(11), "because: (1) it has given the adverse party reasonable written notice of its intent to offer the Bank of America Records, and (2) the Bank Records and the Certification have been made available for inspection so that the adverse party has been given a fair opportunity to challenge them." Bank Records Reply ¶ 3, at 1-2.

9. **The May 28, 2019, Hearing.**

The Court held a hearing on May 28, 2019. <u>See</u> Draft Transcript of Hearing at 1 (taken May 28, 2019)("Tr.").[6] New Mexico acknowledged the Parwatikar Defendants' preference that the Court decide the Unavailability Motion after it decides the other dispositive motions, stating that its goal for the hearing is to establish that: (i) Dewey is unavailable to testify; and (ii) New Mexico provides the notice that rule 807(b) requires. <u>See</u> Tr. at 69:4-11 (Giandomenico). New Mexico explained that it has the Dewey Affidavits and that New Mexico believes them to be admissible under rule 807, because Dewey's death before trial is a rare circumstance. <u>See</u> Tr. at 69:11-15 (Giandomenico). New Mexico argued that the Dewey Affidavits should be admitted, because of their trustworthiness, having been sworn before a New Mexico notary public. <u>See</u> Tr. at 69:20-23 (Giandomenico). New Mexico also argued that the Dewey Affidavits are corroborative of, and corroborated by, the information that the twenty-two other New Mexico consumers involved with Real Estate Law provide, but that the Dewey Affidavits are the only source showing a quit-or-pay letter regarding Real Estate Law's advance fees. <u>See</u> Tr. at 70:2-11 (Giandomenico). New Mexico explained that Mr. Pratt contends that he has no Real Estate Law records and that Mr. Parwatikar alleges that he has no evidence of Real Estate Law business transactions. <u>See</u> Tr. at 70:15-18 (Giandomenico).

New Mexico asked the Court if it wanted to consider the Dewey Affidavits' admissibility at the time of the hearing. <u>See</u> Tr. at 70:18-20 (Giandomenico). The Court asked New Mexico if it cites the Dewey Affidavits as evidence in the MSJ briefing. <u>See</u> Tr. at 70:21-22 (Court). New

---

[6]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Mexico responded that it referenced all the affidavits within the briefing, but that it did not specifically use the Dewey Affidavits. <u>See</u> Tr. at 70:23-24 (Giandomenico). The Court advised New Mexico that, if it wanted to go ahead and argue for the Dewey Affidavits' admissibility, it could do so. <u>See</u> Tr. at 71:1-3 (Court).

New Mexico largely reiterated the arguments from its briefing. <u>See</u> Tr. at 71:4-72:25 (Giandomenico). New Mexico argued that the caselaw allows parties to use rule 807 in "the rarest of cases," Tr. at 71:5 (Giandomenico), and that Dewey's death creates a rare situation, such that it would be unjust to leave her story untold, <u>see</u> Tr. at 71:4-8 (Giandomenico). New Mexico argued that the Dewey Affidavits provide corroborating evidence how Real Estate Law conducted its business; the Dewey Affidavits, in New Mexico's view, therefore, concern material facts like Dewey's status as a victim and that Real Estate Law demanded advance fees before serving consumers. <u>See</u> Tr. at 71:8-13 (Giandomenico); <u>id.</u> at 71:22-25 (Giandomenico). New Mexico reiterated that circumstantial guarantees of trustworthiness are present, because the Dewey Affidavits were sworn before a notary public, written, signed by Dewey, and received by the Attorney General of the State of New Mexico, and because they corroborate the same pattern of conduct that other New Mexico consumers explain. <u>See</u> Tr. at 71:16-22 (Giandomenico). New Mexico argued that Dewey's quit-or-pay letter is uniquely probative, because it is in writing rather than the oral testimony that other New Mexico consumers will offer. <u>See</u> Tr. at 72:3-7 (Giandomenico). New Mexico reiterated that it made reasonable efforts to obtain evidence from the Defendants, but that the Defendants alleged that they did not have documents or records or did not remember the events related to this trial. <u>See</u> Tr. at 72:7-10 (Giandomenico). New Mexico argued that admitting the Dewey Affidavits furthers the Federal Rules of Evidence goal of

facilitating fair trials and furthers the interests of justice. <u>See</u> Tr. at 72:11-14 (Giandomenico). According to New Mexico, Dewey adds to the story of Real Estate Law's acts and that her victimization deserves presentation to the Court. <u>See</u> Tr. at 72:14-21 (Giandomenico). New Mexico stated that it understands that the Court has discretion over admissions under rule 807 and asked that the Court consider admitting the Dewey Affidavits under that rule. <u>See</u> Tr. at 72:23-25 (Giandomenico).

The Court stated that it "paus[es] heavily" before admitting an affidavit under rule 807 and asked New Mexico if there are any cases suggesting that an affidavit would be appropriate 807 evidence. <u>See</u> Tr. at 73:5-9 (Court). New Mexico responded that the only cases it found where a court admitted an affidavit under rule 807 involve child abuse, but that the Tenth Circuit considers factors to determine trustworthiness, "including the statement's character, whether the statement is written or oral, the relationship of the parties, and the declarant's possible motivation in making the statement, as well as the circumstances under which the statement was made." Tr. at 73:14-18 (Giandomenico). <u>See</u> <u>id.</u> at 73:10-18 (Giandomenico). New Mexico argued that Dewey understood that: (i) she would be needed as a witness; (ii) she could be called to testify; (iii) she was giving an affidavit to the New Mexico Attorney General; and (iv) New Mexico had the sworn statement in writing. <u>See</u> Tr. at 73:19-22 (Giandomenico). New Mexico argued that the Dewey Affidavits have strong indicia of trustworthiness and reliability, and that Dewey's death was an "unusual" circumstance that would allow 807 to admit her testimony into evidence. Tr. at 74:2 (Giandomenico). <u>See</u> <u>id.</u> at 73:24-74:3 (Giandomenico).

New Mexico then explained that, in the Unavailability Motion, it made a mistake concerning the Bates numbers, but argued that the Parwatikar Defendants have had almost

everything that New Mexico referenced since the initial disclosures, except the Second Dewey Aff., which New Mexico has now provided. <u>See</u> Tr. at 74:6-15 (Giandomenico). New Mexico argued that, as soon as the Parwatikar Defendants referenced the Bates numbers problem, New Mexico provided its Notice and that the Parwatikar Defendants indicated the correct Bates numbers for the First Dewey Affidavit in their Unavailability Response, so they had a meaningful opportunity to review that document. <u>See</u> Tr. at 74:17-75:1 (Giandomenico).

The Court then asked the Parwatikar Defendants if they contested, in any way, Dewey's unavailability for trial or for testimony. <u>See</u> Tr. at 75:14-16 (Court). The Parwatikar Defendants responded that the Notice of Suggestion of Death is the only evidence suggesting Dewey's unavailability and that this notice, unlike an obituary or a death certificate, is not the best evidence that Dewey is deceased. <u>See</u> Tr. at 75:19-24 (Harrison). The Parwatikar Defendants argued that Dewey's unavailability under rule 804 is irrelevant, because the Dewey Affidavits do not meet a rule 804 exception. <u>See</u> Tr. at 75:24-76:1 (Harrison).

The Court asked why, if it assumed that Dewey is deceased, it should not consider admitting the Dewey Affidavits under rule 807. <u>See</u> Tr. at 76:7-8 (Court). The Parwatikar Defendants responded with two reasons: (i) the Parwatikar Defendants did not have access to the Second Dewey Aff. until New Mexico filed the Notice, so rule 37(c) should automatically bar the Second Dewey Aff. from trial; and (ii) a death of a witness is not among the rarest of circumstances necessary to allow admission under rule 807. <u>See</u> Tr. at 76:9-19 (Harrison). To bolster the second point, the Parwatikar Defendants argued that rule 804(a)(4) specifically contemplates the death of a witness and that none of the exceptions under rule 804 apply to the present matter, and that New Mexico has not argued that any of the rule 804 exceptions apply.

See Tr. at 76:20-25 (Harrison). The Parwatikar Defendants argued that affidavits are typically not admissible as evidence at trial and that nothing suggests that the Dewey Affidavits are any different from the typical affidavit in that regard. See Tr. at 77:4-7 (Harrison). The Parwatikar Defendants argued that the fact of two Dewey Affidavits suggests a problem, because rule 807 says that the evidence is admissible only if it is more probative on that fact than any other source of evidence that can be obtained through reasonable efforts. See Tr. at 77:7-11 (Harrison).

The Court asked the Parwatikar Defendants what bothers them about the Dewey Affidavits given that they resemble other New Mexico consumers' affidavits in this case. See Tr. at 77:12-17 (Court). The Parwatikar Defendants responded that they worry more about the "voluminous documents," Tr. at 77:20 (Harrison), attached as exhibits to the Dewey Affidavits, than the Dewey Affidavits themselves, which are "skeletal," Tr. at 77:20 (Harrison), and "repetitive," Tr. at 77:22 (Harrison), of evidence from other consumers, see Tr. at 77:18-23 (Harrison).

The Court responded by suggesting that New Mexico may introduce the exhibits through other hearsay exceptions and asked the Parwatikar Defendants why they take issue with the Dewey Affidavits specifically. See Tr. at 77:24-78:3 (Court). The Parwatikar Defendants replied that the Dewey Affidavits lay the foundation for the exhibits' admissibility and that the Court may not admit the exhibits if the Court does not admit the Dewey Affidavits. See Tr. at 78:6-9 (Harrison). The Parwatikar Defendants argue that the gap between when Dewey executed the First Dewey Affidavit and when she executed the Second Dewey Aff. suggests "there seems to be no reason why they couldn't have obtained some other kind of evidence that would have been better evidence that would have been more likely to be admissible." Tr. at 78:22-25 (Harrison). See id. at 78:17-25 (Harrison). The Court asked for an example of such evidence. See Tr. at 79:1

(Court). The Parwatikar Defendants suggested that a video deposition would have been more likely to be admissible and, when the Court pressed that a deposition could not occur before trial and noted that a video of sworn statements would simply constitute other evidence, the Parwatikar Defendants suggested that "there could be a rule 27 proceeding."[7] Tr. at 79:15 (Harrison). See Tr. at 79:2-15 (Harrison, Court). The Parwatikar Defendants maintained that New Mexico could have developed other means to introduce this evidence in the time between the First Dewey Affidavit, the Second Dewey Aff., and Dewey's death, and added that, since Dewey's death nearly three years ago, New Mexico could have pursued more avenues to obtain similar evidence. See Tr. at 79:16-80:6 (Harrison). The Parwatikar Defendants argued that rule 807 remains unmet on its face, even ignoring that use of the rule to admit evidence within the Tenth Circuit is disfavored, and that, given these circumstances, the issue is appropriate for decision at this juncture, rather than closer to trial. See Tr. at 80:6-11 (Harrison).

The Court then asked if the Second Dewey Aff. was being characterized as the quit-or-pay letter. See Tr. at 80:19-22 (Court). The Parwatikar Defendants responded that the Second Dewey Aff. has an email attached to it. See Tr. at 80:23-81:1 (Harrison). The Court then sought clarification about the voluminous exhibits that the Parwatikar Defendants referenced, because the Court did not see voluminous documents attached as exhibits. See Tr. at 81:2-7 (Court). The

---

[7]Rule 27 of the Federal Rules of Civil Procedure provides a "method of perpetuating testimony in cases where it is usually allowed under equity practice or under modern statutes." Fed. R. Civ. P. 27 advisory committee's note. Rule 27 "is available in special circumstances to preserve testimony which could otherwise be lost." Ash v. Cort, 512 F.2d 909, 912 (3d Cir. 1975). "Most petitions to perpetuate testimony have been granted when a witness is aged or gravely injured and in danger of dying or there are geographical constraints." In re Lopez, No. 10-CV-01149-BNB, 2010 WL 2802541, at *1 (D. Colo. July 15, 2010)(Brimmer, J.).

Parwatikar Defendants responded that the First Dewey Affidavit is not attached to a document before the Court and reiterated their arguments from their Unavailability Response about the Bates numbers. See Tr. at 81:8-21 (Harrsion). The Parwatikar Defendants again asserted that their main argument against the Second Dewey Aff. is that it is so untimely that the Court should automatically exclude it. See Tr. at 81:21-23 (Harrison). The Court asked if the First Dewey Affidavit is in the record. See Tr. at 82:1-3 (Court). The Parwatikar Defendants responded that they mentioned in their Unavailability Response that none of the documents had been placed in the record for the Court to view. See Tr. at 82:4-7 (Harrison). The Parwatikar Defendants argued that, in the initial disclosures, New Mexico identified the First Dewey Affidavit with Bates number range 2836 through 2837, but that, in the Notice, New Mexico corrects the range to 2836 through 2882, suggesting that New Mexico is now attempting to admit about fifty pages of additional exhibits attached to the First Dewey Affidavit. See Tr. at 82:7-18 (Harrison).

The Parwatikar Defendants then argued that it was appropriate to exclude the Dewey Affidavits immediately and asked that, if the Court is not inclined to exclude the evidence at present, the Parwatikar Defendants be permitted to object later to its use. See Tr. at 82:21-25 (Harrison). The Parwatikar Defendants specified that they ask the Court to exclude the Second Dewey Aff. under rule 37(c), and would object at a later point to the First Dewey Affidavit and its exhibits. See Tr. at 82:25-83:6 (Harrison). Mr. Pratt agreed with the Parwatikar Defendants' arguments, emphasizing that "it was untimely late."[8] Tr. at 83:12-13 (Pratt).

_____

[8]The Court expects that Mr. Pratt meant the Second Dewey Aff. when he said "it," but the Court cannot state with certainty to what Mr. Pratt referred.

New Mexico explained that, not only did the Parwatikar Defendants and Mr. Pratt not provide Real Estate Law's records, but New Mexico also could not obtain such records from Davis and Real Estate Law, which have both defaulted.  See Tr. at 83:20-24 (Giandomenico). New Mexico added that it deposed two Real Estate Law employees, but that neither could produce any Real Estate Law records.  See Tr. at 83:24-84:1 (Giandomenico).  New Mexico stated that it was going to put this information into the Unavailability Motion, but that it wanted to ensure that it provided requisite rule 807(b) notice.  See Tr. at 84:1-4 (Giandomenico).  New Mexico also stated that, in the Unavailability Motion, it referenced the First Dewey Affidavit by Bates numbers and did not attach the First Dewey Affidavit, and that it only attached the Second Dewey Aff. to the Notice because New Mexico realized that it had not previously produced that affidavit.  See Tr. at 84:4-9 (Giandomenico).  New Mexico reiterated that it is concerned that Dewey's story be presented to the Court, as failing to present it may be unjust.  See Tr. at 84:11-13 (Giandomenico).

The Court stated that it is inclined to think that the Court should declare, on the record, that Dewey is unavailable for trial.  See Tr. at 84:14-17 (Court).  The Court stated that it was not sure that pretrial affidavits from the middle of an investigation would satisfy rule 807's requirements, but that the Court would consult caselaw and give the matter further thought.  See Tr. at 84:18-22 (Court).  The Court stated that it would likely find that Dewey was unavailable and refrain from excluding the evidence because it was produced late, but that it would likely not find the Dewey Affidavits sufficiently reliable or trustworthy to admit under rule 807.  See Tr. at 84:24-85:4 (Court).

The Court and the parties turned to the Bank Records Motion. See Tr. at 85:4-9 (Court, Giandomenico). New Mexico summarized that it believed that the Bank Records should be admissible at trial, because the Bank Records and the Certification satisfy rules 803(6) and 902(11), and because it provided reasonable notice of its intent to introduce the Bank Records. See Tr. at 85:9-86:21 (Giandomenico). Mr. Pratt responded

> I would submit on what the other defense counsel would say. I think these records are superfluous, voluminous, they have nothing to do -- they invade other clients' rights to privacy. There was no notice given to -- I mean, just subpoenaing bank record's. Look, my understanding, which is very limited, I do not understand this case whatsoever, my understanding is that there [are] about ten New Mexico residents that allege I did something wrong, which I unequivocally deny. So then you get five years of bank records out of thousands of clients of RELC? It should be limited to those ten residents, period.

Tr. at 87:1-11 (Pratt). The Parwatikar Defendants repeated their arguments from the Bank Records Response. See Tr. at 87:16-88:6 (Harrison). The Court asked whether allowing other objections later would defeat rule 902's purposes. See Tr. at 88:7-12 (Court). The Parwatikar Defendants replied that challenging authentication later would be unfair, but that they had no intention of making such a challenge. See Tr. at 88:13-21 (Harrison). The Court clarified that the Parwatikar Defendants would admit authenticity but nothing more, see Tr. at 88:22-23 (Court), and the Parwatikar Defendants concurred with the Court's assessment, and specified that their objections on relevance or rule 403 grounds would turn on the claims, the parties, and the evidence going to trial, see Tr. at 88:24-89:4 (Harrison). The Court turned to New Mexico and asked whether New Mexico agreed that, under rule 902, the Court could decide for New Mexico no more than authenticity based on rule 902 and New Mexico agreed. See Tr. at 89:8-12 (Court, Giandomenico). Mr. Pratt also confirmed, in response to the Court's question, that he had no objections to

authenticity.  See Tr. at 89:13-17 (Court, Pratt).  The Court granted the Bank Records Motion on authenticity, but did not make a ruling on admissibility.  See Tr. at 89:18-20 (Court).

## RELEVANT LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  United States v. Christy, No. CR 10-1534 JB, 2011 WL 5223024, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(citing Fed. R. Evid. 802). Rule 801(c) of the Federal Rules of Evidence defines hearsay as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Courts deem hearsay generally unreliable and untrustworthy.  See Chambers v. Mississippi, 410 U.S. 284, 298 (1973)(noting that hearsay is generally untrustworthy and lacks traditional indicia of reliability); United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)("Hearsay is generally inadmissible as evidence because it is considered unreliable."  (citing Williamson v. United States, 512 U.S. 594, 598 (1994))); United States v. Console, 13 F.3d 641, 656 (3d. Cir. 1993)(stating that hearsay is "'inherently untrustworthy'" because of the lack of an oath, presence in court, and cross examination (quoting United States v. Pelullo, 964 F.2d 193, 203 (3rd Cir. 1992))).  Courts use three devices to illuminate inaccuracies in the testimonial proof: (i) the oath; (ii) personal presence at trial; (iii) and cross examination.  See 5 Jack Weinstein & Margaret Berger, Weinstein's Federal Evidence § 802.02[2][a], at 802-5 (Joseph McLaughlin ed., 2d ed. 2017)("Weinstein's Federal Evidence").  Courts view hearsay evidence as unreliable because it is not subject to an oath, personal presence in court, or cross examination, see, e.g., United States v. Console, 13 F.3d at 656; it is difficult to evaluate the credibility of out-of-court statements when these three safeguards are unavailable, see Weinstein's Federal Evidence § 802.02[3], at 802-6 to -7.

"Hearsay within hearsay" is admissible only "if each part of the combined statements conforms with an exception to the rule." Fed. R. Evid. 805. See, e.g., United States v. DeLeon, 316 F. Supp. 3d 1303, 1306 (D.N.M. 2018)(Browning, J.)(noting, after concluding that rule 803(8) provides an exception for law enforcement reports, that a hearsay issue remains regarding the statements within the reports); Wood v. Millar, No. CIV 13-0923 RB/CG, 2015 WL 12661926, at *4 (D.N.M. Feb. 19, 2015)(Brack, J.)(stating that witness statements in police reports, to which rule 803(8) applies, may be admissible under hearsay exclusions other than rule 803(8)); Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 6632524, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.)(excluding medical records, which themselves were inadmissible hearsay, although the statements within the medical records were opposing party statements). A statement that is otherwise hearsay, however, may be admissible for a purpose, such as impeachment, other than to prove the truth of the matter asserted. See United States v. Caraway, 534 F.3d 1290, 1299 (10th Cir. 2008)("We have already explained why the content of the statement, if used substantively, would be inadmissible hearsay. If admitted for impeachment purposes, however, it is not hearsay."). Likewise, "'[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.'" Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001)(quoting Fed. R. Evid. 801 advisory committee's note). Statements in the latter category include verbal acts --

> "statement[s] offered to prove the words themselves because of their legal effect (e.g., the terms of a will)." Black's Law Dictionary (10th ed. 2014). "A contract, for example, is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay." *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992). *See also Cagle v. The James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010)[(unpublished)].

Farley v. Stacy, No. 14-CV-0008-JHP-PJC, 2015 WL 3866836, at *5 (N.D. Okla. June 23, 2015)(Payne, J.), aff'd, 645 F. App'x 684 (10th Cir. 2016)(unpublished).

Rule 804 outlines hearsay exceptions that apply when a party is unavailable as a witness. See Fed. R. Evid. 804. A witness is unavailable where, among other situations, a witness "cannot be present or testify at the trial or hearing because of death." Fed. R. Evid. 804(a)(4). Under rule 804, where a witness is unavailable, a party may introduce evidence under rule 807. See Fed. R. Evid. 804(b)(5).

Rule 807 provides:

Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:

(1)     the statement has equivalent circumstantial guarantees of trustworthiness;

(2)     it is offered as evidence of a material fact;

(3)     it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4)     admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a). This rule provides further that "the statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it." Fed. R. Evid. 807(b).[9] The United States Court of Appeals for the

_____

[9]Rule 807 was added to the Federal Rules of Evidence in 1997, and represents a combination of the virtually identical former rules 803(24) and 804(b)(5). See 5 Jack B. Weinstein

First Circuit has summarized the policies that the residual hearsay exception serves: (i) "[t]o provide sufficient flexibility to permit the courts to deal with new and unanticipated situations"; (ii) "[t]o preserve the integrity of the specifically enumerated exceptions"; and (iii) "[t]o facilitate the basic purpose of the Federal Rules of Evidence: truth ascertainment and fair adjudication of controversies." United States v. Sposito, 106 F.3d 1042, 1048 (1st Cir. 1997)(citing 11 Moore's Federal Practice § 803(24)[7] (2d ed. 1994 & Supp. 1996-97)).  These purposes are consistent with many leading evidence scholars' suggestions over the past century and further rule 807's objective to make relevant evidence admissible.  See United States v. Moore, 824 F.3d 620, 624 (7th Cir. 2016)("The purpose of Rule 807 is to make sure that reliable, material hearsay evidence is admitted, regardless of whether it fits neatly into one of the exceptions enumerated in the Rules of Evidence.").

Given that rule 807 authorizes the admission of hearsay evidence outside the confines of a precise exception, courts interpret the residual exception to allow, in individual situations, for the admission of evidence of high probative value, but not for the creation of new categorical exceptions.  See United States v. Doe, 860 F.2d 488, 491 (1st Cir. 1988)(concluding that the residual exception criteria "involve considerations which are very trial-specific, such as the relative probative value of the hearsay statement and whether admitting the statement will best serve 'the interests of justice'" (quoting Fed. R. Evid. 803(24))).  But cf. Garner v. United States, 439 U.S. 936, 939 n.3 (1978)(Stewart, J., dissenting)("It seems to me open to serious doubt whether [the residual exception] was intended to provide case-by-case hearsay exceptions, or rather only to

---

& Margaret A. Berger, Weinstein's Federal Evidence, § 807.02 at 807-4 (Mark S. Brodin ed., 2d ed. 2018)(citing Fed. R. Evid. 807 advisory committee's note).

permit expansion of the hearsay exceptions by categories."). The residual hearsay exception is "meant to be reserved for exceptional cases," and is "not intended to confer 'a broad license' on trial judges 'to admit hearsay statements that do not fall within one of the other exceptions contained in rules 803 and 804(b).'" Conoco Inc., v. Dep't of Energy, 99 F.3d 387, 392 (Fed. Cir. 1996)(quoting S. Rep. No. 94-199, at 20 (1975)). See United States v. Trujillo, 136 F.3d at 1395-96 (stating that, because the residual hearsay exception is intended for "exceptional circumstances," proponents of such evidence bear a "heavy burden" when presenting the trial court with sufficient indicia of trustworthiness). Hence, evidence admitted pursuant to rule 807 must have "circumstantial guarantees of trustworthiness" comparable to those of the rule 803 exceptions.[10] United States v. Harrison, 296 F.3d at 1004-07 (holding that child sexual abuse

---

[10]Categories of information addressed in the rule 803's specific hearsay exceptions "have attributes of trustworthiness not possessed by the general run of hearsay statements that tip the balance in favor of introducing the information" despite its hearsay character. United States v. Fernandez, 892 F.2d 976, 981 (11th Cir. 1989). Moreover, several Courts of Appeals have concluded that guarantees of trustworthiness must be equivalent to statements made subject to cross-examination, statements made under a belief of impending death, statements against interest, and statements of personal or family history. See United States v. Banks, 514 F.3d 769, 777-78 (8th Cir. 2008)(observing that one way to approach rule 807 analysis is to compare circumstances of statement at issue to "'the closest hearsay exception'" (quoting 2 Broun, supra,§ 324); United States v. Fernandez, 892 F.2d at 981 (considering "those statements that are similar though not identical to hearsay clearly falling under one of the four codified exceptions, if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions"). The trial judge has broad discretion in this regard. See United States v. Harwood, 998 F.2d 91, 98 (2d Cir. 1993)(concluding that the residual exception applies only in rare cases and that a trial court's decision not to apply it can be reversed only for abuse of discretion); United States v. Mokol, 939 F.2d 436, 438 (7th Cir. 1991)(concluding that the judge has significant discretion in ruling upon admissibility); S.E.C. v. First City Fin. Corp., 890 F.2d 1215, 1225 (D.C. Cir. 1989)(stating that particular deference should be given to a trial court's determination, because the exception depends so heavily on judgment of reliability). The United States Court of Appeals for the Second Circuit considers the trustworthiness of hearsay offered under the residual hearsay exception in terms of the extent to which the statement is prone to the four classic hearsay risks -- (i) insincerity, (ii) faulty perception, (iii) faulty memory, and (iv) faulty narration. See Schering Corp. v. Pfizer,

victim's statement to Federal Bureau of Investigation ("FBI") agent had circumstantial guarantees of trustworthiness, even though victim recanted her statement, because the statement was consistent with her earlier statements and was specific, and victim was old enough to have the ability to remember the events). See United States v. Trujillo, 136 F.3d at 1395-96; United States v. Tome, 61 F.3d 1446, 1453 (10th Cir. 1995)(concluding that child's statement to caseworker identifying abuser, made a year after attack, lacked guarantees of trustworthiness); United States v. Farley, 992 F.2d 1122, 1126 (10th Cir. 1993). In United States v. Farley, for example, the Tenth Circuit admitted, pursuant to rule 807, a child sexual abuse victim's assault account, as given to the victim's mother, even though some statements were made the morning after the assault, because the victim was still suffering pain and distress from the assault, the victim employed childish terminology, and the victim's youth reduced the likelihood that the statements were fabricated. See 992 F.2d at 1126.

In determining the trustworthiness of hearsay offered under the residual exception, the Tenth Circuit considers such facts as: (i) the statement's character; (ii) whether the statement is written or oral; (iii) the parties' relationship; (iv) the declarant's probable motivation in making the statement; and (v) the circumstances under which the statement is made. See United States v. Lawrence, 405 F.3d 888, 902 (10th Cir. 2005)(concluding that statements made to FBI agents by physician at defendant's clinic, including that the physician did not believe he was legally required

---

Inc., 189 F.3d 218, 232-33 (2d Cir. 1999)(identifying an additional class of risk of methodological error for survey evidence); Headley v. Tilghman, 53 F.3d 472, 477 (2d Cir. 1995)(referring to classic hearsay "risks of insincerity, distorted perception, imperfect memory, and ambiguity of utterance").

to be at the clinic to supervise medical work, were not admissible under rule 807 in defendant's Medicare fraud trial because statements had no circumstantial guarantees of trustworthiness, statements were taken shortly after FBI executed search warrant on clinic, and physician was the subject of the same investigation that eventually led to charges against defendant); F.T.C. v. Kuykendall, 312 F.3d 1329, 1343 (10th Cir. 2002)(concluding that consumer declarations and complaints had sufficient circumstantial guarantees of trustworthiness to warrant admission under rule 807 in a civil contempt proceeding arising from the defendants' violation of a permanent injunction, because they were made under oath and subject to penalty of perjury). For admissibility under rule 807, a statement must be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."[11] Fed. R. Evid. 807(a)(3). See F.T.C. v. Kuykendall, 312 F.3d at 1343 (concluding that consumer declarations and complaints were trustworthy, and most probative evidence available, and therefore admissible under rule 807, provided defendants had adequate notice); United States v. Zamora, 784 F.2d 1025, 1031 (10th Cir. 1986)(concluding that hearsay statements were properly excluded in absence of showing of statement's probative value or any effort to obtain information from other sources). The Tenth Circuit considers a statement "more probative" if the district court determines that the hearsay is relevant and reliable, and that no other evidence, or little other evidence, is available on the same point. See Marsee v. U.S. Tobacco Co., 866 F.2d 319, 324-25 (10th Cir.

---

[11]The "more probative" requirement, however, is not interpreted "with cast iron rigidity." United States v. Harrison, 296 F.3d at 1006-07 (concluding that district court could properly rule that child sexual abuse victim's statement to FBI agent was most probative available evidence with respect to details not disclosed in other statements (quoting Weinstein's Federal Evidence, supra, § 807.3[3][a], at 807-21)).

1989)(concluding that reports were not admissible, because much of their contents were already admitted through expert testimony).

Rule 807 requires the district court to consider the availability, through reasonable efforts, of other admissible evidence, and courts consider matters such as the importance of the evidence and the proponent's ability to provide it. See Calderon v. Presidio Valley Farmers Ass'n, 863 F.2d 384, 391 (5th Cir. 1989)(concluding that answers to interrogatories were admissible pursuant to rule 807, because relevant records were lost or destroyed, trial was held several years after violations took place, and witnesses were illiterate). Courts must consider the need for the evidence in light of the basic assumption underlying the rule against hearsay -- that statements made directly in the courtroom are more reliable than hearsay; in other words, courts must balance need against trustworthiness. See United States v. Harrison, 296 F.3d at 1004-07. Admission of evidence under the residual exception must accord with "the purposes of these rules and the interests of justice." Fed. R. Evid. 807(a)(4). See New England Mut. Life Ins. v. Anderson, 888 F.2d 646, 650-51 (10th Cir. 1989)(concluding that district court properly excluded statements reported in newspaper article, because district court found no guarantees of trustworthiness and plaintiff failed to show that admission of the article without opportunity to cross-examine witness would serve interests of justice).

## LAW REGARDING RULE 26

Rule 26(a)(1) requires parties to make initial disclosures to the other parties:

> *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
>> **(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along

with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

**(ii)** a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;

**(iii)** a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

**(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A). Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner if it learns that the disclosure or response is incomplete or incorrect:

(1) *In General.* A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

Fed. R. Civ. P. 26(e).

Rule 37(c) provides the court with means to address failures to disclose:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56." Fed. R. Civ. P. 37 advisory committee's note. The Court may also sanction the party through other actions, including shifting fees, informing the jury of a party's failure to disclose, striking pleadings, or dismissing the action. See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); Fed. R. Civ. P. 37(c)(1)(A)-(C).

Whether a rule 26(a) violation is substantially justified or harmless is a question for the district court's discretion. See Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d 170 F.3d 985, 993 (10th Cir. 1999)("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." (citing Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). The Tenth Circuit has directed district courts to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993.

The Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or depositions. See, e.g., Leon v. FedEx Ground Package Sys., Inc., No. CIV 13-1005 JB/SCY, 2016

WL 1158079, at *12-14 (D.N.M. March 1, 2016)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672502, at *4-5 (D.N.M. Sept. 29, 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672373, at *12-14 (D.N.M. Sept. 24, 2009)(Browning, J.). For instance, in Leon v. FedEx Ground Package Systems, Inc., the Court concluded that, even though the Court deemed that there was no indication of bad faith or willfulness, the factors pointed against admitting expert testimony on additional statutory violations, because: (i) the testimony would surprise and prejudice the other party, because the expert could choose from many statutes on which to testify; (ii) the prejudice would be incurable, because the expert could explore any statutory violation so the opposing party could not prepare; (iii) the expert testimony would disrupt trial, because the last-minute testimony would force the opposing party to go on a fishing expedition on cross examination, and the Court would likely have to delay trial to allow the opposing party time to respond to the testimony; and (iv) there were no indications of bad faith or willfulness. See 2016 WL 1158079, at *12-14. Regarding the first element -- prejudice -- in Guidance Endodontics, LLC v. Dentsply International, Inc., the Court explained that a supplemental expert report disclosed soon before trial was prejudicial, because

> [t]he trial of a case is a substantial undertaking that consumes most or all of an attorney's time. Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful. There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.

2009 WL 3672502, at *5. The Court noted that the defendants could not "prepare a new or existing expert witness," that the new expert report referenced "some recent research," of which the defendants were not informed, and this prejudice was incurable, because the trial had begun and the defendants were subject to a preliminary injunction, and that the defendants did not want to

delay the trial and remain subject to the preliminary injunction. 2009 WL 3672502, at *5. The Court excluded the expert even though the Court found no evidence of bad faith or willfulness. See 2009 WL 3672502, at *5. In Guidance Endodontics, LLC v. Dentsply International, Inc., the Court also concluded that: (i) the defendants were prejudiced and surprised when a supplemental report increased the damages estimate "from $1.2 million to $75.2 million," and the plaintiff had previously not disclosed the measure of damages it would seek; and (ii) the prejudice was incurable, because the defendants could not "re-depose [expert] McDonald and find a new rebuttal expert this late in the game when Guidance could have, with due diligence, disclosed this measure of damages during the discovery period." 2009 WL 3672373, at *12. The Court further noted that the trial would be disrupted, because the defendants did not know the plaintiff would seek such damages and had no rebuttal expert to the expert. See 2009 WL 3672373, at *14. See also Lewis v. Goldsberry, No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *10 (D.N.M. Feb. 27, 2012)(Browning, J.)(concluding that a failure to disclose was not harmless where the plaintiff missed the disclosure deadline, "the Defendants [were] unable to ascertain to what each of Lewis' expert witnesses will testify or obtain their own experts to address that testimony," and without such information, deposing the experts would be futile).

When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted. See, e.g., Coffey v. United States, No. CIV 08-0588 JB/LFG, 2012 WL 2175747, at *12-13 (D.N.M. 2012)(Browning, J.); Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2010 WL 611141, at *3 (D.N.M. Jan. 31, 2010)(Browning, J.); Gulfstream Worldwide Realty, Inc.

v. Philips Elecs. N. Am. Corp., No. CIV-06-1165 JB/DJS, 2007 WL 4707080, at *4 (D.N.M. Aug. 14, 2007)(Browning, J.).  For example, in reviewing the factors in Coffey v. United States, the Court concluded that, where the plaintiff filed an amended report: (i) there was "little or no prejudice or surprise," because the United States had approximately ten months to find an expert to testify on conduct at the Gallup Indian Medical Center if it needed; (ii) the prejudice was curable, because the United States had the amended report when it deposed the expert, the United States was on notice of the report's opinions, and the United States could have sought relief by contacting the other party or the Court; (iii) the trial would not be disrupted, because the United States had the report for around ten months and could find additional witnesses; and (iv) there was no evidence of bad faith or willfulness.  2012 WL 2175747, at *12-13.  In Wheeler Peak, LLC v. L.C.I.2, Inc., the Court deemed that a party suffered little prejudice from an expert report that:

> (i) was not signed, (ii) does not contain a complete statement of the basis of his opinions, and does not properly identify the facts, documents, or testimony upon which he relied; (iii) does not identify any summarizing exhibits to be used at trial; and (iv) does not provide his curriculum vitae, or his qualifications, publications, or testimony, all of which rule 26 requires.

2010 WL 611141, at *3.  The Court reasoned that:

> (i) Hicks has since provided a signed report; (ii) Wheeler Peak made the two boxes of materials upon which Hicks relied available to [defendant] de la Torre at Hicks' deposition, and can make those materials available again if de la Torre wants to see them; (iii) Hicks produced his cv on June 22, 2009; and (iv) while Hicks submitted his second report about a month and a half after the deadline in the Court's Scheduling Order, de la Torre had Hicks' second report for almost seven months before Hicks' deposition.

2010 WL 611141, at *3 (citations to transcript omitted).  See Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., 2007 WL 4707080, at *4 (concluding that Gulfstream Realty did not suffer prejudice where Philips Electronics provided the report in an untimely manner but

Gulfstream Realty was aware of the information in the report seven weeks before the discovery deadline and before deposing the expert, Gulfstream Realty received the report three weeks before the discovery deadline, and the expert report, which was provided four months before trial, would not disrupt trial).

## ANALYSIS

The Court grants in part and denies in part the Unavailability Motion, grants in part and denies in part the Bank Records Motion, and overrules the Objection. The Court concludes that Dewey is unavailable, and the Dewey Affidavits do not meet rule 807's requirements and are inadmissible. The Second Dewey Aff.'s late disclosure is harmless, so the Court would allow its admission were it admissible. The Court will deem the Bank Records authenticated, because Parwatikar Defendants and Mr. Pratt concede their authenticity, but the Court will not make other admissibility rulings.

**I.  DEWEY IS UNAVAILABLE; THE DEWEY AFFIDAVITS ARE INADMISSIBLE UNDER RULE 807, BECAUSE THEY DO NOT SATISFY THE RULE'S REQUIREMENTS; AND THE SECOND DEWEY AFF.'S LATE DISCLOSURE IS HARMLESS.**

The Court concludes that the Dewey Affidavits do not satisfy the requirements for admissibility under rule 807. The Court declares Dewey unavailable because of death, and the Court will not admit the Dewey Affidavits pursuant to rule 807. The Court also deems the Second Dewey Aff.'s late disclosure harmless.

**A.  DEWEY IS UNAVAILABLE BECAUSE OF DEATH, AND THE DEWEY AFFIDAVITS DO NOT SATISFY RULE 807'S REQUIREMENTS.**

The Court declares Dewey unavailable because of death and concludes that the Dewey Affidavits do not satisfy rule 807. The Federal Rules of Evidence permit a party to introduce

evidence pursuant to rule 807 when a declarant is unavailable. One situation in which a witness is unavailable is when a witness "cannot be present or testify at the trial or hearing because of death." Fed. R. Evid. 804(a)(4).

First, the Court concludes that Dewey is unavailable. <u>See</u> Fed. R. Evid. 804(b)(5). The Notice of Suggestion of Death reflects Dewey's death. <u>See</u> Notice of Suggestion of Death at 1. A notice of suggestion of death suffices for notice of death for the purposes of substitution of parties pursuant to rule 25 of the Federal Rules of Civil Procedure. <u>See</u>, <u>e.g.</u>, <u>Garrison v. City of Ruidoso Downs</u>, No. CV 12-1023 LH/SMV, 2014 WL 12594264, at *7 (D.N.M. April 3, 2014)(Hansen, J.)(treating a notice of suggestion of death as evidence of death for purposes of substitution of another party); <u>Hall v. Bingham</u>, No. 3:08CV489-FKB, 2012 WL 868796, at *1 (S.D. Miss. March 13, 2012)(Ball, M.J.)(granting a continuance of a trial after receiving a notice of suggestion of death); <u>Bertam Music Co. v. P & C Enterprises, Inc.</u>, No. 09-CV-2253, 2011 WL 2633666, at *5 (C.D. Ill. July 5, 2011)(McCuskey, J.)(addressing when a notice of suggestion of death starts the "90-day clock for substituting the proper party"). For the Court's rule 804(a)(4) purposes here, the Notice of Suggestion of Death is also sufficient to establish Dewey's death by a preponderance of the evidence. <u>See</u> Fed. R. Evid. 804(a)(4). Although the Parwatikar Defendants argue that better means of proving an individual's death exist, the Parwatikar Defendants admit that they will not strongly contest Dewey's death, and the Court has seen no evidence that Dewey is alive. <u>See</u> Tr. at 75:17-24 (Harrison).

Rule 807 does not permit the Dewey Affidavits' admission. Preliminarily, the Unavailability Motion and the Notice satsify rule 807(b)'s requirement that the Dewey Affidavits' proponent give the adverse party notice of its intent to use the evidence and of the evidence's

particulars.  See Fed. R. Evid. 807(b).  Rule 807(b) specifically provides: "The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it."  Fed. R. Evid. 807(b).  "The notice requirements of the residual hearsay rule are strictly construed."  Sours v. Glanz, 24 F. App'x 912, 914 (10th Cir. 2001)(unpublished)[12](citing United States v. Heyward, 729 F.2d 297, 299 n.1 (4th Cir. 1984)).  In the Unavailability Motion, New Mexico disclosed its intent to use the Dewey Affidavits, and it has provided the Parwatikar Defendants and Mr. Pratt with both the First Dewey Affidavit and the Second Dewey Aff.  See Unavailability Motion at 1-2.  Although New Mexico identified the incorrect Bates numbers in the Unavailability Motion, see Unavailability Response at 2, the Parwatikar Defendants have had the First Dewey Affidavit since New Mexico's initial disclosures, see Tr. at 82:8-10 (Harrison), and, more than a month before trial, New Mexico corrected the Bates numbers in the Notice, see Notice ¶ 3, at 1, and provided the Second Dewey Aff., see Notice ¶ 6, at 2; id. at 2 (dating the Notice May 24, 2019); Second Dewey Aff. at 1.  As Dewey has deceased, she has no address for New Mexico to provide the Parwatikar Defendants.

---

[12]Sours v. Glanz is an unpublished opinion, but the Court can rely on an unpublished opinion from the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored.  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Sours v. Glanz, United States v. Jackson, 334 F. App'x 900 (10th Cir. 2009), and S.E.C. v. Curshen, 372 F. App'x 872 (10th Cir. 2010)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

See Fed. R. Evid. 807(b) (requiring that the evidence's proponent provide the adverse party "the declarant's name and address").  Even if New Mexico now seeks to introduce additional exhibits with the First Dewey Affidavit, as the Parwatikar Defendants contend, see Tr. at 82:11-18 (Harrison), New Mexico also indicated these pages' Bates numbers in the Notice, see Notice ¶ 3, at 1.  The Parwatikar Defendants and Mr. Pratt have, therefore, had a fair opportunity to meet the Dewey Affidavits' particulars.  See F.T.C. v. Kuykendall, 312 F.3d at 1343 (treating notice of rule 807 evidence one month before an evidentiary hearing as sufficient notice), opinion vacated on other grounds, 371 F.3d 745 (10th Cir. 2004).

The Dewey Affidavits must still satisfy, however, rule 807(a).  The Court concludes that they do not meet these requirements.  Rule 807(a) outlines four factors that evidence must satisfy for admission:

> (1)    the statement has equivalent circumstantial guarantees of trustworthiness;
>
> (2)    it is offered as evidence of a material fact;
>
> (3)    it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
>
> (4)    admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).  The Tenth Circuit has cautioned: "Rule 807 should be used rarely and only in exceptional circumstances because to do otherwise would allow the exception to swallow the hearsay rule."    United States v. Jackson, 334 F. App'x 900, 910 (10th Cir. 2009)(unpublished)(citing United States v. Tome, 61 F.3d at 1452).  With this warning in mind, the Court takes each factor in turn.

First, the Court concludes that the Dewey Affidavits lack "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 807(a)(1). Contra, e.g., Tr. at 69:20-23 (Giandomenico). That an affiant signs and swears an affidavit under oath, subject to reprimand for perjury, gives an affidavit some guarantee of trustworthiness, see Harris v. City of Chi., 327 F.R.D. 199, 201 (N.D. Ill. 2018)(Feinerman, J.)(deeming the giving of a statement "voluntarily, under oath, and subject to penalty for perjury" as evidence of trustworthiness), but these characteristics alone should not make an affidavit trustworthy, see Spencer v. Garden, 322 F. Supp. 3d 1205, 1213 (D. Utah 2018)(Jenkins, J.)("Though the statement was purported to be made under oath, that is 'insufficient, standing alone, to meet the requirement of circumstantial guarantees of trustworthiness.'" (quoting Crawford ex rel. Crawford v. City of Kan. City, 952 F. Supp. 1467, 1473 (D. Kan. 1997)). Contra Unavailability Motion at 4; Tr. at 69:20-23 (Giandomenico). The oath represents only one tool courts use to mitigate concerns about hearsay's trustworthiness; a witness' presence at trial and cross examination also play a role. See Weinstein's Federal Evidence § 802.02[2][a], at 802-5.

Nothing aside from that Dewey executed the Dewey Affidavits under oath before a notary public in anticipation of this lawsuit and the other New Mexico consumers' corroboration of the Dewey Affidavits supports these affidavits' trustworthiness, and these circumstances alone do not suggest to the Court sufficient guarantees of trustworthiness. In the Court's view, that Dewey made her statements after the events with Real Estate Law, in anticipation of litigation, and without opportunity for the Parwatikar Defendants or Mr. Pratt to cross-examine her points instead to untrustworthiness. See, e.g., Ponzini v. Monroe Cty., No. 3:11-CV-00413, 2016 WL 4500775, at *1 n.1 (M.D. Pa. Aug. 26, 2016)(Mariani, J.)("Where, as here, the statement was prepared in

anticipation of litigation, and the adverse parties lacked the ability to cross-examine the declarant, the Court finds that such 'exceptional guarantees of trustworthiness' are lacking such that Rule 807 does not apply." (quoting Fed. R. Evid. 807(a)(1)); Batoh v. McNeil-PPC, Inc., 167 F. Supp. 3d 296, 311 (D. Conn. 2016)(Shea, J.)("This is at least a suggestion that the statement was made in the context of conversations about possible litigation -- a suggestion of untrustworthiness." (citing Greco v. Nat'l R.R. Passenger Corp., No. Civ. A. 02-CV-6862, 2005 WL 1320147, at *6 (E.D. Pa. June 1, 2005)(Surrick, J.)); Brown ex rel. Estate of Brown v. Philip Morris Inc., 228 F. Supp. 2d 506, 512 (D.N.J. 2002)(Cooper, J.)(listing "whether the statement was prepared in anticipation of litigation" as a factor courts consider in deciding whether a statement has circumstantial guarantees of trustworthiness (citing Sternhagen v. Dow Co., 108 F. Supp. 2d 1113, 1119 (D. Mont. 1999)(Hatfield, J.))). Although the Tenth Circuit has upheld a district court's use of discretion in concluding affidavits had circumstantial guarantees of trustworthiness where they "were made under oath subject to penalty of perjury," in F.T.C. v. Kuykendall, notice of the declarations gave the adverse party an "opportunity to subpoena the individual consumers if they so desired." F.T.C. v. Kuykendall, 312 F.3d at 1343. See also F.T.C. v. Amy Travel Serv., Inc., 875 F.2d at 576 (concluding that affidavits possessed sufficient indicia of trustworthiness where they were "made under oath subject to perjury penalties," hearing testimony from all the consumers in the case "would be cumbersome and unnecessarily expensive," and notice of the intent to use the affidavits gave the defendants an opportunity to question the affiants). In S.E.C. v. Curshen, likewise, the adverse party had an opportunity to question the person who made the statement during the deposition, which was under oath and subject to penalty of perjury. See 372 F. App'x at 878. Here, Dewey has been deceased since

before the lawsuit began; she "died on or about October 24, 2016," Notice of Suggestion of Death at 1, and New Mexico filed the Complaint on February 22, 2017, <u>see</u> Complaint at 1. With Dewey deceased, the Parwatikar Defendants and Mr. Pratt have no similar opportunity to question her. "Moreover, other evidence that corroborates the truth of a hearsay statement is not a circumstantial guarantee of the declarant's trustworthiness." <u>United States v. Tome</u>, 61 F.3d at 1452 ("'[W]e think the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than that any basis exists for presuming the declarant to be trustworthy.'" (quoting <u>Idaho v. Wright</u>, 497 U.S. 805, 823 (1990)). <u>Contra</u> Tr. at 70:2-11 (Giandomenico)(noting that other New Mexico consumers' evidence corroborates the Dewey Affidavits).

In the Court's view, no rule 803 or 804 exception resembles the circumstances surrounding the Dewey Affidavits. The Court agrees with the Parwatikar Defendants that witness deaths are not so rare that the Federal Rules of Evidence do not contemplate them. <u>See</u> Tr. at 76:9-19 (Harrison). Nothing in rule 804, which contemplates a witness' death, <u>see</u> Fed. R. Evid. 804(a)(4) (providing a witness is unavailable when he or she "cannot be present or testify at the trial or hearing because of death"), resembles an exception for a pretrial affidavit. New Mexico avers that rule 804(b)(1) -- the former testimony exception -- resembles the scenario here, <u>see</u> Unavailability Motion at 4, but rule 804(b)(1) includes criteria that the evidence "is now offered against a party who had -- or, in a civil case, whose predecessor in interest had -- an opportunity and similar motive to develop it by direct, cross-, or redirect examination," Fed. R. Evid. 804(b)(1)(B). Neither the Parwatikar Defendants nor Mr. Pratt had any opportunity to confront Dewey.

New Mexico also contends that the Dewey Affidavits resemble rule 803(5)'s recorded recollection exception, which requires: "A record that: (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and (C) accurately reflects the witness's knowledge." Fed. R. Evid. 803(5). See Unavailability Motion at 4. This contention also does not persuade the Court. Although Dewey recorded her statements when she remembered them, rule 803(5) contemplates a witness in court, subject to cross-examination by opposing parties, as it describes a witness who cannot "testify fully and accurately." Fed. R. Evid. 803(5)(A). As discussed in the preceding paragraphs, the Parwatikar Defendants and Mr. Pratt will not have, and have not had, such an opportunity to question Dewey.

The second factor points slightly toward admissibility. From what the Court knows of the Dewey Affidavits, they are evidence of material facts. They show Dewey's, a New Mexico consumer's, interactions with Real Estate Law, corroborate the other New Mexico consumer evidence, and apparently provide the basis for introducing the quit-or-pay letter, which shows Real Estate Law demanding in writing advance fees. See Tr. at 70:2-5 (Giandomenico); id. at 71:23-72:8 (Giandomenico).

The third factor is neutral. The Court understands that New Mexico has other evidence similar to the Dewey Affidavits to support its case. The Court has not seen the First Dewey Affidavit, so it cannot opine first-hand to its contents, but the Second Dewey Aff. is, as the Parwatikar Defendants describe both the Dewey Affidavits, "skeletal." Tr. at 77:20 (Harrison). According to the Parwatikar Defendants, the Dewey Affidavits do not offer evidence new or different from the twenty-two other New Mexico consumers' evidence. See Tr. at 78:4-5

(Harrison). The Dewey Affidavits likely have, however, other, independent probative value that New Mexico might not obtain through other means. Dewey's story corroborates the other twenty-two New Mexico consumers' accounts, makes New Mexico's story more convincing, and may affect the amount the Court would enter in judgment against the Parwatikar Defendants and Mr. Pratt, should the Court deem them liable. See Tr. at 71:1-16 (Giandomenico). The evidence is also more probative of Dewey's interactions with Real Estate Law than any other evidence, because it is all New Mexico's evidence on Dewey now that she is deceased. See Tr. at 71:6-8 (Giandomenico). Although the Parwatikar Defendants attempted to suggest other means through which New Mexico could have obtained this evidence before Dewey's death, they do not persuade the Court that New Mexico necessarily expected Dewey's death or that an obvious alternative means to present this evidence now exists. See Tr. at 79:2-15 (Harrison, Court).

The Court understands that the First Dewey Affidavit also lays a foundation for the quit-or-pay letter, although the Court suspects that New Mexico might obtain evidence to fulfill this purpose through other reasonable efforts. According to New Mexico, the quit-or-pay letter "is uniquely probative in that it is in writing, as opposed to oral testimony," and both parties focus on the First Dewey Affidavits' role as the sole evidence authenticating the letter. Tr. at 72:6-7 (Giandomenico). See Tr. at 78:6-13 (Harrison). The Court has not seen the quit-or-pay letter, but New Mexico's description suggests that the letter has probative value for New Mexico's case that other New Mexico consumer evidence lacks. New Mexico avers that it could not obtain Real Estate Law "files or records" from the Defendants, Tr. at 72:9-10 (Giandomenico); see id. at 72:7-11 (Giandomenico), but the Court agrees with the Parwatikar Defendants that New Mexico might have taken other reasonable efforts to obtain a quit-or-pay letter, or to offer such a letter's

foundation, for instance, seeking a quit-or-pay letter from one of the other, living New Mexico consumers in the time before and the three years since Dewey's death, or attempting to lay a foundation for the quit-or-pay letter through a Real Estate Law employee, <u>see</u> Tr. at 79:16-80:6 (Harrison).  As New Mexico did not address such other alternatives, the Court cannot determine how reasonable such efforts would have been.

Fourth, introducing the Dewey Affidavits will not "best serve the purposes of [the Federal Rules of Evidence] and the interests of justice."  Fed. R. Evid. 807(a)(4).  The Parwatikar Defendants admit that they do not have concerns about the Dewey Affidavits, which are "skeletal," Tr. at 77:20 (Harrison), and "repetitive," Tr. at 77:22 (Harrison), of evidence from other consumers, although they worry about the "voluminous documents," Tr. at 77:20 (Harrison), attached as exhibits to the Dewey Affidavits, <u>see</u> Tr. at 77:18-23 (Harrison).  The Parwatikar Defendants argue that "it [is], for example, the quit-or-pay letter that [New Mexico] is attempting to ultimately get admitted."  Tr. at 78:11-12 (Harrison).  New Mexico has twenty-two other New Mexico consumers whose accounts, according to New Mexico and the Parwatikar Defendants, corroborate the Dewey Affidavits.  <u>See</u> Tr. at 70:2-11 (Giandomenico); Tr. at 77:22 (Harrison). The Court concludes that New Mexico does not require the Dewey Affidavits, the trustworthiness of which so conflict with the Federal Rules of Evidence's purposes, and the contents of which the Court cannot fully verify for itself, to prove its case.  New Mexico indicates that the Defendants in this case have not cooperated in producing evidence, <u>see</u> Tr. at 83:20-24 (Giandomenico), but New Mexico has obtained evidence through other means.  Accordingly, the Dewey Affidavits are inadmissible pursuant to rule 807.

## B.     THE SECOND DEWEY AFF.'S LATE DISCLOSURE IS HARMLESS.

The Court would not exclude the Second Dewey Aff. for late disclosure were the Second Dewey Aff. admissible.  Preliminarily, New Mexico disclosed the Second Dewey Aff. late.  New Mexico did not provide the Second Dewey Aff. in its initial disclosures and did not provide the Second Dewey Aff. until May 24, 2019, a little over a month before the July 8, 2019, trial.  See Unavailability Reply ¶¶ 6-7, at 2.

The late disclosure is, however, harmless.  Pursuant to Rule 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  The Tenth Circuit has directed district courts to consider when deciding whether a non-disclosure was substantially justified or is harmless: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993.  New Mexico's statements that it "mistakenly failed to provide the June 6, 2016 Dewey Affidavit with its Initial Disclosures," Unavailability Reply ¶ 6, at 2, and that it "produced [the Second Dewey Aff.] because [it] realized [it] hadn't produced it before," Tr. at 84:8-9 (Giandemonico), do not outline a substantial justification for not earlier disclosing the affidavit.  Regarding the harmlessness, first, the Court concludes that the evidence does not prejudice or surprise the Parwatikar Defendants.  The Parwatikar Defendants do not identify any new or surprising information in the Second Dewey Aff.; they state that the information in the Second Dewey Aff. is not new and that the documents attached to it are "repetitive of the other evidence."

Tr. at 77:22 (Harrison).  See id. at 77:18-23 (Harrison).  Second, the Parwatikar Defendants have no prejudice to cure.  Third, as the Parwatikar Defendants state that they have similar evidence from other witnesses and documents, they should be able to prepare to confront the evidence introduced through the Second Dewey Aff.  Fourth, the Court has seen no evidence that New Mexico acted willfully or in bad faith.  The Court will not, therefore, exclude the Second Dewey Aff. for late disclosure.

Accordingly, the Court does not admit the Dewey Affidavits.  Neither the First Dewey Affidavit nor the Second Dewey Aff. is admissible pursuant to rule 807.  The Second Dewey Aff. would not, however, need to be excluded pursuant to rule 37(c)(1).

## II.    THE COURT DEEMS THE BANK RECORDS AUTHENTICATED AND MAKES NO OTHER EVIDENTIARY RULINGS ON THE BANK RECORDS.

The Court deems the Bank Records authenticated, but it does not make any other rulings on the Bank Records' admissibility.  The Parwatikar Defendants and Mr. Pratt consent to the Bank Records' authenticity, but reserve their other objections.  See Tr. at 88:22-23 (Court); id. at 88:24-89:4 (Harrison); id. at 89:13-17 (Court, Pratt).  The Court adheres to this agreement.  The Court notes that it agrees with the Parwatikar Defendants that making rulings on other evidentiary issues at the time New Mexico filed the Bank Records Motion would be "'premature.'"  Bank Records Response at 2 (citing Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 2009 WL 10708112, at *9).  New Mexico filed the Bank Records Motion well before trial.  At the time New Mexico filed the Bank Records Motion, the Court and the parties could not know which parties, claims, or issues would proceed to trial and, consequently, what relevance evidence would have.  The Court had yet to decide the MSJ and the Joinder.  The Court has since dismissed several of New Mexico's claims. See MOO at 183-84, 2019 WL 2804575, at *68.  Having evidentiary arguments on which to make

evidentiary rulings before the MOO would involve guessing what evidence would remain relevant at trial. The Court will not, therefore, make additional evidentiary decisions until it has concrete information on the Bank Records' relevance. Accordingly, the Court grants in part and denies in part the Unavailability Motion, grants in part and denies in part the Bank Records Motion, and overrules the Objection.

**IT IS ORDERED** that: (i) Plaintiff's Motion to Provide Notice Under Rule 807 and to Establish Unavailability of Witness, filed April 26, 2019 (Doc. 133), is granted in part and denies in part; (ii) the Court declares Caroline A. Dewey unavailable, and deems the First Dewey Affidavit, and the Second Declaration and Affidavit of Caroline A. Dewey (executed June 6, 2016), filed May 24, 2019 (Doc. 143-1)("Second Dewey Aff."), inadmissible; (iii) Plaintiffs' Pretrial Motion under Rule 902 to Provide Notice of Plaintiff's Intent to Offer Bank Records, filed April 26, 2019 (Doc. 134), is granted in part and denied in part; (iv) the Court deems the Bank Records authenticated, but reserves to Defendants Deepak S. Parwatikar, Balanced Legal Group, and Pinnacle Law Center P.C., and to Defendant Chad T. Pratt other objections to the Bank Records; and (v) the Defendant Parwatikar's Objections to Plaintiff's Untimely Filings and Disclosures, filed May 25, 2019 (Doc.147), as they pertain to the Second Dewey Aff., are overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Hector H. Balderas
   Attorney General of the State of New Mexico
Angelica Anaya-Allen
Lisa Giandomenico
   Assistant Attorneys General of the State of New Mexico
State of New Mexico Office of the Attorney General
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Real Estate Law Center, P.C.
Los Angeles, California

     *Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

     *Defendant pro se*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Deepak S. Parwatikar, Pinnacle Law Center, P.C., and*
       *Balanced Legal Group*

Erikson M. Davis
Newbury Park, California

     *Defendant pro se*