# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

      Plaintiff,

vs.                                           No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Motion Limine #1 of Chad T-W Pratt, Sr. to Exclude Undisclosed Evidence, filed June 24, 2019 (Doc. 160)("Undisclosed Evidence MIL"); (ii) the Motion Limine #2 of Chad T-W Pratt, Sr. to Allow Practice of Law, filed June 24, 2019 (Doc. 161)("Practice of Law MIL"); (iii) the Motion Limine #3 of Chad T-W Pratt, Sr. to Exclude State Bar, filed June 24, 2019 (Doc. 162)("State Bar MIL"); and (iv) Plaintiff State of New Mexico's requests in the Plaintiff's Response to Motion Limine #3 of Chad T-W Pratt, Sr. to

Exclude State Bar, filed July 1, 2019 (Doc. 174)("State Bar MIL Response"). The Court held a hearing on July 2, 2019. See Clerk's Minutes at 1, filed July 2, 2019 (Doc. 184). The primary issues are: (i) whether the Court should, pursuant to rule 37(c)(1) of the Federal Rules of Civil Procedure,[1] exclude from trial evidence related to New Mexico consumers Robert Alexander, Jose Cedeno, Martha Leary, Larry Madrid, Creighten Maness, Mike Maness, Rachel Silva, Vicki Sullivan, Lloyd Trujillo, Valerie Trujillo, and Linda Ward (the "listed New Mexico consumers"), because New Mexico did not disclose these listed New Mexico consumers' "mortgage information and facts, foreclosure judgments," Undisclosed Evidence MIL at 3, documents reflecting alleged Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. § 1015, violations related to these listed New Mexico consumers, or any evidence of Madrid and M. Maness;[2] (ii) whether the Court should, pursuant to the Due Process Clause of the Fifth Amendment to the Constitution of the United States of America, and "per the authority vested in the [State of] California legislature and California state bar," Practice of Law MIL at 1, exclude from trial testimony "that the practice of law by [Defendant Chad T.] PRATT was illegal, wrong , [sic] at any time or times," Practice of Law MIL at 2 (capitalization in Practice of Law MIL); (iii) whether the Court should, pursuant to

---

[1]In the Undisclosed Evidence MIL, Defendant Chad T. Pratt cites "FRCP 3017" as authority for the requested exclusion. Undisclosed Evidence MIL at 1. The Court understands Mr. Pratt to request exclusion for New Mexico's failure to disclose information pursuant to rule 26(a) of the Federal Rules of Civil Procedure. See Undisclosed Evidence MIL at 1. The Court notes that rule 37(c)(1) provides the authority for excluding information and witnesses not disclosed as rule 26(a) requires, and the Court will consider Mr. Pratt's request pursuant to this rule.

[2]Mr. Pratt writes: "Finally, LARRY MADRID and MIKE MANESS were not disclosed Prior." Undisclosed Evidence MIL at 3. The Court assumes that Mr. Pratt means that he did not receive any evidence related to Madrid and M. Maness.

rules 404, 405, and/or 608 of the Federal Rules of Evidence bar "testimony, inquiry, or admission," State Bar MIL at 3, into and of <u>In re Pratt</u> -- <u>In the Matter of Chad Thomas Pratt</u>, Nos. 13-O-12312, 13-O-12367, 13-O-12757 (State Bar Ct. Cal. Sept. 18, 2014), <u>aff'd</u>, No. S222942 (Cal. Jan. 29, 2015); and (iv) whether the Court should permit such <u>In re Pratt</u> evidence pursuant to rule 406 of the Federal Rules of Evidence or rule 404(b)(2) for, respectively, evidence of Real Estate Law's habit and Mr. Pratt's state of mind. The Court denies the Undisclosed Evidence MIL, denies the Practice of Law MIL, grants in part and denies in part the State Bar MIL, and denies New Mexico's requests in the State Bar MIL Response. The Court concludes that, first, New Mexico disclosed to Mr. Pratt all relevant evidence pertaining to the listed New Mexico consumers and that, as the evidence to which Mr. Pratt refers in the Undisclosed Evidence MIL is irrelevant, the Court should deny the Undisclosed Evidence MIL without prejudice to Mr. Pratt raising specific, detailed objections in the robust context of specific evidence offered at trial should New Mexico introduce such evidence at trial. Second, no right to practice law bars evidence of Mr. Pratt's lawsuits. Third, New Mexico cannot use <u>In re Pratt</u> to argue that Mr. Pratt has a propensity to engage in misconduct, but New Mexico can use <u>In re Pratt</u> for rule 608 purposes. Fourth, New Mexico may not use <u>In re Pratt</u> as evidence of habit pursuant to rule 406, because New Mexico does not have evidence of a sufficient number of incidents during which Real Estate Law acted pursuant to the habit. Fifth, as, in the Memorandum Opinion and Order, 2019 WL 2804575, filed July 2, 2019 (Doc. 183)("MOO"), the Court grants summary judgment for Mr. Pratt on theories that he acted recklessly, knowingly, willfully, or in bad faith, <u>see</u> MOO at 184, 2019 WL 2804575, at *68, evidence of Mr. Pratt's state of mind is irrelevant and the <u>In re Pratt</u> evidence is inadmissible as evidence for that purpose.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act[, N.M. Stat. Ann. §§ 47-15-1 to -8 ("MFCFPA")], Mortgage Assistance Relief Services (MARS) Rule, the New Mexico Unfair Practices Act[, §§ 57-12-1 to -26 ("NMUPA"),] and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint").  The Court provides these facts for background.  It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Defendants Real Estate Law Center, P.C.; Erikson M. Davis;[3] Deepak S. Parwatikar; Balanced Legal Group; and Pinnacle Law Center, P.C., and Mr. Pratt.  See Complaint ¶¶ 9-15, at 4-5.  Davis, Mr. Pratt, and Mr. Parwatikar are residents of the State of California, and Mr. Pratt and Mr. Parwatikar are attorneys licensed in the State of California.  See Complaint ¶¶ 10-12, at 4-5.  Davis has been disbarred in California.  See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited June 22, 2019).  Neither Davis nor Mr. Pratt is licensed to practice law in New Mexico.  See Complaint ¶¶ 10-11, at 4-5.  Real Estate Law and Pinnacle Law are "Professional Corporation[s] registered in California."  Complaint ¶¶ 9, 13 at 4-5.  Balanced Legal "is a California law firm owned and/or managed by Parwatikar."  Complaint ¶ 14, at 5.

Mr. Pratt owned and managed Real Estate Law from September, 2011, to September, 2013.  See Complaint ¶ 37, at 8.  Davis "assumed ownership of" Real Estate Law in 2013.  Complaint

---

[3]Davis is currently disbarred in California.  See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited June 22, 2019).

¶ 20, at 6.  Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Mr. Parwatikar owns, Complaint ¶ 38, at 8; see id. ¶ 21, at 6, and Real Estate Law pays Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6.  Balanced Legal "uses" the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law use.  Complaint ¶ 34, at 8.

Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico although RELC RELC and its attorneys are not licensed to practice law in New Mexico."  Complaint ¶ 16, at 5.  "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications."  Complaint ¶ 17, at 5.  "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms."  Complaint ¶ 18, at 5.  The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees."  Complaint ¶ 23, at 6.  Balanced Legal "offers legal services including loan modification and bankruptcy services" via a website "accessible to New Mexico consumers."  Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that **"[w]e work with litigation firms that sue lenders in individual or mass tort cases.  Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates.  Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint).

Mr. Pratt faced disciplinary charges from the State Bar of California in November, 2013, "for (among other things) allowing non-attorney staff to practice law, making false statements to

entice clients to retain RELC, failing to return un-earned fees, and for bringing 'meritless' lawsuits for consumers." Complaint ¶ 39, at 8. "The charges against Pratt resulted in a Decision by the State Bar Court of California ordering one year suspension, three years' probation and restitution to certain consumers." Complaint ¶ 40, at 8.

**PROCEDURAL BACKGROUND**

New Mexico contends that: (i) the Defendants violated the MARS Rule by accepting advance payment for mortgage relief services, and/or Mr. Parwatikar and Pinnacle Law substantially assisted the violations, see Complaint ¶¶ 77-85, at 18-19; (ii) the Defendants, willfully and in bad faith, violated the MFCFPA, by failing to provide required warnings, notices, and disclosures, by failing to give New Mexico homeowners twenty-four hours before signing attorney-client agreements, and by requiring advance payment for their services, see Complaint ¶¶ 86-101, at 19-22; and (iii) the Defendants knowingly engaged in unlawful conduct violating the NMUPA by requiring advance fees and monthly maintenance fees while filing sham lawsuits, by leading New Mexico consumers to believe that the Defendants performed valuable legal services when the Defendants filed sham lawsuits with no value for New Mexico consumers, and by allowing New Mexico consumers to believe that the Defendants will defend foreclosure lawsuits, see Complaint ¶¶ 102-08, at 22-23. New Mexico asks that the Court enjoin the Defendants from continuing such violations, see Complaint ¶¶ 109-11, G, at 23-24, and requests restitution, disgorgement, civil penalties, and costs as the MARS Rule, the MFCFPA, and the NMUPA permit, see Complaint ¶¶ (A)-(F), at 24.

The Parwatikar Defendants -- Mr. Parwatikar, Balanced Legal, and Pinnacle Law -- and Mr. Pratt are the only Defendants with liability issues remaining in this case. On June 11, 2018,

the Court entered a default judgment against Real Estate Law on all liability issues, "reserving the issues of relief, including disgorgement, restitution and civil penalties." Default Judgment Against Real Estate Law Center at 1, filed June 11, 2018 (Doc. 75). See id. at 1-2. On November 5, 2018, the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, recommended entering a default judgment against Davis on issues of liability, reserving for litigation the issues of relief, see Proposed Findings and Recommended Disposition at 4, filed November 5, 2018 (Doc. 91), and, on January 18, 2019, the Court adopted Magistrate Judge Fashing's recommendation, see Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition at 2, 9, 2019 WL 259121, at *1, *4, filed January 18, 2019 (Doc. 106). In the MOO, the Court granted summary judgment in the Parwatikar Defendants and Mr. Pratt's favor on New Mexico's NMUPA claims, injunctive relief claims, and theories based on: (i) Davis' alleged MARS Rule violations; (ii) Balanced Legal's and Pinnacle Law's violation of the MARS Rule independent of Real Estate Law; (iii) Mr. Parwatikar's and Mr. Pratt's participation in a common enterprise with Real Estate Law, Balanced Legal, and Pinnacle Law; and (iv) Mr. Pratt's reckless or knowing violation of the MARS Rule, or willful violation of the MFCFPA. See MOO at 183-84, 2019 WL 2804575, at *68.

At the hearing on June 18, 2109, the Court stated that it would hold a hearing to discuss motions in limine and last-minute pretrial details on July 2, 2019. See Draft Transcript of Hearing at 30:14-18 (taken June 18, 2019)(Court)("June 18 Tr.").[4] The Court stated that it would set the

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

hearing for 3:00 p.m. on Tuesday, July 2, 2019, but indicated that it had a criminal hearing scheduled for 1:30 p.m. on Tuesday, July 2, 2019, and that the Court and the parties would need to be flexible, and the parties agreed to the Court's proposition. See June 18 Tr. at 31:17-32:5 (Court, Anaya-Allen, Kennedy, Pratt). On June 18, 2019, the Court's Courtroom Deputy noticed the hearing for 3:00 p.m. on July 2, 2019. See Notice of Hearing, filed June 18, 2019 (Doc. 154). On June 26, 2019, the Courtroom Deputy rescheduled the hearing for 1:30 p.m. on July 2, 2019. See Notice of Hearing on Motion 160 Motion in Limine, 161 Motion in Limine, 162 Motion in Limine, filed June 26, 2019 (Doc. 165); Amended Notice of Hearing, June 27, 2019 (Doc. 167).

   **1.**   **The Undisclosed Evidence MIL.**

   Mr. Pratt asks that the Court exclude, pursuant to FRCP 3017[5] all non-disclosed evidence.

See Undisclosed Evidence MIL at 1. Mr. Pratt writes:

> As per *FRCP 3017* ALL evidence NOT included in the initial disclosure *Rule 26* [of the Federal Rules of Evidence] shall be excluded at trial. . . .

   **II.**   **NMAG list of plaintiffs adverse to PRATT**

1.   ROBERT ALEXANDER alleged plaintiff is now DECEASED.

No probate, no personal representative, cannot proceed against PRATT.

No "standing" to proceed.

2.   JOSE CEDENO, "in rem" judgment adverse to him and sold his rights to an investor. As per theadverse [sic] judgment and selling of his rights Mr. Cedeno has no claim here.

3.   MARTHA LEARY , [sic] foreclosure judgment adverse to her so claim barred.

4.   LARRY MADRID, foreclosure judgment adverse to him bars claim.

---

[5]The Court has not determined to what Mr. Pratt is referring. The Court quotes for the reader almost the entirety of the Undisclosed Evidence MIL.

5. CREIGHTEN MANESS, foreclosure judgment adverse to him bars claim.

6. MIKE MANESS, foreclosure judgment adverse to him bars claim.

FULL REFUND PAID.
7. RACHEL SILVA, foreclosure judgment adverse to him bars claim.

PRATT LEFT RELC SEP 13TH AND THIS PLAINTIFF IS NOT HIS RESPONSIBILITY AS ALL ALLEGED MARS ACTIVIY WAS SUBSEQUENT.

8. VICKI SULLIVAN (DECEASED) No [sic] standing to proceed.

No probate, no personal representative, cannot proceed against PRATT.

9. LLOYD TRUJILLO. Stipulated judgment of foreclosure bars suit here as he ADMITTED to the foreclosure per the stipulation.

10. VALERIE TRUJILLO. (SAME AS LLOYD TRUJILLO)

11. LINDA WARD . [sic] no information or facts.

ALL SUCH INFORMATION IS NEWLY PROVIDED TO PRATT AND WAS NOT DISCLOSED PRIOR. ALL SUCH INFORMATION SHOWS NO LIABILITY AS TO PRATT.

Undisclosed Evidence MIL at 1-2 (emphasis, ellipses, and capitalization in Undisclosed Evidence MIL). Pratt notes in a footnote following the quoted list: "ALL such facts and information is just newly provided here." Undisclosed Evidence MIL at 2 n.1 (capitalization in Undisclosed Evidence MIL). Pratt proceeds to argue:

Death of ROBERT ALEXANDER was NEVER disclosed. The mortgage information and facts, foreclosure judgments, and ALL alleged MARS violations by PRATT, if any exist at all, were NOT disclosed prior of persons 1-11 set forth above.

Finally, LARRY MADRID and MIKE MANESS were not disclosed Prior.

Undisclosed Evidence MIL at 3 (capitalization in Undisclosed Evidence MIL). Mr. Pratt concludes: "It is submitted, that all such information excludes and bars all such testimony of alleged plaintiffs, 1-11, and that all shall and should be barred at trial. Alternatively, an ***FRCP 403***[6]hearing must take place to determine the validity of their claims." Undisclosed Evidence MIL at 3 (emphasis in Undisclosed Evidence MIL).[7]

### 2.  The Undisclosed Evidence MIL Response.

New Mexico responds. See Plaintiff's Response to Pratt's Motion Limine #1 of Chad T-W Pratt, Sr. to Exclude Undisclosed Evidence at 1-3, filed July 1, 2019 (Doc. 173)("Undisclosed Evidence MIL Response"). New Mexico asks that the Court deny Mr. Pratt's Undisclosed Evidence MIL, "as it is not well-taken and contains errors of fact as well as failing to provide the legal basis for its arguments." Undisclosed Evidence MIL Response at 1. New Mexico argues that Mr. Pratt cites no "legal basis" for his arguments "that the foreclosure of the consumers' homes bars the claims against him" and that New Mexico knows of no such basis. Undisclosed Evidence MIL Response at 1. See Undisclosed Evidence MIL Response at 1-2. New Mexico asserts that it is the Plaintiff in this case, that the New Mexico consumers' standing is irrelevant, and "that these consumers lost their homes in foreclosure is a consequence of the scam perpetrated by Defendants and does not bar the State's claims." Undisclosed Evidence MIL Response at 2.

---

[6]Although Mr. Pratt cites to the Federal Rules of Civil Procedure, the Court assumes that he means the Federal Rules of Evidence.

[7]Mr. Pratt seems to argue that the Court should exclude any evidence not included in the initial disclosure. See Undisclosed Evidence MIL at 1. The Court cannot determine when Mr. Pratt learned of the listed evidence, as Mr. Pratt refers only to such evidence as "newly provided," Undisclosed Evidence MIL at 2, or "not disclosed prior," Undisclosed Evidence MIL at 3.

<u>See</u> Undisclosed Evidence MIL Response at 1-2. New Mexico explains that it disclosed to

Mr. Pratt information about his listed New Mexico consumers:

> The initial disclosures provided to Defendant Pratt included records related to Robert Alexander (NMOAG000353-409), Jose Cedeno (NMOAG000410-433), Martha Leary (NMOAG000746-878), Larry Madrid (NMOAG000879-935, 002903-3204), Creighton Maness (NMOAG000936-970), Mike Maness (NMOAG000971-1094, 002210-2351, 003205-3538), Rachel Silva (NMOAG 001175-1280, 00374-3751), Vicki Sullivan (NMOAG001319-1343), Lloyd Trujillo (NMOAG001380-1477, 003544-3635), Valerie Trujillo (NMOAG001478-1566, 002440-2484, 003636-3734), Linda Ward (NMOAG001866-1933, 002252-2588). Plaintiff responded to Defendant Pratt's First and Second Requests for Production of Documents and identified relevant documents in response to inquiries about Mike Maness ("Mike M.") and Larry Madrid ("Larry M."). Additional documents related to Mr. Maness (NMOAG014838-14845) and further identification of documents related to both Mr. Madrid and Mr. Maness were provided in Plaintiff's First and Second Supplemental Responses to Parwatikar and Supplemental Response to Pratt.

Undisclosed Evidence MIL Response at 2. New Mexico contends that it "is not sure why Mr. Pratt

is objecting with respect to when he learned of Mr. Alexander's death. The issues before the court

relate to Mr. Pratt's actions and whether those actions violate the laws plead [sic], not whether the

consumers are still alive." Undisclosed Evidence MIL Response at 2. New Mexico explains,

regarding Mr. Pratt's request for a rule 403 of the Federal Rules of Evidence hearing, that rule 403

"provides that relevant evidence may be excluded for prejudice, confusion, waste of time or other

reasons. Defendant does not illustrate how any of these bases for a Rule 403 exclusion would

support barring testimony relating to any of the consumers identified in this motion." Undisclosed

Evidence MIL Response at 3.

3.      **The Practice of Law MIL**.

Mr. Pratt writes that he "submits his Motion Limine #2 that absolutely guarantees his right to practice law per the 5th Amendment 'due process' clause, and per the authority vested in the California legislature and California state bar."[8]  Practice of Law MIL at 1.  Mr. Pratt argues:

> PRATT was duly licensed to practice law by the State of California, and was litigating cases on behalf of the alleged new mexico [sic] Plaintiffs at all relevant times.
>
> The NMAG and this honorable court cannot take away or abrogate such right of PRATT.
>
> There is no finding, legal ruling, or other such admissible "evidence", and NONE has been presented here that any lawsuit(s) filed by PRATT were "frivolous" at any time.  As such, PRATT was simply practicing law at all times.

Practice of Law MIL at 2 (capitalization in Practice of Law MIL).  According to Pratt, "all such information excludes and bars all such testimony of alleged plaintiffs, that the practice of law by PRATT was illegal, wrong , at any time or times."  Practice of Law MIL at 2.

4.      **The Practice of Law MIL Response**.

New Mexico responds, and asks "that the Court deny the motion as it is not well-taken and contains errors of fact as well as failing to provide the legal basis for its arguments."  Plaintiff's Response to Defendant Pratt's "Motion Limine #2" [Doc 161] to Allow Practice of Law at 1, filed July 1, 2019 (Doc. 176)(brackets added)("Practice of Law MIL Response").  New Mexico avers that Mr. Pratt cites no authority for his right to practice law.  <u>See</u> Practice of Law MIL Response at 2.  New Mexico argues:

> The license to practice law comes with great responsibilities and guidelines and no "right" to practice law can evade, for example, the Federal Rules of Civil Procedure.  Rule 11(b) requires that attorneys sign pleadings and that their signature

---

[8]The Court quotes for the reader nearly the entirety of the Practice of Law MIL.

represents the the [sic] claims therein are not frivolous and are warranted by existing law; and that the factual contentions plead [sic] have evidentiary support.

Practice of Law MIL Response at 2 (footnotes omitted)(citing Fed. R. Civ. P. 11(b)(2)-(3)).

According to New Mexico, whether Mr. Pratt's lawsuits were "disingenuous" is relevant and admissible, "[b]ecause Defendant Pratt is accused of filing sham lawsuits to avoid federal and state laws that prohibit advance fees for loan modifications." Practice of Law MIL Response at 2 (footnote omitted). New Mexico adds that courts have found attorneys to have violated the MARS Rule although the attorneys practiced law and notes that, "[a]lthough the MARS rule does exempt attorneys practicing law in the state where they are licensed, such exception is not applicable to the facts presented here. Here, Defendant Pratt was licensed to practice in California, but he purported to represent New Mexico homeowners with New Mexico properties." Practice of Law MIL Response at 2. In New Mexico's view, the MARS Rule's attorney exemption cannot, therefore, provide a basis for the Practice of Law MIL. See Practice of Law MIL Response at 3.

     **5.**     **<u>The State Bar MIL</u>.**

In the State Bar MIL, Mr. Pratt requests that the Court exclude "the adverse state bar ruling against him of Michelle Pickerell, Jesse Rivera, and Tracy Torme." State Bar MIL at 1. Mr. Pratt argues:

> It must be further noted that the state bar did NOT impose the "death penalty" and "disbar" PRATT, nor did it "shut down" RELC. Rather it limited its findings to the three persons set forth above and their alleged claims. **[In *RE: Romano, 64 Cal.2d 826, [(415 P.3d 798 (Cal. 1966)]* (PRATT has been disciplined by the California state bar and cannot be punished again here.)**

State Bar MIL at 2.[9]  Mr. Pratt cites rule 608 for the proposition that specific instances of bad

conduct cannot be shown with extrinsic evidence to prove bad conduct in another circumstance.

See State Bar MIL at 2.[10]  Mr. Pratt argues:

> As per **Federal rule of evidence 608(b)** NMAG may cross-examine on
> "[s]pecific instances of . . . conduct" only if the instances are probative of
> truthfulness or untruthfulness" , and only "in the discretion of the court".  NMAG
> cannot argue that PRATT was wrong in state bar cases so he is wrong here.  Before
> NMAG may impeach a witness about specific acts of misconduct they Must [sic]
> have a good faith belief such bad conduct occurred.  *[US vs Whitmore, 359 F. 3d*
> *609, 622 (D.C. Cir.2004)*("the general rule . . . is that the questioner must be in
> possession of some facts which support a genuine belief that the witness committed
> the offense or the degrading act to which the question relates") [sic]  Here, not only
> does NMAG NOT have such belief or facts, it does NOT even have any evidence
> of MARS "violations" by PRATT.    (NO documents of PRATT MARS
> violations . . . .).

State Bar MIL at 2-3 (emphasis, capitalization, and ellipsis in State Bar MIL).  Mr. Pratt adds that,

pursuant to rules 404 and 405, New Mexico cannot use such prior bad act evidence to prove his

later acts.  See State Bar MIL at 3.  Mr. Pratt asks, accordingly, that the Court exclude all

"testimony, inquiry, or admission of the adverse state bar action to PRATT at trial of this matter."

State Bar MIL at 3 (capitalization in State Bar MIL).

**6.      The State Bar MIL Response.**

New Mexico responds and "suggests that Pratt's motion must be denied because the

evidence demonstrates a routine practice of Real Estate Law Center (RELC) under Pratt,

---

[9]The Court quotes for the reader much of the Practice of Law MIL.  The Court cannot
clarify further for the reader Mr. Pratt's contentions.

[10]The Court notes that rule 608 refers to the introduction of extrinsic evidence of bad
conduct to prove a witness' untruthfulness and that rule 404(b) governs the use of evidence of
prior bad conduct to show an actor's propensity to engage in such conduct, which theory of
exclusion the Court believes that Mr. Pratt mainly argues here.

admissible under Rule 406 and constitutes an exception to Rule 404(b)." State Bar MIL Response

at 1. New Mexico summarizes its purpose for introducing the evidence:

> [T]he [In the Matter of Chad Thomas Pratt, No. 13-O-12312, Decision (State Bar Ct. Cal. Sept. 18, 2014), filed July 1, 2019 (Doc. 174)("In re Pratt Decision")] is offered to demonstrate that Pratt, the lead attorney for RELC, operated an organization that consistently conducted itself in a routine manner: RELC solicited clients, claiming to be experts in bank litigation, had them sign a retainer agreement, charged an upfront fee of thousands of dollars, and promised to assist clients in renegotiating their mortgages. The earlier, 2013, Stipulation entered by the California State Bar Court[, see In the Matter of Chad T. Pratt, No. 12-O-16642, Stipulation re Facts, Conclusions of Law and Disposition and Order Approving (State Bar Ct. Cal. Oct. 18, 2013), http://members.calbar.ca.gov/fal/Licensee/Detail/149746 (last visited July 3, 2019)("In re Pratt Stipulation"),] demonstrates a practice of failing to use a client trust account. Evidence demonstrating a routine practice is admissible under Federal Rule of Evidence 406. Additionally, the [(In re Pratt] Decision is offered to prove Defendants' state of mind in order to demonstrate willfulness under the New Mexico Unfair Practices Act ("UPA")"), and therefore also admissible under Federal Rule of Evidence 404(b)(2).

State Bar MIL Response at 2.

First, New Mexico describes that the United States Court of Appeals for the Tenth Circuit "has ruled that for evidence of an organization's practice to be admissible under Rule 406, it 'must be reasonably regular and uniform.'" State Bar MIL Response at 3 (quoting United States v. Oldbear, 568 F.3d 814, 822 (10th Cir. 2009)). New Mexico argues that the In re Pratt Decision, which shows three instances of Real Estate Law requiring advance fees, see State Bar MIL Response at 3 (citing In re Pratt Decision at 6, 9, 13), and the New Mexico consumers attorney-client fee agreements, see State Bar MIL Response at 3-4 (citing Attorney-Client Fee Agreement, Linda Ward, filed July 1, 2019 (Doc. 174)), which require advance fees, show such a custom, and that this "procedure, entering a retainer agreement with and accepting advance fees from clients is relevant to establish a violation of the Mortgage Assistance Relief Services rule," State Bar MIL

Response at 4. New Mexico cites <u>Guidance Endodontics, LLC v. Dentsply Int'l, Inc.</u>, 705 F. Supp. 2d 1265 (D.N.M. 2010)(Browning, J.)("<u>Guidance Endodontics</u>"), to show that "[t]his Court has examined the applicability of Rule 406 to the use of court cases of tangential matters offered as evidence to prove a routine practice," and explains that "this Court granted in part and denied in part the proponent's arguments that litigation in tangential matters constituted sufficient 'reasonably regular and uniform' conduct to be admissible under Rule 406." State Bar MIL Response at 4 (citing <u>Guidance Endodontics</u>, 705 F. Supp. 2d at 1272). According to New Mexico, "[w]hile the Court did not find sufficient regularity to admit prior litigation under Rule 406, the Court did find that the evidence demonstrated the defendants' state of mind for the action at issue and declined to exclude under Rule 404." State Bar MIL Response at 4 (citing <u>Guidance Endodontics</u>, 705 F. Supp. 2d at 1272). New Mexico argues that the behavior here "is the normal procedure by which RELC inducted every new client into their practice," and not "something as infrequent or individualized as" the litigation that <u>Guidance Endodontics</u> discusses. State Bar MIL Response at 5. According to New Mexico, the Court should, therefore, allow the <u>In re Pratt</u> evidence's introduction. <u>See</u> State Bar MIL Response at 5.

New Mexico further contends that the Court should admit the <u>In re Pratt</u> evidence as evidence of the Defendants' state of mind. <u>See</u> State Bar MIL Response at 5. According to New Mexico, the Tenth Circuit has a test for rule 404(b) evidence:

> "(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted."

State Bar MIL Response at 5 (quoting <u>Peshlakai v. Ruiz</u>, 39 F. Supp. 3d 1264, 1321 (D.N.M. 2014)(Browning, J.)).  New Mexico explains that Mr. Pratt willfully and in bad faith violated the MFCFPA; that New Mexico must, therefore, establish Mr. Pratt's willfulness; and that "[t]his Court in *Guidance Endodontics* concluded that a 'prior course of similar conduct, if believed by the jury, makes it more likely that the Defendants' acts in this case were willful and not merely coincidental or reactionary.'"  State Bar MIL Response at 6 (citing <u>Guidance Endodontics</u>, 705 F. Supp. 2d at 1271).  New Mexico explains that the <u>In re Pratt</u> evidence meets the first two requirements of the Tenth Circuit's test:

> The evidence here, as in *Guidance Endodontics*, establishes a "prior course of similar conduct."  [<u>Guidance Endodontics</u>, 705 F. Supp. 2d at 1271.]  The ongoing scheme in which Real Estate Law Center induced clients to execute a retainer agreement, pay advance fees, join as plaintiffs in sham litigation against lenders, and nominally offering mortgage modification services is well detailed in the decision of the Bar Court.  *See* [<u>In re Pratt</u> Decision] at 4-14.  This explication, if admitted, would tend to lessen the probability that Defendants' actions in regard to New Mexico consumers were coincidental or non-willful.  Therefore, such evidence meets the requirements that evidence must be offered for a proper purpose and relevant.

State Bar MIL Response at 6.  New Mexico avers that the Court should treat the third and fourth factors "as moot," because the Court has previously concluded that rule 403 exclusions are improper at bench trials, <u>see</u> State Bar MIL Response at 7 (citing <u>Coffey v. United States</u>, No. CIV 08-0588 JB/LFG, 2012 WL 1698289, at *3-4 (D.N.M. May 8, 2012)(Browning, J.)), and, because the prejudicial effect against which rule 403 protects is irrelevant, the Court does not need to instruct the jury to consider the evidence only for the purposes for which the proponent offers it, <u>see</u> State Bar MIL at 7.

7.    **The Hearing**.

Mr. Pratt did not attend the July 2, 2019, hearing in person or call the telephone conference number for the hearing, see Draft Transcript of Hearing at 3:8-20 (taken July 2, 2019)(Court)("July 2 Tr."), so the Court called Mr. Pratt's telephone number to reach him, see July 2 Tr. at 2:4-8 (Court); id. at 3:10 (Court). Mr. Pratt conveyed to the Court's Courtroom Deputy that he was unaware of the hearing. See July 2 Tr. at 2:9-10 (Clerk). Mr. Pratt indicated that he was in court and would not join the hearing, and he did not call the telephone conference number before the Court began the hearing. See July 2 Tr. at 3:20-24 (Court). Mr. Pratt later joined the hearing through the telephone conference number. See July 2 Tr. at 6:4 (Pratt).

After the Court invited Mr. Pratt to begin discussing his motions, see July 2 Tr. at 10:20-22 (Court), Mr. Pratt admitted: "I'm at a handicap Your Honor, I do not have [them in] front of me. . . . I was not aware the hearing was today," July 2 Tr. at 10:23-25 (Pratt). The Court asked Mr. Pratt to begin with the Undisclosed Evidence MIL. See July 2 Tr. at 11:15-21 (Court). Mr. Pratt argued: "[I would] submit on the motions. I don't have [anything] from the foreclosure judgment against that plaintiffs. I don't have the mortgage [notices] against the plaintiffs. And I don't have any documents showing any [MARS] violations [committed] by me." July 2 Tr. at 12:8-13 (Pratt). Multiple times during Mr. Pratt's argument, the Court alerted him that the telephone connection was not good and that the people in the courtroom could not hear him, and requested that Mr. Pratt move to a location or to a telephone with better reception. See July 2 Tr. at 11:25-12:5 (Court); id. at 12:14-18 (Court); id. at 12:25-13:2 (Court). Mr. Pratt eventually responded that he was "in the federal bankruptcy [c]ourt in Los Angeles[,] California," July 2 Tr. at 12:23-24 (Pratt), and that he would submit on his motions, see July 2 Tr. at 13:3-4 (Pratt). The

Court stated that, because it could not understand what Mr. Pratt said, it would judge Mr. Pratt not in attendance at the hearing.  See July 2 Tr. at 13:5-7 (Court).  The Court invited Mr. Pratt to listen to the hearing, or to find a position from which to speak to the Court and to the other parties where they could hear his statements.  See July 2 Tr. at 13:7-13 (Court).  Mr. Pratt responded: "I'll find a better phone, thank you, your Honor," and left the telephone conference.  July 2 Tr. at 13:14-15 (Pratt).

The Parwatikar Defendants added to Mr. Pratt's arguments that New Mexico disclosed considerable discovery late in the case and after discovery closed.  See July 2 Tr. at 13:19-14:7 (Kennedy).  The Court responded that it understood Mr. Pratt to be asking for the exclusion of all evidence not included in the initial disclosures, but that, because such an exclusion would exclude all evidence obtained through discovery, Mr. Pratt's request was too broad as stated.  See July 2 Tr. at 14:18-15:1 (Court).  The Court summarized that Mr. Pratt discussed foreclosure judgments, people being dead, and lack of probate, but indicated that the Court did not understand that New Mexico would attempt to introduce such evidence.  See July 2 Tr. at 15:4-11 (Court).  New Mexico responded that it included in its initial disclosure information related to the listed New Mexico consumers.  See July 2 Tr. at 15:14-20 (Anaya-Allen).  The Court asked New Mexico whether it planned to introduce any of the material that Mr. Pratt complained that he lacked regarding the listed New Mexico consumers.  See July 2 Tr. at 15:21-24 (Court).  New Mexico responded that it is the Plaintiff, that the listed New Mexico consumers might serve as witnesses, and that it disclosed these individuals in the initial disclosures.  See July 2 Tr. at 16:4-11 (Anaya-Allen).  New Mexico explained that it did not understand Mr. Pratt's argument regarding the foreclosure judgments' relevance, because this case involves New Mexico's claims and not those claims of

the listed New Mexico consumers.  See July 2 Tr. at 16:11-15 (Anaya-Allen).  New Mexico added that the foreclosure judgments also might strengthen individual claims about the harms that Real Estate Law caused.  See July 2 Tr. at 16:15-19 (Anaya-Allen).  New Mexico repeated from its Undisclosed Evidence MIL Response that Mr. Pratt does not provide a legal basis for his arguments and provides no basis why rule 403 would bar the evidence in question.  See July 2 Tr. at 16:19-17:1 (Anaya-Allen).  New Mexico added that Alexander's death was also irrelevant.  See July 2 Tr. at 17:1-3 (Anaya-Allen).

The Court checked whether Mr. Pratt had returned to the telephone line and concluded that Mr. Pratt was not on the line.  See July 2 Tr. at 19:7-11 (Court).  The Court stated that it would deny the Undisclosed Evidence MIL without prejudice to Mr. Pratt if he wants to later object to a piece of evidence.  See July 2 Tr. at 19:12-15 (Court).  The Court stated that the evidence which Mr. Pratt seeks to exclude appears irrelevant, although the trial would better reveal the evidence's relevance.  See July 2 Tr. at 19:15-20 (Court).  The Court explained that all evidence did not need to be disclosed in initial disclosures, although federal courts encourage disclosure, because such a rule would undercut discovery.  See July 2 Tr. at 19:20-20:4 (Court).  The Court indicated that it did not see a rule 403 issue, but that Mr. Pratt could renew the objection in response to more concrete and specific evidence.  See July 2 Tr. at 20:4-16 (Court).

The Court moved to the Practice of Law MIL and concluded that Mr. Pratt was still not on the telephone line.  See July 2 Tr. at 20:17-23 (Court).  The Parwatikar Defendants had no comments on the Practice of Law MIL.  See July 2 Tr. at 20:22-24 (Court, Kennedy).  New Mexico responded that Mr. Pratt does not cite any authority for his arguments, but noted that the arguments appear to be summary judgment arguments in which Mr. Pratt contends that New Mexico cannot

sue him, because he acted while practicing law.  See July 2 Tr. at 21:3-12 (Anaya-Allen).  New Mexico explained that it did not seek relief that would interfere with Mr. Pratt's law practice, but asked relief for specific federal law and state law violations.  See July 2 Tr. at 21:12-18 (Anaya-Allen).  The Court concluded that Mr. Pratt was not on the telephone line to reply to New Mexico.  See July 2 Tr. at 22:4-5 (Court).  The Court indicated that New Mexico's action did not appear to threaten Mr. Pratt's right to practice law and stated that it would deny the Practice of Law MIL.  See July 2 Tr. at 22:5-14 (Court).  The Court explained that Mr. Pratt's status as a lawyer did not insulate him from certain causes of action.  See July 2 Tr. at 22:24-23:2 (Court).

The Court turned to the State Bar MIL.  See July 2 Tr. at 23:13-15 (Court).  The Court concluded that Mr. Pratt was not on the telephone line to argue for his motion.  See July 2 Tr. at 23:15-17 (Court).  The Parwatikar Defendants had nothing to add to the State Bar MIL.  See July 2 Tr. at 23:18-20 (Court, Kennedy).  New Mexico explained that it sought to introduce the In re Pratt evidence as evidence of Real Estate Law's routine practice during Mr. Pratt's ownership and repeated its citations from the State Bar MIL Response.  See July 2 Tr. at 23:25-24:19 (Anaya-Allen).  The Court concluded that Mr. Pratt did not return to the telephone to reply to New Mexico.  See July 2 Tr. at 24:23-25 (Court).  The Court indicated that it would consider New Mexico's argument, because New Mexico had not raised the argument with its summary judgment arguments, but that, until the Court reached a decision, the parties would need to rely on the MOO's rulings on the In re Pratt evidence.  See July 2 Tr. at 24:25-25:5; id. at 25:8-26:3 (Court, Anaya-Allen).  The Court also noted that, in the MOO, it addressed the In re Pratt evidence and concluded that the evidence was hearsay but was admissible for limited purposes, like illustrating the Parwatikar Defendants' and Mr. Pratt's scienter.  See July 2 Tr. at 32:25-33:16 (Court).

# LAW REGARDING RULE 26 OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 26(a)(1) requires parties to make initial disclosures to the other parties:

> *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
> > **(i)** the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;
> >
> > **(ii)** a copy -- or a description by category and location -- of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;
> >
> > **(iii)** a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and
> >
> > **(iv)** for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(A). Rule 26(e) requires a party who has made a disclosure under rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- to supplement or correct its disclosure or response in a timely manner, or as ordered by the court, if it learns that the disclosure or response is incomplete or incorrect:

> (1) *In General.* A party who has made a disclosure under Rule 26(a) -- or who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its disclosure or response:

(A)     in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B)     as ordered by the court.

Fed. R. Civ. P. 26(e).

Rule 37(c) provides the court with means to address failures to disclose:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion, such as one under Rule 56."  Fed. R. Civ. P. 37 advisory committee's note.  The Court may also sanction the party through other actions, including shifting fees, informing the jury of a party's failure to disclose, striking pleadings, or dismissing the action.  See Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii); Fed. R. Civ. P. 37(c)(1)(A)-(C).

Whether a rule 26(a) violation is substantially justified or harmless is a question for the district court's discretion.  See Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d 170 F.3d 985, 993 (10th Cir. 1999)("The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court."  (citing Mid-Am. Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)).  The Tenth Circuit has directed district courts to consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which

introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993.

The Court has concluded that an untimely disclosure prejudices an opposing party, that the prejudice is incurable, and that the untimely disclosure disrupts trial when the disclosure occurs close to trial, the party did not previously know of the information contained in the disclosure, and/or the opposing party does not have an opportunity to engage in further discovery or depositions. See, e.g., Leon v. FedEx Ground Package Sys., Inc., No. CIV 13-1005 JB/SCY, 2016 WL 1158079, at *12-14 (D.N.M. March 1, 2016)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672502, at *4-5 (D.N.M. Sept. 29, 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., No. CIV 08-1101 JB/RLP, 2009 WL 3672373, at *12-14 (D.N.M. Sept. 24, 2009)(Browning, J.). For instance, in Leon v. FedEx Ground Package Systems, Inc., the Court concluded that, even though the Court deemed that there was no indication of bad faith or willfulness, the factors pointed against admitting expert testimony on additional statutory violations, because: (i) the testimony would surprise and prejudice the other party, because the expert could choose from many statutes on which to testify; (ii) the prejudice would be incurable, because the expert could explore any statutory violation so the opposing party could not prepare; (iii) the expert testimony would disrupt trial, because the last-minute testimony would force the opposing party to go on a fishing expedition on cross examination, and the Court would likely have to delay trial to allow the opposing party time to respond to the testimony; and (iv) there were no indications of bad faith or willfulness. See 2016 WL 1158079, at *12-14. Regarding the first element -- prejudice -- in

Guidance Endodontics, LLC v. Dentsply International, Inc., the Court explained that a supplemental expert report disclosed soon before trial was prejudicial, because

> [t]he trial of a case is a substantial undertaking that consumes most or all of an attorney's time. Delivering an expert report to opposing counsel on the first day of trial, therefore, is not helpful. There is no time to prepare a rebuttal expert or investigate the principles underlying the expert's opinions.

2009 WL 3672502, at *5. The Court noted that the defendants could not "prepare a new or existing expert witness," that the new expert report referenced "some recent research," of which the defendants were not informed, and this prejudice was incurable, because the trial had begun and the defendants were subject to a preliminary injunction, and that the defendants did not want to delay the trial and remain subject to the preliminary injunction. 2009 WL 3672502, at *5. The Court excluded the expert even though the Court found no evidence of bad faith or willfulness. See 2009 WL 3672502, at *5. In Guidance Endodontics, LLC v. Dentsply International, Inc., the Court also concluded that: (i) the defendants were prejudiced and surprised when a supplemental report increased the damages estimate "from $1.2 million to $75.2 million," and the plaintiff had previously not disclosed the measure of damages it would seek; and (ii) the prejudice was incurable, because the defendants could not "re-depose [expert] McDonald and find a new rebuttal expert this late in the game when Guidance could have, with due diligence, disclosed this measure of damages during the discovery period." 2009 WL 3672373, at *12. The Court further noted that the trial would be disrupted, because the defendants did not know the plaintiff would seek such damages and had no rebuttal expert to the expert. See WL 3672373, at *14. See also Lewis v. Goldsberry, No. CIV 11-0283 JB/ACT, 2012 WL 681800, at *10 (D.N.M. Feb. 27, 2012)(Browning, J.)(concluding that a failure to disclose was not harmless where the plaintiff missed the disclosure deadline, "the Defendants [were] unable to ascertain to what each of Lewis'

expert witnesses will testify or obtain their own experts to address that testimony," and without such information, deposing the experts would be futile).

When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted. See, e.g., Coffey v. United States, No. CIV 08–0588 JB/LFG, 2012 WL 2175747, at *12-13 (D.N.M. May 26, 2012)(Browning, J.); Wheeler Peak, LLC v. L.C.I.2, Inc., No. CIV 07-1117 JB/WDS, 2010 WL 611141, at *3 (D.N.M. Jan. 31, 2010)(Browning, J.); Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., No. CIV-06-1165 JB/DJS, 2007 WL 4707080, at *4 (D.N.M. Aug. 14, 2007)(Browning, J.). For example, in Coffey v. United States, the Court reviewed the factors and concluded that, where the plaintiff filed an amended report: (i) there was "little or no prejudice or surprise," because the United States had approximately ten months to find an expert to testify on conduct at the Gallup Indian Medical Center if it needed; (ii) the prejudice was curable, because the United States had the amended report when it deposed the expert, the United States was on notice of the report's opinions, and the United States could have sought relief by contacting the other party or the Court; (iii) the trial would not be disrupted, because the United States had the report for around ten months and could find additional witnesses; and (iv) there was no evidence of bad faith or willfulness. 2012 WL 2175747, at *12-13. In Wheeler Peak, LLC v. L.C.I.2, Inc., the Court deemed that a party suffered little prejudice from an expert report that:

> (i) was not signed, (ii) does not contain a complete statement of the basis of his opinions, and does not properly identify the facts, documents, or testimony upon which he relied; (iii) does not identify any summarizing exhibits to be used at trial; and (iv) does not provide his curriculum vitae, or his qualifications, publications, or testimony, all of which rule 26 requires.

2010 WL 611141, at *3. The Court reasoned that:

> (i) Hicks has since provided a signed report; (ii) Wheeler Peak made the two boxes of materials upon which Hicks relied available to [defendant] de la Torre at Hicks' deposition, and can make those materials available again if de la Torre wants to see them; (iii) Hicks produced his cv on June 22, 2009; and (iv) while Hicks submitted his second report about a month and a half after the deadline in the Court's Scheduling Order, de la Torre had Hicks' second report for almost seven months before Hicks' deposition.

2010 WL 611141, at *3 (citations to transcript omitted). See Gulfstream Worldwide Realty, Inc. v. Philips Elecs. N. Am. Corp., 2007 WL 4707080, at *4 (concluding that Gulfstream Realty did not suffer prejudice where Philips Electronics provided the report in an untimely manner but Gulfstream Realty was aware of the information in the report seven weeks before the discovery deadline and before deposing the expert, Gulfstream Realty received the report three weeks before the discovery deadline, and the expert report, which was provided four months before trial, would not disrupt trial).

## LAW REGARDING RULE 406

Under rule 406,

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406. This distinction is not, however, merely terminological. "Habit 'describes one's regular response to a repeated specific situation.'" Guidance Endodontics, 705 F. Supp. 2d at 1269 (quoting Kenneth S. Broun et al., McCormick on Evidence § 162, at 340 (6th ed.)). Examples of habits include "'going down a particular stairway two stairs at a time, or . . . giving the hand-signal for a left turn, or . . . alighting from railway cars while they are moving.'" United States v. Peet, 46 F.3d 1152 (10th Cir. 1995)(quoting Fed. R. Evid. 406 advisory committee's note). "'The doing

of the habitual acts may become semi-automatic.'" Guidance Endodontics, 705 F. Supp. 2d at 1269 (quoting Fed. R. Evid. 406 advisory committee's note). See Perrin v. Anderson, 784 F.2d 1040, 1046 (10th Cir. 1986)(defining habit as "'a regular practice of meeting a particular kind of situation with a certain type of conduct, or a reflex behavior in a specific set of circumstances.'" (quoting Frase v. Henry, 444 F.2d 1228, 1232 (10th Cir. 1971)).

"[A]dequacy of sampling and uniformity of response" are key factors in identifying a habit. Fed. R. Evid. 406 advisory committee's note. See 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 406.02[5], at 406-7 (11th ed. 2015)(describing these factors as "the touchstone of admissibility" for habit evidence). "[I]f only a few instances are shown, and the conduct has occurred over the course of a long period of time, it is unlikely that sufficient evidence of habit will be found; and this is especially so if the instances of conduct are not exactly identical in detail." Saltzburg et al., supra, § 406.02[5], at 406-7. For instance, the Tenth Circuit has stated: "'[F]ive incidents ordinarily would be insufficient to establish the existence of a habit.'" Camfield v. City of Okla. City, 248 F.3d 1214, 1232-33 (10th Cir. 2001)(quoting Perrin v. Anderson, 784 F.2d at 1046). See Maples v. Vollmer, No. CIV 12-0294 JB/RHS, 2013 WL 1677104, at *20 (D.N.M. March 31, 2013)(Browning, J.)(concluding that fleeing the police six out of fifteen times "does not describe Maples' regular response to a repeated specific situation"); Guidance Endodontics, 705 F. Supp. 2d at 1272 ("Because Guidance has cited only a handful of prior instances of the Defendants suing companies and then settling with them by entering into a supply agreement, the Court finds that such conduct is not 'reasonably regular and uniform,' and thus is not a routine practice under rule 406." (quoting United States v. Oldbear, 568 F.3d at 822)).

With respect to organizations' activities, "greater emphasis is placed on the routine nature of the activity than on its particularity." Saltzburg et al, supra, § 406.02[3], at 406-5. A routine practice is the rough analog of a "habit" in the context of an organization. "[A] 'routine practice' must be 'reasonably regular and uniform.'" United States v. Oldbear, 568 F.3d at 822 (quoting 1 Kenneth Broun et al. McCormick on Evidence § 195 (6th ed 2006)). Routine practice include things like "proof of customary and usual computer procedures [and] routine procedures for screening applicants for tenure, processing applications, and reviewing candidates for tenure." 2-406 Weinstein's Federal Evidence § 406.03[1]. On the other hand, "illegal acts such as embezzlement cannot properly be characterized as semi-automatic or reflexive." United States v. Oldbear, 568 F.3d at 822 (citing United States v. Troutman, 814 F.2d 1428, 1455 (10th Cir. 1987)). For instance, in Federal Kemper Life Assurance Co. v. Ellis, 28 F.3d 1033 (10th Cir. 1994), the Tenth Circuit described the evidence used to establish a "routine practice" of timely mailing out notices:

> Kemper provided materials establishing a standard operating procedure regarding the sending of premium due notices. Kemper provided evidence that notices and accompanying envelopes are generated one month prior to the due date of the premium; and that the notices are hand carried to the mail room, inserted into envelopes, and deposited in the mail within forty-eight hours.

28 F.3d at 1040. In Morris v. Travelers Indemnity Co. of America, 518 F.3d 755 (10th Cir. 2008), the Tenth Circuit found that "[a]n affidavit from an [insurance] agent that it was his usual practice to explain the various . . . coverage options constitutes relevant evidence that his conduct on the occasion he met with the insured was in conformity with that routine practice." 518 F.3d at 761 (citing Fed. R. Evid. 406).

## LAW REGARDING RULE 608

"Rule 608 . . . provides certain mechanisms for attacking witnesses' character for truthfulness or untruthfulness." Montoya v. Shelden, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *7 (D.N.M. Oct. 31, 2012)(Browning, J.). "Rule 608 provides an avenue for impeachment by 'introduc[ing] evidence that the witness has a bad character for truthfulness, i.e., a propensity to tell lies.'" United States v. Aranda-Diaz,[11] No. CR 12-2686 JB, 2014 WL 459607, at *8 (D.N.M. Jan. 8, 2014)(Browning, J.)(quoting 2 Stephen A. Saltzburg et al., Federal Rules of Evidence Manual § 608.02[1], at 608-5 (9th ed. 2006)). "Professor Stephen A. Saltzburg similarly explains that 'the rationale' which underlies rule 608 'is that a witness who has a propensity to lie will act in accordance with that propensity when testifying.'" United States v. Aranda-Diaz, 2014 WL 459607, at *8 (quoting Saltzburg et al., supra, § 608.02[1], at 608-5). See United States v. Huerta-Rodriguez, No. CR 09-3206 JB, 2010 WL 3834061, at *7 (D.N.M. Aug. 12, 2010)(Browning, J.). Rule 608 "focuses on impeaching a witness' character for truthfulness by allowing introduction of evidence probative of the witness' propensity to lie." United States v. Aranda-Diaz, 2014 WL 459607, at *8. Rule 608(a) provides for the admission of general opinion or reputation evidence:

> A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.

---

[11]WestLaw misspells this case's defendant's surname as "Aranda-Daiz." United States v. Aranda-Daiz, 2014 WL 459607, at *1. The Court reports the correct spelling in this reference and all subsequent references to the case.

Fed. R. Evid. 608(a).  The truthfulness or untruthfulness of a witness may be attacked by opinion

or reputation evidence without ever proffering more evidence of a character for truthfulness.  See

United States v. Holt, 486 F.3d 997, 1002 (7th Cir. 2007)(noting that, while it is within the trial

court's discretion to prohibit lines of cross-examination of a police officer, the plaintiff "could

have used Rule 608(a) and called a member of the department to testify directly about his opinions

or reputation of [the officer]").  To establish a proper foundation for the opinion or reputation

testimony, a witness must show "'such acquaintance with the person under attack, the community

in which he has lived and the circles in which he has moved, as to speak with authority of the terms

in which generally he is regarded.'"  Montoya v. Shelden, 898 F. Supp. 2d 1279, 1292 (D.N.M.

2012)(Browning, J.)(quoting United States v. Ruiz-Castro, 92 F.3d 1519, 1529 (10th Cir. 1996),

overruled on other grounds by United States v. Flowers, 464 F.3d 1127 (10th Cir. 2006)).

Rule 608(b) provides the rule for admission of specific instances of conduct as evidence of

untruthfulness:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not
> admissible to prove specific instances of a witness's conduct in order to attack or
> support the witness's character for truthfulness.  But the court may, on cross-
> examination, allow them to be inquired into if they are probative of the character
> for truthfulness or untruthfulness of:
>
> (1)     the witness; or
>
> (2)     another witness whose character the witness being cross-examined has
>         testified about.

Fed. R. Evid. 608(b).  "'Under Federal Rule of Evidence 608(b), specific unrelated instances of a

witness's prior misconduct may be used to impeach the witness at the discretion of the court,

however, only to the extent the misconduct reflects on the witness's character for truthfulness.'"

Montoya v. Shelden, 898 F. Supp. 2d at 1292 (quoting United States v. Beltran-Garcia, 338

F. App'x 765, 770 (10th Cir. 2009) (unpublished)[12](citing Fed. R. Evid. 608(b)).  Not every bad

act is probative of veracity.  See United States v. Aranda-Diaz, 2014 WL 459607, at *8.  Courts

should distinguish between crimes of dishonesty and other crimes even if the distinction is not

specified in rule 608.  See United States v. Aranda-Diaz, 2014 WL 459607, at *8 (citing 2

Saltzburg et al., supra, §§ 608.02[4], at 608-9 to -10).  For example, in United States v. Aranda-

Diaz, the Court found that an arrest for domestic violence and child abuse did not qualify under

rule 608. See 2014 WL 459607, at *8 ("[Defendant's] arrest for domestic violence and child abuse

is not, in isolation, probative of his character for truthfulness . . . .").  "Though Rule 608 does not

explicitly specify how the trial court should exercise its discretion, the discretion must be exercised

within the ambit of the other rules of evidence, including Rules 401, 402, and 403, which address

the relevance and probative value of possible evidence."  United States v. Beltran-Garcia, 338

F. App'x at 770 (citing United States v. Whitmore, 359 F.3d 609, 619 (D.C. Cir. 2004)).

---

[12]United States v. Beltran-Garcia is an unpublished opinion, but the Court can rely on an unpublished opinion from the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored.  However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Beltran-Garcia, United States v. Embry, 452 F. App'x 826 (10th Cir. 2011)(unpublished), United States v. Kienlen, 349 F. App'x 349 (10th Cir. 2009)(unpublished), and United States v. Herder, 59 F. App'x 257 (10th Cir. 2003)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Rule 608 was amended in 2003 "to clarify that the absolute prohibition on extrinsic evidence applies only when the sole reason for proffering that evidence is to attack or support the witness' character for truthfulness," and not "to bar extrinsic evidence for bias, competency and contradiction impeachment." Fed. R. Evid. 608 advisory committee's note. The rule precluding the

> admission of extrinsic evidence of specific instances of conduct of the witness when offered for the purpose of attacking credibility . . . does not apply, however, when extrinsic evidence is used to show that a statement made by a defendant on direct examination is false, even if the statement is about a collateral issue.

United States v. Fleming, 19 F.3d 1325 (10th Cir. 1994)(citing 27 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure: Evidence § 5096, at 546-47 (1990)). This doctrine, "known as the doctrine of 'specific contradiction,'" allows such impeachment "even if the evidence elicited . . . ordinarily might be collateral or otherwise inadmissible." United States v. Crockett, 435 F.3d 1305, 1313 (10th Cir. 2006)(citing Walker v. United States, 347 U.S. 62, 65 (1954); Mason v. Okla. Turnpike Auth., 115 F.3d 1442, 1456 (10th Cir. 1997), overruled on other grounds by, TW Telecom Holdings Inc. v. Carolina Internet Ltd., 661 F.3d 495 (10th Cir. 2011)). See United States v. Cerno, 529 F.3d 926, 944 (10th Cir. 2008)("If there is evidence that 'specific[ally] contradict[s]' a witness's testimony, impeachment evidence is admissible to demonstrate that the witness lacks credibility and has a propensity for lying." (quoting United States v. Crockett, 435 F.3d at 1313).[13] "Parties asking questions about a witness' specific instances of conduct probative

---

[13]Professors Charles Alan Wright and Victor James Gold recognize that, before the 2003 amendment, the "greater weight of authority" held that "Rule 608 regulates only the admissibility of character evidence and that subdivision (b) should not be read literally." 28 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6117, at 86 (1993 & Supp. 2011). Wright and Gold confirm that, as a result of the 2003 amendment, rule 608(b) "has been amended to make

of truthfulness cannot evade rule 608's extrinsic-evidence restrictions by using extrinsic evidence to contradict the answers they receive, because extrinsic evidence is not ordinarily admissible to impeach a witness by contradiction on a collateral matter." United States v. DeLeon, No. CR 15-4268 JB, 2018 WL 4184233, at *1 (D.N.M. April 18, 2018)(Browning, J.)(citing United States v. Walker, 930 F.2d 789 (10th Cir. 1991); United States v. Warledo, 557 F.2d 721, 726 (10th Cir. 1977)).

It is generally true that "a party may inquire into specific instances of conduct by extrinsic evidence only on cross-examination of a witness in challenging the truthfulness of his testimony." See Bennet v. Longacre, 774 F.2d 1024, 1027 (10th Cir. 1985). Where a party has already attacked a witness' credibility by cross-examination on specific instances of conduct and the witness made a false statement on the stand, however, the party may provide extrinsic evidence to impeach that witness on re-direct or during a later direct examination. See United States v. Embry, 452 F. App'x 826, 835 (10th Cir. 2011)(unpublished)(noting that "Rule 608(b)(1) . . . allows impeachment testimony . . . on direct or redirect examination . . . where a party already has attacked the credibility of a witness by referring to specific instances of conduct."). When a witness makes a false statement while providing testimony, the opposing party is allowed to prove that lie by presenting rebuttal witnesses. See United States v. Crockett, 435 F.3d at 1313 ("[W]hen a defendant makes a false statement during direct testimony, the prosecution is allowed to prove, either through cross-examination or by rebuttal witnesses, that the defendant lied as to that fact." (citing Walder v. United States, 347 U.S. at 65)).

---

clear that it applies only to extrinsic evidence of conduct offered for the purpose of proving character for truthfulness or untruthfulness." 28 Wright & Gold, supra, § 6117, at 14 (Supp. 2011).

It is "permissible impeachment to expose a witness's bias." <u>United States v. Baldridge</u>, 559 F.3d 1126, 1135 (10th Cir. 2009)(citing <u>United States v. Abel</u>, 469 U.S. 45, 51 (1984); <u>United States v. DeSoto</u>, 950 F.2d 626, 630 (10th Cir. 1991)). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." <u>United States v. Abel</u>, 469 U.S. at 52. Thus, because bias is never collateral, "it is permissible to [prove bias] by extrinsic evidence." <u>Montoya v. City of Albuquerque</u>, No. CIV 03-0261 JB/RHS, 2004 WL 3426435, at *4 (D.N.M. May 18, 2004)(Browning, J.). The Tenth Circuit describes bias, based on its definition at common law, as "the relationship between a witness and a party which might cause the witness to slant his testimony for or against the party." <u>United States v. Baldridge</u>, 559 F.3d at 1135 (citing <u>United States v. Abel</u>, 469 U.S. at 52).[14]

## LAW REGARDING RULE 404(b)

Rule 404(b) provides:

Other Crimes, Wrongs, or Acts.

(1)     Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

---

[14]Prejudice is defined as "[a] preconceived judgment formed with little or no factual basis; a strong bias." Prejudice, <u>Black's Law Dictionary</u> 1229 (9th ed. 2009). <u>See</u> <u>New Oxford American Dictionary</u> 1378 (3d ed. 2010)("[P]reconceived opinion that is not based on reason or actual experiences . . . dislike, hostility . . . ."). Bias is defined as: "Inclination; prejudice; predilection." Bias, <u>Black's Law Dictionary</u>, <u>supra</u>, at 183. Although bias and prejudice in contemporary discourse may be used interchangeably, with courts and lawyers both asserting that one has bias for something and bias against, they historically have been and are often distinguished by saying that there may be "bias or prejudice." <u>E.g.</u>, <u>Nev. Comm'n on Ethics v. Carrigan</u>, 564 U.S. 117, 124 (2011)(quoting 28 U.S.C. § 144, which makes "any 'personal bias or prejudice' a basis for recusal"). .

> (2)     Permitted Uses; Notice in a Criminal Case.   This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:
>
>> (A)     provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> (B)     do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  In other words, one cannot present evidence the relevance of which is based on the forbidden inference: that a person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too.  "'The rule, however, has a number of exceptions[15] -- purposes for which such evidence will be admissible.'"  S.E.C. v. Goldstone, No. CIV 12-0257 JB/LFG, 2016 WL 3996384, at *16 (D.N.M. June 27, 2016)(Browning, J.)(quoting

---

[15]The United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1).  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible *except* when it is used to prove motive, opportunity, intent, etc.  Rather, it says that propensity evidence -- other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith -- is *categorically* inadmissible.  Fed. R. Evid. 404(b)(1).  But the rule also acknowledges that there may be "another" use for other-act evidence -- i.e., a different, *non-propensity* use.  Fed. R. Evid. 404(b)(2).  So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere -- notably in Rules 412 through 415, which are limited to sexual-assault cases.  In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3 (emphases in original).

<u>Wilson v. Jara</u>, No. CIV 10-0797 JB/WPL, 2011 WL 6739166, at *5 (D.N.M. Nov. 1, 2011)(Browning, J.). Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident. <u>See</u> Fed. R. Evid. 404(b)(2). The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). <u>See</u> <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . :
>
>> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

<u>United States v. Zamora</u>, 222 F.3d 756, 762 (10th Cir. 2000)(quoting <u>United States v. Roberts</u>, 185 F.3d 1125, 1141 (10th Cir. 1999)). <u>See</u> <u>United States v. Higgins</u>, 282 F.3d 1261, 1274 (10th Cir. 2002); <u>United States v. Hardwell</u>, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing <u>Huddleston v. United States</u>, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character. <u>See</u> <u>United States v. Dudek</u>, 560 F.2d 1288, 1296 (6th Cir. 1977); 22 Charles Alan Wright & Kenneth Graham, <u>Federal Practice and Procedure: Evidence</u> § 5239, at 428, 436-37 & 439 (1991). In <u>United States v. Phillips</u>, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

(1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

When "bad act evidence is both relevant and admissible for a proper purpose, 'the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(quoting United States v. Himelwright, 42 F.3d 777, 782 (3d Cir. 1994)). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Kendall, 766 F.2d at 1436.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which [the defendant] was charged"). This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United

States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)).  See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion.").  The more similar the act or state of mind, the more relevant the evidence becomes.  See United States v. Queen, 132 F.3d at 996.  Moreover, when establishing identity, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical.  See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982).  Accord United States v. Ganadonegro, No. CR 09-0312 JB, 2011 WL 3957549, at *1-3 (D.N.M. Aug. 30, 2011)(Browning, J.).

## LAW REGARDING RULE 403

Under rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  The trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "'[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter [under rule 403].'"  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(emphasis in United States v. Sides, 944 F.2d 1554 (10th Cir. 1991))(quoting United States v. Sides, 944 F.2d at 1563).  The Tenth Circuit has admonished district courts that they should be "mindful" that "'exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly.'"  United States v.

Smalls, 605 F.3d 765, 787 (10th Cir. 2010)(quoting United States v. Tan, 254 F.3d 1204, 1211 (10th Cir. 2001)).

The decision to admit or exclude evidence pursuant to rule 403 is within the district court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the district court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. at 54 ("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d at 1301; United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not

necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R.

Evid. 403 advisory committee's note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some

concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from

proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180

(1997)(quoting Fed. R. Evid. 403). "Such improper grounds certainly include . . . generalizing a

defendant's earlier bad act into bad character and taking that as raising the odds that he did the

later bad act now charged." Old Chief v. United States, 519 U.S. at 180-81. In light of rule

404(b)'s prohibition regarding the use of character evidence to show that a person acted in

conformity with their character, "[t]here is, accordingly, no question that propensity would be an

'improper basis' for conviction and that evidence . . . is subject to analysis under Rule 403 for

relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United

States, 519 U.S. at 182. The Supreme Court has advised lower courts to disregard the prosecution's

need for "evidentiary depth to tell a continuous story" when the prosecution's evidence consists of

the underlying facts of a criminal defendant's prior felony conviction, as in an action for felon in

possession. Old Chief v. United States, 519 U.S. at 189-90. In such an action, "[t]he most the jury

needs to know is that the conviction admitted by the defendant falls within the class of crimes that

Congress thought should bar a convict from possessing a gun, and this point may be made readily

in a defendant's admission and underscored in the court's jury instructions." Old Chief v. United

States, 519 U.S. at 190-91. The Court has previously ruled that, under the Supreme Court's

decision in Old Chief v. United States, the underlying facts of a defendant's prior conviction should

be excluded, even if relevant to the offense. See, e.g., United States v. Williams, No. CR 12-1675

JB, 2012 WL 5476228, at *2 (D.N.M. Nov. 7, 2012)(Browning, J.); <u>United States v. Ashley</u>, No. CR 04-2497 JB, 2006 WL 4109679, at *3 (D.N.M. Aug. 1, 2006)(Browning, J.)("Even if relevant under rule 404(b), given the nature of the crime with which he is charged here and the similarity to these prior crimes, the danger of unfair prejudice outweighs the probative value of specifically identifying the prior crimes."). <u>See also</u> <u>United States v. Wacker</u>, 72 F.3d 1453, 1472 (10th Cir. 1995)("Whereas the fact of a defendant's prior felony conviction is material to a felon in possession charge, the nature and underlying circumstances of a defendant's conviction are not.").

## ANALYSIS

The Court denies the Undisclosed Evidence MIL, denies the Practice of Law MIL, grants in part and denies in part the State Bar MIL, and denies New Mexico's requests in the State Bar MIL Response. The Court concludes that, first, New Mexico disclosed to Mr. Pratt all relevant evidence pertaining to the listed New Mexico consumers and that, as the evidence to which Mr. Pratt refers in the Undisclosed Evidence MIL is irrelevant, the Court should deny the Undisclosed Evidence MIL without prejudice to Mr. Pratt raising specific, detailed objections in the robust context of specific evidence offered at trial should New Mexico introduce such evidence at trial. Second, no right to practice law bars evidence of Mr. Pratt's lawsuits. Third, New Mexico cannot use <u>In re Pratt</u> to argue that Mr. Pratt has a propensity to engage in misconduct, and, as, in the MOO, the Court grants summary judgment for Mr. Pratt on theories that he acted recklessly, knowingly, willfully, or in bad faith, <u>see</u> MOO at 184, 2019 WL 2804575, at *68, evidence of Mr. Pratt's state of mind is irrelevant and the <u>In re Pratt</u> evidence is inadmissible as evidence for that purpose. Fourth, New Mexico may not use <u>In re Pratt</u> as evidence of habit pursuant to rule 406, because New Mexico does not have evidence of a sufficient number of incidents during which

Real Estate Law acted pursuant to the habit.  Fifth, New Mexico can use <u>In re Pratt</u> for rule 608

purposes.

I.      **BECAUSE NEW MEXICO DISCLOSED RELEVANT EVIDENCE REGARDING THE LISTED NEW MEXICO CONSUMERS, AND BECAUSE THE SPECIFIC EVIDENCE THAT MR. PRATT LISTS IN THE UNDISCLOSED EVIDENCE MIL IS IRRELEVANT, THE COURT WILL NOT EXCLUDE ALL EVIDENCE <u>RELATED TO THE LISTED NEW MEXICO CONSUMERS</u>.**

The Court will not exclude, as Mr. Pratt requests, evidence related to the Undisclosed

Evidence MIL's listed New Mexico consumers.  <u>See</u> Undisclosed Evidence MIL at 3.  New

Mexico disclosed relevant evidence of the listed New Mexico consumers.  <u>See</u> Undisclosed

Evidence MIL Response at 2; July 2 Tr. at 15:14-20 (Anaya-Allen); <u>id.</u> at 16:9-11 (Anaya-Allen).

The Court understands the other evidence that Mr. Pratt discusses to be irrelevant to the case.  The

Court denies, however, Mr. Pratt's request for exclusion without prejudice should he wish to object

to such evidence's introduction if its relevance become apparent at trial.

As New Mexico disclosed relevant evidence of the listed New Mexico consumers pursuant

to rule 26(a), rule 37(c)(1) does not apply to this evidence.  Pursuant to rule 37(c)(1),

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  In the initial disclosures, New Mexico disclosed information related to

Alexander, Leary, Madrid, C. Maness, M. Maness, Silva, Sullivan, L. Trujillo, V. Trujillo, and

Ward.  <u>See</u> Undisclosed Evidence MIL Response at 2; July 2 Tr. at 15:14-20 (Anaya-Allen); <u>id.</u> at

16:9-11 (Anaya-Allen).  New Mexico identified documents relevant to Madrid and M. Maness in

response to Mr. Pratt's First and Second Requests for Production of Documents, and additional

documents related to Madrid and M. Maness in its Supplemental Response to Mr. Pratt.  <u>See</u>

Undisclosed Evidence MIL at 2. Rule 37(c)(1) does not, therefore, exclude such disclosed evidence.

Mr. Pratt complains, however, that New Mexico did not disclose evidence of New Mexico consumers' deaths and foreclosure judgments, see Undisclosed Evidence MIL at 2-3; Mr. Pratt argued at the hearing: "I don't have [anything] from the foreclosure judgment against that plaintiffs. I don't have the mortgage [notices] against the plaintiffs," July 2 Tr. at 12:8-11 (Pratt). New Mexico does not indicate that it disclosed to Mr. Pratt all such information, but the Court will not exclude this evidence under rule 37, because it understands this evidence to be irrelevant. The Tenth Circuit has directed district courts to consider when deciding whether a non-disclosure was substantially justified or is harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Woodworker's Supply, Inc. v. Principal Mut. Life Ins., 170 F.3d at 993. First, even if such information about consumer deaths, foreclosure judgments, and mortgage notices surprises Mr. Pratt, it does not prejudice him. The Court cannot imagine why such evidence would enter the trial. The Court agrees with New Mexico that whether New Mexico consumers died is irrelevant to this action which New Mexico, and not the New Mexico consumers, bring, because the case does not involve the New Mexico consumers' death, but the Defendants' actions in requesting advance fees and in violating contract requirements. See Undisclosed Evidence MIL Response at 2; July 2 Tr. at 17:1-3 (Anaya-Allen). The Court, also like New Mexico, cannot determine what significance the foreclosure judgments have to New Mexico's case. See Undisclosed Evidence MIL Response at 1-2; July 2 Tr. at 16:11-15 (Anaya-Allen). The New

Mexico consumers' claims of harm from Real Estate Law are irrelevant to this matter, because the case involves New Mexico's claims based solely on the Defendants' requests for advance fees and on other contractual provisions in the attorney-client fee agreements. Second, without prejudice, Mr. Pratt has no prejudice to cure. Third, the Court cannot predict how specific evidence about consumer deaths, foreclosure judgments, or mortgage notices would enter the trial such that it would disrupt trial. Fourth, no evidence appears of New Mexico's bad faith or willfulness in not disclosing this evidence. Moreover, that the evidence to which Mr. Pratt refers is likely irrelevant is a substantial justification for New Mexico's not providing the evidence. The Court will not, therefore, exclude such evidence.

Although Mr. Pratt argued that he did not receive evidence related to the listed New Mexico consumers, see July 2 Tr. at 12:8-13 (Pratt), in the Undisclosed Evidence MIL, Mr. Pratt seems to object directly to the New Mexico consumers' "claim[s]," Undisclosed Evidence MIL at 2 (stating, at the end of the list of New Mexico consumers: "ALL SUCH INFORMATION SHOWS NO LIABILITY AS TO PRATT." (capitalization in Undisclosed Evidence MIL)). These arguments also do not persuade the Court. New Mexico, not the New Mexico consumers, bring the claims in this case. Moreover, the time for Mr. Pratt to attack pretrial the merits of New Mexico's claim has passed. The non-discovery pretrial motion deadline was April 25, 2019. See Scheduling MOO at 2, 20, 2019 WL 1283002, at *1, *8; Fed. R. Civ. P. 56(a) ("Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."). Mr. Pratt missed the deadline for filing such motions. The parties had until June 25, 2019, to file motions in limine. See Clerk's Minutes at 3, filed July 2, 2091 (Doc. 155). "'A motion *in limine* is a request for guidance by the

court regarding an evidentiary question,' which the court may provide at its discretion to aid the parties in formulating trial strategy." Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995)(quoting United States v. Luce, 713 F.2d 1236, 1239 (6th Cir. 1983), aff'd, 469 U.S. 38 (1984); and citing United States v. Yannott, 42 F.3d 999, 1007 (6th Cir. 1994)). See Motion in Limine, Black's Law Dictionary (11th ed. 2019)("A pretrial request that certain inadmissible evidence not be referred to or offered at trial."). Cf. Edens v. Netherlands Ins., 834 F.3d 1116, 1130 (10th Cir. 2016)(discussing a document titled motion in limine and stating: "Perhaps the district court took the motion at its title and reasonably assumed that the motion purely involved trial issues"). A "motion in limine . . . is not a vehicle to bring a dispositive motion." Denbury Onshore, LLC v. Christensen, No. 14-CV-19-ABJ, 2015 WL 11023559, at *3 (D. Wyo. May 11, 2015)(Johnson, J.)(citing Mansourian v. Regents of Univ. of Cal., No. CIV S-03-2591 KJM, 2011 WL 6205909, at *1 (E.D. Cal. Dec. 13, 2011)(Muller, J.); Williams v. Johnson, 747 F. Supp. 2d 10, 20 (D.D.C. Oct. 31, 2010)(Kollar-Kotelly, J.); Dunn ex rel. Albety v. State Farm Mut. Auto. Ins., 264 F.R.D. 266, 274 (E.D. Mich. 2009)(Zatkoff, J.)). As Mr. Pratt missed the dispositive motions deadline, the Court denies his non-evidentiary requests and treats his filing as a motion in limine. See Denbury Onshore, LLC v. Christensen, 2015 WL 11023559, at *4 (treating a dispositive motion disguised as a motion in limine as a motion in limine); Williams v. Johnson, 747 F. Supp. 2d at 20 (denying a motion in limine where it makes dispositive requests after the dispositive motion deadline); Dunn ex rel. Albery v. State Farm Mut. Auto. Ins. Co., 264 F.R.D. at 275 (same).

Moreover, few of Mr. Pratt's arguments make valid attacks on New Mexico's claims and evidence. Mr. Pratt's valid contentions about the quality of the evidence against him are limited to the following:

> 7.    RACHEL SILVA . . . .
>
> PRATT LEFT RELC SEP 13TH AND THIS PLAINTIFF IS NOT HIS RESPONSIBILITY AS ALL ALLEGED MARS ACTIVIY WAS SUBSEQUENT.
>
> 11.    LINDA WARD . [sic] no information or facts.

Undisclosed Evidence MIL at 2 (capitalization in Undisclosed Evidence MIL). Mr. Pratt objects, for instance, to several of the listed New Mexico consumers' roles in this lawsuit, because the consumers have deceased:

> 1.    ROBERT ALEXANDER alleged plaintiff is now DECEASED.
>
> No probate, no personal representative, cannot proceed against PRATT.
>
> No "standing" to proceed.
>
>   . . . .
> 8.    VICKI SULLIVAN (DECEASED) Nostanding to proceed.
>
> No probate, no personal representative, cannot proceed against PRATT.

Undisclosed Evidence MIL at 2 (emphasis, ellipses, and capitalization in Undisclosed Evidence MIL). As discussed, <u>supra</u>, the Court agrees with New Mexico that, as New Mexico brings this suit, and not the consumers, such concerns about the New Mexico consumers' deaths are irrelevant. <u>See</u> Undisclosed Evidence MIL Response at 1-2. Mr. Pratt also objects to several New Mexico consumers' claims based on arguments about foreclosure judgments, the New Mexico consumers' interests in the case, or refunds that Real Estate Law provided:

2.      JOSE CEDENO, "in rem" judgment adverse to him and sold his rights to an investor.  As per theadverse [sic] judgment and selling of his rights Mr. Cedeno has no claim here.

3.      MARTHA LEARY , [sic] foreclosure judgment adverse to her so claim barred.

4.      LARRY MADRID, foreclosure judgment adverse to him bars claim.

5.      CREIGHTEN MANESS, foreclosure judgment adverse to him bars claim.

6.      MIKE MANESS, foreclosure judgment adverse to him bars claim.

FULL REFUND PAID.

7.      RACHEL SILVA, foreclosure judgment adverse to him bars claim.

. . . .

9.      LLOYD TRUJILLO. Stipulated judgment of foreclosure bars suit here as he ADMITTED to the foreclosure per the stipulation.

10.      VALERIE TRUJILLO. (SAME AS LLOYD TRUJILLO).

Undisclosed Evidence MIL at 2 (capitalization in Undisclosed Evidence MIL).  Also, as discussed, supra, and like New Mexico, the Court cannot determine what significance such arguments have to the evidence's admissibility or to New Mexico's case, because this matter involves the Defendants' requests for advance fees for mortgage and foreclosure relief services, and other contractual provisions in their attorney-client fee agreements.  See Undisclosed Evidence MIL Response at 1-2.  Mr. Pratt's statements are irrelevant to such issues.

Mr. Pratt asks in the alternative: "[A]n *FRCP 403* hearing must take place to determine the validity of their claims."  Undisclosed Evidence MIL at 3 (emphasis in Undisclosed Evidence MIL).  The Court held a hearing, but because Mr. Pratt did not appear in person and appeared by poor telephone reception, he effectively did not show up for the hearing.  Moreover, rule 403 does

not offer a vehicle through which to challenge the validity of witnesses' claims or statements.  See Fed. R. Evid. 403.  As discussed in the preceding paragraph, the Court also will not, at this point in time, consider arguments about the claims' validity.  Mr. Pratt's opportunity to make dispositive arguments has passed.  Rule 403 provides for the exclusion of unduly prejudicial, confusing, misleading, delaying, time wasting, or cumulative evidence; it allows for the exclusion of evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  As New Mexico indicates, see Undisclosed Evidence MIL Response at 3; July 2 Tr. at 16:19-17:1 (Anaya-Allen), Mr. Pratt has introduced no arguments why the Court should exclude, pursuant to rule 403, evidence related to the listed New Mexico consumers.Any rule 403 arguments also would likely not persuade the Court, because evidence of the New Mexico consumers' interactions with Real Estate Law are likely highly probative.  To succeed on its case about Mr. Pratt's MARS Rule and MFCFPA violations related to New Mexico consumers, New Mexico must introduce evidence about New Mexico consumers, and of MARS Rule and MFCFPA violations.  As the Court has discussed, the other evidence to which Mr. Pratt objects is irrelevant.

Accordingly, the Court denies the Undisclosed Evidence MIL.  As the Court's interpretation of the prejudice to Mr. Pratt rests on the Court's assumption that the evidence of which Mr. Pratt complains is irrelevant to New Mexico's case, the denial is without prejudice to Mr. Pratt raising objections at trial.  The trial may later prove the evidence relevant.  Should a specific piece of evidence become relevant at trial, Mr. Pratt may object to its introduction.

## II.    NO RIGHT TO PRACTICE LAW BARS EVIDENCE OF MR. PRATT'S LAWSUITS.

The Court denies Mr. Pratt's Practice of Law MIL.  Mr. Pratt does not convince the Court that he has any absolute right to practice law such that the Court must exclude all evidence that he practiced law wrongfully or frivolously.  Mr. Pratt writes that he "submits his Motion Limine #2 that absolutely guarantees his right to practice law per the 5th Amendment 'due process' clause, and per the authority vested in the California legislature and California state bar."  Practice of Law MIL at 1.  Although "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment [to the Constitution of the United States]," Schware v. Bd. of Bar Exam'rs of N.M., 353 U.S. 232, 238-39 (1957)(footnote omitted)(citing Dent v. West Virginia, 129 U.S. 114 (1889); Slochower v. Bd. of Higher Educ., 350 U.S. 551 (1956); Wieman v. Updegraff, 344 U.S. 183 (1952)), such rights are "nevertheless subject to reasonable government regulation," Conn v. Gabbert, 526 U.S. 286, 291-92 (1999).  See Attwell v. Nichols, 608 F.2d 228, 230-31 (5th Cir. 1979)("The Constitution proscribes only those qualifications or requirements which have no rational connection with an applicant's fitness or capacity to practice law."  (citing Schware v. Bd. of Bar Exam'rs of N.M.).  The Supreme Court has, for instance, held that an interruption of a lawyer's practice, such as a Fourth Amendment to the Constitution of the United States search of a lawyer's office at the same time the lawyer's client testified before a grand jury, see Conn v. Gabbert, 526 U.S. at 288-90, does not violate this right, because the cases identifying the right "all deal with a complete prohibition of the right to engage in a calling," Conn v. Gabbert, 526 U.S. at 292.  Nothing in such caselaw indicates a right to exclude evidence of a legal practice from a trial on that practice, and such evidence interrupts a lawyer's practice even less than the

occurrence in <u>Conn v. Gabbert</u>.  As New Mexico describes, whether Mr. Pratt's lawsuits were "disingenuous" is relevant, "[b]ecause Defendant Pratt is accused of filing sham lawsuits to avoid federal and state laws that prohibit advance fees for loan modifications."  Practice of Law MIL Response at 2 (footnote omitted).

As in his Undisclosed Evidence MIL, Mr. Pratt raises arguments for summary judgment rather for the evidence's exclusion.  <u>See</u> July 2 Tr. at 21:3-12 (Anaya-Allen)(describing the Practice of Law MIL as a summary judgment motion).  He writes:

> PRATT was duly licensed to practice law by the State of California, and was litigating cases on behalf of the alleged new mexico Plaintiffs at all relevant times.
>
> The NMAG and this honorable court cannot take away or abrogate such right of PRATT.
>
> There is no finding, legal ruling, or other such admissible "evidence", and NONE has been presented here that any lawsuit(s) filed by PRATT were "frivolous" at any time.  As such, PRATT was simply practicing law at all times.

Practice of Law MIL at 2 (capitalization in Practice of Law MIL).  The Court denies, as it did for the Undisclosed Evidence MIL, Mr. Pratt's requests based on the alleged insufficiency of New Mexico's evidence and on other purported summary judgment grounds.  Mr. Pratt's time for challenging the evidence through dispositive motions has passed, and he must now confront the issues at trial.

Moreover, no right to practice law would obtain for Mr. Pratt summary judgment in his favor.  New Mexico seeks no remedies and brings no claims against Mr. Pratt that would impede his legal practice.  <u>See</u> July 2 Tr. at 21:12-18 (Anaya-Allen).  The practice of law is "subject to reasonable government regulation."  <u>Conn v. Gabbert</u>, 526 U.S. at 291-92.  As New Mexico explains, numerous restrictions exist on the practice of law, including, for example, rule 11(b) of

the Federal Rules of Civil Procedure's restrictions on frivolous suits.  See Practice of Law MIL Response at 2.  See also Fed. R. Civ. P. 11(b)(2).  New Mexico can bring, and has brought, claims against Mr. Pratt for his violation of federal law and of state law, see Complaint ¶¶ 77-111, at 18-24; the MARS Rule and the MFCFPA, under which New Mexico sues, apply to the practice of law, see MOO at 102-03, 120-21, 2019 WL 2804575, at *33-34, *42-43; see also 12 C.F.R. § 1015.7; F.T.C. v. Kutzner, No. SA CV 16-00999-BRO (AFMx), 2017 WL 4685286, at *2, *8-9 (C.D. Cal. Sept. 5, 2017)(O'Connell, J.)(recognizing that the MARS Rule applies to attorneys and applying the MARS rule to litigation services); F.T.C. v. A to Z Mktg., Inc., No. SACV 13-00919-DOC (RNBx), 2014 WL 12479617, at *4 (C.D. Cal. Sept. 17, 2014)(Carter, J.)(recognizing that attorneys are exempt from the MARS Rule when they satisfy the MARS Rule's attorney exemptions); cf. F.T.C. v. Lanier Law, LLC, 194 F. Supp. 3d 1238, 1282-83 (M.D. Fla. 2016)(Howard, J.)(concluding that, through the MARS Rule, the CFPB appropriately exercises regulatory authority over "attorneys engaged in the practice of law").  At trial, New Mexico will seek restitution, disgorgement, and civil penalties, which will not interrupt Mr. Pratt's legal practice.  See Complaint ¶¶ A-F, at 24; MOO at 183, 2019 WL 2804575, at *68 (dismissing injunctive relief requests).  The Court sees no reason based on New Mexico's claims to bar evidence of Mr. Pratt's legal practice.

The California State Legislature's and the State Bar of California's authority have no bearing on whether the Court should admit evidence that Mr. Pratt filed frivolous lawsuits.  The Court assumes that Mr. Pratt refers to these entities, because he joined the State Bar of California pursuant to their authority.  The Court does not see how this authority relates to the exclusion of

evidence at this trial.  While these entities regulate Mr. Pratt, so does federal law and New Mexico

law if he served New Mexico residents.

No constitutional or any other right that the Court has located protects Mr. Pratt absolutely

from criticism of his practice.  The Court will, accordingly, permit New Mexico to introduce such

evidence as it is otherwise admissible and relevant to its theories.  The Court denies, therefore, the

Practice of Law MIL.

### III.  NEW MEXICO MAY NOT USE IN RE PRATT EVIDENCE TO ARGUE THAT MR. PRATT HAS A PROPENSITY FOR MISCONDUCT, AS EVIDENCE OF HIS STATE OF MIND, OR AS EVIDENCE OF REAL ESTATE LAW'S ROUTINE PRACTICES, BUT IT MAY USE IN RE PRATT EVIDENCE FOR RULE 608 PURPOSES.

The Court denies Mr. Pratt's request in the State Bar MIL to exclude In re Pratt evidence

against Mr. Pratt.  See State Bar MIL at 1-3.  The Court precludes New Mexico from using such

evidence to show that Mr. Pratt engaged in the same wrongful acts toward the California

consumers and the New Mexico consumers, or to show Mr. Pratt's willfulness or Real Estate

Law's routine practices.[16]  See State Bar MIL at 3.  New Mexico may use In re Pratt evidence for

rule 608 purposes or for other permissible purposes that New Mexico articulates at trial.

---

[16]The Court notes that "Rule 406 is a rule of relevance.  It does not make hearsay considerations moot."  Callaway v. Skywest Airlines, No. 2:04-CV-179 TS, 2006 WL 1328089, at *4 (D. Utah March 29, 2006)(Stewart, J.).  New Mexico has not yet shown a hearsay exemption or exclusion that makes admissible documentary evidence from the In re Pratt Decision.  See MOO at 15-19 n.22, 2019 WL 2804575, at *3.  The In re Pratt Stipulation is admissible as a statement by a party opponent, because Mr. Pratt adopts the In re Pratt Stipulation through his signature agreeing that he "signif[ies] [his] agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Facts, Conclusions of Law, and Disposition."  In re Pratt Stipulation at 13.  See Shell Oil Co. v. United States, 896 F.3d 1299, 1312 (Fed. Cir. 2018)(stating that a stipulation is admissible under either rule 801(d)(2)(A) -- statements made "'in an individual or representative capacity'" or "'one the party manifested that it adopted or believed to be true'" (quoting Fed. R. Evid. 801(d)(2)(A), (B)); Agere Sys., Inc. v. Advanced Envtl. Tech. Corp., 602

**A.**  **NEW MEXICO CANNOT USE THE <u>IN RE PRATT</u> EVIDENCE TO ARGUE THAT MR. PRATT HAS A PROPENSITY FOR MISCONDUCT, BECAUSE RULE 404(b)(1) BARS SUCH A PURPOSE, OR THAT MR. PRATT ACTED WILLFULLY, BECAUSE SUCH EVIDENCE IS IRRELEVANT.**

New Mexico cannot use properly <u>In re Pratt</u> evidence against Mr. Pratt for rule 404(b)'s prohibited purpose. Pursuant to rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Under this rule, New Mexico may not use <u>In re Pratt</u> to argue that, because Mr. Pratt committed certain acts in relation to the California consumers, he undertook the same acts toward the New Mexico consumers.

In the State Bar MIL Response, New Mexico suggests that it will use <u>In re Pratt</u> evidence to show Mr. Pratt's state of mind as evidence of his willfulness, which would subject Mr. Pratt to enhanced penalties. <u>See</u> State Bar MIL Response at 5-7. The Court will not permit the evidence's use for such purposes.

> To determine whether Rule 404(b) evidence was properly admitted [the Court] look[s] to [a] four-part test . . . :
>
> > (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

---

F.3d 204, 232 (3d Cir. 2010)(describing that a stipulation may be an admission by a party opponent). If the <u>In re Pratt</u> Decision or the <u>In re Pratt</u> Stipulation are going to be admitted against the Parwatikar Defendants, or if the <u>In re Pratt</u> Decision is going to be admitted against Mr. Pratt, the documents must be admitted for a non-hearsay purpose.

United States v. Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d at 1141). The Court agrees with New Mexico regarding the first, third and fourth elements. See State Bar MIL at 6-7. First, Rule 404(b)(2) permits evidence of prior misconduct to show a party's state of mind. See Fed. R. Evid. 404(b)(2) (permitting evidence of past misconduct for such purposes as "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Regarding the third element, the Court has commented: "[T]he Tenth Circuit has stated: 'Other circuits have held, and we agree, that excluding evidence in a bench trial under 'Rule 403's weighing of probative value against prejudice [is] improper.'" Coffey v. United States, 2012 WL 1698289, at *3 (quoting United States v. Kienlen, 349 F. App'x 349, 351 (10th Cir. 2009)(unpublished)). Given this ruling, the Court will not consider the third element here, in a case that will proceed before a bench trial, and, because excluding evidence pursuant to rule 403 is improper in a bench trial and because no jury exists in a bench trial, the Court concludes that the fourth element is likewise inapplicable. Regarding the second element, however, the Court disagrees with New Mexico. See State Bar MIL at 6. In the MOO, the Court grants summary judgment for Mr. Pratt on theories that he acted recklessly, knowingly, willfully, or in bad faith, see MOO at 184, 2019 WL 2804575, at *68, so In re Pratt evidence introduced against Mr. Pratt to show his willfulness is irrelevant.[17] Accordingly, the Court will not permit the evidence for such a purpose. The Court notes that it will consider other permissible rule 404(b) purposes for the In re Pratt evidence should New Mexico articulate such purposes at trial.

---

[17]The Court notes that the Parwatikar Defendants do not join the State Bar MIL, and that the Court has not dismissed theories that the Parwatikar Defendants acted recklessly, knowingly, willfully, or in bad faith. See MOO at 183-84, 2019 WL 2804575, at *68. The Court will permit, therefore, such evidence against the Parwatikar Defendants.

**B.** **NEW MEXICO CANNOT INTRODUCE THE <u>IN RE PRATT</u> EVIDENCE TO SHOW REAL ESTATE LAW'S ROUTINE PRACTICE, BECAUSE NEW MEXICO DOES NOT HAVE AN ADEQUATE SAMPLING FROM WHICH TO INFER A HABIT.**

In the State Bar MIL Response, New Mexico also suggests using the <u>In re Pratt</u> evidence as rule 406 habit evidence. <u>See</u> State Bar MIL Response at 3-5. Pursuant to rule 406,

> [e]vidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

Fed. R. Evid. 406. To introduce evidence of an organization's "routine practice" to prove that the organization acted in conformity with that habit pursuant to rule 406, Fed. R. Evid. 406, a party must show that an organization's "'routine practice' [is] 'reasonably regular and uniform,'" <u>United States v. Oldbear</u>, 568 F.3d at 822 (quoting 1 Broun, <u>supra</u> § 195). "[C]ustomary and usual computer procedures [and] routine procedures for screening applicants for tenure, processing applications, and reviewing candidates for tenure" are routine practices, 2-406 <u>Weinstein's Federal Evidence</u> § 406.03[1], as are waiving standard conditions for insurance when issuing insurance policies, <u>see</u> <u>Rosenburg v. Lincoln Am. Life Ins.</u>, 883 F.2d 1328 (7th Cir. 1989)(cited in 2 Saltzburg et al., <u>supra</u>, § 406.02[3], at 406-5 n.12), and not providing warnings "concern[ing] the danger of" a back surgery, 2 Saltzburg et al., <u>supra</u>, § 406.03[1], at 406-11 (citing <u>Hall v. Arthur</u>, 141 F.3d 844 (8th Cir. 1998)). Habits do not include actions like prescribing "steroids to five other allergy patients while representing the drugs to be something else," 2 Saltzburg et al., <u>supra</u>, § 406.03[1], at 406-9 (citing <u>Weil v. Seltzer</u>, 873 F.2d 1453 (D.C. Cir. 1989)); on a couple occasions, suing a company and settling a lawsuit, <u>see</u> <u>Guidance Endodontics</u>, 705 F. Supp. 2d at 1272; or, on some occasions, engaging in "late deliveries and defective performance" with regard

to contracted-for supplies, 2 Saltzburg et al., supra, § 406.03[1], at 406-10-11 (citing Simplex, Inc. v. Diversified Energy Sys., 847 F.2d 1290 (7th Cir. 1988)).

New Mexico argues: "The Decision from the Bar Court should be admitted under Rule 406 because it shows that RELC engaged in the same routine practice as that at issue here: the use of client retainer agreements to obtain up-front fees prior to providing mortgage assistance services." State Bar MIL Response at 3. The Court will not permit such evidence as habit evidence. Real Estate Law's retainer agreements resemble more the practice of customary computer or applicant screening procedures, or the practice of waiving standard conditions or not providing warnings before surgery, than they do the occasional steroid prescription, litigation, or defective contract performance. Like office procedures, requesting an attorney-client fee agreement and an advance fee involves a uniform response to a situation -- the intake of a new client. See Fed. R. Evid. 406 advisory committee's note (identifying "uniformity of response" as a factor in identifying a habit). Courts have recognized, however: "Evidence of the defendant's actions on only a few occasions or only in relation to the plaintiff are not enough; the plaintiff must show regularity over substantially all occasions or with substantially all other parties with whom the defendant has had similar business transactions." Mobil Expl. & Producing U.S., Inc. v. Cajun Const. Servs., Inc., 45 F.3d 96, 99-100 (5th Cir. 1995)(citing United States v. West, 22 F.3d 586, 592 (5th Cir. 1994); Rosenburg v. Lincoln Am. Life Ins., 883 F.2d at 1336; Simplex, Inc. v. Diversified Energy Sys., 847 F.2d at 1294; G.M. Brod & Co. v. U.S. Home Corp., 759 F.2d 1526, 1533 (11th Cir. 1985)). The Court cannot determine the number of clients that Real Estate Law served, but the Court suspects that it had more clients than the twenty-three New Mexico consumers and the three California consumers that New Mexico cites. Although New Mexico suggests that all the New

Mexico consumers' attorney-client fee agreements are the same, see State Bar MIL Response at 4 (citing with an "see, e.g.," to the Attorney-Client Fee Agreement, Linda Ward), the Court cannot verify this suggestion, because New Mexico does not provide to the Court all the relevant attorney-client fee agreements. Real Estate Law requested from only one California consumer the same advance fee and monthly maintenance fees as Real Estate Law demands in the Attorney-Client Fee Agreement, Linda Ward. Compare In re Pratt Decision at 9-10 (asking for a $5,000.00 retainer, but reducing the amount to $4,000.00, and asking $29.95 in monthly maintenance fees), In re Pratt Decision at 6 (asking for a $5,000.00 retainer with a $1,500.00 monthly fee), and In re Pratt Decision at 13 (asking for a $6,000.00 retainer with a $2,000.00 monthly fee), with Attorney-Client Fee Agreement, Linda Ward ¶ 4, at 1-2 (asking for a $5,000.00 retainer and asking $29.95 in monthly maintenance fees). Most of these instances of fee requests that New Mexico references are instances related to New Mexico's case; In re Pratt involves only three California consumers. Although New Mexico is not the alleged victim here, the Court respects the United States Court of Appeals for the Fifth Circuit's admonition that the sampling for habit evidence should exceed instances only of actions toward the victim. To argue that an entity had such a consistent practice that it acted on that practice in the victim's situation, the other instances of the practice should be instances other than that those events that the victim seeks to prove. Here, New Mexico seeks to prove the New Mexico consumers cases, and the three California cases are insufficient other evidence to establish habit. Cf. Genesis Telecomms., LLC v. Moore, No. CIV.A. 8:08-1715, 2010 WL 6407918, at *3 (D.S.C. Oct. 18, 2010)(Hendricks, M.J.)(stating, where a plaintiff attempted to obtain summary judgment on interactions between a servicer and sixteen consumers on the basis that the servicer had a habit based on interactions with two consumers, "[t]he plaintiff would beg

to prove up 16 circumstances of alleged wrong, on the strength of two.  This goes too far."), report and recommendation adopted as modified, No. 8:08-CV-01715-JMC, 2011 WL 1233302 (D.S.C. March 30, 2011)(Childs, J.).

The Court also will not permit the In re Pratt evidence to show the other habits that New Mexico suggests in the State Bar MIL Response's introduction.  In its introduction, New Mexico states:

> [T]he [In re Pratt Decision] is offered to demonstrate that Pratt, the lead attorney for RELC, operated an organization that consistently conducted itself in a routine manner: RELC solicited clients, claiming to be experts in bank litigation, had them sign a retainer agreement, charged an upfront fee of thousands of dollars, and promised to assist clients in renegotiating their mortgages.  The earlier, 2013, Stipulation entered by the California State Bar Court [(In re Pratt Stipulation)] demonstrates a practice of failing to use a client trust account.  Evidence demonstrating a routine practice is admissible under Federal Rule of Evidence 406.

State Bar MIL Response at 2.  At the hearing, New Mexico argued that it seeks to introduce the In re Pratt evidence as evidence of Real Estate Law's routine practice during Mr. Pratt's ownership.  See July 2 Tr. at 23:25-24:19 (Anaya-Allen).  The In re Pratt Stipulation addresses only one incident in which Mr. Pratt did not use a client trust fund account, see In re Pratt Stipulation at 9, so this evidence contravenes the Tenth Circuit's directive: "'[F]ive incidents ordinarily would be insufficient to establish the existence of a habit.'"  Camfield v. City of Okla. City, 248 F.3d at 1232-33 (quoting Perrin v. Anderson, 784 F.2d at 1046).  The In re Pratt Stipulation evidence is, therefore, not admissible for rule 406 purposes.  New Mexico also does not elaborate whether it has evidence that Real Estate Law, in relation to the New Mexico consumers, "solicited clients, claiming to be experts in bank litigation, . . . and promised to assist clients in renegotiating their mortgages."  State Bar MIL Response at 2.  Without a size of the sampling that New Mexico would introduce to prove the habit, the Court cannot make a determination whether New Mexico has

presented sufficient evidence for rule 406 purposes, but the Court notes, given its conclusion that New Mexico does not have an adequate sample for the practices regarding retainer agreements and advance fees, that New Mexico likely does not have such an adequate number of specific instances regarding Real Estate Law's solicitations and representations. The Court denies, therefore, New Mexico's request that the Court admit the In re Pratt evidence as evidence that Mr. Pratt violated the MARS Rule and MFCFPA, because he and Real Estate Law acted pursuant to routine practices in relation to the New Mexico consumers.[18]

### C. NEW MEXICO CAN USE IN RE PRATT EVIDENCE TO ARGUE MR. PRATT'S CHARACTER FOR UNTRUTHFULNESS PURSUANT TO RULE 608, BECAUSE THE EVIDENCE REFLECTS ON HIS CHARACTER FOR TRUTHFULNESS.

The Court notes, contrary to Mr. Pratt's arguments about rule 608, see State Bar MIL at 2-3, and although New Mexico does not propose to use the In re Pratt evidence for rule 608 purposes, that the Court would permit New Mexico to use evidence of In re Pratt for rule 608 purposes. Rule 608(b) provides for the admission of specific instances of prior misconduct as evidence of a witness' untruthfulness:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
> (1)     the witness; or
>
> (2)     another witness whose character the witness being cross-examined has testified about.

---

[18]In the Court's view, New Mexico's arguments might fit better a rule 404(b) plan theory; it suggests that Real Estate Law had a regular, business scheme that violated the MARS Rule and MFCFPA.

Fed. R. Evid. 608(b). "'Under Federal Rule of Evidence 608(b), specific unrelated instances of a witness's prior misconduct may be used to impeach the witness at the discretion of the court, however, only to the extent the misconduct reflects on the witness's character for truthfulness.'" Montoya v. Shelden, 898 F. Supp. 2d at 1292 (quoting United States v. Beltran-Garcia, 338 F. App'x at 770 (citing Fed. R. Evid. 608(b)). In re Pratt involves instances of misrepresentations to clients, improper pressure on and false inducements to clients, and failures to refund clients and account for client funds. See In re Pratt Decision at 3-5, 9-10, 13-14. Such actions are probative of Mr. Pratt's truthfulness or untruthfulness. See Hampton v. Dillard Dep't Stores, Inc., 247 F.3d 1091, 1114 (10th Cir. 2001)(stating that falsifying a report is evidence of truthfulness); United States v. Rosario Fuentez, 231 F.3d 700, 704 (10th Cir. 2000)(reflecting that making a false statement and offering to falsify a report are evidence of truthfulness); United States v. Leake, 642 F.2d 715, 718 (4th Cir. 1981)(listing "perjury, fraud, swindling, forgery, bribery, and embezzlement" as evidence of untruthfulness). Cf. Fed. R. Evid. 609 advisory committee's note (describing crimes related to dishonesty as including "perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense").

Mr. Pratt's arguments about New Mexico's good-faith belief in its evidence are misplaced. See State Bar MIL at 2-3. Mr. Pratt argues:

> Before NMAG may impeach a witness about specific acts of misconduct they Must have a good faith belief such bad conduct occurred. *[US vs Whitmore, 359 F. 3d 609, 622 (D.C. Cir.2004)*("the general rule . . . is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates") Here, not only does NMAG NOT have such belief or facts, it does NOT even have any evidence of MARS "violations" by PRATT. (NO documents of PRATT MARS violations . . . .).

State Bar MIL at 2-3 (emphasis, capitalization, and ellipsis in State Bar MIL).  Mr. Pratt is correct

that, when impeaching a witness with prior misconduct, a party must have a good-faith basis for

their belief that specific acts of misconduct occurred.  See S.E.C. v. Goldstone, 2016 WL 3854689,

at *21 (explaining that the defendants need only a good-faith basis in their belief to ask their

question (citing Trujillo v. Bd. of Educ. of the Albuquerque Pub. Sch., No. CIV 02-1146 JB/ACT,

2007 WL 2296974, at *6 (D.N.M. June 24, 2007)(Browning, J.); Chavez v. Franco, No. CIV 13-

0338 JB/SCY, 2014 WL 6065616, at *17 (D.N.M. Sept. 30, 2014)(Browning, J.)).  The In re Pratt

Decision, which outlines Mr. Pratt's specific acts relevant to In re Pratt, provides New Mexico a

sufficient good-faith basis to ask impeachment questions on the events underlying In re Pratt.  To

the extent that Mr. Pratt, through these rule 608 arguments, challenges the New Mexico's claims,

see State Bar MIL at 3 ("Here, not only does NMAG NOT have such belief or facts, it does NOT

even have any evidence of MARS 'violations' by PRATT.  (NO documents of PRATT MARS

violations . . . ." (emphasis, capitalization, and ellipsis in State Bar MIL)), Mr. Pratt's arguments,

as discussed in the preceding section, are too late pre-trialpretrial, and the Court will not consider

them until trial.

### D.       RULE 405 DOES NOT APPLY TO THIS CASE, BECAUSE MR. PRATT'S CHARACTER IS NOT DIRECTLY IN ISSUE.

Mr. Pratt's reference to rule 405 is also inapt.  See State Bar MIL at 3.  Rule 405 provides

the means through which a party may introduce character evidence:

(a)      By Reputation or Opinion. When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion.  On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

(b)     By Specific Instances of Conduct.  When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Fed. R. Evid. 405.  "Under Rule 405, a party may present testimony concerning specific instances of conduct only when 'character is in issue in the strict sense.'"  United States v. Talamante, 981 F.2d 1153, 1156 (10th Cir. 1992)(quoting Perrin v. Anderson, 784 F.2d at 1045).  "'Character is directly in issue in the strict sense when it is a material fact that under the substantive law determines rights and liabilities of the parties.'"  Mata v. City of Farmington, 798 F. Supp. 2d 1215, 1237-38 (D.N.M. 2011)(Browning)(quoting Perrin v. Anderson, 784 F.2d at 1045)).  See United States v. Keiser, 57 F.3d 847, 856 (9th Cir. 1995)("The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense?  If not, then character is not essential and evidence should be limited to opinion or reputation."  (quoted in United States v. Herder, 59 F. App'x 257, 263-64 (10th Cir. 2003)(unpublished)).  "This will be the case in situations where character itself is an element of a claim or defense.  An example is the issue of the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver."  United States v. Ray, No. CR 03-01659 JB, 2004 WL 7338176, at *5 (D.N.M. March 5, 2004)(Browning, J.)(citing Fed. R. Evid. 404 advisory committee's note).  This lawsuit does not pose such a rule 405 case.  Mr. Pratt's character is not relevant to the claims or possible defenses, so rule 405(b) does not apply.  Accordingly, the Court grants in part and denies in part the State Bar MIL.[19]  The Court denies

---

[19]The Court discussed Mr. Pratt's double jeopardy argument in its MOO, where it explained:

[T]he Court notes that the double jeopardy doctrine applies in the criminal context:

New Mexico's requests in the State Bar MIL Response. The Court denies the Undisclosed Evidence MIL, denies the Practice of Law MIL, grants in part and denies in part the State Bar MIL, and denies New Mexico's requests in the State Bar MIL Response.

**IT IS ORDERED** that: (i) the Motion Limine #1 of Chad T-W Pratt, Sr. to Exclude Undisclosed Evidence, filed June 24, 2019 (Doc. 160), is denied; (ii) the Motion Limine #2 of

---

"Our cases have recognized three separate guarantees embodied in the Double Jeopardy Clause [of the Fifth Amendment]: It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense. Illinois v. Vitale, 447 U.S. 410, 415 (1980). The primary goal of barring reprosecution after acquittal is to prevent the State from mounting successive prosecutions and thereby wearing down the defendant. . . . The primary purpose of foreclosing a second prosecution after conviction, on the other hand, is to prevent a defendant from being subjected to multiple punishments for the same offense."

United States v. Leal, 330 F. Supp. 3d 1257, 1275 (D.N.M. 2018)(Browning, J.)(emphasis omitted)(quoting Justices of Boston Mun. Court v. Lydon, 466 U.S. 294, 306-07 (1984)), aff'd, 921 F.3d 951 (10th Cir. 2019). New Mexico sues Mr. Pratt in a civil action. The Court takes, however, Mr. Pratt's point that he feels reprimanded twice for the same actions. New Mexico does not pursue Mr. Pratt for ethical attorney misconduct like the State Bar of California did. New Mexico contends that Mr. Pratt failed to follow federal and state law for loan modification services. See Complaint ¶¶ 1-111, at 1-23. Mr. Pratt must recognize that multiple, different violations may result in multiple, different suits on such violations.

MOO at 21-22 n.22, 2019 WL 2804575, at *3.

Mr. Pratt also notes in a footnote: "Michele Pickerell is currently prosecuted for drug dealing out of house contemporaneous to the alleged bad acts by PRATT." State Bar MIL at 1 n.1. The Court notes that this statement is irrelevant to Mr. Pratt's argument, and the Court surmises that Mr. Pratt makes this point to make the very argument that Mr. Pratt seeks, with this State Bar MIL, to preclude New Mexico from making -- that bad acts are evidence of untruthfulness and other bad acts.

Chad T-W Pratt, Sr. to Allow Practice of Law, filed June 24, 2019 (Doc. 161), is denied; (iii) the Motion Limine #3 of Chad T-W Pratt, Sr. to Exclude State Bar, filed June 24, 2019 (Doc. 162), is granted in part and denied in part; (iv) Plaintiff State of New Mexico cannot use evidence of <u>In the Matter of Chad Thomas Pratt</u>, Nos. 13-O-12312 (13-O-12367; 13-O-12757)(State Bar Ct. Cal. Sept. 18, 2014), <u>aff'd</u>, No. S222942 (Cal. Jan. 29, 2015)("<u>In re Pratt</u>"), to argue that Defendant Chad T. Pratt has a propensity to engage in misconduct, but New Mexico can use <u>In re Pratt</u> for rule 608 purposes; and (iv) New Mexico's requests in the Plaintiff's Response to Motion Limine #3 of Chad T-W Pratt, Sr. to Exclude State Bar, filed July 1, 2019 (Doc. 174), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Hector H. Balderas
  Attorney General of the State of New Mexico
Angelica Anaya-Allen
Lisa Giandomenico
  Assistant Attorneys General of the State of New Mexico
State of New Mexico Office of the Attorney General
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Real Estate Law Center, P.C.
Los Angeles, California

      *Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

    *Defendant pro se*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Deepak S. Parwatikar, Pinnacle Law Center, P.C., and Balanced Legal Group*

Erikson M. Davis
Newbury Park, California

    *Defendant pro se*