IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

       Plaintiff,

vs.                                                                                                                   No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion for Extension of Time to File Trial Exhibit List, filed June 28, 2019 (Doc. 170)("Motion to Extend"); and (ii) the Motion Limine Number Four of Chad T-W Pratt, Sr. to Exclude All Witnesses, Evidence, filed July 1, 2019 (Doc. 179)("Motion to Exclude"). The Court held a hearing on July 2, 2019. See Clerk's Minutes at 1, filed July 3, 2019 (Doc. 185). The primary issue is whether the Court should extend the time for Plaintiff State of New Mexico to file its exhibit list by one day.

Because all parties have the Plaintiff's Trial Exhibit List, filed June 28, 2019 (Doc. 169)("Exhibit List"), and the Plaintiff's Amended Trial Exhibit List, filed June 28, 2019 (Doc. 172)("Amended Exhibit List"), and New Mexico proceeded in good faith, though under a mistaken impression, the Court will grant the Motion to Extend. Because New Mexico's production of the Exhibit List is not so untimely as to prejudice those Defendants proceeding to trial -- Defendants Deepak S. Parwatikar, Chad T. Pratt, Balanced Legal Group, and Pinnacle Law Center, P.C. -- the Court will deny the Motion to Exclude.

**FACTUAL BACKGROUND**

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act (MFCFPA), Mortgage Assistance Relief Services (MARS) Rule, the New Mexico Unfair Practices Act (UPA) and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Defendants Real Estate Law Center, P.C. ("Real Estate Law") and Erikson M. Davis, Mr. Pratt, and the Parwatikar Defendants -- Parwatikar, Balanced Legal, and Pinnacle Law. See Complaint ¶¶ 16-76, at 5-17. Mr. Davis, Mr. Pratt, and Mr. Parwatikar are residents of the State of California, and Mr. Pratt and Mr. Parwatikar are attorneys licensed in the State of California. See Complaint ¶¶ 10-12, at 4-5. Mr. Davis has been disbarred in California. See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited December 6, 2019). Neither Mr. Davis nor Mr. Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11, at 4-5. Real Estate Law and Pinnacle Law are "Professional Corporation[s]

registered in California."  Complaint ¶¶ 9, 13 at 4-5.  Balanced Legal "is a California law firm owned and/or managed by Parwatikar."  Complaint ¶ 14, at 5.

Mr. Pratt owned and managed Real Estate Law from September, 2011, to September, 2013.  See Complaint ¶ 37, at 8.  Mr. Davis "assumed ownership of" Real Estate Law in 2013.  Complaint ¶ 20, at 6.  Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Mr. Parwatikar owns, Complaint ¶ 38, at 8; see id. ¶ 21, at 6, and Real Estate Law pays Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6.  Balanced Legal "uses" the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law use.  Complaint ¶ 34, at 8.

Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico although Real Estate Law and its attorneys are not licensed to practice law in New Mexico."  Complaint ¶ 16, at 5.  "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications."  Complaint ¶ 17, at 5.  "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms."  Complaint ¶ 18, at 5.  The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees."  Complaint ¶ 23, at 6.  Balanced Legal "offers legal services including loan modification and bankruptcy services" via a website "accessible to New Mexico consumers."  Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that "**[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint).

Mr. Pratt faced disciplinary charges from the State Bar of California in November, 2013, "for (among other things) allowing non-attorney staff to practice law, making false statements to entice clients to retain RELC, failing to return un-earned fees, and for bringing 'meritless' lawsuits for consumers." Complaint ¶ 39, at 8. "The charges against Pratt resulted in a Decision by the State Bar Court of California ordering one year suspension, three years' probation and restitution to certain consumers." Complaint ¶ 40, at 8.

## PROCEDURAL BACKGROUND

New Mexico contends that: (i) the Defendants violated the Mortgage Assistance Relief Services ("MARS") Rule, 12 C.F.R. 1015.1 "Regulation O," by accepting advance payment for mortgage relief services, and/or Mr. Parwatikar and Pinnacle Law substantially assisted the violations, see Complaint ¶¶ 77-85, at 18-19; (ii) the Defendants, willfully and in bad faith, violated the the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, N.M. Stat. Ann. §§ 47-15-1 to -8 ("MFCFPA"), by failing to provide required warnings, notices, and disclosures, by failing to give New Mexico homeowners twenty-four hours before signing attorney-client agreements, and by requiring advance payment for their services, see Complaint ¶¶ 86-101, at 19-22; and (iii) the Defendants knowingly engaged in unlawful conduct violating the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 ("NMUPA"), by requiring advance fees and monthly maintenance fees while filing sham lawsuits, by leading

New Mexico consumers to believe that the Defendants performed valuable legal services when the Defendants filed sham lawsuits with no value for New Mexico consumers, and by allowing New Mexico consumers to believe that the Defendants will defend foreclosure lawsuits, see Complaint ¶¶ 102-08, at 22-23. New Mexico asks that the Court enjoin the Defendants from continuing such violations, see Complaint ¶¶ 109-11, (G), at 23-24, and requests restitution, disgorgement, civil penalties, and costs as the MARS Rule, the MFCFPA, and the NMUPA permit, see Complaint ¶¶ (A)-(F), at 24.

The Parwatikar Defendants and Mr. Pratt are the only Defendants with liability issues remaining in this case. On June 11, 2018, the Court entered a default judgment against Real Estate Law on all liability issues, "reserving the issues of relief, including disgorgement, restitution and civil penalties." Default Judgment Against Real Estate Law Center at 1, filed June 11, 2018 (Doc. 75). See id. at 1-2. On November 5, 2018, the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, recommended entering a default judgment against Mr. Davis on issues of liability, reserving for litigation the issues of relief, see Proposed Findings and Recommended Disposition at 4, filed November 5, 2018 (Doc. 91), and, on January 18, 2019, the Court adopted Magistrate Judge Fashing's recommendation, see Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition at 2, 9, 2019 WL 259121, at *1, *4, filed January 18, 2019 (Doc. 106). In the Memorandum Opinion and Order, filed July 2, 2019 (Doc. 183)("MOO"), the Court granted summary judgment for the Parwatikar Defendants and Mr. Pratt on New Mexico's NMUPA claims, injunctive relief claims, and theories based on: (i) Mr. Davis' alleged MARS Rule violations; (ii) Balanced Legal's and Pinnacle Law's violation of the MARS Rule independent of Real Estate Law; (iii) Mr. Parwatikar's and

Mr. Pratt's participation in a common enterprise with Real Estate Law, Balanced Legal, and Pinnacle Law; and (iv) Mr. Pratt's reckless or knowing violation of the MARS Rule, or willful violation of the MFCFPA. See MOO at 183-84, 2019 WL 2804575, at *68.

**1.     The Plaintiff's Motion to Extend.**

New Mexico asks for an extension of time of one day to file its trial exhibit list. See Motion to Extend at 1. New Mexico says that it mistakenly served the exhibit list in Word Document format to all parties before 5:00 p.m., local time, June 27, 2019, instead of filing it with the Court. See Motion to Extend at 1. New Mexico asks for concurrence from all parties contemporaneously with the filing of the Motion to Extend because of New Mexico's "need for immediate filing." See Motion to Extend at 1. New Mexico asks the Court to enter an Order granting a one-day extension to file its exhibit list. See Motion to Extend at 1.

**2.     The Motion to Exclude.**

Mr. Pratt states that, per the Court's order at a June 18, 2019, hearing,[1] all witness and exhibit lists, as well as motions in limine, were to be served on all parties. See Motion to Exclude at 1. Mr. Pratt states that he requires service through United States mail, and that he did not receive the witness or exhibit lists, nor any motions in limine by mail. See Motion to Exclude at 1. Accordingly, Mr. Pratt asks that the Court exclude all witnesses and evidence that New Mexico intends to introduce. See Motion to Exclude at 1.

**3.     The Hearing.**

New Mexico said that it thought that the Court asked for a consolidated exhibit list and that there would be a process in which each of the parties would put together one exhibit list,

---

[1] The June 18, 2019, hearing was a pretrial conference. See Clerk's Minutes at 1, filed June 18, 2019 (Doc. 155).

rather than each filing an individual list.  See Draft Transcript of Hearing at 5:15-21 (Anaya-Allen)(taken July 2, 2019)("Tr.").[2]  New Mexico explained that it emailed its proposed exhibit list to the Parwatikar Defendants and Mr. Pratt on June 26, 2019, the day that it thought the parties were supposed to exchange lists from which to create a consolidated list.  See Tr. at 5:22-25 (Anaya-Allen).  Accordingly, New Mexico explained that, while it distributed its list on the intended deadline, it did not file its exhibit list on the deadline, resulting in the present Motion to Extend.  See Tr. at 5:25-6:1 (Anaya-Allen).

The Court asked New Mexico from where the idea of a joint exhibit list came, specifically asking if the idea of a consolidated exhibit list was included in the pretrial order.  See Tr. at 6:2-4 (Court).  New Mexico responded that it thought that the Court had indicated its desire for a consolidated exhibit list during the June 18, 2019, hearing.  See Tr. at 6:5-8 (Anaya-Allen).  The Court stated that this statement surprises the Court, because it does not recognize that phrase "consolidated exhibit list" among language that it typically uses.  Tr. at 6:9-18 (Court).  The Court also stated that it is not familiar with consolidated exhibit lists, not having seen too many of them.  See Tr. at 6:9-12 (Court).  New Mexico explained its understanding that it would receive a fillable form, which the Court's Courtroom Deputy provided, that the parties would complete with exhibits upon which the parties agreed.  See Tr. at 6:19-23 (Anaya-Allen).  New Mexico explained that this form would include exhibits that the parties agreed were authentic, even where the parties did not agree to admissibility, and that the form would include a separate

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

category of exhibits to which the parties had not agreed either to admissibility or to authenticity. See Tr. at 6:23-7:2 (Anaya-Allen).

The Court then acknowledged that Mr. Pratt had joined the hearing through the telephone conference line. See Tr. at 7:3-5 (Court, Pratt). The Court asked if the Parwatikar Defendants objected to New Mexico's Motion to Extend. See Tr. at 7:8-9 (Court). The Parwatikar Defendants did not have any objection to the Motion to Extend. See Tr. at 7:10 (Kennedy). The Court then asked Mr. Pratt if he had an objection to the Motion to Extend, and Mr. Pratt answered that he did have an objection. See Tr. at 7:11-13 (Court, Pratt). The Court asked Mr. Pratt to state orally his opposition to the Motion to Extend, given that he had not filed a response to it. See Tr. at 7:14-16 (Court). Mr. Pratt responded that he had filed a response, in which he argued that he did not receive the Exhibit List via mail until the previous week, that it was late filed, and that he did not receive it. See Tr. at 7:17-20 (Pratt). The Court stated that it was looking through the documents that Mr. Pratt had filed, indicating that he had filed some documents in the week before the hearing, but that the Court did not see a response from Mr. Pratt to the Motion to Extend. See Tr. at 7:21-24 (Court). The Court asked New Mexico if it had seen a response from Mr. Pratt on its Motion to Extend. See Tr. at 7:24-25 (Anaya-Allen). New Mexico responded that it had not specifically seen a response to its Motion to Extend, but that it believed that Mr. Pratt referred to the Motion to Exclude. See Tr. at 8:1-4. (Anaya-Allen). New Mexico stated that it had mailed and emailed its Exhibit List to Mr. Pratt, but that mailing takes a few days and so it did not know when Mr. Pratt received the mailed copies. See Tr. at 8:4-8 (Anaya-Allen).

The Court asked Mr. Pratt if the Motion to Exclude was his response to the Motion to Extend. See Tr. at 8:9-10 (Court). Mr. Pratt stated that he believed it was his response. See Tr.

at 8:11 (Pratt). The Court stated that it had read Mr. Pratt's Motion to Exclude and then asked New Mexico if there was anything further on its Motion to Extend. See Tr. at 8:12-15 (Court). New Mexico apologized for its misunderstanding and for subsequently having missed the deadline. See Tr. at 8:16-17 (Anaya-Allen). The Court asked New Mexico if it had a conversation with the Courtroom Deputy after the hearing or if it had gotten the idea of a joint exhibit list from other court forms. See Tr. at 7:18-24 (Court). New Mexico responded that the Courtroom Deputy had informed it of the fillable form that the Court would use during trial to track all the exhibits. See Tr. at 8:25-9:3 (Anaya-Allen). New Mexico stated that it further understood that it was required to meet and confer, and so it spoke with the Parwatikar Defendants and emailed Mr. Pratt. See Tr. at 9:4-9 (Anaya-Allen). New Mexico stated that its failure to file was inadvertent and it asked the Court to grant the Motion to Extend. See Tr. at 9:9-11 (Anaya-Allen).

The Court allowed Mr. Pratt an opportunity to argue his objection to the Motion to Extend. See Tr. at 9:12-15 (Court). Mr. Pratt stated that he thought that New Mexico had filed the Exhibit List late and that the Court should not allow this filing. See Tr. at 9:19-20 (Pratt). Mr. Pratt stated that he "submit[ted] on [his M]otion" to Exclude. See Tr. at 8:20-21 (Pratt).

The Court stated that all the parties have the Exhibit List and that it did not hear any prejudice from the delay of one day. See Tr. at 8:22-24 (Court). The Court stated that an attempt to try to work out differences, rather than to create more difference, caused the delay. See Tr. at 8:24-10:1 (Court). The Court stated that New Mexico proceeded in good faith even if it was under a mistaken impression that it needed to submit a consolidated list. See Tr. at 11:1-4 (Court). The Court stated that it would grant New Mexico's Motion to Extend. See Tr. at 11:8-10 (Court).

## LAW REGARDING EXTENSIONS

District courts have wide discretion in regulation of pretrial matters. See Sil-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Rule 6(b) of the Federal Rules of Civil Procedure governs the circumstances under which a court can grant a party an extension of time to perform a specific act. The rule states:

> (b) Extending Time.
>
> > (1) *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
> >
> > > (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
> > >
> > > (B) on motion made after the time has expired if the party failed to act because of excusable neglect.
> >
> > (2) *Exceptions*. A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b). The United States Court of Appeals for the Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cty. Comm'rs, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). See Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the scheduling order."). In In re Kirkland, the Tenth

Circuit dealt with the definition of "good cause" in the context of a predecessor to modern rule 4(m)[3] of the Federal Rules of Civil Procedure,[4] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

86 F.3d at 175 (quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)(emphasis in Putnam v. Morris, 833 F.2d 903, 905)). The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" In re Kirkland, 86 F.3d at 175.

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request. For example, in Advanced Optics Electronics, Inc. v. Robins, the Court concluded that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or

---

[3]Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m).

[4]The Tenth Circuit in In re Kirkland interpreted rule 4(j), which was substantially identical. See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if service has not been made upon the defendant within 120 days after filing and the party responsible for service cannot show good cause why it was not made.").

otherwise" to conduct discovery, the defendant did not show good cause to modify the scheduling order. 769 F. Supp. 2d at 1313 n.8. In contrast, in <u>Street v. Curry Board of County Commissioners</u>, the Court concluded that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11. More recently, in <u>Trujillo v. Rio Arriba County ex rel. Rio Arriba County Sheriff's Department</u>, the Court concluded that the plaintiff had shown good cause to seek extension of the discovery deadline when he "diligently endeavored to comply with the Court's Scheduling Order by attempting to schedule a time to take . . . depositions nearly a month before the discovery deadline" but Defendants made themselves unavailable only after the deadline. 2016 WL 4035340, at *10 (D.N.M. June 15, 2016)(Browning, J.).

The Court arrived at a similar determination in <u>Abraham v. WPX Production, LLC</u>, 2016 WL 548251 (D.N.M. Jan. 25, 2016)(Browning, J.). There, the Court found good cause to amend a pleading when the plaintiffs had a very short amount of time to amend the pleadings, "even though discovery had only just begun." 2016 WL 548251, at *20. "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed." 2016 WL 548251, at *20. Furthermore, the delay was minimal and would not prejudice the defendants. See 2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order. When parties have not done so, the Court has not found good cause. In <u>Montoya v. Sheldon</u>, 286 F.R.D. 602, 616-17 (D.N.M. 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery, because the plaintiffs'

- 12 -

excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they thus would not require expert testimony. See 286 F.R.D. at 616-617. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

286 F.R.D. at 616-17.

Similarly, in Scull v. Mg & Training Corp., 2012 WL 1596962 (D.N.M. May 2, 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant. See 2012 WL 1596962, at *8. The plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case. The Court concluded that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case. See 2012 WL 1596962, at *8. The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline. 2012 WL 1596962, at *8. "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC." 2012 WL 1596962, at *8. Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC." 2012 WL 1596962, at *9. The Court also noted that not naming an expert

witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case. 2012 WL 1596962, at *9.

When serious and unforeseen events prevent a party from complying with the Court's scheduling order, however, the Court has found good cause. In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court concluded that a lawyer had shown excusable neglect when he missed a scheduling deadline, because, soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and, only after the lawyer returned to his work did he realize that a deadline passed. See 275 F.R.D. at 549-50. The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but concluded that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his inadvertence. 275 F.R.D. at 549-50. In West v. New Mexico Taxation and Revenue Department, No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses. See 2010 WL 3834341, at *4-5. On the other hand, in Liles v. Washington Tru Solutions, LLC, No. CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale that the plaintiff provided was that his counsel's "family and medical emergencies" precluded the plaintiff from timely responding. 2007 WL 2298440, at *2.

## ANALYSIS

The Court grants the Motion to Extend and denies the Motion to Exclude. New Mexico mistakenly believed that the Court had requested that the parties file a consolidated exhibit list. See Tr. at 5:15-21 (Anaya-Allen). Although the Court does not use a consolidated exhibit list for trials, it understands that New Mexico's failure to file the Exhibit List resulted from innocent error made in good faith. "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *6. See Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d at 1313 ("[R]ule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the scheduling order"). Although good cause does not usually embrace inadvertence or mistake of law, see In re Kirkland, 86 F.3d at 175, here, New Mexico attempted to satisfy the deadline that it understood to exist, and it provided the Exhibit List to all other parties within the filing deadline, see Tr. at 5:22-25 (Anaya-Allen). New Mexico transmitted its Exhibit List to the Parwatikar Defendants and to Mr. Pratt on the deadline for the parties' exhibit lists. See Tr. at 5:22-25 (Anaya-Allen). New Mexico's actions do not, therefore, prejudice the Parwatikar Defendants or Mr. Pratt. Both the Parwatikar Defendants and Mr. Pratt had access to the Exhibit List at the time the Court ordered that the parties file the exhibit lists -- June 27, 2019 -- see Draft Transcript of Hearing at 9:21-23 (Court)(taken June 18, 2019),[5] regardless when New Mexico filed the Exhibit List on CM/ECF. That the Parwatikar Defendants and Mr. Pratt had the Exhibit List strongly influences the Court's analysis. New Mexico's actions in transmitting the Exhibit List achieve a major goal

---

[5]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

of filing the list -- it ensured that the opposing parties saw the Exhibit List. New Mexico's actions evidence a desire to reduce disagreement rather than to cause additional dispute and an attempt to comply with deadlines rather a complete ignorance of them. Looking solely at the date of filing emphasizes technicalities over the practicality of this situation. The Court alone did not receive a copy of New Mexico's Exhibit List because of New Mexico's error, but exhibit lists most benefit the parties. The Court often does not review the exhibit lists until shortly before trial or often until trial. Moreover, New Mexico filed the Exhibit List and the Amended Exhibit List only one day after the filing deadline, see Exhibit List at 7; Amended Exhibit List at 8, and has caused no delay to this case or to the start of trial. The Court grants, therefore, the Motion to Extend.

Mr. Pratt's arguments about not receiving the Exhibit List in the mail do not persuade the Court. See Motion to Exclude at 1. New Mexico affirms that it sent Mr. Pratt the Exhibit List via email, so Mr. Pratt had access to the Exhibit List. The Parwatikar Defendants do not object to the Motion to Extend, and Mr. Pratt suffered no more prejudice than the Parwatikar Defendants. See Tr. at 7:10 (Kennedy). Accordingly, the Court grants the Motion to Extend and denies the Motion to Exclude.

**IT IS ORDERED** that: (i) the Plaintiff's Motion for Extension of Time to File Trial Exhibit List, filed June 28, 2019 (Doc. 170), is granted; and (ii) the Motion Limine Number Four of Chad T-W Pratt, Sr. to Exclude All Witnesses, Evidence, filed July 1, 2019 (Doc. 179), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hector H. Balderas
   Attorney General of the State of New Mexico
Angelica Anaya-Allen
Lisa Giandomenico
   Assistant Attorneys General of the State of New Mexico
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

Real Estate Law Center, P.C.
Los Angeles, California

     *Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

     *Defendant pro se*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Deepak S. Parwatikar, Pinnacle Law Center, P.C., and Balanced Legal Group*

Erikson M. Davis
Newbury Park, California

     *Defendant pro se*