IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

      Plaintiff,

vs.                                                                                                        No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Continue Trial by Pro Per Chad T-W Pratt, Sr. to Exclude All, filed July 8, 2019 (Doc. 189)("Motion"). The Court held a hearing on July 10, 2019. See Transcript of Trial Proceedings at 489:1-498:13 (dated July 10, 2019), filed July 15, 2019 (Doc. 195)("July 10 Tr."). The primary issues are whether the Court should continue the trial because: (i) Plaintiff State of New Mexico filed late its Plaintiff's Trial Exhibit List, filed June 28, 2019 (Doc. 169)("Exhibit List"); (ii) Defendant Chad T. Pratt will receive the Plaintiff's

Amended Trial Exhibit List, filed June 28, 2019 (Doc. 172), by mail after the trial commences; (iii) New Mexico has not provided Mr. Pratt requested information on mortgage files, foreclosure judgments, and evidence of the alleged Mortgage Assistance Relief Services (MARS) Rule, 12 C.F.R. 1015.1 "Regulation O," violations; (iv) New Mexico has not responded to Mr. Pratt's settlement offers; (v) Mr. Pratt is waiting for telephone call responses from the Court's Courtroom Deputy; and (vi) Mr. Pratt does not have copies of the Court's rulings on the Defendant Deepak S. Parwatikar's Motion for Summary Judgment, filed April 25, 2019 (Doc. 132)("MSJ"), or on the Defendant Chad T-W Pratt's Brief in Support of Motion to Dismiss for Improper Venue and/or In The Alternative Transfer to Los Angeles, filed March, 14 2019 (Doc.113)("Venue Motion"). As none of Mr. Pratt's arguments provide sound grounds for continuing the trial, the Court denies the Motion.

## **FACTUAL BACKGROUND**

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act (MFCFPA), MARS Rule, the New Mexico Unfair Practices Act (NMUPA) and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Defendants Real Estate Law Center, P.C.; Erikson M. Davis;[1] Deepak S. Parwatikar; Balanced Legal Group; and Pinnacle Law Center, P.C., and Mr. Pratt. See Complaint ¶¶ 9-15, at 4-5. Mr. Davis, Mr. Pratt, and Mr. Parwatikar are residents

---

[1] Mr. Davis is currently disbarred in California. See Erikson McDonnel Davis #197841, The State Bar of California, http://members.calbar.ca.gov/fal/Licensee/Detail/197841 (last visited June 22, 2019).

of the State of California, and Mr. Pratt and Mr. Parwatikar are attorneys licensed in the State of California. See Complaint ¶¶ 10-12, at 4-5. Neither Mr. Davis nor Mr. Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11, at 4-5. Real Estate Law and Pinnacle Law are "Professional Corporation[s] registered in California." Complaint ¶¶ 9, 13 at 4-5. Balanced Legal "is a California law firm owned and/or managed by Parwatikar." Complaint ¶ 14, at 5.

Mr. Pratt owned and managed Real Estate Law from September, 2011, to September, 2013. See Complaint ¶ 37, at 8. Mr. Davis "assumed ownership of" Real Estate Law in 2013. Complaint ¶ 20, at 6. Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Mr. Parwatikar owns, Complaint ¶ 38, at 8; see id. ¶ 21, at 6, and Real Estate Law pays Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6. Balanced Legal "uses" the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law use. Complaint ¶ 34, at 8.

Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico although RELC and its attorneys are not licensed to practice law in New Mexico." Complaint ¶ 16, at 5. "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications." Complaint ¶ 17, at 5. "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms." Complaint ¶ 18, at 5. The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees." Complaint ¶ 23, at

6. Balanced Legal "offers legal services including loan modification and bankruptcy services" via a website "accessible to New Mexico consumers." Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that **"[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present"**.

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint).

Mr. Pratt faced disciplinary charges from the State Bar of California in November, 2013, "for (among other things) allowing non-attorney staff to practice law, making false statements to entice clients to retain RELC, failing to return un-earned fees, and for bringing 'meritless' lawsuits for consumers." Complaint ¶ 39, at 8. "The charges against Pratt resulted in a State Bar Court of California decision ordering one year suspension, three years' probation and restitution to certain consumers." Complaint ¶ 40, at 8.

## PROCEDURAL BACKGROUND

New Mexico contends that: (i) the Defendants violated the MARS rule by accepting advance payment for mortgage relief services, and/or Mr. Parwatikar and Pinnacle Law substantially assisted the violations, see Complaint ¶¶ 77-85, at 18-19; (ii) the Defendants, willfully and in bad faith, violated the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, N.M. Stat. Ann. §§ 47-15-1 to -8 ("MFCFPA"), by failing to provide required warnings, notices, and disclosures, by failing to give New Mexico homeowners twenty-four hours before signing attorney-client agreements, and by requiring advance payment for their services, see Complaint ¶¶ 86-101, at 19-22; and (iii) the Defendants knowingly engaged in unlawful conduct violating the NMPUA, N.M. Stat. Ann. §§ 57-12-1 to -26, by requiring advance fees and monthly maintenance

fees while filing sham lawsuits, by leading New Mexico consumers to believe that the Defendants performed valuable legal services when the Defendants filed sham lawsuits with no value for New Mexico consumers, and by allowing New Mexico consumers to believe that the Defendants will defend foreclosure lawsuits, see Complaint ¶¶ 102-08, at 22-23. New Mexico asks that the Court enjoin the Defendants from continuing such violations, see Complaint ¶¶ 109-11, G, at 23-24, and requests restitution, disgorgement, civil penalties, and costs as the MARS Rule, the MFCFPA, and the NMUPA permit, see Complaint ¶¶ A-F, at 24.

The Parwatikar Defendants -- Mr. Parwatikar, Balanced Legal, and Pinnacle Law -- and Mr. Pratt are the only Defendants with liability issues remaining in this case. On June 11, 2018, the Court entered a default judgment against Real Estate Law on all liability issues, "reserving the issues of relief, including disgorgement, restitution and civil penalties." Default Judgment Against Real Estate Law Center at 1, filed June 11, 2018 (Doc. 75). See id. at 1-2. On November 5, 2018, the Honorable Laura Fashing, United States Magistrate Judge for the United States District Court for the District of New Mexico, recommended entering a default judgment against Mr. Davis on issues of liability, reserving for litigation the issues of relief, see Proposed Findings and Recommended Disposition at 4, filed November 5, 2018 (Doc. 91), and, on January 18, 2019, the Court adopted Magistrate Judge Fashing's recommendation, see Memorandum Opinion and Order Adopting the Magistrate Judge's Proposed Findings and Recommended Disposition at 2, 9, 2019 WL 259121, at *1, *4, filed January 18, 2019 (Doc. 106). In the Memorandum Opinion and Order, filed July 2, 2019 (Doc. 183)("MSJ MOO"), the Court granted summary judgment for the Parwatikar Defendants and Mr. Pratt on New Mexico's NMUPA claims, injunctive relief claims, and theories based on: (i) Mr. Davis' alleged MARS Rule violations; (ii) Balanced Legal's and

Pinnacle Law's violation of the MARS Rule independent of Real Estate Law; (iii) Mr. Parwatikar's and Mr. Pratt's participation in a common enterprise with Real Estate Law, Balanced Legal, and Pinnacle Law; and (iv) Mr. Pratt's reckless or knowing violation of the MARS Rule, or willful violation of the MFCFPA. See MSJ MOO at 183-84, 2019 WL 2804575, at *68.

1. **The Motion.**

Mr. Pratt filed the Motion on July 8, 2019. See Motion at 1. Mr. Pratt complains in the Motion: "New Mexico filed their exhibit list LATE and was allowed relief per motion Without notice." Motion at 1 (capitalization in original). Mr. Pratt then argues:

> New Mexico now files amended exhibit list with NEW exhibits 200-231 NEVER SEEN BEFORE by Pratt. The mail service of such amended exhibit list Shall be received by PRATT after trial commences . . . This is the ultimate in "sandbagging" and Prejudice to PRATT. The "strike zone" seems to be very wide for new mexico, and the "goal posts" keep getting moved so that PRATT cannot prepare for trial.
>
> Indeed, it is impossible for PRATT to prepare for trial given this "discovery dump" of new evidence!

Motion at 1 (quoting Balanced Legal Group, http://www.balancedlegalgroup.com (no longer available as of December 1, 2019)(capitalization in original)). Mr. Pratt continues: "Most importantly, New Mexico has failed to provide ALL of the following, despite Repeated requests: (i) mortgage files on all plaintiffs adverse to PRATT; (ii) foreclosure judgments on all plaintiffs adverse to PRATT; (iii) documentary evidence of 'MARS' acts by PRATT as to plaintiffs." Motion at 2 (capitalization in original). Mr. Pratt then lists several more complaints regarding the Court and New Mexico:

> PRATT has made settlement offer(s) to New Mexico, without reply.

> PRATT phoned and left TWO MESSAGES with court scheduling motion clerk in NOVEMBER 2018, and is awaiting "call-back" on setting of motion(s).
>
> PRATT does NOT have copy of any ruling(s) on defense MSJ (motion for summary judgment) or Motion for change of venue.

Motion at 2. Mr. Pratt requests a continuance pursuant to 18 U.S.C. § 3161(h)(8)(B)(iv).[2] See Motion at 2.[3]

## 2. **The Trial.**

The Court began trial the same day that Mr. Pratt filed the Motion. See Transcript of Trial Proceedings at 1 (taken July 8, 2019), filed July 12, 2019 (Doc. 194)("July 8 Tr."). On the first day of trial, July 8, 2019, Mr. Pratt did not appear in the courtroom, and the Court's Courtroom Deputy left a telephone voicemail with Mr. Pratt reminding him of the trial, and the Court joined the courtroom's telephone conference line should Mr. Pratt seek to join the trial telephonically. See July 8 Tr. at 3:1-3:4 (Court). The Court did not hear Mr. Pratt join the telephone conference line, see July 8 Tr. at 3:4-6 (Court), and Mr. Pratt did not join the telephone conference line at any point during the day, see July 8 Tr. at 3:1-223:23. The next day -- July 9, 2019 -- Mr. Pratt also did not join the trial in the courtroom or on the telephone conference line. See Transcript of Trial Proceedings at 227:1-485:2 (taken July 9, 2019), filed July 12, 2019 (Doc. 195).

On July 10, 2019, the Court held a hearing on the Motion. See July 10 Tr. at 489:1-498:13. Mr. Pratt summarized his arguments from the Motion. See July 10 Tr. at 490:10-21 (Pratt). The Court replied that it wanted to make sure that "the notice was clear that I wasn't vacating the trial."

---

[2]The Court notes that Mr. Pratt cites a portion of the Speedy Trial Act, 18 U.S.C. §§ 3161-74. This provision applies to criminal proceedings. See 18 U.S.C. § 3161. New Mexico does not bring here a criminal case against Mr. Pratt. See Complaint ¶¶ 77-111, at 18-24.

[3]The Court quotes almost the Motion's entirety.

July 10 Tr. at 491:5-6 (Court)(discussing the Notice of Hearing on Motion, filed July 9, 2019 (Doc. 190)(text-only entry)). New Mexico responded to Mr. Pratt by indicating that it opposes the Motion, and that the trial has started and the notice of the trial has "been set for months." July 10 Tr. at 491:23 (Anaya-Allen). See id. at 491:19-23 (Anaya-Allen).

New Mexico also said that it disclosed exhibits 200 through 232 to Mr. Pratt in its initial disclosures. See July 10 Tr. at 491:23-492:3 (Anaya-Allen). New Mexico noted that it had not previously disclosed only exhibit 211, which was a certification from a custodian for the State Bar of California and which New Mexico had recently provided to Mr. Pratt. See July 10 Tr. at 492:7-21 (Anaya-Allen). New Mexico explained that the Court had recently had a hearing on New Mexico's proposal to have a trial deposition of the State Bar of California's custodian, that the Court had quashed New Mexico's subpoena, but that New Mexico had obtained an affidavit from that custodian. See July 10 Tr. at 492:24-493:5 (Anaya-Allen). New Mexico emphasized that Mr. Pratt would have had available to him the State Bar of California proceedings and that he was a party to those proceedings. See July 10 Tr. at 493:7-12 (Anaya-Allen). New Mexico explained that Mr. Pratt had not requested the mortgage files or the foreclosure judgments in discovery, that New Mexico responded to Mr. Pratt's discovery requests, that the trial is on the alleged MARS Rule violations, and the fact that Mr. Pratt lists documents on his exhibit list does not mean that a party must produce those documents. See July 10 Tr. at 293:7-295:1 (Anaya-Allen). New Mexico emphasized that Mr. Pratt had requested earlier to change the trial date, that the Court had refused to reschedule the trial, and that Mr. Pratt has not consistently participated in any of the proceedings. See July 10 Tr. at 9:2-16 (Anaya-Allen).

Mr. Pratt replied that he has tried to participate in this matter, that New Mexico has not disclosed several plaintiffs' names, and that no evidence reflects that Mr. Pratt committed the alleged MARS Rule violations. See Tr. at 496:1-18 (Pratt). The Court stated that, even if Mr. Pratt had not seen the exhibits 200 to 231, New Mexico disclosed them and that the Court would see how the State Bar of California custodian certification issue played out at trial, as the parties had concluded to do with the authenticity issues that they discussed in pretrial hearings. See Tr. at 497:2-5 (Court). The Court indicated that it had discussed with the Parwatikar Defendants taking the objections to the timeliness of New Mexico's disclosures one at a time and that it would take the same approach to Mr. Pratt's objections. See Tr. at 497:6-11 (Court). The Court concluded that it would not continue the trial, that a continuance would prejudice the other parties, and that Mr. Pratt could object to New Mexico's evidence as the trial proceeded. See Tr. at 498:5-13 (Court). The Court explained that it would permit Mr. Pratt to attempt to participate in the trial via telephone. See Tr. at 498:14-23 (Court). Mr. Pratt left the telephone conference line. See July 10 Tr. at 499:3 (Court). Mr. Pratt did not return to the telephone conference line that day. See July 10 Tr. at 499:4-757:12. Mr. Pratt likewise did not appear in the courtroom or join the telephone conference line the following day -- the last day of trial. See Transcript of Trial Proceedings at 760:1-876:14 (taken July 11, 2019), filed August 2, 2019 (Doc. 207).

## **LAW REGARDING MODIFICATION OF SCHEDULING ORDERS**

Rule 16 of the Federal Rules of Civil Procedure provides that courts will, with some exceptions, issue scheduling orders in each case:

**(b)** **Scheduling.**

**(1)** *Scheduling Order.* Except in categories of actions exempted by local rule, the district judge -- or a magistrate judge when authorized by local rule -- must issue a scheduling order:

**(A)** after receiving the parties' report under Rule 26(f);[4] or

**(B)** after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference.

**(2)** *Time to Issue.* The judge must issue the scheduling order as soon as practicable, but unless the judge finds good cause for delay, the judge must issue it within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared.

**(3)** *Contents of the Order.*

**(A)** *Required Contents.* The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.

**(B)** *Permitted Contents.* The scheduling order may:

**(i)** modify the timing of disclosures under Rules 26(a)[5] and 26(e)(1);[6]

**(ii)** modify the extent of discovery;

**(iii)** provide for disclosure, discovery, or preservation of electronically stored information;

---

[4]Rule 26(f) requires parties to provide the court with a discovery plan. See Fed. R. Civ. P. 26(f).

[5]Rule 26(a) enumerates disclosures that the Federal Rules of Civil Procedure require. See Fed. R. Civ. P. 26(a).

[6]Rule 26(e)(1) requires parties to supplement or correct information they have provided in their required disclosures. See Fed. R. Civ. P. 26(e)(1).

> **(iv)** include any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after information is produced, including agreements reached under Federal Rule of Evidence 502;[7]
>
> **(v)** direct that before moving for an order relating to discovery, the movant must request a conference with the court;
>
> **(vi)** set dates for pretrial conferences and for trial; and
>
> **(vii)** include other appropriate matters.

Fed. R. Civ. P. 16(b).

"The District Court has wide discretion in its regulation of pretrial matters." Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990). Scheduling orders, however, "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accord Street v. Curry Bd. of Cty. Comm'rs, No. CIV 06-0776 JB/KBM, 2008 WL 2397671, at *6 (D.N.M. Jan. 30, 2008)(Browning, J.). The advisory committee notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a "manifest injustice" or "substantial hardship" test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4) advisory committee's note.

---

[7]Rule 502 of the Federal Rules of Evidence allows parties to reach agreements about the effects of accidentally disclosing attorney-client-privileged or work-product information. See Fed. R. Evid. 502.

The United States Court of Appeals for the Tenth Circuit has held that the concepts of good cause, excusable neglect, and diligence are related. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cty. Comm'rs, 2008 WL 2397671, at *6. See Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285, 1313 (D.N.M. 2010)(Browning, J.)(noting that the "rule 16(b) good-cause inquiry focuses on the diligence of the party seeking [to] amend the scheduling order."). In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of a predecessor to modern rule 4(m)[8] of the Federal Rules of Civil Procedure,[9] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified" is normally required.

---

[8]Rule 4(m) provides:

If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

[9]The Tenth Circuit in In re Kirkland interpreted rule 4(j), which was substantially identical. See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if service has not been made upon the defendant within 120 days after filing and the party responsible for service cannot show good cause why it was not made.").

86 F.3d at 175 (quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)). The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" In re Kirkland, 86 F.3d at 175 (quoting Putnam v. Morris, 833 F.2d at 905).

      Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request. For example, in Advanced Optics Electronics, Inc. v. Robins, the Court concluded that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not show good cause to modify the scheduling order. 769 F. Supp. 2d at 1313 n.8. In contrast, in Street v. Curry Board Of County Commissioners, the Court concluded that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery." 2008 WL 2397671, at *11. More recently, in Trujillo v. Rio Arriba County ex rel. Rio Arriba County Sheriff's Department, the Court concluded that the plaintiff had shown good cause to seek extension of the discovery deadline when he "diligently endeavored to comply with the Court's Scheduling Order by attempting to schedule a time to take . . . depositions nearly a month before the discovery deadline," but the Defendants made themselves unavailable until after the deadline." 2016 WL 4035340, at *10 (D.N.M. June 15, 2016)(Browning, J.).

The Court arrived at a similar determination in Abraham v. WPX Production, LLC, No. CIV 12-0917, 2016 WL 548251 (D.N.M. Jan. 25, 2016)(Browning, J.). There, the Court found good cause to amend a pleading when the plaintiffs had a very short amount of time to amend the pleadings, "even though discovery had only just begun." 2016 WL 548251, at *20. "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed." 2016 WL 548251, at *20. Furthermore, the delay was minimal and would not prejudice the defendants. See 2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order. When parties have not done so, the Court has not found good cause. In Montoya v. Sheldon, 286 F.R.D. 602, 616-17 (D.N.M. 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought that the case would settle and they would thus not require expert testimony. See 286 F.R.D. at 616-17. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

286 F.R.D. at 616-17.

Similarly, in Scull v. Management & Training Corp., 2012 WL 1596962, No. CIV 11-0217 (D.N.M. May 2, 2012)(Browning, J.), the Court denied a plaintiff's request for an extension of time to name an expert witness against a defendant. See 2012 WL 1596962, at *8. The plaintiff

asserted that he had waited to name an expert witness until a second defendant joined the case, but a scheduling order was in effect before the second defendant entered the case. See 2012 WL 1596962, at *8. The Court concluded that the plaintiff should have known that he would need to name an expert witness against the defendant already in the case. See 2012 WL 1596962, at *8. The Court determined that the plaintiff was seeking "relief from his own disregard" for the deadline. 2012 WL 1596962, at *8. "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC." 2012 WL 1596962, at *8. Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, because it "was not unreasonable for Scull to expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC." 2012 WL 1596962, at *9. The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case. 2012 WL 1596962, at *9.

The Court has found good cause when serious and unforeseen events prevent a party from complying with the Court's scheduling order. In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court concluded that a lawyer had shown excusable neglect when he missed a scheduling deadline because, soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and, only after the lawyer returned to his work did he realize that a deadline passed. See 275 F.R.D. at 549-50. The Court noted that the lawyer could have avoided missing the

deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not because of his inadvertence. 275 F.R.D. at 549-50. In West v. New Mexico Taxation and Revenue Department, No. CIV 09-0631 JB/CEG, 2010 WL 3834341 (D.N.M. July 29, 2010)(Browning, J.), the Court allowed a plaintiff extended time to file a response to a defendant's motion for summary judgment, in part because of the difficulty the plaintiff's counsel experienced attempting to obtain depositions with certain defense witnesses, and in part because cross-motions on summary judgment are particularly helpful for the Court. See 2010 WL 3834341, at *4-5. On the other hand, in Liles v. Washington Tru Solutions, LLC, No. CIV 06-854 JB/CEG, 2007 WL 2298440 (D.N.M. June 13, 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the only rationale that the plaintiff provided was that his counsel's "family and medical emergencies" precluded the plaintiff from timely responding. 2007 WL 2298440, at *2.

## **ANALYSIS**

The Court denies the Motion. Mr. Pratt has put forth no reasons for a continuance that satisfy the good cause or excusable neglect standards. Mr. Pratt will suffer no prejudice from proceeding with this trial, but the plaintiffs would suffer prejudice if the Court continued the trial.

First, the Court addresses Mr. Pratt's concerns about New Mexico filing late the Exhibit List in its Memorandum Opinion and Order, filed December 9, 2019 (Doc. 227)("Exhibit List MOO"). See Motion at 1. As the Court notes in the Exhibit List MOO, New Mexico transmitted the Exhibit List via email to the Parwatikar Defendants and to Mr. Pratt on June 27, 2019 -- the original date for filing exhibit lists. See Tr. at 5:22-25 (Anaya-Allen); Draft Transcript of Hearing at 9:21-23

(Court)(taken June 18, 2019).[10]  Even if Mr. Pratt did not access the Exhibit List via email, he could have done so, and so the one-day delay in the Exhibit List's posting to CM/ECF did not impede Mr. Pratt's abilities to review the Exhibit List before trial.  Mr. Pratt has had time to prepare for trial in response to the Exhibit List.  That Mr. Pratt did not look at the Exhibit List within his possession does not rise to the level of good cause to continue the trial.  Cf. In re Kirkland, 86 F.3d at 175 (stating that inadvertence, mistake, or ignorance of a rule do not suffice for good cause).

The timing of New Mexico's Amended Exhibit List also does not justify a continuance.  See Motion at 1.  With the exception of exhibit 211, New Mexico previously provided Mr. Pratt the evidence in exhibits 200 to 231.  See July 10 Tr. at 491:23-492:3 (Anaya-Allen); id. at 492:7-21 (Anaya-Allen).  For exhibit 211, the Court will, as it concluded regarding all the authentication evidence that the parties discussed at the June 18, 2019, hearing, consider the authentication and Mr. Pratt's objections during the trial's course.  See Draft Transcript of Hearing at 13:23-14:2 (Court)(taken June 18, 2019).  Moreover, that Mr. Pratt has filed the Motion complaining that New Mexico has filed the Amended Exhibit List suggests that when the Amended Exhibit List arrives via mail is irrelevant.  See Motion at 1.  Mr. Pratt has seen the Amended Exhibit List and suffers no prejudice from its later arrival via mail.  See Motion at 1.  If he had not seen the Amended Exhibit List, he would not have filed the Motion.

Mr. Pratt's complaints about the mortgage files, foreclosure judgments, and MARS Rule

---

[10]The Court's citations to the draft transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

evidence likewise do not persuade the Court to grant a continuance. See Motion at 1. As an initial matter, the Court addresses some of Mr. Pratt's concerns about the mortgage files, the foreclosure judgments, and the MARS Rule evidence in its Memorandum Opinion and Order at 43-49, filed July 11, 2019 (Doc. 193)("MIL MOO"), and incorporates herein that discussion. See MIL MOO at 43-49. New Mexico complied with Mr. Pratt's discovery requests, and, during discovery, Mr. Pratt did not request from New Mexico the mortgage files and the foreclosure judgments. See July 10 Tr. at 293:7-295:1 (Anaya-Allen). The Court has no reason to distrust New Mexico's statements, but Mr. Pratt has demonstrated a lack of credibility. In the Motion at issue in this Memorandum Opinion and Order, Mr. Pratt makes allegations about the Court's Court Room Deputy that the Court knows to be false. Moreover, much evidence that New Mexico has disclosed relates to the alleged MARS Rule violations or the MFCFPA violations. These are allegations on which the case focuses. The Court does not know what more Mr. Pratt wants of New Mexico than the evidence that the state is using to put together its case. To what use Mr. Pratt plans to put the mortgage files and the foreclosure judgments is unclear. The questions at issue for trial are whether Real Estate Law requested advance fees from the New Mexico consumers in exchange for services that Real Estate Law represented would, among other things, postpone or stop foreclosure and/or obtain loan modifications and whether Real Estate Law adhered to New Mexico's requirements for the contracts for such services. The mortgage files and the foreclosure judgments are, therefore, irrelevant to the merits of the claims.

None of Mr. Pratt's remaining complaints persuade the Court to continue the trial. See Motion at 2. The contentions do not provide grounds to continue the trial, and most of the statements are inaccurate. First, the Court cannot opine on New Mexico and Mr. Pratt's settlement

negotiations, but Mr. Pratt was at least permitted to participate in one settlement conference via telephone. See Motion at 2; July 10 Tr. at 495:9-10 (Anaya-Allen). Moreover, New Mexico has no duty to accept Mr. Pratt's settlement offer. Were parties to have a duty to accept settlement offers, parties would have no leverage during settlement and trials would be non-existent. Mr. Pratt cannot delay the trial on such grounds.

Second, the Court's Courtroom Deputy has returned Mr. Pratt's telephone calls, although Mr. Pratt contends otherwise. See Motion at 2. The Court's Courtroom Deputy has described in person to the Court her conversations with Mr. Pratt. The Court believes her statements. Not only does her countenance and her history with the Court establish her credibility, her narratives are too detailed to be fabricated. The Court is aware of no motions from Mr. Pratt pending a hearing setting, and Mr. Pratt's unfounded assertions do not provide grounds for a continuance. Moreover, even if an employee does not return a call or calls, it is hard to see how that non-evidence justifies delaying a trial; lawyers and parties can file a motion if they need something from the Court.

Last, the Court filed the MSJ MOO on July 2, 2019, the day before the Motion's date. Mr. Pratt has, therefore, had access to the Court's decision on the MSJ. Contra Motion at 3. The Court also orally ruled that venue is proper in the Court, see Transcript of Hearing at 8:21-24 (Court)(taken May 28, 2019), so Mr. Pratt has also known for months the Court's decision on that matter, contra Motion at 3. Accordingly, nothing that Mr. Pratt argues convinces the Court of the need to continue the trial, and the Court denies the Motion.

**IT IS ORDERED** that the Motion to Continue Trial by Pro Per Chad T-W Pratt, Sr. to Exclude All, filed July 8, 2019 (Doc. 189), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hector H. Balderas
   Attorney General of the State of New Mexico
Angelica Anaya-Allen
   Assistant Attorney General of the State of New Mexico
Santa Fe, New Mexico

      *Attorneys for the Plaintiff*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

      *Attorneys for Defendants Pinnacle Law Center, PC , Balanced Legal Group, and Deepak S. Parwatikar*

Erikson M. Davis
Newbury Park, California

      *Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

      *Defendant pro se*

Real Estate Law Center, PC
California

      *Defendant pro se*