# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STATE OF NEW MEXICO, ex rel.,
HECTOR BALDERAS, Attorney General of
New Mexico,

       Plaintiff,

v.                                              No. CIV 17-0251 JB\LF

REAL ESTATE LAW CENTER, P.C., a
California professional corporation; ERIKSON
M. DAVIS, an attorney and resident of
California, individually, and dba Real Estate
Law Center, P.C., a California professional
corporation; DEEPAK S. PARWATIKAR, an
attorney and resident of California, individually,
and dba Balanced Legal Group, an unidentified
trade name or entity, dba
www.pinnaclelawcenter.com; CHAD T.
PRATT, an attorney and resident of California,
individually, and formerly dba Real Estate Law
Center, P.C.; the BALANCED LEGAL
GROUP, an unidentified trade name or entity
located in California, and PINNACLE LAW
CENTER, P.C., a California professional
corporation,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant Chad T-W Pratt's Brief in

Support of Motion to Dismiss for Improper Venue and/or In The Alternative Transfer to Los

Angeles, filed, March 14, 2019 (Doc.113)("Motion"). The Court held a hearing on May 28, 2019.

The primary issues are: (i) whether venue is proper in the United States District Court for the

District of New Mexico, under 28 U.S.C. § 1391(b)(2), as a district in which "a substantial portion

of the events and omissions giving rise to the claims" occurred; (ii) whether the Court should

dismiss the matter for improper venue under rule 12(b)(3) of the Federal Rules of Civil Procedure; and (iii) whether, in the alternative, given that all of Defendant Real Estate Law Center, P.C.'s lawsuits were filed in California and a court will need to analyze California law to decide this matter, the Court should transfer the matter to Los Angeles County, California, under 28 U.S.C. § 1404(a) and/or § 1406(a), for convenience and in the interests of justice. The Court concludes that: (i) venue is proper in the District of New Mexico; (ii) the Court should not dismiss the matter for improper venue under rule 12(b)(3) of the Federal Rules of Civil Procedure; and (iii) the Court should not transfer the matter to Los Angeles County. Accordingly, the Court denies the motion.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint for Violations of the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act (MFCFPA), Mortgage Assistance Relief Services (MARS) Rule, the New Mexico Unfair Practices Act (NMUPA) and Petition for Injunctive Relief, filed February 22, 2017 (Doc. 1)("Complaint"). The Court provides these facts for background. It does not adopt them as the truth, and it recognizes that these facts are largely New Mexico's version of events.

This action arises from the activities of Real Estate Law Center, P.C. ("Real Estate Law") and Defendants Erikson M. Davis; Deepak S. Parwatikar; Chad T. Pratt; Balanced Legal Group; and Pinnacle Law Center, P.C. See Complaint ¶¶ 16-76, at 5-17. Mr. Davis, Mr. Pratt, and Mr. Parwatikar are residents of and attorneys licensed in California. See Complaint ¶ 10-12, at 4-5. Neither Mr. Davis nor Mr. Pratt is licensed to practice law in New Mexico. See Complaint ¶¶ 10-11, at 4-5. Real Estate Law "is a Professional Corporation registered in California." Complaint ¶ 9, at 4. Mr. Pratt owned and managed Real Estate Law from September, 2011, to September, 2013. See Complaint ¶ 37, at 8. Mr. Davis "assumed ownership of" Real Estate Law

in 2013. Complaint ¶ 20, at 6. Real Estate Law "has an operating agreement or partnership agreement with Parwatikar and Pinnacle," which Mr. Parwatikar owns, Complaint ¶ 38, at 8, and Real Estate Law provides Pinnacle Law eighty percent of the fees that Real Estate Law receives, see Complaint ¶ 21, at 6. Balanced Legal "is a California law firm owned and/or managed by Parwatikar." Complaint ¶ 14, at 5. Balanced Legal uses the same address -- 695 S. Vermont Ave., Los Angeles, California 90010 -- as Real Estate Law and Pinnacle Law. See Complaint ¶ 34, at 8.

The Defendants "created the fiction of . . . mass action joinder lawsuits to disguise . . . advance fees as legal fees." Complaint ¶ 23, at 6. Real Estate Law provides "legal representation, mortgage foreclosure consulting and mortgage modification services to homeowners in New Mexico." Complaint ¶ 16, at 5. "[Real Estate Law] has made direct telephone solicitations to New Mexico consumers and has advertised its services in filing mass joinder lawsuits and mortgage modifications." Complaint ¶ 17, at 5. "[Real Estate Law] has filed dozens of frivolous mass joinder lawsuits against a variety of banks, enticing hundreds of homeowners, including at least 23 New Mexico homeowners, to join these lawsuits as a way to obtain better loan terms." Complaint ¶ 18, at 5. Balanced Legal provides legal services via a website "accessible to New Mexico consumers." Complaint ¶ 33, at 7-8.

> On its website, Balanced says, in close proximity to the words "**LOWER YOUR MORTGAGE PAYMENTS TODAY!!**" that **"[w]e work with litigation firms that sue lenders in individual or mass tort cases. Potential results of lawsuits can include but not limited to the following: -- Principal reduction -- Monetary damages -- Lowered interest rates. Cancellation of the loan if severe fraud was present**".

Complaint ¶ 35, at 8 (emphasis and alteration in Complaint). Real Estate Law has "dealt with or taken payments from at least twenty-three . . . New Mexico consumers since 2013 [(the 'New Mexico residents')]." Complaint ¶ 58, at 13.

## FINDINGS OF FACT

There are several factual issues in deciding the Motion. The Court makes the following findings of fact:

1.      The property of the New Mexico residents mentioned in the Real Estate Law contracts is located in New Mexico. <u>See</u> Declaration and Affidavit of David Starrett ¶¶ 1, 3, at 1 (executed January 31, 2019), filed March 28, 2019 (Doc. 128)("Starrett Decl."); Declaration and Affidavit of Arlena F. Dickerson ¶¶1, 3, at 1 (executed February 26, 2019), filed March 28, 2019 (Doc. 129)("Dickerson Decl.").

2.      Real Estate Law used radio and television ads to solicit customers, and New Mexico residents then heard and acted on the information given in the ads. <u>See</u> Starrett Decl. ¶ 4, at 1; Dickerson Decl. ¶ 3, at 1 .

3.      The New Mexico residents retained Real Estate Law to protect their homes. <u>See</u> Starrett Decl. ¶ 6, at 1; Dickerson Decl. ¶¶ 3, 5-6, 20, at 1-3.

4.      The payments the New Mexico residents made to Real Estate Law came from bank accounts based in New Mexico. <u>See</u> Dickerson Decl. ¶¶ 16-18, at 2.

5.      The New Mexico residents received and signed the contracts while in the state of New Mexico. <u>See</u> Dickerson Decl. ¶¶ 7-17, at 2-3.

6.      Several contracts between Real Estate Law and the New Mexico residents contain a forum selection clause stating: "The agreement shall be governed in accordance with the laws of the State of California. Venue shall be in Los Angeles County." Attorney-Client Fee Agreement,

Robert Alexander ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Rachel D. Silva ¶ 12, at 3, filed March 14, 2019 (Doc. 113).

7.      The contract between Real Estate Law and Vicki S. Sullivan, one of the New Mexico residents, contains a forum selection clause stating: "Client also agrees that the laws of the State of California shall govern this agreement and that any disputes arising from this agreement must be adjudicated in Los Angeles, California." Attorney-Client Fee Agreement, Vicki S. Sullivan at 2, filed March 14, 2019 (Doc. 113).

8.      The contract between Real Estate Law and David Starrett, one of the New Mexico residents, contains a forum selection clause stating: "The Agreement shall be governed in accordance with the laws of the State of California and any disputes arising from this Agreement must be adjudicated in Los Angeles, California." Attorney-Client Fee Agreement, David Starrett ¶ 13, at 3, filed March 28, 2019 (Doc. 128).

## PROCEDURAL BACKGROUND

New Mexico alleges that, first, Real Estate Law violated the Mortgage Assistance Relief Services (MARS) Rule, 12 C.F.R. 1015.1, by soliciting and accepting advance fees from New

Mexico residents before "a mortgage modification agreement [was] finalized," Complaint ¶ 84, at 19.  Second, New Mexico alleges that the Defendants violated the New Mexico Mortgage Foreclosure Consultant Fraud Prevention Act, N.M. Stat. Ann. §§ 47-15-1 to -8 (MFCFPA), by offering services to save "consumers' homes from foreclosure," requiring payment for services before completing the services, and not providing required "warnings, notices, and disclosures." Complaint ¶ 87, at 20. Third, New Mexico alleges that the Defendants violated the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 to -26 (NMUPA), by requiring "a large up-front fee . . . plus monthly maintenance fees," providing "no value to the consumers," and leading consumers to believe that the Defendants will help defend "a foreclosure lawsuit."  Complaint ¶ 105, at 22.

**1.     The Motion.**

Mr. Pratt moves to dismiss this matter for improper venue.  <u>See</u> Motion at 1.   In the alternative, Mr. Pratt asks that this matter be transferred to Los Angeles County based on the contractual language between Real Estate Law and the New Mexico residents and for convenience.  <u>See</u> Motion at 1.  Mr. Pratt argues that rule 12(b)(3) of the Federal Rules for Civil Procedure allows a defendant to move for dismissal based on improper venue and that the plaintiff then bears the burden of proving that venue is proper.  <u>See</u> Motion at 6 (citing <u>Doe 1 et. Al v. AOL LLC</u>, 552 F.3d 1077, 1081 (9th Cir. 2009)(Nelson, J.)).  Additionally, Mr. Pratt argues that, per 28 U.S.C. § 1406(a), when a case is filed in an improper venue, the district court must dismiss or transfer the case to a district where venue is proper.  <u>See</u> Motion at 7.  Mr. Pratt argues that the Court should dismiss this matter, because of the venue clause present in each of the Real Estate Law contracts and because of New Mexico's knowledge of these clauses before filing this case. <u>See</u> Motion at 7, 9.  Mr. Pratt argues that California law governs all issues arising from Real

Estate Law's actions and that the law permits parties to agree to reasonable venue clauses, like those within the Real Estate Law contracts.  See Motion at 8-9.

Alternatively, Mr. Pratt argues that the case should be transferred to California, because 28 U.S.C. § 1404(a) aims to prevent plaintiffs from abusing their ability to select venue by selecting a venue that is inconvenient for the defendant.  See Motion at 7 (citing In Re Volkswagen of Am., Inc., 545 F.3d 304, 313 (5th Cir. 2008)(Jolly, J.)).  Mr. Pratt argues that he carries his burden as the moving party, per 28 U.S.C. §1404(a), because he satisfies two factors: (i) the venue is proper in the transferee court; and (ii) the transfer is more convenient for the parties and the witnesses.  See Motion at 8.  Mr. Pratt argues that venue in New Mexico is inconvenient, because Real Estate Law files were created in California and all suits were also filed in California.  See Motion at 8.  Further, Mr. Pratt argues that a New Mexico federal court should not be burdened with interpreting California law and that a California state court is in a better position to adjudicate this matter.  See Motion at 9.

2.    **The Response.**

New Mexico responds.  See Plaintiff's Response to Defendant Pratt's Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles, filed March 28, 2019 (Doc. 128)("Response").  New Mexico argues that venue is proper in the District of New Mexico and that dismissal under rule 12(b)(3) is, therefore, not warranted.  See Response at 3.  New Mexico argues that venue is proper in the District of New Mexico under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events and omissions giving rise to the claims occurred in New Mexico, including: (i) the property discussed in the contracts is located in New Mexico; (ii) Real Estate Law solicited clients from New Mexico; (iii) the New Mexico residents received and signed contracts in New Mexico; (iv) payments came from New Mexico bank accounts; (v) the

New Mexico residents retained the Defendants to protect their homes within the state; and (vi) the New Mexico residents experienced harm within the state of New Mexico. <u>See</u> Response at 4 (citing <u>Estate of Abtan v. Blackwater Lodge and Training Ctr.</u>, 611 F. Supp. 2d 1, 8 (D.D.C. 2009)(Walton, J.)).

New Mexico argues that the venue clause is both: (i) permissive rather than exclusive; and (ii) inapplicable. <u>See</u> Response at 5. New Mexico argues that the venue clause is permissive, because there is no explicit exclusionary language restricting venue, like "exclusive," "sole," or "only." Response at 5 (citing <u>K & V Scientific Co., v. Bayerische Motoren Weke Aktiengesellschaft</u>, 314 F.3d 494, 500 (10th Cir. 2002)). New Mexico further argues that the venue clause is inapplicable because New Mexico was not a party to the Real Estate Law contracts, or, alternatively, void because the clause is contrary to public policy. <u>See</u> Response at 6. New Mexico argues that it is against public policy for a contractual clause between two private parties to be enforced against New Mexico in a civil suit under the NMUPA, because of New Mexico's authority to enforce the NMUPA. <u>See</u> Response at 6 (citing <u>State ex rel. Balderas v. ITT Edu. Servs., Inc.</u>, 2018-NMCA-044, 421 P.3d 849). Further, New Mexico argues that the MFCFPA prohibits foreclosure-consulting contracts from including venue clauses that force a homeowner to agree to another state's jurisdiction. <u>See</u> Response at 7 (citing N.M. Stat. Ann. § 47-15-5(G)(2)-(3)). New Mexico argues that the MFCFPA does not allow contracting parties to waive its protections. <u>See</u> Response at 7.

New Mexico argues that the District of New Mexico is a more convenient venue for it and for its witnesses, and that, consequently, 28 U.S.C. § 1404(a) does not support a change of venue. <u>See</u> Response at 8. New Mexico argues that it is not in the interest of justice to grant a transfer, because the affected New Mexico residents' claims arise under New Mexico state laws, including

the NMUPA and MFCFPA, in addition the federal MARS Rule.  <u>See</u> Response at 8.  Further, New Mexico argues that a transfer would be inconvenient at this time, causing delay and harming judicial economy.  <u>See</u> Response at 8.  New Mexico argues that the inconvenience that would befall seventeen expected witnesses, who reside in New Mexico, if the case were transferred outweighs any inconvenience that Mr. Pratt would experience if the venue remains in the District of New Mexico.  <u>See</u> Response at 9 (citing <u>Atl. Marine Constr. Co. v. U.S. Dist. Court</u>, 571 U.S. 49, 63 n.6 (2013)).  New Mexico argues that Mr. Pratt bears the burden of proving that the existing forum is inconvenient and that Mr. Pratt has failed to carry this burden, because: (i) many factors indicate that New Mexico is a convenient forum; (ii) Mr. Pratt contradicts his own arguments by repeatedly stating that he does not have any of the files, only to argue that the existence of the files in California supports a transfer; and (iii) the choice-of-law clause is inapplicable so the Court will not be applying California law.  <u>See</u> Response at 9-10.

New Mexico argues that 28 U.S.C. § 1406(a) is not applicable in this matter, because New Mexico did not file in an improper district.  <u>See</u> Response at 10.  New Mexico argues that, even if venue might be proper in California, it is also proper in New Mexico, and that, therefore, a transfer is unnecessary.  <u>See</u> Response at 11-12.  New Mexico argues that a dismissal or transfer of this case would not further the interests of justice, because it filed the case in a proper venue. <u>See</u> Response at 12.  Finally, New Mexico argues that Mr. Pratt, as the movant in this matter, violated a local rule by not including a recitation of a good-faith request for concern within the motion.  <u>See</u> Response at 12 (citing D.N.M.LR-Civ. 7.1(a)).  New Mexico also filed a Plaintiff's Supplement to its Response to Pratt's Motion to Dismiss for Improper Venue and/or Transfer, filed March 28, 2019 (Doc. 129)("Supplement"), to which it provides additional exhibits to the Response, <u>see</u> Supplement at 1.

3.     **The Reply**.

Mr. Pratt replies.  <u>See</u> Pratt's Reply Brief in Further Support of Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles, filed May 6, 2019 (Doc.136)("Reply").  Mr. Pratt argues that the language in each of the New Mexico residents' contracts identifies Los Angeles County as the venue for any disputes, and that this provision is reasonable and proper, so the matter must be dismissed per the Federal Rules of Civil Procedure. <u>See</u> Reply at 2.  Mr. Pratt argues that the venue clause is proper based on an October 15, 2010, Albuquerque Journal article that suggested "few New Mexico attorneys handle foreclosure cases."  Reply at 3.  Additionally, Mr. Pratt argues that New Mexico had access to the contracts before filing this matter and, therefore, committed an oversight by not deferring or referring to the venue clauses contained therein, thereby "misleading" the Court and creating grounds for dismissal.  Reply at 3.

Mr. Pratt argues that the contract's choice-of-law clause precludes the use of all authorities that would not be binding in California.  <u>See</u> Reply at 4.  Mr. Pratt argues that venue in New Mexico is improper, because 28 U.S.C. § 1391(b) is not satisfied based on Mr. Pratt's lack of New Mexico connections.  <u>See</u> Reply at 4.  Finally, Mr. Pratt argues that MFCFPA does not invalidate the venue clause, because MFCFPA does not prohibit venue clauses for solely litigation-based services, like those that Mr. Pratt contracted to complete, unlike foreclosure services.  <u>See</u> Reply at 4.

4.     **The Hearing.**

The Court held a hearing on May 28, 2019.  See Transcript of Hearing (taken May 28, 2019)("Tr.").[1]  At the hearing, the parties largely reiterated the arguments from their briefing.  See Tr. at 3:22-9:16 (Court, Pratt, Harrison, Anaya-Allen).  Mr. Pratt summarized the arguments within his brief, drawing on Fed. R. Civ. P. 12(b)(3) and 28 U.S.C §§ 1404, 1406 to support his position, as well as the contracts' venue provisions, which he stated were "adverse to" him.  Tr. at 4:6-8 (Pratt).  Mr. Pratt added that a Los Angeles firm and attorney carried out all the alleged bad acts and that the lawsuit that the New Mexico residents were contracting to join was filed in Los Angeles, making Los Angeles a reasonable choice for an exclusive venue.  See Tr. at 4:8-14 (Pratt).  The Court then asked the Parwatikar Defendants if they had a response to Mr. Pratt's Motion.  See Tr. at 4:21-23 (Court).  The Parwatikar Defendants had no response to the Motion.  See Tr. 4:24 (Harrison).

In response to Mr. Pratt's argument, New Mexico summarized the arguments within its brief that: (i) the venue clause is inapplicable because New Mexico is not a party to the contracts; and (ii) the MFCFPA prohibits the venue clause.  See Tr. at 5:8-14 (Anaya-Allen).  The Court asked New Mexico if Mr. Pratt timely raised the Motion, and New Mexico confirmed that Mr. Pratt timely brought the Motion.  See Tr. at 6:18-19 (Court, Anaya-Allen).

The Court then asked about the use of the word "shall" within the venue clause, and whether the Court or the United States Court of Appeals for the Tenth Circuit had addressed this language in prior opinions.  Tr. at 6:20–7:1 (Court).  New Mexico responded by citing a Tenth

_____

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Circuit case, <u>K&V Scientific Co. v. BMW</u>, which held that a forum selection clause is permissive unless terms like "exclusive," "sole," or "only" are used.  <u>See</u> 314 F.3d at 494 (10th Cir. 2002). <u>See</u> Tr. at 7:2-6 (Anaya-Allen).  <u>See</u> <u>also</u> <u>Montoya v. Fin. Fed. Credit, Inc.</u>, 872 F. Supp. 1251, 1264 (D.N.M 2012)(Browning, J.)("<u>Montoya</u>").  New Mexico then compared the venue clause in <u>K&V Scientific Co. v. BMW</u> to the venue clause within the present case, noting that both clauses use "shall," and argued that the Court should deem the venue clause in the Real Estate Law contracts permissive like the clause in <u>K&V Scientific Co. v. BMW</u>.  <u>See</u> Tr. at 7:9-16 (Anaya-Allen).  New Mexico ends by emphasizing that New Mexico is a proper forum, because the homeowners reside in New Mexico and sought help from Real Estate Law for their New Mexico residences.  <u>See</u> Tr. at 19-24 (Anaya-Allen).  The Court then asked the Parwatikar Defendants if they had a response to New Mexico's argument against the Motion.  <u>See</u> Tr. at 8:1 (Court).  Again, the Parwatikar Defendants had no response concerning the Motion.  <u>See</u> Tr. at 8:2 (Harrison).

The Court then allowed Mr. Pratt to have the final word on his Motion.  <u>See</u> Tr. at 8:3-4 (Court).  Mr. Pratt argued that New Mexico brought the case ex rel., which Mr. Pratt interprets to mean that "the State of New Mexico stands in the shoes of the New Mexico individual plaintiff who signed the contract," which, in turn, makes the forum selection clause binding against New Mexico.  Tr. at 8:6-12 (Pratt).

The Court said that it was inclined to hold that the District of New Mexico is a proper venue for this case, because New Mexico is likely correct that the venue clause could not bind the State of New Mexico, as a non-party to the contracts.  <u>See</u> Tr. at 8:21-24 (Court).  The Court explained that it had never had this exact issue before this case, but that it was inclined to believe that New Mexico has some powers independent of the New Mexico residents, allowing the State

to enforce statutes. <u>See</u> Tr. at 8:24-9:5 (Court). The Court also was inclined to believe that the use of "shall" in a forum selection clause should be deemed permissive, according to the Court's prior cases and the Tenth Circuit's rulings. <u>See</u> Tr. at 9:6-11 (Court). The Court stated that it believed that New Mexico is likely a proper district for this matter, especially because the New Mexico residents are in the state, so it is inclined to deny the Motion. <u>See</u> Tr. at 9:11-14 (Court).

## LAW REGARDING VENUE

"Venue is defined as the appropriate district court in which to file an action." <u>Whiting v. Hogan</u>, 855 F. Supp. 2d 1266, 1282 (D.N.M. 2012)(Browning, J.)(citing <u>NLRB v. Line</u>, 50 F.3d 311, 314 (5th Cir. 1995)). The purpose of venue is to assure that lawsuits are filed in appropriately convenient courts for the matters raised and for the parties involved in the action. <u>See</u> <u>Leroy v. Great W. United Corp.</u>, 443 U.S. 173, 185 (1979). Venue should not be confused with subject-matter jurisdiction, <u>see</u> <u>Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 315-16 (2006), or with personal jurisdiction, <u>see</u> <u>Leroy v. Great W. United Corp.</u>, 443 U.S. 173, 185 (1979)("The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum."). "To the extent that they are relevant, the laws relating to venue give added protection to defendants beyond those that are provided by the statutory and constitutional prerequisites of personal jurisdiction." 14D C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedure</u> § 3801, at 15 (3d ed. 2007)("<u>Wright & Miller</u>").

The federal venue provision allows a plaintiff to file in: (i) "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"; (ii) "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or, (iii) "if

there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).  See Res. Assocs. Grant Writing & Evaluation Servs., Inc. v. Southampton Union Free Sch. Dist., 193 F. Supp. 3d 1200, 1226 (D.N.M. 2016)(Browning, J.).

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to assert, by motion, that the court into which the plaintiff has hailed him or her is an improper venue to entertain the plaintiff's claims.  See Fed. R. Civ. P. 12(b)(3).  Rules 12(g) and 12(h), however, provide that if a party does not raise its objection to venue in its responsive pleading or in its first rule 12(b) motion, it waives the objection and accepts the plaintiff's chosen venue.  See Fed. R. Civ. P. 12(h)(1) ("A party waives any defense listed in Rule 12(b)(2)-(5) by (A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.").

## LAW REGARDING TRANSFER OF VENUE

In 1948, Congress enacted the federal change-of-venue statute, codified at 28 U.S.C. § 1404, to allow a district court to transfer an action filed in a proper, though not necessarily convenient, venue to a more convenient district.  That statute provides, in pertinent part: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or division to which all parties have consented."  28 U.S.C. § 1404(a).  Section 1404(a) affords a district court broad discretion to adjudicate motions to transfer based on a case-by-case review of convenience and fairness.  See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1167 (10th Cir. 2010); Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1516 (10th Cir. 1991).

"Recognizing that what is convenient for one litigant may not be convenient for the other, the Supreme Court has taught that section 1404(a) 'is intended to place discretion in the district court to adjudicate motions for transfer according to [a] . . . case-by-case consideration of convenience and fairness.'"  Res. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 977 (7th Cir. 2010)(quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice."  Res. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977. The statute permits a "flexible and individualized analysis," and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 29.  In considering a motion to transfer, a court weighs the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d at 1167.  See Tex. Gulf Sulphur v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967)(stating the factors that courts consider in making a venue determination under § 1404(a)).

Section 1406 of the United States Code's Title 28 permits transfer to cure a venue defect. It provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district

or division in which it could have been brought." 28 U.S.C. § 1406(a). Although both § 1404(a) and § 1406(a) "were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid." Van Dusen v. Barrack, 376 U.S. 612, 634 (1964). Section 1631 addresses transfer to cure want of jurisdiction and provides that, when a

> court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it was transferred on the date upon which it was actually filed in or noticed for the court from which it was transferred.

28 U.S.C. § 1631. The Tenth Circuit has held that 28 U.S.C. § 1631 was "specifically designed for cases transferred from one federal court to another for lack of jurisdiction," and that it "served to simplify the process and streamline its application." Ross v. Colo. Outward Bound Sch., Inc., 822 F.2d 1524, 1527 (10th Cir. 1987). The Tenth Circuit has also held that, although many courts have interpreted § 1406(a) to permit transfer where personal jurisdiction is lacking, the enactment of § 1631 makes such a "strained" construction "no longer necessary." Viernow v. Euripides Devel. Corp., 157 F.3d 785, 793 (10th Cir. 1998).

The "interest of justice" is a separate element of the transfer analysis that relates to the court system's efficient administration. Van Dusen v. Barrack, 376 U.S. at 626-27. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." Res. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citing Van Dusen v. Barrack, 376 U.S. at 645; Chicago, Rock Island & Pacific R.R. Co. v.

Igoe, 220 F.2d 299, 303 (7th Cir. 1955); Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc., 200 F.Supp.2d 941, 946 (N.D. Ill. 2002)(Castillo, J.); Hanley v. Omarc, Inc., 6 F. Supp. 2d 770, 777 (N.D. Ill. 1998)(Alesia, J.)). In some circumstances, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." Res. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d at 977 (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 220-21 (7th Cir. 1986)). The Tenth Circuit has interpreted the phrase – "if it is in the interest of justice" -- to grant a district court discretion in making the decision to transfer the action. Driggers v. Clark, 422 F. App'x 747, 749-50 (10th Cir. 2011)(unpublished)(citing Trujillo v. Williams, 465 F.3d 1210, 1222 (10th Cir. 2006)).

The Court has previously granted motions to transfer. See, e.g., Montoya v. Fin. Fed. Credit, Inc., 872 F. Supp. 2d at 1281. In Montoya, the Court transferred the case under 28 U.S.C. § 1406(a), because (i) "there are potential statute-of-limitations problems for the Plaintiffs if the Court were to dismiss their case"; (ii) "there is no indication that the Plaintiffs filed their Complaint in this forum to harass" the other party; and (iii) the Plaintiffs were not forum shopping. Montoya, 872 F. Supp. 2d at 1281-82. The Court has also denied motions to transfer. See e.g., Navajo Health Found.—Sage Hosp., Inc. v. Burwell, 86 F. Supp. 3d 1211, 1248-51 (D.N.M. 2015)(Browning, J.)("Navajo Health"). In Navajo Health, the Court weighed the § 1404(a) factors and concluded that transfer was inappropriate, in large part, because "the parties' convenience, the witnesses' convenience, and the location of physical evidence" weighed "heavily against transfer." Navajo Health, 86 F.Supp.3d at 1250. In that case, the evidence and the parties were more closely located to Albuquerque, New Mexico than to Phoenix, Arizona -- the forum that the Defendants wanted -- so the Court denied transfer. Navajo Health, 86 F. Supp. 3d at 1250-51.

## LAW REGARDING FORUM SELECTION CLAUSES

The Court has previously stated:

> Contrary to the general rule that a defendant's removal of the action from state court waives or cures any objection to improper venue in the federal court, an objection to the lack of proper venue based on a clause designating a court of another state or a foreign court as the exclusive forum is not waived or cured if the defendant removes the action from state court.

Knight Oil Tools, Inc. v. Unit Petrol. Co., No. CIV 05-0669 JB\ACT 2005 WL 2313715, at *2 (D.N.M. Aug. 31, 2005)(Browning, J.)(citing 17 James Wm. Moore, Moore's Federal Practice §§ 111.04[3][d], 111.36[5][a], at 111-42 to 111-43, 111-179 (3d ed. 2004)("Moore's")). Accord Lambert v. Kysar, 983 F.2d 1110, 1113 n.2 (1st Cir. 1993)("[A] valid forum selection clause operates to render venue improper, not only under 28 U.S.C. § 1391 [the general venue statute] but also under 28 U.S.C. § 1441(a) [the removal statute]."). See Int'l Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 113-15 (5th Cir. 1996)(without discussing removal issue, affirming dismissal on improper venue grounds of action removed from state court when forum selection clause specified state courts of another state as exclusive forum); Spradlin v. Lear Siegler Mgmt. Servs. Co., 926 F.2d 865, 866 (9th Cir. 1991)(without discussing removal issue, affirming dismissal of removed action on improper venue grounds based on clause making Saudi Arabia the exclusive forum).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the parties and various public-interest considerations." Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 62 (2013)("Atlantic Marine")(footnote omitted). "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interests of justice.'" Atlantic

Marine, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." Atlantic Marine, 571 U.S. at 63.

> The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." [Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. at 33] . . . (KENNEDY, J., concurring). For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." [Stewart Organization, Inc. v. Ricoh Corp., 487 U.S.] at 33 ([Kennedy, J., concurring)).

Atlantic Marine, 571 U.S. at 63.

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Atlantic Marine, 571 U.S. at 63. "First, the plaintiff's choice of forum merits no weight." Atlantic Marine, 571 U.S. at 63 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained for is unwarranted."). "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Atlantic Marine, 571 U.S. at 64 ("[A] district court may consider arguments about public-interest factors only."). "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files a suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules -- a factor that in some circumstances may affect public-interest considerations." Atlantic Marine, 571 U.S. at 64. Given these modifications to the 28 U.S.C. § 1404(a) factor analysis, the Supreme Court of the United States of America held that, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Atlantic Marine, 571 U.S. at 62. See id. at 66 ("In all but the most unusual cases, therefore, 'the

interest of justice' is served by holding parties to their bargain.")(quoting 28 U.S.C. § 1404(a));

Niemi v. Lasshofer, 770 F.3d 1331, 1351 (10th Cir. 2014)("We will enforce a mandatory forum

selection clause unless the party challenging it 'clearly show[s] that enforcement would be

unreasonable and unjust, or that the clause was invalid for such reasons as fraud or

overreaching.'")(quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15

(1972)("Bremen")). "[T]he proper mechanism for enforcement of a forum selection clause is a

motion to transfer under 28 U.S.C. § 1404(a)." Niemi v. Lasshofer, 770 F.3d at 1351. See Atlantic

Marine, 571 U.S. at 60. See Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC, 333 F. Supp.

3d 1179, 1210 (D.N.M. 2018)(Browning, J.)

     **1.**     **Choice-of-Law Issues and Interpreting Forum Selection Clauses.**

     In Stewart Organization v. Ricoh Corp., the Supreme Court held: "Federal law, specifically

28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties'

forum selection clause." 487 U.S. 22, 32 (1988). See Atlantic Marine, 571 U.S. at 52 ("[A] forum

selection clause may be enforced by a motion to transfer under § 1404(a)."). There is a distinction,

however, between what law governs the enforceability of a forum selection clause and what law

governs the interpretation of a forum selection clause. See Yavuz v. 61 MM, Ltd., 465 F.3d 418,

430 (10th Cir. 2006). See also Weber v. PACT XPP Techs., AG, 811 F.3d 758, 770 (5th Cir.

2016)("[A]s several circuits have explicitly recognized, the question of enforceability is

analytically distinct from the issue of interpretation."); Martinez v. Bloomberg LP, 740 F.3d 211,

220 (2d Cir. 2014)("Distinguishing between the enforceability and the interpretation of forum

selection clauses, moreover, accords with the traditional divide between procedural and

substantive rules developed under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 . . .

(1938)["Erie"]."). Notably, the Tenth Circuit has not drawn rigid distinctions between state and

federal law when interpreting forum selection clauses, and has applied federal law when interpreting these clauses when "there are no material discrepancies between [state] law and federal common law on these matters."  Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d 318, 320-21 (10th Cir. 1997)(not deciding the choice-of-law issue between Colorado law and federal law).  In contrast, the United States Court of Appeals for the Third Circuit has ruled that federal law cannot apply to forum selection-clause interpretation, because that would "frustrate[] the principles of Erie."  Collins on behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 182 (3d Cir. 2017)("Applying federal common law to these issues would generate a sprawling federal general common law of contracts.").  See Weber v. PACT XPP Techs., AG, 811 F.3d at 770 ("A choice-of-law analysis to determine what substantive law should guide this court's interpretation of the [forum selection clause] is proper under ordinary principles governing diversity litigation."); Martinez v. Bloomberg LP, 740 F.3d at 221 ("Erie . . . warns against an approach that would force federal courts to generate a sprawling federal general common law of contracts to govern such questions [of interpretation] whenever they arise in the context of forum selection clauses.").  But see Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d 509, 513 (9th Cir. 1988)("Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses.").  Since the Tenth Circuit's decision in Excell, Inc. v. Sterling Boiler & Mechanical, Inc., it has not confronted whether state or federal law should be used to interpret a forum selection clause.  See Presidential Hosp., LLC v. Wyndham Hotel Grp., LLC, 333 F. Supp. 3d. 1179, 1211 (D.N.M. 2018)(Browning, J).  When confronted with a contract between foreign citizens with a forum selection clause, the Tenth Circuit, however has held that, "under federal law, the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law

specified in the agreement's choice-of-law provision."  Yavuz v. 61 MM, Ltd., 465 F.3d at 430

(emphasis in original).

### 2. **Enforceability of Forum Selection Clauses.**

The Supreme Court has noted that there is substantial overlap between precedent

interpreting the enforceability of arbitration agreements and forum selection clauses.  See Scherk

v. Alberto-Culver Co., 417 U.S. 506, 518-19 (1974)("An agreement to arbitrate before a specified

tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of

suit but also the procedure to be used in resolving the dispute.").  The Supreme Court has stated

that "an arbitration or forum-selection clause in a contract is not enforceable if the inclusion of that

clause in the contract was the product of fraud or coercion."  Scherk v. Alberto-Culver Co., 417

U.S. at 518-19.  Reiterating this rule, the Tenth Circuit has stated: "A plaintiff seeking to avoid a

choice provision on a fraud theory must, within the confines of Fed. R. Civ. P. 9(b) and 11, plead

fraud going to the specific provision; the teachings of Scherk, interpreting Bremen, require no

less."  Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 960.  Thus, the Tenth Circuit

requires that a party seeking to avoid a forum selection clause produce evidence showing that the

arbitration provision is a product of fraud or coercion.  See Riley v. Kingsley Underwriting

Agencies, Ltd., 969 F.2d at 960 ("Third, at no time did Riley offer any evidence on the stipulated

issues tending to show that *the arbitration provision* (or any other choice provision, for that matter)

was a product of fraud or coercion.")(emphasis in original).  The Honorable Lourdes A. Martinez,

former United States Magistrate Judge for the District of New Mexico, has similarly stated that

"[a] general claim of fraud or misrepresentation concerning an entire contract does not affect the

validity of a forum selection clause."  Mann v. Auto. Protection Corp., 777 F. Supp. 2d 1234, 1240

(D.N.M. 2011)(Martinez, M.J.).

The Supreme Court has rejected the notion that the parties must specifically negotiate a forum selection clause for it to be enforceable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991)("[W]e do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining."). Accord Marinechance Shipping, Ltd. v. Sebastian, 143 F.3d 216, 221 (5th Cir. 1998)(holding that a forum selection clause in a seaman's employment contract was enforceable even when the parties did not negotiate for the provision). Magistrate Judge Martinez has similarly held:

> This argument also fails because unequal bargaining position and form contracts do not invalidate forum selection provisions. The fact that Plaintiff is an individual and the contract was presented to him as a form contract does not invalidate the forum selection provision, and Plaintiff's belief that he could not negotiate or change the terms of the Agreement does not rise to the level of overreaching that would make it unreasonable or unfair to enforce the forum selection provision.

Mann v. Auto. Prot. Corp., 777 F. Supp. 2d at 1240 (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593-94).

Courts have also imposed a high standard for negating a forum selection clause on the basis that it is inconvenient. The Tenth Circuit, for instance, has stated:

> Finally, in Carnival Cruise Lines, the Court relied on M/S Bremen in enforcing a domestic forum selection clause, despite inconvenience to the plaintiffs. Carnival Cruise Lines, [499 U.S. at 594]. Only a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice, would be sufficient to defeat a contractual forum selection clause. Id.

> Riley suggests that enforcement of the choice of forum and law provisions is unreasonable because he effectively will be deprived of his day in court. The basis underlying this contention is his perception that recovery will be more difficult under English law than under American law. Riley will not be deprived of his day in court. He may, though, have to structure his case differently than if proceeding in federal district court. The fact that an international transaction may be subject to laws and remedies different or less favorable than those of the United

States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair.  See Carnival Cruise Lines, [499 U.S. at 594]; AVC Nederland B.V. v. Atrium Inv. Ptrshp., 740 F.2d 148, 158–59 (2d Cir. 1984); Medoil Corp. [v. Citicorp], 729 F. Supp. [1456,]1460 [(S.D.N.Y. 1990)]; Karlberg European Tanspa, Inc. v. Jk-Josef Kratz Vertriebsgesellschaft mbH, 618 F. Supp. 344, 348 (N.D. Ill. 1985); Dukane Fabrics Int'l Inc. v. M.V. Hreljin, 600 F. Supp. 202, 203–04 (S.D. N.Y. 1985).  English law does not preclude Riley from pursuing an action for fraud and we agree with the Defendants that the Lloyd's Act does not grant statutory immunity for such claims.  See Lloyd's Act, § 14(3), Aplt.App. at 286 & Aple.Add. at 307–08.  We have been shown nothing to suggest than an English court would not be fair, and in fact, our courts have long recognized that the courts of England are fair and neutral forums. See M/S Bremen, 407 U.S. at 12 . . . ; Syndicate 420 at Lloyd's London v. Early American Ins. Co., 796 F.2d 821, 829 (5th Cir. 1986); Bonny v. Society of Lloyd's, 784 F. Supp. 1350, 1353 (N.D. Ill. 1992).  Given the international nature of the insurance underwriting transaction, the parties' forum selection and choice of law provisions contained in the agreements should be given effect.

Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958.  Magistrate Judge Martinez similarly held that, "[t]o invalidate a forum selection provision for reasons of inconvenience, however, a party must show that enforcement of the provision would cause an inconvenience 'so serious as to foreclose a remedy.'"  Mann v. Auto. Prot. Corp., 777 F. Supp. 2d at 1241 (quoting Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958).

**3.**      **Permissive and Mandatory Forum Selection Clauses.**

"The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.'"  Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d 921, 926 (10th Cir. 2005)(quoting Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d at 321).  "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere."  Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 926-27 (citing Excell, Inc. v. Sterling Boiler Mech., Inc., 106 F.3d at 321).  In K & V Scientific Co. v. BMW, the Tenth Circuit adopted the majority rule for enforcing forum

selection clauses.  See 314 F.3d at 500.  Specifically, it concluded that, when venue is specified, such as when the parties designate a particular county or tribunal, and mandatory or obligatory language accompanies the designation, a forum selection clause will be enforced as mandatory. See K & V Sci. Co. v. BMW, 314 F.3d at 499.

In Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (10th Cir. 1992), the Tenth Circuit held that the forum selection clause was mandatory and precluded removal of the case to federal court. See 963 F.2d at 1343.  In that case, the defendant appealed an order remanding the breach-of-contract action to a Kansas state court.  See 963 F.2d at 1343.  The federal district court concluded that an enforceable forum selection clause in the agreement required the remand.  See 963 F.2d at 1343.  The clause in the Milk 'N' More, Inc. v. Beavert agreement provided: "The parties herein have mutually agreed that said lease and the purchase option agreement contained herein, where applicable, shall be governed by the laws of the State of Kansas and the parties further agree that venue shall be proper under this agreement in Johnson County, Kansas."  963 F.2d at 1343.  The federal district court granted the motion to remand on the ground that the contractual agreement contained an enforceable forum selection clause, relying on the principle that forum selection clauses are "prima facie valid and should be enforced" unless shown to be unreasonable.  963 F.2d at 1344 (quoting Bremen, 407 U.S. at 10).  On appeal, the defendant contended that the federal district judge erred in construing the clause as a mandatory agreement between the parties to resolve any dispute under the contract exclusively in the state court in Johnson County, Kansas; he said instead that the court should have construed the clause as merely a permissive designation of venue.  See Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1344.  The defendant contended that the district court erroneously construed the contract language as an agreement making Johnson County, the exclusive forum in which the parties could resolve

disputes that arose under the agreement. <u>See</u> 963 F.2d at 1345. The Tenth Circuit affirmed, stating that the clause's dispositive portion provided that "venue shall be proper under this agreement in Johnson County, Kansas." 963 F.2d at 1345-46. The Tenth Circuit held: "We are persuaded that the district judge made the proper interpretation and correctly enforced the clause." 963 F.2d at 1346.

In <u>Milk 'N' More, Inc. v. Beavert</u>, the Tenth Circuit stated that it is mindful that a waiver of one's statutory right to be in federal court must be "clear and unequivocal." 963 F.2d at 1346 (quoting <u>Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.</u>, 894 F.2d 193, 195 (6th Cir. 1990)). The Tenth Circuit acknowledges that, if there is ambiguity in the clause, the court should construe it against the drafter. <u>See</u> <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d at 1346. Nevertheless, the Tenth Circuit says that "[s]uch clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." 963 F.2d at 1346. The Tenth Circuit states that the provision that "venue shall be proper under this agreement in Johnson County, Kansas" was "reasonably clear and the wording strongly points to the state court of that county." 963 F.2d at 1346. The Tenth Circuit says the use of the word "shall" generally indicates a mandatory intent unless a convincing argument to the contrary is made. 963 F.2d at 1346. In <u>Milk 'N' More, Inc. v. Beavert</u>, the Tenth Circuit cited with approval <u>Intermountain Sys., Inc. v. Edsall Constr. Co.</u>, 575 F. Supp. 1195, 1198 (D. Colo. 1983)(Kane, J.), stating that the case was particularly persuasive, because it held enforceable a similar clause: "It is agreed for purposes of this agreement, venue shall be in Adams County, Colorado." <u>Milk 'N' More, Inc. v. Beavert</u>, 963 F.2d at 1346. In <u>K & V Scientific Co. v. BMW</u>, the parties entered into a new agreement which, unlike their earlier agreement, contained a jurisdictional and choice-of-law provision, which stated: "Jurisdiction for all and any disputes arising out of or in connection with this

agreement is Munich. All and any disputes arising out of or in connection with this agreement are subject to the laws of the Federal Republic of Germany." 314 F.3d at 496. The plaintiff filed suit, asserting various contract, tort, and statutory causes of action. See 314 F.3d at 497. The defendant removed the case to federal court, and moved to dismiss under to rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and improper venue. See 314 F.3d at 497. The district court granted the defendant's motion to dismiss for improper venue. See 314 F.3d at 497. The district judge concluded that the forum selection clause contained in the second confidentiality agreement was "unambiguous and enforceable," and demonstrated "[t]he parties' intent to locate jurisdiction for this action solely in the courts of Munich." 314 F.3d at 497. On appeal, the plaintiff argued that the clause's language contained no reference to venue, contained no language designating the courts in Munich as exclusive, and contained no language indicating that suit elsewhere is impermissible. See 314 F.3d at 497. The Tenth Circuit made the distinction between a venue provision which fixes venue in a certain location -- a mandatory clause -- versus one which merely grants jurisdiction to a certain place -- a permissive clause. See K & V Sci. Co. v. BMW, 314 F.3d at 498. The Tenth Circuit set forth an analysis for determining whether forum selection clauses within a contract are mandatory or permissive:

> This court and others have "frequently classified" forum selection clauses "as either mandatory or permissive." Excell, Inc. v. Sterling Boiler Mech., Inc., 106 F.3d at 321. "Mandatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." Id. (internal quotations omitted). "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Id. (internal quotations omitted).

K & V Sci. Co. v. BMW, 314 F.3d at 498. The Tenth Circuit cited Milk 'N' More, Inc. v. Beavert, noting that the Tenth Circuit there had concluded that a forum selection clause stating that "venue shall be proper under this agreement in Johnson County, Kansas" was mandatory. K & V Sci. Co.

v. BMW, 314 F.3d at 498.  The Tenth Circuit concluded, however, that no Tenth Circuit case had

yet dealt with a forum selection clause similar to the one in that case.  See K & V Sci. Co. v. BMW,

314 F.3d at 501.

The Tenth Circuit stated that, "generally speaking," the Courts of Appeals are in

"agreement" that the following formula is to be used in determining whether the selection clause

is mandatory or permissive: "[W]here venue is specified [in a forum-selection clause] with

mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified

[in a forum selection clause], the clause will generally not be enforced unless there is some further

language indicating the parties' intent to make venue exclusive."  K & V Sci. Co. v. BMW, 314

F.3d at 499 (alterations in original)(quoting Paper Express, Ltd. v. Pfankuch Maschinen GmbH,

972 F.2d 753, 757 (7th Cir. 1992)).  The Tenth Circuit analyzed language from six forum selection

clauses considered permissive, including four different forum selection clauses wherein the

provision used the word "shall" together with the name of a court.  K & V Sci. Co. v. BMW, 314

F.3d at 499.  The K & V Scientific Co. v. BMW formula for the four clauses using the word "shall"

and considered permissive are:

> * "Any dispute arising between the parties hereunder shall come within the
> jurisdiction of the competent Greek Courts, specifically of the Thessaloniki
> Courts." John Boutari [& Son, Wines & Spirits, S.A. v. Attiki Imp. & Distribs.
> Inc.], 22 F.3d [51,] 52 [(2d Cir. 1994)].

> . . . .

> * "The courts of California, County of Orange, shall have jurisdiction over
> the parties in any action at law relating to the subject matter or the interpretation of
> this contract." Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 76 (9th
> Cir. 1987).

> . . . .

* "This agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York." Keaty [v. Freeport Indon., Inc.], 503 F.2d [955,] 956 [(5th Cir. 1974)] (concluding phrase was ambiguous and, when construed against drafter, was permissive).

* "This agreement shall be governed by and construed in accordance with the laws of the Federal Republic of Germany. * * * Place of jurisdiction shall be Dresden." Hull Corp. v. Elbe Flugzeugwerke GmbH, 58 F. Supp. 2d 925, 926 (N.D. Ill. 1999).

K & V Sci. Co. v. BMW, 314 F.3d at 499. The other two examples of permissive clauses are:

* "The laws and courts of Zurich are applicable." Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127 (5th Cir. 1994).

. . . .
* "Place of jurisdiction is Sao Paulo/Brazil." Citro Florida[, Inc. v. Citrovale, S.A.], 760 F.2d 1231, 1231 (11th Cir. 1985)(concluding phrase was ambiguous and, when construed against drafter, was permissive).

K & V Sci. Co. v. BMW, 314 F.3d at 499. The Tenth Circuit in K & V Scientific Co. v. BMW

also noted that the courts had held the following clauses to be mandatory:

* "[P]lace of jurisdiction . . . is the registered office of the trustee [in Germany], to the extent permissible under the law." Frietsch v. Refco, Inc., 56 F.3d 825, 827 (7th Cir. 1995); see id. at 829 (concluding that the phrase "to the extent permissible under the law" "would have no function if the [forum selection] clause were not mandatory -- if, in other words, a party could sue anywhere he wanted").

* "In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . . The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business." Paper Express[, Ltd. v. Pfankuch Maschinen GmbH], 972 F.2d at 755; id. at 756 (concluding the last sentence "would be appropriate and meaningful only if the clause were in fact mandatory").

* "Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia. Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia." Docksider[, Ltd. v. Sea Tech., Ltd.,] 875 F.2d [762,] 763 (9th Cir. 1989).

K & V Sci. Co. v. BMW, 314 F.3d at 499-500 (footnote omitted).

Using the majority rule, the Tenth Circuit had little trouble concluding that the forum selection clause at issue in K & V Scientific Co. v. BMW was permissive.  See 314 F.3d at 500.  The clause referred only to jurisdiction and did so in non-exclusive terms.  See 314 F.3d at 500.  A clause is mandatory, in accordance with K & V Scientific Co. v. BMW, only when the venue is specific with mandatory language.  See 314 F.3d at 500.  Mandatory language is venue coupled with such terms as "exclusive," "sole," or "only."  314 F.3d at 500.  If the paragraph is ambiguous -- capable of being construed as either permissive or mandatory -- the paragraph is deemed to be permissive.  The Tenth Circuit in K & V Scientific Co. v. BMW states:

> Even if the clause were deemed to be ambiguous (i.e., capable of being construed as either permissive or mandatory), the rule in this circuit and others is that the clause must be construed against the drafter, in this case defendant.  See Milk 'N' More, 963 F.2d at 1346 (holding "if there is any ambiguity in the clause [the court] should construe it against the drafter").  Accordingly, the clause would be deemed permissive.

K & V Sci. Co. v. BMW, 314 F.3d at 500-01 (citations omitted).

In an unpublished decision that follows K & V Scientific Co. v. BMW, the Tenth Circuit clarifies that the K & V Scientific Co. v. BMW decision addresses the issue

> whether a recognition-of-jurisdiction provision implies an exclusive selection of venue. Use of mandatory language like "shall" in a clause *dealing directly with venue* carries stronger implications regarding the intent to designate an exclusive forum. See Milk 'N' More, 963 F.2d at 1346 (holding clause stating that "venue shall be proper . . . in" effected an exclusive designation of forum). When, as here, the relation of such language to the question of venue is at most derivative, through a jurisdictional provision, decisions such as "Milk 'N' More . . . are of little assistance in resolving the . . . dispute." K & V Scientific, 314 F.3d at 498-99.

King v. PA Consulting Grp., Inc., 78 F. App'x 645, 648 n.2 (10th Cir. 2003)(unpublished)(emphasis in original).  The Tenth Circuit, in American Soda, LLP v. U.S.

Filter Wastewater Group, Inc., has also recognized that a party to a contract can waive venue in federal court in a forum selection clause, thus requiring remand to state court:

> The parties not only consented to the jurisdiction of the Colorado state courts, they went a step further by designating the state courts or arbitration as "the exclusive forum for the resolution of any disputes related to or arising out of [the contract]." We conclude that by consenting to state court jurisdiction and selecting the state courts as the "exclusive forum," the parties indicated their intent to make venue exclusive in state court with respect to any disputes not resolved in arbitration. Because the forum selection clause at issue is mandatory, U.S. Filter unequivocally waived its right to remove this lawsuit to federal court.

428 F.3d at 927.

The Court has concluded that a forum selection clause is mandatory when the clause states that a certain district or county is "the exclusive jurisdiction" for litigation. Montoya, 872 F. Supp. at 1276 ("The word *exclusive* in relation to Harris County as a venue indicates the parties' intent that Harris County be the exclusive venue for any suits.")(emphasis in original). The Court has also determined that a forum selection clause with "shall" language was mandatory. See Presbyterian Healthcare Servs. v. Goldman, Sachs & Co., 122 F. Supp. 3d 1157, 1211 (D.N.M. 2015)(Browning, J.). Although acknowledging the Tenth Circuit's rule that "shall" language does not automatically make a forum selection clause mandatory, it determined that the forum selection clause in that case strongly "parallels [the] structure of the clause in Docksider, Ltd v. Sea Technology, Ltd.," and so concluded that the clause was mandatory. Presbyterian Healthcare Servs. v. Goldman, Sachs & Co., 122 F. Supp. 3d at 1211 (quoting Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d at 958).

## ANALYSIS

The Court will deny the Motion. Venue is proper in New Mexico. Additionally, the Court will not transfer the case to the United States District Court for the District of Central California

in Los Angeles.  It is more convenient on the whole and in furtherance of the interest of justice

to adjudicate this matter in New Mexico.

**I.**     <u>**VENUE IS PROPER IN NEW MEXICO.**</u>

The Court concludes that venue is proper in New Mexico.  Section 1391(b) is satisfied,

because a substantial portion of the events giving rise to the lawsuit occurred within the District

of New Mexico.  Additionally, New Mexico is not bound by any of the Real Estate Law contracts

containing the venue clause, as it is a non-party to those agreements.  Finally, even if the venue

clause was enforceable against New Mexico, the clause is permissive rather than mandatory.

Venue is proper in New Mexico under 28 U.S.C. § 1391(b), because it is "a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b).

> "As in any case of statutory construction, our analysis begins with 'the language of
> the statute.' <u>Estate of Cowart v. Nicklos Drilling Co.</u>, 505 U.S. 469, 475 . . . (1992).
> And where the statutory language provides a clear answer, it ends there as well. <u>See</u>
> <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 254 . . . (1992)."

<u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 438 (1999)  The Tenth Circuit has stated that

"[o]ur own statutory interpretation begins with the plain language of the Act."  <u>Qwest Corp. v.</u>

<u>Pub. Utls. Comm'n of Colo.</u>, 479 F.3d 1184, 1192 (10th Cir. 2007)(citing <u>United States v. Saenz-</u>

<u>Gomez</u>, 472 F.3d 791, 793 (10th Cir. 2007)).

On its face, § 1391(b)(2)'s meaning is direct, clear, and unambiguous: for all venue

purposes, a plaintiff may bring a case in any district where a substantial part of the underlying

events or omissions arose.  Here, twenty-three New Mexico residents, with property in New

Mexico, decided to pay for Real Estate Law services, ultimately signing contracts to that effect

within the State of New Mexico.  <u>See</u> Complaint ¶ 18, at 5; Supplement at 4-5.  Other district

courts within the Tenth Circuit have concluded that "[a] reasonable relationship [between a plaintiff's choice of forum and the underlying transaction] can also be established by other details of the transaction, such as the location where the contract was signed."  Irsik & Doll Feed Srvs., Inc. v. Roberts Enterprises Invs. Inc., No. CIV 16-1018, 2016 WL 3405175 (D. Kan. 2016)(Melgren, J.).  In the Court's view, a substantial part of the events and omissions giving rise to this claim occurred within New Mexico, and a substantial part of the property concerned in this action is also located in New Mexico.  Consequently, the District of New Mexico is a proper venue for this case under 28 U.S.C. § 1391(b).

Mr. Pratt points to rule 12(b)(3) of the Federal Rules of Civil Procedure as grounds for dismissal.  Rule 12(b)(3) allows parties to raise a defense of improper venue, provided that the motion is timely raised and, therefore, not waived under 12(g) and 12(h).  Both New Mexico and Mr. Pratt agree that the issue was timely raised in the Motion.  See Tr. at 6:18-19 (Anaya-Allen).  Venue in New Mexico is proper for this case.  See 28 U.S.C. § 1391(b).  Consequently, the 12(b)(3) motion to dismiss for improper venue lacks support.

## II.     THE COURT WILL NOT TRANSFER THE CASE TO CALIFORNIA.

The Court will not transfer this case to the United States District Court for the Central District of California in Los Angeles.  Under § 1404(a), the movant "has the burden of establishing that the suit should be transferred."  Wm. A. Smith Contracting Co., Inc. v. Travelers Indem. Co., 467 F.2d at 664.  Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 29 (quoting Van Dusen v. Barrack, 376 U.S. at 622).  "The statutory language guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience

and/or the interests of justice." <u>Res. Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.</u>, 626 F.3d at 977. The statute permits a "flexible and individualized analysis," and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations. <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. at 29. In determining whether to transfer a case pursuant to § 1404(a), the court should weigh a number of factors, including: (i) the plaintiff's choice of forum; (ii) the locus of the operative facts; (iii) the convenience and relative means of the parties; (iv) the convenience of witnesses; (v) the availability of process to compel the attendance of witnesses; (vi) the location of physical evidence, including documents; (vii) the relative familiarity of the courts with the applicable law; and (viii) the interests of justice, including the interest of trial efficiency. <u>See</u> <u>Hickam v. Janecka</u>, No. CIV 06-1132, 2007 WL 2219417 at *1 (W.D. Okla. 2007)(setting forth these factors).

     **A.    THE FORUM SELECTION CLAUSE DOES NOT INFLUENCE THE COURT'S DECISION REGARDING TRANSFER.**

     The attorney-client fee agreements contain a choice-of-law clause declaring that California law will govern the contracts. <u>See</u> Attorney-Client Fee Agreement, Robert Alexander ¶ 12, at 3, filed March 14, 2019 (Doc. 113); Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3; Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3; Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3; Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Rachel D. Silva ¶ 12, at 3; Attorney-Client Fee Agreement, Vicki S. Sullivan at 2; Attorney-Client Fee Agreement, David Starrett ¶ 13, at 3. The Court notes that these clauses do not influence its decision in this

Memorandum Opinion and Order. The Supreme Court has counseled: "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Atlantic Marine, 571 U.S. at 63. The forum selection clause does not govern here, because New Mexico is not a party to the contract. Were New Mexico a party to the contract, the forum selection clause would counsel transfer, because the forum selection clause is enforceable and mandatory.

   **1.**  **New Mexico Is Not a Party to Any of the Contracts Containing the Forum Selection Clause and, Therefore, the Forum Selection Clause Does Not Bind New Mexico.**

  New Mexico is not a party to the contracts which exist between Real Estate Law and the New Mexico residents. While, as a general rule, "one who is not a party to a contract cannot maintain suit upon it," Fleet Mort. Corp. v. Schuster, 1991-NMSC-046, ¶ 4, 112 N.M. 48, 811 P.2d 81, 82, this matter is an exception, as New Mexico filed it ex rel. When a matter is brought ex rel., which translates from Latin to "by or on the relation of," the suit, "is typically brought by the government upon the application of a private party (called a relator) who is interested in the matter." Ex Rel., Black's Law Dictionary (11th ed. 2019). New Mexico is entitled to bring the suit based on the subject of agreements to which New Mexico is not a party. Moreover, a contractual clause between private parties should not be enforceable against New Mexico in a civil suit under the NMUPA, because New Mexico is supposed to have "broad authority to enforce the provisions of the UPA includ[ing] the statutory right to bring actions in its name, alleging violations of the UPA." State ex rel. Balderas v. ITT Edu. Servs., Inc., 2018-NMCA-044, 421

P.3d at 855.[2]  Accordingly, the venue clause within the Real Estate Law contracts do not bind New Mexico.

### 2.  Were New Mexico a Party to the Contract, the Court Would Conclude That the Forum Selection Clause Counsels Transfer.

If Mr. Pratt were trying to enforce the clause against a party to the contract, the Court would conclude that the forum selection clause counsels transferring this case.  The Court discusses below in detail the law that governs the choice of law that controls forum selection clauses.  The Court then addresses the enforceability and interpretation of Mr. Pratt's forum selection clause under the various laws that might govern those issue.  If New Mexico was a party to the contract, the Court would apply the parties' choice-of-law.

### a.  The Law Governing Choice of Law in Forum Selection Clauses.

Courts disagree which law -- federal law, forum state law, or parties' contracted-for law -- governs the enforceability and the interpretation of forum selection clauses.  The Supreme Court has not directly addressed the question.  In Stewart Organization v. Ricoh Corp., the Supreme Court held: "Federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum selection clause."  Stewart Org. v. Ricoh Corp., 487 U.S. at 32.  See Atlantic Marine, 571 U.S. at 52 ("[A] forum selection clause may be enforced by a motion to transfer under § 1404(a).").  The Supreme Court concluded that § 1404(a) "controls respondent's request to give effect to the parties' contractual choice of venue and transfer," Stewart

---

[2]The Court concludes that the Supreme Court of New Mexico would agree with this statement, because N.M. Stat. Ann. § 57-12-8 specifically grants New Mexico authority to pursue violations of the NMUPA, see N.M. Stat. Ann.§ 57-12-8, and the Supreme Court of New Mexico has stated that "the UPA grants the State the right to seek restitution, civil penalties, and injunctive relief for unfair trade practices."  State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 28, 329 P.3d 658, 669

Org. v. Ricoh Corp., 487 U.S. at 29, but the Supreme Court did not decide what law governs a forum selection clause's enforceability and interpretation. As the United States Court of Appeals for the Fifth Circuit indicates, the Supreme Court suggests that federal law should govern forum selection clauses. See Barnett v. DynCorp Int'l, L.L.C., 831 F.3d 296, 303 (5th Cir. 2016). The Supreme Court notes: "[T]he forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a)." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 31. Such a statement assumes that forum state law will not control a forum selection clause's enforceability at least to the extent that the forum state law altogether bans the forum selection clause. The Supreme Court also indicates, however, that the forum selection clause represents the parties' "private ordering of their affairs," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 30, and, where a choice-of-law clause designates a law to control a contract's interpretation, that choice-of-law clause is relevant to a determination of the parties' "agreement as to the most proper forum," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 31.

Much of the focus of the split among the Courts of Appeals revolves around whether federal or state law governs forum selection clauses in diversity cases, and the Courts of Appeals have not significantly addressed the issue of choice-of-law clauses. Compare Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d at 320-21 (not deciding the choice-of-law issue between Colorado law and federal law), with Collins on behalf of herself v. Mary Kay, Inc., 874 F.3d at 182 ("Applying federal common law to these issues would generate a sprawling federal general common law of contracts."), with Manetti-Farrow, Inc. v. Gucci Am., Inc., 858 F.2d at 513 ("Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause

before it can be enforced, federal law also applies to interpretation of forum selection clauses."). Several Courts of Appeals deem questions of venue to be procedural, and so to be governed by federal law, and the Courts of Appeals have read <u>Bremen</u>, an admiralty case discussing forum selection clauses, as persuasive evidence that federal law should control.  See <u>Jones v. Weibrecht</u>, 901 F.2d 17, 19 (2d Cir. 1990)(applying federal law to determine the enforceability of forum selection clauses, because questions of venue are procedural and because federal courts continue to apply the <u>Bremen</u> standard after <u>Stewart Organization v. Ricoh Corp.</u>); <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d at 513 (stating that federal common law determines the enforcement and interpretation of forum selection clauses, because Congress has provided specific provisions regarding venue); <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 810 F.2d at 1069 (discussing federal venue rules and caselaw persuasive for the point that federal law governs forum selection clauses' enforceability).  See <u>also</u> <u>Union Elec. Co. v. Energy Ins. Mut. Ltd.</u>, 689 F.3d 968, 973 (8th Cir. 2012)(stating that a federal court should apply the <u>Bremen</u> standard to the question of a forum selection clause's enforceability in a diversity case); <u>Wong v. PartyGaming Ltd.</u>, 589 F.3d 821, 828 (6th Cir. 2009)(following the majority of Courts of Appeals and determining that, in a diversity suit, federal law governs the enforceability of a forum selection clause).  The Fifth Circuit applies federal law to determine a forum selection clause's enforceability and uses, in a diversity case, the forum state's choice-of-law rules to determine the substantive law that governs the forum selection clause's interpretation.  See <u>Barnett v. DynCorp Int'l, L.L.C.</u>, 831 F.3d at 301.  The United States Court of Appeals for the Ninth Circuit favors using federal law for both enforceability questions and interpretation questions.  See <u>Manetti-Farrow, Inc. v. Gucci Am., Inc.</u>, 858 F.2d at 513.  The United States Court of Appeals for the Second, Sixth, and Eleventh Circuits have addressed only enforceability.  See <u>Union Elec. Co. v. Energy Ins. Mut. Ltd.</u>, 689 F.3d at 973; <u>Wong v.</u>

PartyGaming Ltd., 589 F.3d at 828; Jones v. Weibrecht, 901 F.2d at 19; Stewart Org., Inc. v. Ricoh Corp., 810 F.2d at 1069. The Third Circuit has applied state law with the assumption that state law generally determines the contract's construction. See Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc., 783 F.2d 352, 356 (3d Cir. 1986). The United States Court of Appeals for the Seventh Circuit has held:

> Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears.

Abbott Labs. v. Takeda Pharm. Co., 476 F.3d 421, 423 (7th Cir. 2007). See Jackson v. Payday Fin., LLC, 764 F.3d 765, 774 (7th Cir. 2014)(noting that the quoted statement is the United States Court of Appeals for the Seventh Circuit's approach to forum selection clauses). The Tenth Circuit has avoided explicitly answering any questions regarding domestic forum selection clauses, see Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d at 320-21, as has the United States Court of Appeals for the First Circuit, see Rockwood v. SKF USA Inc., 687 F.3d 1, 8 (1st Cir. 2012). The law in the United States Court of Appeals for the Fourth Circuit is likewise unclear. See Wong v. PartyGaming Ltd., 589 F.3d at 827 (noting that different Fourth Circuit panels have applied different rules); Carmichael Equip., Inc. v. Diamond Mowers, Inc., No. CIV.A. 3:09-0842, 2009 WL 3517671, at *2 (S.D. W. Va. Oct. 27, 2009)(Chambers, J.)(noting that the Fourth Circuit has used state law but more recently cited a "concurring opinion by Justice Kennedy in *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 33 . . . (1988), which supports using federal law in diversity cases").

Although the Tenth Circuit has not decided explicitly which law governs forum selection clauses in the domestic context, it has applied federal law to both enforceability issues and

interpretation issues. See, e.g., Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at (applying federal standards to enforceability and interpretation). In Excell, Inc. v. Sterling Boiler & Mech., Inc., the Tenth Circuit explicitly declined to decide what law governs a forum selection clause's validity and interpretation, but, because the Tenth Circuit saw no conflict between federal law and forum state law, which the parties had designated as the controlling law in the choice of law clause, the Tenth Circuit analyzed the issues under federal law. See Excell, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d at 320 (describing the standards for enforcing forum selection clauses under federal law and under Colorado law). The Tenth Circuit did not particularly differentiate the enforceability issues from the interpretation issues. See Excel, Inc. v. Sterling Boiler & Mech., Inc., 106 F.3d at 320. At other times, in both the domestic context and the international context, the Tenth Circuit has, without discussion of choice-of-law issues, applied federal law to enforceability questions and to interpretation questions. See K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d 494, 498 (10th Cir. 2002); Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1345-46. In Milk 'N' More, Inc. v. Beavert, for instance, the Tenth Circuit mentioned a choice-of-law clause, but, without discussing the choice-of-law issue, applied the federal Bremen standard to determine the forum selection clause's enforceability. See Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1345-46. See also Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 925.

More recently, the Tenth Circuit has indicated a willingness to use contracting parties' choice-of-law for forum selection clause interpretation. In Yavuz v. 61 MM, Ltd., "[t]he Tenth Circuit . . . recognized that choice-of-law agreements apply to the interpretation of a forum-selection clause." Montoya, 872 F. Supp. 2d at 1269 n.5 (citing Yavuz v. 61 MM, Ltd., 465 F.3d at 427-28 ("We see no particular reason, at least in the international context, why a

forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.")). See Kelvion, Inc. v. PetroChina Can. Ltd., 918 F.3d 1088, 1092 (10th Cir. 2019)("In this circuit, forum-selection clauses are also construed according to the governing law selected in the contract." (citing Yavuz v. 61 MM, Ltd., 465 F.3d at 431)). In Jones v. KP&H LLC, 288 F. App'x 464 (10th Cir. 2008)(unpublished), the Tenth Circuit, without commenting on choice-of-law issues, cited Yavuz v. 61 MM, Ltd., as grounds for applying Kansas substantive law to construe a choice of venue provision where the parties had contracted for Kansas law to govern. See Jones v. KP&H LLC, 288 F. App'x 464, 468 (10th Cir. 2008)(citing Yavuz v. 61 MM, Ltd., 465 F.3d at 427-28). The Tenth Circuit did not address in the forum selection clause's enforceability. See Jones v. KP&H LLC, 288 F. App'x at 468.

District courts have taken different interpretations of the Tenth Circuit's precedent. For instance, the Court has cited Yavuz v. 61 MM, Ltd. in a footnote as grounds for concluding that a choice-of-law clause governed a forum selection clause's enforceability, but the Court applied Tenth Circuit law, because it concluded that New Mexico courts would follow the Tenth Circuit. See Montoya, 872 F. Supp. 2d at 1269 n.5. The Honorable David Nuffer, United States District Judge for the United States District Court for the District of Utah, in Baldwin v. Aviva Life and Annuity Co., No. 2:16-CV-202-DN, 2017 WL 722001 (D. Utah Feb. 23, 2017)(Nuffer, J.), concluded that Jones v. KP&H LLC supported using a choice-of-law clause's designated law to interpret a forum selection clause and indicated his agreement with that approach. See 2017 WL 722001, at *4-5. In High Plains Publishers, Inc. v. Lando Partners, Inc., No. CIV.A. 12-1302-KHV, 2012 WL 5995565 (D. Kan. Nov. 30, 2012)(Vratil, J.), the Honorable Kathryn H. Vratil, United States District Judge for the United States District Court for the District of Kansas, stated:

"Where, as here, a forum selection clause is accompanied by a provision in the contract stating that Kansas law applies, the Tenth Circuit has applied Kansas law to interpret the clause," but then analyzed the forum selection clause's enforceability and permissiveness under Tenth Circuit standards. See 2012 WL 5995565, at *3-5. In Hunnicutt v. CHF Solutions, Inc., 10-CV-0042-CVE-FHM, 2010 WL 1078470 (N.D. Okla. Mar. 18, 2010)(Eagan, J.), the Honorable Claire V. Eagan, United States District Judge for the United States District Court for the Northern District of Oklahoma, declined to resolve any choice-of-law issue, because she reasoned that the laws that might govern did not conflict. See 2010 WL 1078470, at *3. The Honorable Lewis T. Babcock, now-Senior United States District Judge for the United States District Court for the District of Colorado, in ADT Security Services, Inc. v. Apex Alarm, LLC, 430 F. Supp. 2d 1199 (D. Colo. 2006)(Babcock, J.), concluded that federal law should control forum selection clause issues, see ADT Sec. Servs., Inc. v. Apex Alarm, LLC, 430 F. Supp. 2d at 1204, but Judge Babcock decided the case in May, 2006, before Yavuz v. 61 MM, Ltd., which the Tenth Circuit decided in September, 2006. Judge Babcock also cited K & V Scientific Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW") as evidence that the Tenth Circuit had stated that a choice-of-law clause has little relevance to a forum selection clause's interpretation. See ADT Sec. Servs., Inc. v. Apex Alarm, LLC, 430 F. Supp. 2d at 1202 (citing K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d at 501)), but, contrary to Judge Babcock's description of the case, in K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), the Tenth Circuit concluded that the presence of the choice-of-law provision did not provide grounds for inferring whether the forum selection clause was mandatory or permissive, see K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d at 501. See also Herr Indus., Inc. v. CTI Sys., SA, 112 F. Supp. 3d 1174, 1177–78 (D.

Kan. 2015)(Lungstrum, J.)(noting that enforceability and interpretation are separate questions and predicting that the Tenth Circuit would apply federal law to the question of enforceability).

The Court concludes that the best synthesis of Tenth Circuit caselaw on domestic forum selection clauses suggests that the Court should apply the parties' choice-of-law and, in the absence of a choice-of-law clause, applying federal law as the default. See Montoya, 872 F. Supp. 2d at 1269 n.5. Yavuz v. 61 MM, Ltd. and Jones v. KP&H LLC counsel a trend in the Tenth Circuit toward an approach similar to the Seventh Circuit's view of forum selection clauses. Although Yavuz v. 61 MM, Ltd. discusses a choice-of-law clause choosing another country's law and identifying a forum in another country, and the Tenth Circuit rested its reasoning some on concerns about international comity and overseas activities, many, if not most, of the Tenth Circuit's statements involve freedom to contract and concerns about disrupting trade, which apply equally in the domestic context. See Yavuz v. 61 MM, Ltd., 465 F.3d at 428. Given the Tenth Circuit's sparse language in discussing the decision to apply Kansas substantive law in Jones v. KP&H LLC, the Tenth Circuit's decision might be understood to suggest that, under federal choice-of-law principles, the best law through which to interpret a forum selection clause is the parties' choice-of-law. See Jones v. KP&H LLC, 288 F. App'x at 468.

The Court notes, however, that alternative syntheses exist. A federal court could apply the federal Bremen standard to enforceability questions regardless the parties' choice of law, given that the Tenth Circuit has not explicitly withdrawn from its prior references to that standard, see Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1345-46; Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 925, and, in Yavuz v. 61 MM, Ltd.'s and Jones v. KP&H LLC's aftermath, apply the parties' choice-of-law to interpretation questions, see Herr Indus., Inc. v. CTI Sys., SA, 112 F. Supp. 3d at 1177-78. A court could also reason that federal law should govern

enforceability issues and interpretation issues. See Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at (applying federal standards to enforceability and interpretation). Jones v. KP&H LLC could be given less weight, because it is an unpublished opinion, and Yavuz v. 61 MM, Ltd. can be cabined to the context of international forum selection clauses, as the Tenth Circuit repeatedly stresses that its statements in the case relate to the international context. See Yavuz v. 61 MM, Ltd., 465 F.3d at 427-28. Given the state of federal law on forum selection clauses, however, one of these syntheses likely best aligns with the Supreme Court. The Supreme Court, in Stewart Organization, Inc. v. Ricoh Corp., suggests that a court cannot apply state law to determine a forum selection clause's enforceability if that state law would invalidate the forum selection clause. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 30 ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus."); id. at 31 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive consideration (as respondent might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a)."). With such language, the Court does not see how a court can turn to forum state law, which might invalidate a forum selection clause, to determine the forum selection clause's enforceability.

Were the Court writing on a clean slate, it would consider forum state law to determine the forum selection clause's enforceability and interpretation. The interpretation of a forum selection clause is a pure question of contract law, which lies in the realm of state law. See, e.g., Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 36 (Scalia, J., dissenting)("Second, § 1404(a) was enacted against the background that issues of contract, including a contract's validity, are nearly always governed by state law. It is simply contrary to the practice of our system that such an issue should

be wrenched from state control in absence of a clear conflict with federal law or explicit statutory provision."); Stratton v. Portfolio Recovery Assocs., LLC, 171 F. Supp. 3d 585, 595-96 (E.D. Ky. 2016)(Reeves, J.)("In a federal-question case, the Court generally uses the choice-of-law principles of federal common law. However, when the federal claim is based on the interpretation of state contract law, the forum state's choice-of-law principles apply." (citing Wise v. Zwicker & Assoc., P.C., 780 F.3d 710, 715 (6th Cir. 2015); Med. Mut. of Ohio v. deSoto, 245 F.3d 561, 570 (6th Cir. 2001)), aff'd, 706 F. App'x 840 (6th Cir. 2017)). The Tenth Circuit's recognition that a forum selection clause's interpretation should be governed by the parties' chosen law should extend to recognition that normal contract interpretation rules should apply to forum selection clauses. Under this approach, the forum state law might, where the law counsels applying a choice-of-law clause, require the application of the parties' chosen law. Cf. Barnett v. DynCorp Int'l, L.L.C., 831 F.3d at 301. If the Supreme Court wants courts to consider the parties' arrangement of their affairs, see Stewart Org., Inc. v. Ricoh Corp., 487 U.S. at 30, a court should consider the parties' choice-of-law clause where ordinary contract interpretation principles counsel using such law.

> **b.** **Were the Court to Apply the Contracts' Choice of Law to the Forum Selection Clause's Enforceability and Interpretation, the Court would Deem the Clause Enforceable and Mandatory.**

Under California law, the forum selection clause would be enforceable and mandatory. Under California law, a forum selection clause is enforceable where the forum selection clause is not unreasonable. See Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d 1206, 1209 (Cal. 1976). California "law favors forum selection agreements only so long as they are procured freely and voluntarily, with the place chosen having some logical nexus to one of the parties or

the dispute, and so long as California consumers will not find their substantial legal rights significantly impaired by their enforcement." Am. Online, Inc. v. Superior Court, 90 Cal. App. 4th 1, 12, 108 Cal. Rptr. 2d 699, 707-08 (2001), as modified (July 10, 2001)(citing Bremen, 407 U.S., at 17; Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d at 1208).[3]  Here, California, where the Defendants are located, is the chosen forum, so the forum selection clause has some rational connection to the parties, and the Court knows of no reason why a California court would not be able to reach a judgment in this matter.  That a forum will inconvenience a party or add additional expense to the litigation does not make the clause unreasonable.  See Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d at 1209.  Moreover,

> [a]lthough the forum selection clause here is contained in an adhesion contract, that clause in an adhesion contract is enforceable even though the defendant did not actually read it as long as the clause provided adequate notice to the defendant that he was agreeing to the jurisdiction cited in the contract.

Hunt v. Superior Court, 97 Cal. Rptr. 2d 215, 219 (Ct. App. 2000)(citing Carnival Cruise Lines, Inc. v. Shute 499 U.S. at 590–595; Carnival Cruise Lines, Inc. v. Superior Court, 234 Cal. App. 3d. 1019, 1025-1026 (Ct. App. 1991).  The forum selection clause appears in the New Mexico's consumers' contracts as simply another contractual provision; nothing suggests that the New

---

[3]The Court predicts that the Supreme Court of California would agree with the statement in the text, because the statement follows Bremen, which the Supreme Court of California cites approvingly for the proposition that forum selection clauses are enforceable unless they are unreasonable.  See Smith, Valentino & Smith, Inc. v. Superior Court, 551 P.2d at 1209. Moreover, other Courts of Appeals of California have made similar statements, and clarified that a forum selection clause must have some connection to the chosen forum, and that California courts will not enforce a forum selection clause where the forum is unavailable, is incapable of achieving justice, or impairs California resident's rights in a way contrary to public police.  See Verdugo v. Alliantgroup, L.P., 187 Cal. Rptr. 3d 613, 618 (Ct. App. 2015), as modified on denial of reh'g (June 25, 2015); CQL Original Prod. Inc. v. Nat'l Hockey League Players' Assn., 46 Cal. Rptr. 2d 412, 415-16 (Ct. App. 1995).

Mexico consumers lacked adequate notice of the clause. See Attorney-Client Fee Agreement, Vicki S. Sullivan at 2; Attorney-Client Fee Agreement, David Starrett ¶ 13, at 3; Attorney-Client Fee Agreement, Robert Alexander ¶ 12, at 3; Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3; Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3; Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3; Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Rachel D. Silva ¶ 12, at 3.

The Court concludes that California would also deem the forum selection clauses mandatory. California will give effect to mandatory forum selection clauses without analyzing whether the forum is convenient to the parties, although, where the forum selection clause is permissive, the clause is one factor that a California court considers in a forum non conveniens analysis to permit another state's court jurisdiction. See Olinick v. BMG Entm't, 138 Cal. App. 4th 1286, 1294 (Ct. App. 2006); Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th 191, 196-97 (Ct. App. 2002); Animal Film, LLC v. D.E.J. Prods., Inc., 193 Cal. App. 4th 466, 470-71 (Ct. App. 2011)(citing Berg v. MTC Elec. Techs. Co., 61 Cal. App. 4th 349, 359 (Ct. App. 1998)). In Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th at 196-97, the Court of Appeals of California collected cases with mandatory forum selection clauses, and the collection reflects that, where a clause uses the word "shall," the clause is mandatory: (i) '[a]ny and all litigation that may arise as a result of this Agreement *shall be litigated* in Dade County, Florida,' Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th at 196–97 (emphasis in Intershop Commc'ns v. Superior Court)(quoting Lu v. Dryclean-U.S.A. of California, Inc., 11 Cal. App. 4th 1490, 1492

(Ct. App. 1992)); (ii) "'any claims . . . *shall . . . be prosecuted* in the appropriate court of Ontario [Canada],'" Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th at 196-97 (emphasis in Intershop Commc'ns v. Superior Court but not in CQL Original Prods., Inc. v. Nat'l Hockey League Players Ass'n, 39 Cal. App. 4th 412, 418-419 (Ct. App. 1995))(quoting CQL Original Prods., Inc. v. Nat'l Hockey League Players Ass'n, 39 Cal. App. at 418-49); (iii) "'any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York *shall have exclusive jurisdiction* over any case of controversy arising under or in connection with this Agreement,'" Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th at 196-97 (emphasis in Intershop Commc'ns v. Superior Court)(quoting Cal-State Bus. Prods. & Services, Inc. v. Ricoh, 12 Cal. App. 4th 1666, 1672 n.4 (Ct. App. 1993)). See Animal Film, LLC v. D.E.J. Prods., Inc., 193 Cal. App. 4th at 471-72 (Cal. App. 2011)(explaining the distinction between mandatory and permissive clauses, and noting that the language "submitted to the jurisdiction of," and "stipulate to jurisdiction and venue," is permissive whereas language like "shall be litigated" and "shall have exclusive jurisdiction over" is mandatory).[4]

Although the Court disagrees with the Supreme Court of California that "shall" is

---

[4]The Court predicts that the Supreme Court of California would agree with the synthesis in the text. In Smith, Valentino & Smith, Inc. v. Superior Court, the Supreme Court of California followed the "modern trend" in the effect of forum selection clauses on transfer. See 551 P.2d at 1208. The modern trend in such law takes a similar approach to mandatory and permissive clauses. See, e.g., Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989)("The prevailing rule is clear from these and other cases that where venue is specified with mandatory language the clause will be enforced."); Am. First Fed. Credit Union v. Soro, 359 P.3d 105, 107-08 (Nev. 2015)(noting that the majority of courts distinguish between mandatory and permissive forum selection clauses in this manner); Caperton v. A.T. Massey Coal Co., 690 S.E.2d 322, 337-40 (W. Va. 2009)(distinguishing between mandatory and permissive forum selection clauses). Moreover, the Supreme Court of California has not expressed its objection to this approach that the Courts of Appeals of California have taken for at least two decades, according to the cases' dates in the text.

mandatory language,[5] the Court concludes that forum selection clauses used in the Attorney-Client Fee Agreement, Vicki S. Sullivan and the Attorney-Client Fee Agreement, David Starrett, both of which use "must," are unambiguous and mandatory. Respectively, they state: "any disputes arising from this agreement must be adjudicated in Los Angeles, California," Attorney-Client Fee Agreement, Vicki S. Sullivan at 2, and, "any disputes arising from this Agreement must be adjudicated in Los Angeles, California," Attorney-Client Fee Agreement, David Starrett ¶ 13, at 3. Moreover, the Attorney-Client Fee Agreement, Vicki S. Sullivan and the Attorney-Client Fee Agreement, David Starrett clauses indicate the location where the parties will litigate the dispute - - Los Angeles, California. The Court deems, therefore, the clauses mandatory.

The forum selection clause in the majority of the New Mexico consumers' contracts is alone ambiguous, but, when read in context, makes venue in Los Angeles County. The statement "[v]enue shall be in Los Angeles County" does not specific for what issues venue shall be in Los Angeles County. Attorney-Client Fee Agreement, Robert Alexander ¶ 12, at 3; Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3; Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3; Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3; Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3; Attorney-Client Fee

---

[5]See Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)("Though 'shall' generally means 'must,' legal writers sometimes use, or misuse, 'shall' to mean 'should,' 'will,' or even 'may.' See D. Mellinkoff, Mellinkoff's Dictionary of American Legal Usage 402-03 (1992)('shall' and 'may' are 'frequently treated as synonyms' and their meaning depends on context); B. Garner, Dictionary of Modern Legal Usage 939 (2d ed. 1995)('[C]ourts in virtually every English-speaking jurisdiction have held -- by necessity -- that *shall* means *may* in some contexts, and vice versa.'")).

Agreement, Rachel D. Silva ¶ 12, at 3. Reading "[v]enue shall be in Los Angeles County" in context with the preceding sentence -- "[t]he agreement shall be governed in accordance with the laws of the State of California" -- suggests that Los Angeles County is the venue for "the agreement" and, specifically, over issues that arise regarding the governing of the Attorney-Client Fee Agreement. Attorney-Client Fee Agreement, Robert Alexander ¶ 12, at 3; Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3; Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3; Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3; Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Rachel D. Silva ¶ 12, at 3. Moreover, the forum selection clause uses "venue" rather than the more ambiguous "jurisdiction," which forecloses the possibility that the forum selection clause is permissive, because it requires only that Los Angeles County will have jurisdiction over, and not that a court in Los Angeles County will adjudicate, their disputes. See Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th at 196-97. The language in the Attorney-Client Fee Agreement, therefore, more closely resembles language that California courts have found mandatory than language that they have found permissive.

   c. **Were the Court to Apply Federal Law to the Forum Selection Clause's Enforceability and Interpretation, the Court Would Deem <u>the Clause Enforceable and Mandatory</u>.**

    The Court concludes that, under federal law, the forum selection clause is enforceable and mandatory. The Tenth Circuit has held that forum selection clauses will be upheld when they are not unreasonable, unjust, or shown to be the product of fraud or coercion. See Niemi v. Lasshofer, 770 F.3d 1331, 1351 (10th Cir. 2014). The Tenth Circuit presumes that forum-selection clauses

are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Milk 'N' More, Inc. v. Beavert, 963 F.2d at 1346. The Court has seen no evidence under federal law that the forum selection clause is unreasonable, unjust, or the product of fraud or coercion. That the New Mexico consumers did not negotiate the contract, but rather signed with an out-of-state business a contract of adhesion, does not make the contract unreasonable. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. at 593 (rejecting the position that "a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining"). Accordingly, the presumption that the clause is enforceable controls.

Under federal law, the forum selection clauses are mandatory. "The difference between a mandatory and permissive forum selection clause is that '[m]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 926. "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc., 428 F.3d at 926-27. In K & V Scientific Co. v. BMW, the Tenth Circuit adopted the majority rule for enforcing forum-selection clauses. See 314 F.3d at 500. The Tenth Circuit has concluded that the following clause is mandatory:

> * "Licensee hereby agrees and consents to the jurisdiction of the courts of the State of Virginia. Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia." Docksider[, Ltd. v. Sea Tech., Ltd.,] 875 F.2d [762,] 763 (9th Cir. 1989).

K & V Sci. Co. v. BMW, 314 F.3d at 500. The clause quoted in K & V Scientific Co. v. BMW resembles the clause in two New Mexico consumer contracts, were the "shall" replaced with a

"must."  See Attorney-Client Fee Agreement, Vicki S. Sullivan at 2 ("Client also agrees that the laws of the State of California shall govern this agreement and that any disputes arising from this agreement must be adjudicated in Los Angeles, California."); Attorney-Client Fee Agreement, David Starrett ¶ 13, at 3 ("The Agreement shall be governed in accordance with the laws of the State of California and any disputes arising from this Agreement must be adjudicated in Los Angeles, California.").  As discussed in the preceding section, in the Court's view is that "must" connotes requirement more than "shall" connotes requirement.  The Court deems, therefore, this clause mandatory.

The forum selection clause in the majority of the New Mexico consumers' contracts is likewise mandatory.  To the extent that the forum selection clauses uses "shall" accompanied by a specification of a "venue," the forum selection clause resembles the clause from K & V Scientific Co. v. BMW that the Court quotes above:  "The agreement shall be governed in accordance with the laws of the State of California.  Venue shall be in Los Angeles County."  Attorney-Client Fee Agreement, Robert Alexander ¶ 12, at 3; Attorney-Client Fee Agreement, Jose Cedeno ¶ 12, at 3; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 12, at 3; Attorney-Client Fee Agreement, Larry Madrid ¶ 12, at 3; Attorney-Client Fee Agreement, Mike A. Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 12, at 3; Attorney-Client Fee Agreement, Linda Ward ¶ 12, at 3; Attorney-Client Fee Agreement, Creighton Maness ¶ 12, at 3; Attorney-Client Fee Agreement, Rachel D. Silva ¶ 12, at 3.  Although the forum selection clause in the New Mexico consumers' contract does not specify over what actions a court in Los Angeles County has venue, as discussed, supra, the context of the statement suggests that the venue in Los Angeles County governs the agreement, and "venue" is a more precise word than "jurisdiction," as the forum selection clauses that the Tenth Circuit has

described as permissive use.  See K & V Scientific Co. v. BMW, 314 F.3d at 499.  The Court

deems, accordingly, the New Mexico consumers' contracts' forum selection clauses to be

mandatory under federal law.

> **c.  Were the Court to Apply Federal Law to the Forum Selection Clause's Enforceability and the Contracts' Choice of Law to the Clause's Interpretation, the Court would Deem the Clause <u>Enforceable and Mandatory</u>.**

The preceding two section contain the Court's analysis relevant to this issue.  As discussed,

federal law would deem the forum selection clause enforceable.  California law would consider

the "shall" in the forum selection clause mandatory in the context of the provision.  As a valid

and mandatory forum selection clause, the clause would counsel transfer to California.

> **d.  Were the Court to Analyze the Forum Selection Clause by First Looking to Forum State Law, the Court Would Apply the Parties' Chosen Law and Deem the Clause Enforceable and <u>Mandatory</u>.**

Were the Court to start its analysis of the forum selection clause by looking to New Mexico

law, the Court would conclude that New Mexico would apply California law and, pursuant to

California law, the forum selection clause is enforceable and mandatory.  As an initial matter,

under New Mexico's choice of law rules, New Mexico would apply the parties' chosen law --

California law -- to the forum selection clause.  The Tenth Circuit has recognized that New Mexico

recognizes choice-of-law clauses' validity.  See Carr v. Stryker Corp., 28 F.3d 112, 1994 WL

325401, at *2 (10th Cir. 1994)(unpublished table opinion).[6]  "Nevertheless, when the choice of

_____

[6]As the Tenth Circuit has explained, "when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue."  Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003).  The

law rule leads to the law of another state and that law is different from the law of the forum, the forum may decline to apply the out-of-state law if it offends the public policy of New Mexico." United Wholesale Liquor Co. v. Brown-Forman Distillers Corp., 1989-NMSC-030, ¶ 12, 775 P.2d 233, 236 (citing Sandoval v. Valdez, 1978-NMCA-016, ¶ 15, 580 P.2d 131, 133). The parties' chosen law is California law.

The next question is whether California law offends New Mexico public policy. New Mexico has not taken a strict approach to the public policy analysis and requires less than an offense to a fundamental public policy to deem a law offensive to New Mexico public policy. See Tucker v. R.A. Hanson Co., 956 F.2d 215, 218 (10th Cir. 1992)(recognizing that New Mexico has applied a lower threshold of public policy analysis than one based on the idea "that some causes of action were so repugnant to the values of the forum state that the state courts would feel compelled to close their doors to them"); Tucker v. R.A. Hanson Co. 956 F.2d at 218–19

---

Court has critiqued the Elliott Indus. decision in the past on a different legal issue, and concluded that the Supreme Court of New Mexico would follow a different path on that issue. See Anderson Living Tr. v. WPX Energy Prod., LLC, 312 F.R.D. 620, 625-630 (D.N.M. 2015)(Browning, J.). The Court reiterates that interpretation here.

The Tenth Circuit in Carr v. Stryker Corp. concludes that New Mexico law recognizes the validity of choice of law provisions in the context of a case involving an employment agreement. See Carr v. Stryker Corp., 1994 WL 325401, at *1-2. The Supreme Court of New Mexico cases on which the Tenth Circuit relies, however, involve contracts for the sale of goods, and the Supreme Court of New Mexico's recognition of the choice-of-law clauses' validity rests at least in part on the Uniform Commercial Code. See Stevenson v. Louis Dreyfus Corp., 1991-NMSC-051, ¶¶ 3-5, 811 P.2d 1308, 1309; Nez v. Forney, 1989-NMSC-074, ¶¶5-8, 783 P.2d 471, 473; Jim v. CIT Fin. Servs. Corp., 1975-NMSC-019, ¶ 6, 533 P.2d 751, 753. See also Kirkpatrick v. Introspect Healthcare Corp., 1992-NMSC-070, ¶ 9, 845 P.2d 800, 803 (reflecting that the Uniform Commercial Code does not apply to contracts for services). The Court concludes, however, that the Supreme Court of New Mexico would agree that choice-of-law clauses are valid, as the Supreme Court of New Mexico has emphasized in discussing choice-of-law clauses: "New Mexico respects party autonomy." Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 7, 188 P.3d 1215, 1218. This general principle applies to all choice-of-law clauses.

(concluding, while applying New Mexico law, that New Mexico would not apply California law that permits indemnity clauses in construction contracts, "because they significantly interfere with New Mexico's efforts to produce safe workplaces and buildings"); <u>Fiser v. Dell Computer Corp.</u>, 2008-NMSC-046, ¶¶ 6-18, 188 P.3d 1215, 1218-21 (concluding that New Mexico public policy was offended where Texas law would ban a class action, because New Mexico public policy favors providing New Mexico consumers with small claims a vehicle for dispute resolution). New Mexico correctly argues that the MFCFPA forbids contract provisions within a foreclosure consulting contract that grant jurisdiction to a state other than New Mexico or require a venue in a county where the residence is not located. <u>See</u> Response at 7 (citing N.M. Stat. Ann. § 47-15-5(G)(2) and (3)). New Mexico has not, however, in response to the Motion, presented evidence that the New Mexico consumer contracts are foreclosure consulting contracts. New Mexico must show that: (i) Real Estate Law solicited or offered to perform, or performed a service; (ii) that Real Estate Law represented that it would fulfill one of N.M. Stat. Ann. § 47-15-2(B)(1)'s enumerated functions; and (iii) Real Estate Law requested or received compensation. <u>See</u> N.M. Stat. Ann. § 47-15-2(B)(1). The enumerated functions are:

> (a)   stop or postpone a foreclosure sale;
>
> (b)   obtain any forbearance from a beneficiary or mortgagee;
>
> (c)   assist the owner to exercise the right to reinstatement;
>
> (d)   obtain an extension of the period within which the owner may reinstate the owner's obligation;
>
> (e)   obtain a waiver of an acceleration clause contained in a promissory note, deed of trust or contract secured by a mortgage on a residence in foreclosure or contained in the mortgage;
>
> (f)   assist an owner in foreclosure or loan default to obtain a loan or advance of funds;

(g)     avoid or ameliorate the impairment of an owner's credit resulting from the recording of a notice of default or from a foreclosure sale; or

(h)     otherwise save an owner's residence from foreclosure[.]

N.M. Stat. Ann. § 47-15-2(B)(1).  No evidence suggests that the contracts were for any of these functions.  The New Mexico consumers' contracts state, without more, that the contracts are for litigation services against mortgage lenders, see Attorney-Client Fee Agreement, Robert Alexander ¶ 1, at 1; Attorney-Client Fee Agreement, Jose Cedeno ¶ 1, at 1; Attorney-Client Fee Agreement, Arlena F. Dickerson ¶ 1, at 1; Attorney-Client Fee Agreement, Larry Madrid ¶ 1, at 1; Attorney-Client Fee Agreement, Mike A. Maness ¶ 1, at 1; Attorney-Client Fee Agreement, Lloyd Trujillo ¶ 1, at 1; Attorney-Client Fee Agreement, Valerie Trujillo ¶ 1, at 1; Attorney-Client Fee Agreement, Linda Ward ¶ 1, at 1; Attorney-Client Fee Agreement, Creighton Maness ¶ 1, at 1; Attorney-Client Fee Agreement, Rachel D. Silva ¶ 1, at 1; Attorney-Client Fee Agreement, David Starrett ¶ 1, at 1 or for litigation against federal agencies, see Attorney-Client Fee Agreement, Vicki S. Sullivan at 2.  Accordingly, although a conflict exists between New Mexico law and California law, as the Court has located no California law that forbids forum selection clauses in contracts for loan modification work, the Court cannot say that the New Mexico law prohibiting forum selection clauses in foreclosure consultant contracts governs here.  As the law is inapplicable, no public policy problem arises, and California law governs.  As the Court discusses, supra, under California law, the forum selection clauses are enforceable and mandatory.

## B.     THE § 1404(A) FACTORS DO NOT COUNSEL TRANSFER.

The first factor -- the plaintiff's choice of forum -- weighs heavily against transfer.  "Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be

disturbed." Wm. A. Smith Contracting Co., Inc. v. Travelers Indem. Co., 467 F.2d at 664.  See

Tex E. Transmission Corp. v. Marine Office Appleton-Appleton & Cox Corp., 579 F.2d at 567

(stating that the plaintiff's choice of forum receives "considerable weight").  As its name suggests,

Plaintiff New Mexico operates out of the state of New Mexico, as do the twenty-three New Mexico

residents who were allegedly "victims of the Defendants' scheme," whose claims arise, in part,

under New Mexico state law.  Response at 8.  Additionally, the Defendants' ads reached the

consumers in New Mexico, where their homes are located and where the agreements were signed.

See Response at 7-8.  On the surface, therefore, there is little to suggest that New Mexico's choice

of forum in this case merits less deference.  See Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc., 618

F.3d at 1168 (holding that the amount of deference that the Court gives to a plaintff's choice of

forum should be decreased if the plaintiff does not reside in the district); Cook v. Atchison, Topeka

& Santa Fe Ry., 816 F. Supp. 667, 669 (D. Kan.1993)(Belot, J.).  Accordingly, this factor weighs

heavily against transfer.

    The second factor -- the locus of the operative facts -- also weighs heavily against transfer.

Mr. Pratt asserts that New Mexico has access to the contracts between Real Estate Law and the

New Mexico consumers, documentation which Mr. Pratt asserts he could not, and cannot,

independently access.  See Motion at 3.  Further, New Mexico has contended that most of the

witnesses testifying on New Mexico's behalf reside in New Mexico, along with the property

serving as the basis for the contractual agreements between Real Estate Law and the consumers.

See Response at 9.  Accordingly, most of the evidence is available in New Mexico, if not

originating in this district.  This factor, thus, weighs heavily against transfer.

    Factors three, four, and six -- the parties' convenience, the witnesses' convenience, and the

location of physical evidence, respectively -- all weigh against transfer.  Both New Mexico and

Mr. Pratt assert that their desired venue is more convenient.  See Motion at 2, 8; Response at 9, 11.  New Mexico contends that the District of New Mexico is the more convenient venue, because the New Mexico Attorney General is based in New Mexico, and most of the witnesses reside in New Mexico.  See Response at 9.  Alternatively, Mr. Pratt contends that all Real Estate Law cases were filed in California and applied California law, making California the more convenient venue.  See Motion at 8.  In the Court's view, the physical evidence is, at the least, equally accessible in New Mexico and in California, especially given Mr. Pratt's lack of Real Estate Law files and New Mexico's's access to them.  See Motion at 3; see Response at 9-10.  Indeed, New Mexico has had to provide Mr. Pratt with copies of the documents.  See Motion at 5.  Additionally, New Mexico would be extremely inconvenienced to bring a case predicated in part on New Mexico state laws before a California court.  The Court agrees with New Mexico that the movant must carry the burden of proving the existing forum to be sufficiently inconvenient.  See Trout v. Organizacion Mundial de Boxeo, Inc., No. Civ. 16-00097 JCH/LAM, 2017 WL 3052496 at *2 (D.N.M. 2017)(Herrera, J.).  That the Real Estate Law cases were originally filed in California starts to address why California might be a convenient venue, but does not explain why New Mexico is not a similarly convenient venue.  See Motion at 8.  Finally, New Mexico has asserted that seventeen of its expected witnesses reside in New Mexico, suggesting that a majority of the witnesses would be inconvenienced by a transfer to California.  Accordingly, these factors all weigh against transfer.

The parties have largely left unaddressed the fifth factor, which is the availability of process to compel the attendance of witnesses.  Neither party relied on this factor within their respective arguments.  Accordingly, the Court concludes that this factor is neutral.

The seventh factor -- the courts' relative unfamiliarity with the applicable law -- weighs slightly against transfer. The parties largely left this factor unaddressed. The Complaint implicates the Defendants on two New Mexico state laws as well as one federal law. The Court has not previously handled cases surrounding the federal MARS Rule, nor has any other judge for the District of New Mexico, in contrast to the California District Courts, which have handled seventeen such cases, and the Central District of California, which handled sixteen of the cases. See e.g., F.T.C. v. Kutzner, No. SACV 16-00999-BRO, 2017 WL 4685065 (C.D. Cal. 2017)(O'Connell, J.); Consumer Financial Protection Bureau v. Sitingoringo, No. SACV 14-01155-JVS, 2016 WL 102435, 93 Fed.R.Serv.3d 938 (C.D. Cal. 2016)(Selna, J.). Comparatively though, the federal California district courts have never addressed the MFCFPA or the NMUPA, while the Court has handled sixty-nine cases surrounding the NMUPA and is generally more familiar with New Mexico law than a federal California district court would be. See, e.g., Daye v. Cmty. Fin. Loan Service Centers, LLC, 280 F. Supp. 3d 1222 (D.N.M. 2017)(Browning, J.); Pedroza v. Lomas Auto Mall, Inc., 663 F. Supp. 2d 1123 (D.N.M. 2009)(Browning, J.). While either court would be dealing with some issues of unfamiliar law, the Court has a greater familiarity with New Mexico law and courts, and this experience will make it easier for the Court to decide New Mexico legal issues consistently with the state courts. Accordingly, this factor weighs slightly against transfer.

The eighth and final factor -- the interest of justice -- weighs against transfer. "For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626

F.3d at 977 (citing <u>Van Dusen v. Barrack</u>, 376 U.S. at 645; <u>Chicago, Rock Island & Pacific Railroad Co. v. Igoe</u>, 220 F.2d at 303; <u>Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.</u>, 200 F.Supp.2d at 946; <u>Hanley v. Omarc, Inc.</u>, 6 F.Supp.2d at 777).  There are no facts within the record concerning the extent of docket congestion in New Mexico as compared to the proposed court in Los Angeles County.  Additionally, the Court already has analyzed its relative familiarity with the relevant law under the seventh factor.  <u>See</u> <u>Hickam v. Janecka</u>, 2007 WL 2219417, at *1.  New Mexico contends, however, that there are public policy reasons for adjudicating this matter in New Mexico rather than Los Angeles, suggesting that there is increased desirability to resolving the controversies, as well as a greater connection between the community and the controversy, in New Mexico as compared to Los Angeles.  <u>See</u> Reponse at 6-7.  In the Court's view, this case has a greater connection to New Mexico's community than it does to Los Angeles' community, as the alleged harm concerns homes within New Mexico belonging to New Mexico residents.  While Mr. Pratt argues that his personal lack of connection to New Mexico produces a desirability to resolve the controversies in California, <u>see</u> Reply at 4, the harm allegedly incurred in New Mexico appears to be the result of a contract, and subsequent business relationship between Real Estate Law and the residents, signed within New Mexico, <u>see</u> Supplement at 4-5.  Accordingly, Mr. Pratt has more of a connection to New Mexico than the New Mexico residents have with the Los Angeles area based on his former role as lead attorney for Real Estate Law.  <u>See</u> Motion at 5.  Accordingly, this factor weighs against transfer.

In sum, none of the eight discretionary factors regarding the transfer of venue weigh in favor of transfer.  The fifth factor is neutral.  The seventh factor weighs slightly against transfer.  The third, fourth, sixth, and eighth factors all weigh against transfer.  Finally, the first and second

factors both weigh heavily against transfer. On balance, therefore, the factors weigh against transferring the case to Los Angeles County.

**IT IS ORDERED** that the Defendant Chad T-W Pratt's Motion to Dismiss for Improper Venue and/or in the Alternative Transfer to Los Angeles is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Hector H. Balderas
  Attorney General of the State of New Mexico
Angelica Anaya-Allen
Lisa Giandomenico
  Assistant Attorneys General of the State of New Mexico
Santa Fe, New Mexico

     *Attorneys for the Plaintiff*

Real Estate Law Center, P.C.
Los Angeles, California

     *Defendant pro se*

Chad Thomas Pratt
Los Angeles, California

     *Defendant pro se*

Paul J. Kennedy
Jessica M. Hernandez
Elizabeth Harrison
Kennedy, Hernandez & Associates, P.C.
Albuquerque, New Mexico

*Attorneys for Defendants Deepak S. Parwatikar, Pinnacle Law Center, P.C., and Balanced Legal Group*

Erikson M. Davis
Newbury Park, California

*Defendant pro se*